UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

LORENZO McGRIFF,

                                    Petitioner,

            -against-

SUPERINTENDENT DOC REARDON,

                                    Respondent.

AFFIDAVIT IN OPPOSITION TO
PETITION FOR A WRIT OF
HABEAS CORPUS

 1:21-cv-00703-AMD

STATE OF NEW YORK    )
                                    )   SS:
COUNTY OF KINGS       )

Diane R. Eisner, being duly sworn, deposes and states:

1.      I am an Assistant District Attorney in Kings County.  I am admitted to practice in the State of New York and before this Court.

2.      This affidavit is submitted in opposition to the pro se petition of Lorenzo McGriff (hereinafter "defendant") for a writ of habeas corpus, dated January 14, 2021, and filed in this Court on February 3, 2021.

3.      By agreement with the Attorney General of the State of New York, the District Attorney of Kings County will represent respondent in the above-captioned matter.

4.      Unless otherwise indicated, the statements contained herein are made upon information and belief, based upon the records and files of the Kings County District Attorney's Office, including the transcripts of defendant's trial and trial exhibits including videos and a still photograph.

5.      At about 1:05 p.m. on August 11, 2015, on Joralemon Street in Brooklyn Heights, defendant was taking a lunchtime walk when he was elbowed by Mohammed Khalifa, a stranger to him.  Defendant shoved Khalifa back and continued walking towards Boerum Place.  Khalifa, who appeared to be mentally unbalanced to defendant, began to follow defendant, shouting racist epithets at him.  Defendant walked away from Khalifa, crossing Joralemon Street and even turning back towards Court Street, but Khalifa continued to follow him, shouting racially offensive remarks.  Defendant was walking south in the street with traffic on Court Street, heading in the direction of his office on Baltic Street, with Khalifa walking somewhat behind him, when defendant quickly turned and advanced on Khalifa, saying, within the hearing of a pedestrian witness on the sidewalk, something like, "Oh, are you going to say it again?"  Defendant then grabbed Khalifa and, right in front of a car on Court Street, in full view of the driver -- whose companion recorded a portion of the confrontation on a cell phone -- defendant stabbed Khalifa several times in the area of Khalifa's midsection.  Khalifa thereafter stumbled to the sidewalk and out of the view of the driver and person filming the confrontation.  Another witness on Court Street saw Khalifa fleeing from defendant and then falling into a storefront that was under construction, followed by defendant, who then stabbed Khalifa in the head and neck.  Defendant then fled and ran south on Court Street.  Khalifa got up very shortly thereafter and, yelling, "I am still alive," pursued defendant.  The passenger in the car called 911 and reported the stabbing, but when responding officers got to Court and Livingston Streets, they did not find anyone described in the call.  Pedestrians were pointing, however, and, after following their directions, the officers first found Khalifa, who was on Dean Street near Boerum Place, bleeding heavily from several wounds.  Officers shortly thereafter found defendant crouching to the ground and hiding behind a car on

2

Bergen Street between Boerum Place and Court Street.  Defendant was no longer in possession of the instrument he had used to stab Khalifa.

6.     Khalifa was attended to by EMTs and then taken to the hospital, where he was treated for five stab wounds.  He had been stabbed in his cheek, forehead, arm, lateral left chest and lateral left flank.  Khalifa was combative, verbally aggressive, and uncooperative with medical personnel and he had to be sedated to be treated.  However, his injuries were not particularly serious, and he left the hospital the next day against doctor's orders.  Khalifa's urine tested positive for cocaine while he was at the hospital.

7.     For these crimes, defendant was charged by Kings County Indictment Number 6248/2015 with one count each of attempted assault in the first degree (New York Penal Law [hereinafter "P.L."] § 110.00/120.10[1]) and assault in the second degree (P.L. § 120.05[2]).

8.     Khalifa had not left a valid address at the hospital and he was not located for nor did he participate at all in the preparation for defendant's December 2016 trial.

9.     After the third round of jury selection, defendant made a Batson challenge (Batson v. Kentucky, 476 U.S. 79 [1986]) regarding the prosecutor's use of peremptory challenges against a number of African American prospective jurors.  The trial court found that defendant had not met his step-one burden of establishing a prima facie case of discrimination and the court did not ask the prosecutor for race-neutral reasons for his challenges.

10.     At trial, the State called three witnesses to the altercation.  Two pedestrians who had been in the vicinity of 65 Court Street testified about seeing the fight between defendant and Khalifa.  One of those witnesses, just before she saw defendant look like he was punching Khalifa, heard defendant say something like, "Oh, are you going to say it again?"  The other pedestrian, from a different vantage point, saw a scuffle in the street, after which Khalifa stumbled into a

storefront on Court Street.  That witness saw defendant holding a knife as he pursued Khalifa into the storefront, and she saw defendant stab Khalifa several times.  Another witness, who had been driving south on Court Street, also saw defendant stab Khalifa in the midsection more than once when defendant did so right in front of her car while still in the gutter of Court Street before moving out of her sight onto the sidewalk.  That witness's friend, who was in the car with her, filmed part of the stabbing incident on a cell phone and later called 911 and reported the stabbing.  None of these witnesses saw Khalifa whirling any object or approaching defendant with what appeared to be a weapon of any kind prior to defendant stabbing Khalifa.  Some of the witnesses thereafter watched as defendant fled down Court Street in the direction of Atlantic Avenue.  Khalifa was also seen emerging from the storefront shortly thereafter, yelling, "I am still alive," and pursuing defendant towards Atlantic Avenue.

11.     The State also called the police officer who arrested defendant on Bergen Street, where he had found defendant hiding behind a car, and the State introduced into evidence the cell phone video taken by the passenger in the car and surveillance videos showing defendant and Khalifa on Court Street, and defendant on Bergen Street.  The State also introduced a still photograph, which was a screenshot taken from the cell phone video, that captured defendant holding what appeared to be a pointed knife with a four- or five-inch blade as he also held onto Khalifa.  Khalifa's medical records detailing his wounds were also introduced in evidence. Portions of those records (read during the defense case) indicated that Khalifa had tested positive for cocaine, had been combative with medical personnel, and had checked himself out of the hospital against medical advice the day after his admission.

12.     Defendant testified.  He acknowledged a prior felony conviction and he raised a justification defense.  Defendant testified that while he was on a lunch break from his job, taking

a walk on Joralemon Street in Brooklyn and heading in the direction of Boerum Place, Khalifa, a stranger who appeared to defendant to be mentally unstable, elbowed him. Defendant testified that he shoved Khalifa away, but that Khalifa followed him, uttering racist remarks. Even after defendant crossed to the other side of Joralemon Street to avoid Khalifa, and reversed course to go back towards Court Street, Khalifa followed, continuing to utter racist remarks. Defendant testified that after he had reached Court Street and was walking south, he saw Khalifa stop at a construction site and pick up a large brick that Khalifa wrapped in a shirt that he was carrying. Defendant testified that Khalifa thereafter whirled the wrapped brick like a sling as if about to strike defendant with it and that defendant became frightened that Khalifa was going to hit him in the head with the brick. Defendant testified that he took out a wire-stripping tool that he always carried because he used it for his hobby of fixing headphones, and that he stabbed Khalifa with that tool in self-defense. Defendant denied stabbing Khalifa out of anger over the racist remarks that Khalifa had been directing at him. Defendant acknowledged that he dropped and disposed of the instrument that he used to stab Khalifa sometime after leaving the scene of the stabbing, and that he had given contrary testimony in the grand jury about where he dropped that instrument, which was never recovered. Defendant agreed that he did not attempt to call police at any time during the incident or his during his subsequent flight over a number of city blocks -- which flight path took him from Court and Livingston Streets to Schermerhorn Street, then to Clinton Street, then to Atlantic Avenue, then to Boerum Place, and then to Bergen Street -- asserting that there was no opportunity to do so because Khalifa was pursuing him. Defendant testified that he had not been attempting to hide behind the car where he was found on Bergen Street, but rather, that he had gotten down on the ground behind that car because he heard a police officer direct him to get down. Defendant, who worked as a peer counselor for people with mental health issues, and

whose job was located in a building on Baltic Street between Court and Clinton Streets, testified that he did not head in the direction of his office after the incident, although he had already been on Clinton Street, because he did not want to bring this matter there.

13.     The defense also called the EMT who treated Khalifa after he was found and stopped by police on Dean Street, to whom Khalifa had uttered racist remarks and been belligerent. Defendant's request to call his wife to testify that defendant routinely carried a wire-stripping tool because he used it for hobby-related activities was denied.

14.     The jury acquitted defendant of attempted first-degree assault (attempting to cause serious physical injury by means of a dangerous instrument) but convicted him of second-degree assault (intended to and did cause physical injury by means of a dangerous instrument).  Defendant, who had previously been convicted of first-degree manslaughter for the shooting death of a woman, for which crime he had spent seventeen years in prison, and who had, before that, been convicted of a misdemeanor assault, was sentenced, as a second violent felony offender, to seven years in prison with five years of post-release supervision.

15.     On appeal to the Supreme Court of the State of New York, Appellate Division, Second Department, defendant was represented by assigned appellate counsel.  Appellate counsel raised a number of claims on defendant's behalf, including:  (1) the verdict convicting defendant of second-degree assault was against the weight of the evidence because the People did not meet their burden of disproving defendant's justification defense beyond a reasonable doubt, (2) the prosecutor committed misconduct in his summation remarks and in his cross-examination of defendant, (3) the trial court failed to properly instruct the jury to stop deliberations on both assault counts if the jury found defendant not guilty of the top count of attempted assault in the first-degree on the ground of justification; and trial counsel was ineffective for failing to object to the

justification instructions and verdict sheet, (4) the second-degree assault count was rendered duplicitous by the prosecutor's summation, (5) the trial court improperly precluded the testimony of defendant's wife, (6) the trial court improperly denied defendant's <u>Batson</u> challenge to the prosecutor's use of peremptory challenges against African American prospective jurors, and (7) defendant's sentence was excessive.

16.    The State responded to all of these claims in a Respondent's Brief filed on or about December 7, 2018.

17.    Defendant filed a Reply Brief in which he complained that the State had responded to his claim that justification was not disproven beyond a reasonable doubt, so that the verdict was against the weight of the evidence, by applying the standard applicable to determining a claim that the evidence of guilt was legally insufficient.  That standard mandates that all reasonable inferences be drawn in the State's favor.  Defendant argued that he had <u>not</u> asserted that the evidence of guilt was legally insufficient, but rather, that the verdict was against the weight of the evidence, which determination could be made by the Appellate Division substituting its credibility findings for those of the jury without according all reasonable inferences in the State's favor.

18.    By Decision and Order dated September 18, 2019, the Appellate Division affirmed defendant's conviction and sentence.  The Appellate Division held:

> The defendant contends that the verdict of guilt and the rejection of his justification defense are against the weight of the evidence.  In fulfilling our responsibility to conduct an independent review of the weight of the evidence (<u>see</u> CPL 470.15[5]; <u>People v Danielson</u>, 9 NY3d 342, 880 N.E.2d 1, 849 N.Y.S.2d 480), we nevertheless accord great deference to the jury's opportunity to view the witnesses, hear the testimony, and observe demeanor (<u>see</u> <u>People v Mateo</u>, 2 NY3d 383, 410, 811 N.E.2d 1053, 779 N.Y.S.2d 399; <u>People v Bleakley</u>, 69 NY2d 490, 495, 508 N.E.2d 672, 515 N.Y.S.2d 761).  Upon reviewing the record here, we are satisfied that the jury's verdict rejecting the defendant's justification defense and finding him guilty was not against the weight of the evidence (<u>see</u> <u>People v Romero</u>, 7 NY3d 633, 859 N.E.2d 902, 826 N.Y.S.2d 163).

The defendant also contends that the Supreme Court erred in failing to instruct the jurors explicitly that if they found him not guilty of attempted assault in the first degree by reason of justification, they should acquit him and cease deliberations. The defendant's challenge to the court's instruction was not preserved for our review, and we decline to reach the issue in the exercise of our interest of justice jurisdiction (cf. CPL 470.05[6][a]).[1]

We agree with the Supreme Court's determination that the defendant failed to make a prima facie showing that the prosecution exercised its peremptory challenges in a discriminatory manner (see Batson v Kentucky, 476 U.S. 79, 106 S. Ct. 1712, 90 L. Ed. 2d 69; People v Childress, 81 NY2d 263, 266-268, 614 N.E.2d 709, 598 N.Y.S.2d 146; People v Morla, 245 AD2d 468, 666 N.Y.S.2d 675).

Contrary to the defendant's contention, the record reveals that his trial counsel provided meaningful representation (see People v Benevento, 91 NY2d 708, 712, 697 N.E.2d 584, 674 N.Y.S.2d 629).

The sentenced imposed was not excessive (see People v Suitte, 90 AD2d 80, 83, 455 N.Y.S.2d 675).

The defendant's remaining contentions are without merit.

People v McGriff, 175 A.D.3d 1432 (2d Dep't 2019).

19.     Leave to appeal to the New York Court of Appeals was denied. People v. McGriff, 34 N.Y.3d 1018 (2019) (DiFiore, Ch.J.).

20.     In his petition for a writ of habeas corpus, defendant raises the claims that were raised on his direct appeal, but for his excessive sentence claim.

21.     Along with this response to defendant's habeas petition, respondent is filing, electronically, the following exhibits:

A. The transcript of defendant's trial and sentencing (five parts),[2]

F. The Appellant's Brief filed in the Appellate Division,

G. The Respondent's Brief filed in the Appellate Division,

---

[1] This is a typographical error in the decision. The correct citation is C.P.L. § 470.15(6)(a).

[2] Respondent's Exhibits B, C, D, and E are videos or still photographs that were admitted at trial. They cannot be filed by ECF. Respondent has a motion pending to be allowed to file those exhibits by email or by any other method approved by this Court.

8

H.  The Appellant's Reply Brief filed in the Appellate Division,

22.    Pursuant to the Rule 7.1(c) of the Local Rules for the Southern and Eastern Districts of New York, respondent is providing to defendant, along with this response, copies of any cited decisions in the attached memorandum of law that are not officially reported and are solely available on computerized databases.

WHEREFORE, for the reasons stated in the accompanying Memorandum of Law, defendant's petition for a writ of habeas corpus should be dismissed.

I certify under penalty of perjury that the foregoing is true and correct.

Dated:  Brooklyn, New York
        April 15, 2021

Diane R. Eisner
Assistant District Attorney
Office of the Kings County District Attorney
350 Jay Street
Brooklyn, New York 11201
(718) 250-2489

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

LORENZO McGRIFF,

                                    Petitioner,

    -against-                                                                          1:21-cv-00703-AMD

SUPERINTENDENT DOC REARDON,

                                     Respondent.

MEMORANDUM OF LAW IN OPPOSITION TO PETITION FOR A WRIT
OF HABEAS CORPUS

Served upon the petitioner by U.S. Mail on April 13, 2021

TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................................................i

STATEMENT OF FACTS ................................................................................................................ 1

POINT I –

DEFENDANT'S CLAIM THAT THE TRIAL COURT ERRED IN FAILING TO INSTRUCT THE JURY THAT IT MUST NOT GO ON TO DELIBERATE ON THE COUNT OF SECOND-DEGREE ASSAULT IF IT ACQUITTED DEFENDANT OF ATTEMPTED FIRST-DEGREE ASSAULT UPON THE CONCLUSION THAT DEFENDANT'S ACTIONS WERE JUSTIFIED IS PROCEDURALLY BARRED FROM HABEAS CORPUS REVIEW DUE TO DEFENDANT'S STATE COURT PROCEDURAL DEFAULT.  DEFENDANT'S CLAIM THAT TRIAL COUNSEL WAS INEFFECTIVE FOR NOT OBJECTING TO THE CHARGE AND VERDICT SHEET WAS REJECTED BY THE APPELLATE DIVISION AND THAT DECISION IS ENTITLED TO AEDPA DEFERENCE ...................................................................................................................... 1

POINT II –

DEFENDANT'S CLAIM THAT HIS CONVICTION OF SECOND-DEGREE ASSAULT WAS AGAINST THE WEIGHT OF THE EVIDENCE BECAUSE THE STATE ALLEGEDLY FAILED TO DISPROVE JUSTIFICATION IS NOT SUBJECT TO HABEAS REVIEW ....................................................................................... 8

POINT III –

THE DETERMINATION OF THE APPELLATE DIVISION, FINDING MERITLESS DEFENDANT'S CLAIM THAT THE PROSECUTOR COMMITTED MISCONDUCT IN CROSS-EXAMINATION AND IN SUMMATION, IS ENTITLED TO DEFERENCE UNDER THE AEDPA ....................... 13

<u>TABLE OF CONTENTS</u> (Cont'd)

<u>Page</u>

POINT IV –

    THE DETERMINATION OF THE APPELLATE DIVISION, FINDING MERITLESS DEFENDANT'S CLAIM THAT THE PROSECUTOR'S SUMMATION RENDERED THE SECOND COUNT OF THE INDICTMENT DUPLICITOUS, IS ENTITLED TO DEFERENCE UNDER THE AEDPA ..................... 15

POINT V –

    THE DETERMINATION OF THE APPELLATE DIVISION, FINDING MERITLESS DEFENDANT'S CLAIM THAT THE TRIAL COURT ERRED IN PRECLUDING THE TESTIMONY OF HIS WIFE, IS ENTITLED TO DEFERENCE UNDER THE AEDPA ................................................................. 18

POINT VI –

    THE DECISION OF THE APPELLATE DIVISION THAT THE RECORD SUPPORTED THE DETERMINATION OF THE TRIAL COURT THAT DEFENDANT FAILED TO STATE A <u>PRIMA</u> <u>FACIE</u> CASE OF DISCRIMINATION IN HIS <u>BATSON</u> CHALLENGE IS ENTITLED TO DEFERENCE UNDER THE AEDPA ................................................................. 22

CONCLUSION .................................................................................................. 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

Anderson v. Lee, 453 F. Supp. 3d 574 (E.D.N.Y. 2020)..................................................14

Aparicio v. Artuz, 269 F.3d 78 (2d Cir. 2001) ..............................................................11

Batson v Kentucky, 476 U.S. 79 (1986) .....................................................22, 23, 24, 25

Bonet v. McGinnis, 2001 U.S. Dist. LEXIS 10629, 2001 WL 849454 (S.D.N.Y. 2001) ....................................................................................................................20

Bruno v. Coveny, 2021 U.S. Dist. LEXIS 44410, 2021 WL 918324 (E.D.N.Y. 2021) ......................................................................................................................5

Carmichael v. Chappius, 848 F.3d 536 (2d Cir. 2017).........................................22, 23

Cavazos v. Smith, 565 U.S. 1 (2011)................................................................................6

Chambers v. Conway, 2010 U.S. Dist. LEXIS 29558, 2010 WL 1257305 (S.D.N.Y. 2010) ...........................................................................................................5

Clark v. Perez, 510 F.3d 382 (2d Cir. 2008)...................................................................12

Coleman v. Thompson, 501 U.S. 722 (1991) ...............................................................2, 3

Collins v. Scully, 755 F.2d 16 (2d Cir. 1985)..................................................................21

Cone v. Bell, 556 U.S. 449 (2009).....................................................................................2

Crane v. Kentucky, 476 U.S. 683 (1986)..........................................................................20

Cullen v. Pinholster, 563 U.S. 170 (2011).........................................................................6

Cupp v. Naughten, 414 U.S. 141 (1973)............................................................................5

Devaney v. Miller, 2018 U.S. Dist. LEXIS 231071 (E.D.N.Y. 2018) ............................12

Downs v. Lape, 657 F.3d 97 (2d Cir. 2011) ...................................................................2, 3

Duren v. Lamanna, 2020 U.S. Dist. LEXIS 16431, 2020 U.S. Dist. LEXIS 16431 (E.D.N.Y. 2020)...........................................................................................................14

Edwards v. Capra, 2020 U.S. Dist. LEXIS 236888, 2020 WL 7385694 (E.D.N.Y. 2020) ................................................................................................................2

Edwards v. Carpenter, 529 U.S. 446 (2000) ...............................................................3

Esguerrra v. Cronin, 2021 U.S. Dist. LEXIS 33010, 2021 WL 681076 (E.D.N.Y. 2021) ...............................................................................................................10

Estelle v. McGuire, 502 U.S. 62 (1991) ...............................................................5, 19

Evans v. Fischer, 712 F.3d 125 (2d Cir. 2013) .........................................................20

Galdamez v. Keane, 394 F.3d 68 (2d Cir. 2005) ......................................................10

Garcia v. Franchi, 2020 U.S. Dist. LEXIS 9862, 2020 WL 353099 (E.D.N.Y. 2020) ...............................................................................................................20

Garcia v. Lewis, 188 F.3d 71 (2d Cir. 1999) ..............................................................4

Grey v. Hoke, 933 F.2d 117 (2d Cir. 1991) ..............................................................11

Harnett v. Conway, 2014 U.S. Dist. LEXIS 161456, 2014 WL 6390285 (S.D.N.Y. 2014) ...............................................................................................................18

Harrington v. Richter, 562 U.S. 86 (2011) ................................................................7

Harris v. Fischer, 438 Fed. Appx. 11 (2d Cir 2011) .................................................10

Henry v. Speckard, 22 F.3d 1209 (2d Cir. 1994).......................................................20

Hicks v. Lee, 2015 U.S. Dist. LEXIS 34522 (S.D.N.Y. 2015) ....................................7

Hicks v. Ercole, 2015 U.S. Dist. LEXIS 33694, 2015 WL 1266800 (S.D.N.Y. 2015) .................................................................................................................7

Jackson v. Conway, 763 F.3d 115 (2d Cir. 2014).....................................................11

Jones v. Lee, 2013 U.S. Dist. LEXIS 97796, 2013 WL 3514436 (S.D.N.Y. July 12, 2013) ...........................................................................................................20

Lee v. Kemna, 534 U.S. 362 (2002) ............................................................................2

Lindsey v. Heath, 2015 U.S. Dist. LEXIS 80423, 2015 WL 3849939 (E.D.N.Y. 2015) ...............................................................................................................16

Love v. Smith, 2009 U.S. Dist. LEXIS 68666, 2009 WL 2422384 (E.D.N.Y. Aug. 6, 2009) ........................................................................................................7, 8

McCall v. Capra, 102 F. Supp. 3d 427 (E.D.N.Y 2015)............................................24

McKinnon v. Superintendent, Great Meadow Corr. Facility, 422 Fed. Appx. 69
  (2d Cir. 2011) .................................................................................................10

Miller-El v. Dretke, 545 U.S. 231 (2005) ...................................................................24

Murray v. Carrier, 477 U.S. 478 (1986) ......................................................................2

Ortiz v. McBride, 323 F.3d 191 (2d Cir. 2003) ..........................................................10

People v Bleakley, 69 N.Y.2d 490 (1987) ....................................................................9

People v Childress, 81 N.Y.2d 263 (1993) .................................................................22

People v Danielson, 9 N.Y.3d 342 (2007) ....................................................................9

People v. Feuer, 11 A.D.3d 633 (2d Dep't 2004) ........................................................4

People v Mateo, 2 N.Y.3d 383 (2004) ..........................................................................9

People v McGriff, 175 A.D.3d 1432 (2d Dep't 2019)............................................ passim

People v Morla, 245 A.D.2d 468 (1997) ....................................................................22

People v. Overlee, 236 A.D.2d 133 (1st Dep't 1997)..................................................15

People v Romero, 7 NY3d 633(2006) ...........................................................................9

Perez v. Phillips, 210 Fed. Appx. 55 (2d Cir. 2006)..................................................20

Rosario v. Kuhlman, 839 F.2d 918 (2d Cir. 1988) ....................................................20

Sanchez v. Lee, 2011 U.S. Dist. LEXIS 26894 (S.D.N.Y. 2011) .................................4

Sanchez v. Lee, 2011 U.S. Dist. LEXIS 87472, 2011 WL 3477314 (S.D.N.Y.
  2011), aff'd 508 Fed. Appx. 46 (2d Cir. 013)..........................................................4

Scott v. Graham, 2020 U.S. Dist. LEXIS 78114 (E.D.N.Y. 2020)..............................11

Scott v. Griffin, 2018 U.S. Dist. LEXIS 156307 (E.D.N.Y. 2018) .............................24

Sims v. Stinson, 101 F. Supp. 2d 187 (S.D.N.Y. 2000) .............................................20

Sorto v. Herbert, 497 F.3d 163 (2d Cir. 2007)...........................................................22

Strickland v. Washington, 466 U.S. 668 (1984)........................................................6, 8

Waiters v. Lee, 857 F.3d 466 (2d Cir. 2017), cert. denied sub nom. Waiters v.
  Griffin, 138 S. Ct. 385 (2017)..................................................................................6

Willis v. Capra, 2021 U.S. Dist. LEXIS 31791, 2021 WL 663978 (E.D.N.Y. 2021) ............................................................................................................10

Woods v. Donald, 135 S. Ct. 1372 (2015)............................................................6

Woods v. Etherton, 136 S. Ct. 1149 (2016)..........................................................6

Zarvela v. Artuz, 364 F.3d 415 (2d Cir. 2004) ..................................................21

**Statutes**

28 U.S.C. § 2254..........................................................................................6, 10, 12

New York Criminal Procedure Law § 470.15 ....................................................10

STATEMENT OF FACTS

Respondent relies upon the facts set forth in the annexed Affidavit, and in the Respondent's

Brief to the Appellate Division, as a full statement of the facts applicable to defendant's claims (see

Respondent's Exhibit G at 2-22).

POINT I

DEFENDANT'S CLAIM THAT THE TRIAL COURT ERRED IN FAILING TO
INSTRUCT THE JURY THAT IT MUST NOT GO ON TO DELIBERATE ON
THE COUNT OF SECOND-DEGREE ASSAULT IF IT ACQUITTED
DEFENDANT OF ATTEMPTED FIRST-DEGREE ASSAULT UPON THE
CONCLUSION THAT DEFENDANT'S ACTIONS WERE JUSTIFIED IS
PROCEDURALLY BARRED FROM HABEAS CORPUS REVIEW DUE TO
DEFENDANT'S STATE COURT PROCEDURAL DEFAULT.  DEFENDANT'S
CLAIM THAT TRIAL COUNSEL WAS INEFFECTIVE FOR NOT OBJECTING
TO THE CHARGE AND VERDICT SHEET WAS REJECTED BY THE
APPELLATE DIVISION AND THAT DECISION IS ENTITLED TO AEDPA
DEFERENCE.

On direct appeal, defendant challenged the trial court's instructions on the defense of

justification.  Defendant complained that the court did not specifically instruct (nor did it note on the

verdict sheet) that if the jury determined, regarding the top count of attempted first-degree assault,

that defendant's actions were justified, then the jury should not go on to decide count two, which

charged defendant with second-degree assault.  In his Appellant's Brief, without specifically

acknowledging that there had been no objection to the charge or verdict sheet, defendant asked the

Court to reach the claim in the interest of justice or upon a conclusion that trial counsel was ineffective

for not objecting (see Respondent's Exhibit F at 56).  The State argued that the claim should not be

addressed because it was unpreserved by an objection at trial and because, in any event, the court's

instructions on justification, as a whole, conveyed the correct law, and because the evidence

disproving justification was overwhelming (see Respondent's Exhibit G at 43-58).

The Appellate Division found defendant's charge/verdict sheet error claim to be unpreserved and declined to reach it in the exercise of its interest of justice jurisdiction. <u>People v McGriff</u>, 175 A.D.3d 1432 (2d Dep't 2019).  Because the Appellate Division declined to consider the merits of defendant's claim, that claim may not be reviewed in a habeas corpus proceeding.  "It is well established that federal courts will not review questions of federal law presented in a habeas petition when the state court's decision rests upon a state-law ground that 'is independent of the federal question and adequate to support the judgment.'" <u>Cone v. Bell</u>, 556 U.S. 449, 465 (2009) (quoting <u>Coleman v. Thompson</u>, 501 U.S. 722, 729 [1991]).  Grounds that are "adequate to foreclose review of a federal claim" are those resting on "'firmly established and regularly followed' state rules." <u>Lee v. Kemna</u>, 534 U.S. 362, 376 (2002) (quoting <u>James v.Kentucky</u>, 466 U.S. 341, 348 [1984]).  New York's contemporaneous objection rule is one such independent and adequate state procedural ground.  <u>See</u> <u>Downs v. Lape</u>, 657 F.3d 97, 104 (2d Cir. 2011); <u>see also</u> <u>Edwards v. Capra</u>, 2020 U.S. Dist. LEXIS 236888 at*6-7, 2020 WL 7385694 (E.D.N.Y. 2020) (Appellate Division's conclusion that claim regarding justification charge was not preserved constituted independent and adequate bar to habeas relief [and, regarding Appellate Division's additional conclusion finding claim meritless, that it is "not the province of a federal habeas court to reexamine state-court determinations on state-law questions," and that the petitioner failed to point to a "federal requirement that jury instructions on justification must include particular provisions" [citations omitted]).

While habeas review of a procedurally defaulted claim is available if the defendant can show "cause" for the default and resulting prejudice, defendant has not done so here.  "Cause" requires showing that "some objective factor external to the defense impeded [defendant's] efforts to comply with the State's procedural rule." <u>Murray v. Carrier</u>, 477 U.S. 478, 488 (1986); <u>accord</u> <u>Coleman</u>, 501 U.S. at 753.  A defendant can overcome the procedural bar without showing cause and prejudice only

by demonstrating that failure to review the "federal claim will result in a fundamental miscarriage of justice," such as where a constitutional violation resulted in the conviction of someone who is actually innocent.  See Edwards v. Carpenter, 529 U.S. 446, 451 (2000); see also Coleman, 501 U.S. at 750 (citing Carrier, 477 U.S. at 496).

Defendant acknowledges the procedural bar applicable to this claim (see "Brief for Petitioner to be Submitted in Support of Writ of Habeas Corpus on Behalf of Lorenzo McGriff, Petitioner Pro Se" [hereinafter "Defendant's Memorandum"] at 38-41), but asserts that it should not preclude this Court from adjudicating his claim because the Appellate Division allegedly "misapplied" the contemporaneous objection rule and failed to evenhandedly apply that rule.  Id.at 38, 41.  In support of this claim, defendant cites several Appellate Division cases that reached the merits of similar unpreserved claims in the Appellate Division's exercise of its interest of justice jurisdiction.  Id. at 41-42.  Some of those cases and similar cases were discussed and distinguished in the State's brief to the Appellate Division (see Respondent's Exhibit G at 53-58).  In any event, the Appellate Division's refusal to exercise its interest of justice jurisdiction in defendant's case was a discretionary determination that did not constitute an exorbitant application of the procedural bar of the contemporaneous objection rule.  See Downs v. Lape, supra, 657 F.3d at 103 ("Moreover, we expect some variation is inevitable in the application of any procedural rule.  Such variation just as easily reflects at least the proper exercise of appellate court discretion as it does the lack of a firmly established and regularly followed rule.  In turn, the exercise of discretion by New York courts hardly proves that they fail to regularly follow the state's contemporaneous objection rule, any more than the occasional excusal of a waiver or forfeiture by this Court proves that we do not generally require that arguments advanced on appeal be raised in the lower court.  A discretionary rule ought not be disregarded automatically upon a showing of seeming inconsistencies.  Discretion enables a court to

home in on case-specific considerations and to avoid the harsh results that sometimes attend consistent application of an unyielding rule" [internal citations and quotation marks omitted]); Garcia v. Lewis, 188 F.3d 71, 79 (2d Cir. 1999) ("New York's contemporaneous objection rule is not rendered 'inadequate' on account of novelty or sporadic application, as sometimes is the case" [citation omitted]); see also Sanchez v. Lee, 2011 U.S. Dist. LEXIS 26894 at *84, n 37 (S.D.N.Y. 2011) (R&R), adopted at 2011 U.S. Dist. LEXIS 87472, 2011 WL 3477314 (S.D.N.Y. 2011), aff'd Sanchez v. Lee, 508 Fed. Appx. 46 (New York courts routinely have applied the lack of preservation as a procedural bar to review where a defendant has failed to specifically address the claim in a motion to dismiss; the mere fact that New York courts sometimes may address an unpreserved [depraved indifference sufficiency] claim in the interest of justice does not render the application of the procedural bar "exorbitant" as that term was used in Lee v. Kemna, 534 U.S. at 382).  Indeed, in the instant case, the Appellate Division was certainly aware of its own decision in People v. Feuer, 11 A.D.3d 633, 634 (2d Dep't 2004), cited by both sides in their briefs, in which it agreed to consider the merits of an unpreserved claim similar to that raised here, and in which it explained, "The court will not exercise its discretionary power to disregard the absence of objection unless on the whole case there is a reasonable basis for the fear that injustice has been done" (citation omitted).  Thus, in the instant case, the Appellate Division clearly did not fear that injustice was done.

Nor does defendant's bald claim that he is innocent and that the court's charge set the stage for an allegedly repugnant verdict (Defendant's Memorandum at 29), suffice to establish that refusal to review defendant's procedurally barred charge error claim will result in a fundamental miscarriage of justice.  As the State comprehensively argued in its brief to the Appellate Division, the court's charge in this case more than adequately ensured that if the jury thought that defendant had stabbed

4

Khalifa in self-defense it was bound to acquit him of both charges (See Respondent's Exhibit G at 43-58).

In Chambers v. Conway, 2010 U.S. Dist. LEXIS 29558 at *3-8, 2010 WL 1257305 (S.D.N.Y. 2010) (denying stay of habeas proceeding), the court found that the state court's failure to give a cease-deliberations instruction in a case where justification applied to all of the counts the defendant faced would not be an error warranting habeas relief because, even if the instruction was error under state law, "the overall charge included the trial court's instructions on all three counts that the jury was to find the petitioner not guilty unless it was convinced that the justification defense was disproven."  See also Bruno v. Coveny, 2021 U.S. Dist. LEXIS 44410 at *24-26, 2021 WL 918324 (E.D.N.Y. 2021) (claim of error in justification charge was not properly preserved in state court; in any event, state court gave proper justification charge, including the prosecution's burden of proof and its obligation to disprove the defense of justification; furthermore, "The propriety of a state court's jury charge is ordinarily a matter of state law that does not raise a federal constitutional issue.  See Estelle v. McGuire, 502 U.S. 62, 71-72, 112 S. Ct. 475, 116 L. Ed. 2d 385 (1991) ('[T]he fact that the instruction was allegedly incorrect under state law is not a basis for habeas relief.') (citation omitted). Habeas relief is available only if the instruction 'violated some right which was guaranteed to the defendant by the Fourteenth Amendment,' and not because the instruction is 'undesirable, erroneous, or even "universally condemned."' Cupp v. Naughten, 414 U.S. 141, 146, 94 S. Ct. 396, 38 L. Ed. 2d 368 (1973)").

The jury's conviction on the second-degree assault charge, following clear and repeated instructions to acquit defendant of that charge if it found his actions to be justified, belies defendant's claim that he is innocent and that his state court procedural default should be disregarded and his charge error claim reviewed.

＊          ＊          ＊          ＊

Defendant also claims that trial counsel was ineffective for not preserving the charge error/verdict sheet claim.  This claim was explicitly rejected by the Appellate Division, which held that "the record reveals that [defendant's] trial counsel provided meaningful representation." People v McGriff, supra, 175 A.D.3d at 1433 (citation omitted).

Under 28 U.S.C. § 2254(d), the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), "when a state court adjudicates a petitioner's habeas claim on the merits, a district court may only grant relief where the state court's decision was 'contrary to, or involved an unreasonable application of, clearly established Federal law,' or was 'based on an unreasonable determination of the facts in light of the evidence presented.'" Waiters v. Lee, 857 F.3d 466, 477 (2d Cir. 2017), cert. denied sub nom. Waiters v. Griffin, 138 S. Ct. 385 (2017) (quoting 28 U.S.C. § 2254(d)).  This is a "highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt." Cullen v. Pinholster, 563 U.S. 170, 181 (2011) (quoting Woodford v. Visciotti, 537 U.S. 19, 24 [2002]).  As the Supreme Court has stated, "[w]hen reviewing state criminal convictions on collateral review, federal judges are required to afford state courts due respect by overturning their decisions only when there could be no reasonable dispute that they were wrong." Woods v. Donald, 135 S. Ct. 1372, 1376 (2015) (per curiam).  AEDPA, by its terms, requires substantial deference to the state court's decision in all cases governed by § 2254(d).  See Cavazos v. Smith, 565 U.S. 1, 9 (2011).

In assessing an ineffective assistance of counsel claim, a habeas court has to decide if the state court unreasonably applied Strickland v. Washington, 466 U.S. 668, 688-94 (1984) (claim counsel ineffective requires a showing that counsel's representation fell below an objective standard of reasonableness and a showing of prejudice by the reasonable probability that, but for counsel's

6

unprofessional errors, the result of the proceeding would have been different). In Woods v. Etherton, 136 S. Ct. 1149, 1151 (2016), the Supreme Court held, regarding the AEDPA deferential standard of review of ineffective assistance of counsel claims, that the review had to be "doubly deferential" because counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment, and federal courts are to afford both the state court and the defense attorney the benefit of the doubt.

Habeas review under the "unreasonable application" clause is "extremely deferential" and if the state court does not provide reasons for its decision, a federal habeas court must examine "what arguments or theories . . . could have supported" that decision and whether reasonable judges "could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." Harrington v. Richter, 562 U.S. 86, 102 (2011). In Hicks v. Lee, 2015 U.S. Dist. LEXIS 34522 at *61-66 (S.D.N.Y. 2015) (R&R), adopted at Hicks v. Ercole, 2015 U.S. Dist. LEXIS 33694, 2015 WL 1266800 (S.D.N.Y. 2015), the court rejected a similar claim that trial counsel was ineffective for not requesting a cease-deliberations instruction if the jury acquitted the defendant of second-degree murder on the grounds of justification, where the jury did acquit the defendant of the intentional murder charge but went on to convict the defendant of first-degree manslaughter. The court found that at the time, New York law was unclear whether a cease-deliberation charge was necessary and the court went on to discuss the ineffective assistance of counsel claim, stating: "Notably, courts in this Circuit have expressly dealt with the question of whether the failure to object to the type of jury charge at issue here constitutes ineffective assistance of counsel. See, e.g., Love v. Smith, 2009 U.S. Dist. LEXIS 68666, 2009 WL 2422384, *7 (E.D.N.Y. Aug. 6, 2009). Unsurprisingly, they have answered in the negative: 'Because there is no clear state rule on whether the stop-consideration language must be included, counsel's decision not to object to the justification

charge did not constitute ineffective assistance, and this Court therefore cannot hold that the [Appellate Division's] ineffective assistance determination was either contrary to, or an unreasonable application of, the <u>Strickland</u> standard." (Id.).  Furthermore, even if New York law does require a stop-consideration charge, and the charge as given was erroneous, it adequately conveyed that the justification defense applied to both the manslaughter and the murder counts.  Therefore, there is no reason to believe that the jury verdict would have come down differently if petitioner's desired instruction had been given."

Here, as well, the court's repeated instructions on justification made it abundantly clear that the justification defense applied to both counts that defendant faced, and that if the jury found that defendant was justified in stabbing Khalifa in self-defense, he had to be acquitted of both counts. Because the court's instructions ensured that defendant would be acquitted if the jury found that he was justified in responding to Khalifa with physical force, defense counsel was not ineffective for failing to object to the charge that was given.  The State respectfully refers this Court to the Respondent's Brief to the Appellate Division, Respondent's Exhibit G at 43-58, in full support of the State's position that defendant is not entitled to habeas relief upon his claim that trial counsel was ineffective.


<u>POINT II</u>

<u>DEFENDANT'S CLAIM THAT HIS CONVICTION OF SECOND-DEGREE ASSAULT WAS AGAINST THE WEIGHT OF THE EVIDENCE BECAUSE THE STATE ALLEGEDLY FAILED TO DISPROVE JUSTIFICATION IS NOT SUBJECT TO HABEAS REVIEW.</u>

On appeal, defendant claimed that because the State allegedly failed to disprove justification beyond a reasonable doubt, the verdict convicting defendant of second-degree assault was against the weight of the evidence (<u>see</u> Respondent's Exhibit F at 34-44).  After the People responded to the

8

language regarding disproving justification beyond a reasonable doubt by arguing that a legal insufficiency of the evidence claim was unpreserved, but that, in any event, there was legally sufficient evidence to support defendant's conviction, and that the verdict was also not against the weight of the evidence (see Respondent's Exhibit G at 23-32), defendant took pains to file a Reply Brief in which he insisted that he had not raised a claim that the evidence was legally insufficient, but rather, a claim that the verdict was against the weight of the evidence (see Respondent's Exhibit H at 3). Defendant noted that under a legal sufficiency of the evidence standard, the State would be entitled to all reasonable inferences that could be drawn in its favor, but that in conducting a weight of the evidence review, the Appellate Division was not bound to accord all favorable inferences to the State's case and could instead make credibility determinations different from those reached by the jury and draw its own factual conclusions. Id. Defendant then went on to assert again his arguments why the Appellate Division should conclude that verdict was against the weight of the evidence (Id. at 3-11).

The Appellate Division adjudicated the weight of the evidence claim raised by defendant, concluding, "The defendant contends that the verdict of guilt and the rejection of his justification defense are against the weight of the evidence. In fulfilling our responsibility to conduct an independent review of the weight of the evidence (see CPL 470.15[5]; People v Danielson, 9 NY3d 342, 880 N.E.2d 1, 849 N.Y.S.2d 480), we nevertheless accord great deference to the jury's opportunity to view the witnesses, hear the testimony, and observe demeanor (see People v Mateo, 2 NY3d 383, 410, 811 N.E.2d 1053, 779 N.Y.S.2d 399; People v Bleakley, 69 NY2d 490, 495, 508 N.E.2d 672, 515 N.Y.S.2d 761). Upon reviewing the record here, we are satisfied that the jury's verdict rejecting the defendant's justification defense and finding him guilty was not against the

weight of the evidence (see People v Romero, 7 NY3d 633, 859 N.E.2d 902, 826 N.Y.S.2d 163)." People v McGriff, supra, 175 A.D.3d at 1432-33.

A challenge to the weight of the evidence is not cognizable on habeas corpus review.  See McKinnon v. Superintendent, Great Meadow Corr. Facility, 422 Fed. Appx. 69, 75 (2d Cir. 2011); Esguerrra v. Cronin, 2021 U.S. Dist. LEXIS 33010 at *9-10, 2021 WL 681076 (E.D.N.Y. 2021) (citing cases and holdings that, "Federal courts routinely dismiss claims attacking a verdict as against the weight of the evidence on the basis that they are not federal constitutional issues cognizable in a habeas proceeding, and that, "A weight of the evidence argument is a pure state law claim grounded in New York Criminal Procedure Law § 470.15(5), whereas a legal sufficiency claim is based on federal due process principles."); Willis v. Capra, 2021 U.S. Dist. LEXIS 31791 at *9, 2021 WL 663978 (E.D.N.Y. 2021) (claim that conviction was against the weight of the evidence not cognizable on habeas review because it is a pure state law claim grounded in N. Y. Crim. Proc. Law § 470.15(5) [citation omitted]).

Should this Court construe the pro se defendant's Ground Two ("Weight of Evidence Element – Based Review Legal Sufficiency Challenge") as raising a legal insufficiency of the evidence claim, see Ortiz v. McBride, 323 F.3d 191, 194 (2d Cir. 2003) (pro se submissions to be liberally construed and interpreted to raise strongest arguments they suggest), that claim, as well, is not cognizable on habeas review because it was not raised in state court and defendant failed to give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process.  See Galdamez v. Keane, 394 F.3d 68, 73 (2d Cir. 2005) (citing O'Sullivan v. Boerckel, 526 U.S. 838, at 845); see also Harris v. Fischer, 438 Fed. Appx. 11 at 13 (2d Cir 2011) ("Under § 2254's exhaustion requirement, 28 U.S.C. § 2254(b), (c), each argument advanced in a federal habeas petition must first have been exhausted through state remedies — that

is, presented to the state's highest court, Galdamez v. Keane, 394 F.3d 68, 73 (2d Cir. 2005). The petitioner must have 'fairly apprised' the state court of the factual and legal premises of the federal constitutional claim. Grey v. Hoke, 933 F.2d 117, 119 [2d Cir. 1991]."); see also Scott v. Graham, 2020 U.S. Dist. LEXIS 78114 at *7 (E.D.N.Y. 2020) (where defendant relied upon his briefs in his petition, and where Appellate Division brief raised claims not thereafter raised in defendant's brief to the Court of Appeals, claims not presented to the Court of Appeals were unexhausted [citing rulings in O'Sullivan v. Boerckel, 526 U.S. 838, 842 (1999) and McKinnon v. Superintendent, Great Meadow Corr. Facility, 422 F. Appx 69, 71 (2d Cir. 2011) that before a federal court may grant habeas relief to a state prisoner, the prisoner must exhaust his remedies in state court]).

Here, where no state court has ever been asked to review the legal sufficiency of the evidence of defendant's guilt of second-degree assault, and where the Appellate Division did not address the legal sufficiency of the evidence of defendant's guilt of that crime, the sufficiency of the evidence of defendant's guilt of that crime is not properly before this Court.

Furthermore, defendant's unexhausted claims cannot be exhausted in state court because a claim that the evidence of defendant's guilt of second-degree assault was legally insufficient would be an on-the-record claim and defendant has already had the one appeal to which he is entitled, see Aparicio v. Artuz, 269 F.3d 78, 91 (2d Cir. 2001) (citing N.Y. Crim. Proc. Law § 450.10(1); N.Y. Court R. § 500.10(a)), and a claim regarding the sufficiency of the evidence may not be raised in a collateral attack on defendant's convictions.  See C.P.L. § 440.10(2)(c); see also Jackson v. Conway, 763 F.3d 115, 143 (2d Cir. 2014) ("Jackson has no further state avenues in which to press this issue because he has completed his direct appeal and the nature of the claim is apparent from the face of the record, meaning that he would be barred from raising it in a motion to vacate the judgment.  See N.Y. Crim. Proc. Law § 440.10(2)(c) [stating that the court 'must deny' a § 440.10 motion when

sufficient facts appear on the record to permit appellate review of the claim and the defendant unjustifiably failed to raise that issue on direct appeal.]").

Nor should this Court excuse defendant's procedural default because defendant has not established cause for the default or prejudice. Indeed, the decision to raise a weight of the evidence claim and not a claim that the evidence of defendant's guilt was legally insufficient was explicitly explained by appellate counsel in his Reply Brief to be a conscious strategic choice based on defendant's desire to have the Appellate Division independently make credibility determinations and find facts, and not afford all reasonable inferences that could be drawn in the State's favor. Because a claim could have been raised on appeal challenging the sufficiency of the evidence of defendant's guilt of second-degree assault, but that was not done, defendant has not established cause or prejudice to excuse his procedural default. See Clark v. Perez, 510 F.3d 382, 393 (2d Cir. 2008) (where a claim has been procedurally defaulted by the failure to raise it on direct appeal, it may be raised in a habeas only if the defendant can first demonstrate either cause and actual prejudice, or that he is actually innocent; cause for a procedural default requires a showing that some objective factor external to the defense impeded the efforts to comply with the State's procedural rule [citations omitted]).

Accordingly, if this Court reads defendant's petition as containing a challenge to the legal sufficiency of the evidence of his guilt of second-degree assault, defendant's claim is unexhausted and may not be the basis for habeas relief. See Devaney v. Miller, 2018 U.S. Dist. LEXIS 231071 at *6-7 (E.D.N.Y. 2018) (rejecting habeas claim where defendant did not exhaust his claim by raising it on appeal and defendant did not show cause for his procedural default).

Finally, if this Court concludes that defendant's petition contains unexhausted claims, this Court may deny the unexhausted claims on the merits. See 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant

to exhaust the remedies available in the courts of the state.").  Because the evidence of defendant's guilt of second-degree assault was overwhelmingly established by the evidence at trial, which disproved defendant's justification defense beyond a reasonable doubt, any unexhausted claims regarding the legal sufficiency of the evidence of guilt should be denied.  Respondent relies upon the Respondent's Brief to the Appellate Division in full support of its position that there was overwhelming evidence of defendant's guilt of second-degree assault (see Respondent's Exhibit G at 23-32).

POINT THREE

THE DECISION OF THE APPELLATE DIVISION THAT DEFENDANT'S CLAIM OF PROSECUTORIAL MISCONDUCT IN SUMMATION AND IN CROSS-EXAMINATION WAS MERITLESS IS ENTITLED TO DEFERENCE UNDER THE AEDPA.  MOREOVER, DEFENDANT WAS NOT DEPRIVED OF HIS DUE PROCESS RIGHT TO A FAIR TRIAL BY THE PROSECUTOR'S SUMMATION OR CROSS-EXAMINATION QUESTIONS, WHICH WERE FAIR.

On appeal, defendant claimed that the prosecutor committed misconduct in his summation and in his cross-examination of defendant (see Respondent's Exhibit F at 44-52).  The State argued in response to this claim that it was largely unpreserved for appellate review because there were almost no objections to the comments/questions complained of on appeal and that, in any event, defendant's claim was meritless because the prosecutor's questions and summation remarks were fair. The State also argued that if, arguendo, the Appellate Division found any comment or question to have been improper, it should find the error harmless in light of the overwhelming evidence of defendant's guilt (see Respondent's Exhibit G at 33-42).

The Appellate Division did not explicitly address the prosecutorial misconduct claim.  With regard to all of defendant's claims that it did not address, the Appellate Division held that, "The

13

defendant's remaining contentions are without merit." People v. McGriff, 175 A.D.3d at 1433. Because the Appellate Division did not find defendant's claim to be procedurally barred, this Court may adjudicate defendant's claim, but under the AEDPA deferential standard of review, defendant is not entitled to habeas relief upon his claims of prosecutorial misconduct. See Anderson v. Lee, 453 F. Supp. 3d 574, 580-81 (E.D.N.Y. 2020) (applying AEDPA standard of review -- which is "extremely narrow, and is intended only as a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal," and which "erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court" -- to claim of error in prosecutor's use of Power Point presentation in summation, and noting that Supreme Court precedent dealing with due process limitations of closing arguments "is a very general one, leaving courts more leeway in reaching outcomes in case-by-case determinations" and that habeas corpus review is particularly circumscribed; and further noting that Supreme Court precedents have held that even where a closing argument contains "undoubtedly improper statements," it is not enough that the prosecutor's remarks were "undesirable or even universally condemned," but whether they "so infected the trial with unfairness as to make the resulting conviction a denial of due process" [citations and internal quotation marks omitted); Duren v. Lamanna, 2020 U.S. Dist. LEXIS 16431 at *46-50 (E.D.N.Y. 2020) (same; to be entitled to habeas relief on a summation error claim, remarks "must represent egregious misconduct"; denying habeas relief even though certain remarks were improper; remarks were not egregious misconduct that denied defendant a fair trial; and noting the defendant's heavy burden to show substantial prejudice in light of court's jury instructions advising that "nothing either counsel may say in their summations is evidence in this case").

In this case, it is notable that there were virtually no objections to the questions and remarks complained of for the first time on appeal and no motion for a mistrial, signaling that the defense at trial did not deem the remarks/questions to have prejudiced defendant.  See People v. Overlee, 236 A.D.2d 133, 142 (1st Dep't 1997) (Appellate Division noting, in case raising for the first time on appeal numerous claims of prosecutorial misconduct [similar to those raised in the instant case]: "[T]ellingly, defendant's failure to object to any of the questions is perhaps the best indication of the absence of any real prejudice.").  Respondent relies upon the arguments in its brief to the Appellate Division in full support of its positions that the prosecutor's remarks/questions were not improper, or, if any were improper, the error did not rise to the level of egregious misconduct that denied defendant a fair trial (see Respondent's Exhibit G at 33-42).

POINT IV

THE DETERMINATION OF THE APPELLATE DIVISION FINDING MERITLESS DEFENDANT'S CLAIM THAT THE PROSECUTOR'S SUMMATION RENDERED DUPLICITOUS THE COUNT CHARGING HIM WITH SECOND-DEGREE ASSAULT IS ENTITLED TO AEDPA DEFERENCE. MOREOVER, DEFENDANT'S CLAIM IS MERITLESS AND DOES NOT STATE A FEDERAL CLAIM.

For the first time on appeal defendant argued that the prosecutor's summation rendered the second-degree assault count duplicitous -- dividing defendant's actions in the gutter of Court Street from his actions in the under-construction-storefront into which Khalifa fell -- so that it allegedly could not be determined if the jury was unanimous in finding defendant guilty by reason of the lack of justification for the same act (see Respondent's Exhibit F at 57-60).  The State responded that the claim was both unpreserved (for lack of an objection at trial) and meritless, arguing that there was one charged act that consisted of five stab wounds being inflicted within about one minute as part of one continuous transaction and that no juror could have found defendant guilty by reason of a lack of

15

justification for a different act (see Respondent's Exhibit G at 59-62). Indeed, the State noted that even if some jurors thought that defendant's initial stabbing of Khalifa in the gutter was unjustified while others may have believed that that initial response was justified -- but that defendant was not justified when he continued to pursue and stab the wounded Khalifa after Khalifa stumbled away from him and into a storefront -- the jury was nevertheless unanimous in concluding that defendant committed the charged second-degree assault "consisting of the infliction of five stab wounds with a dangerous instrument causing physical injury to Khalifa, and that defendant was not justified in using this degree of force" (see Respondent's Exhibit G at 61). This claim was one of defendant's claims that the Appellate Division did not specifically address, relegating it to that category of "remaining contentions" that the Appellate Division found to be meritless. People v McGriff, 175 A.D.3d at 1433. Because it was not based upon a procedural bar, the determination of the Appellate Division is entitled to AEDPA deference.

Defendant's claim is entirely meritless because only one act was charged, as the State argued in the Appellate Division and as the facts made clear. Moreover, as the State also argued, defendant provided no authority for his position that a summation argument could render a count in an indictment duplicitous

In Lindsey v. Heath, 2015 U.S. Dist. LEXIS 80423 at *7-9, 2015 WL 3849939 (E.D.N.Y. 2015), the court denied habeas relief where one count in the indictment charged the defendant with injuring two separate individuals (but the trial court charged the jury that it had to find that defendant injured both individuals in order to convict on that count). The habeas court noted:

> The Supreme Court has never held that an indictment containing duplicitous counts violates a constitutional right. See Jones v. Lee, No. 10 Civ. 7915 (SAS), 2013 U.S. Dist. LEXIS 97796, 2013 WL 3514436, at *7 (S.D.N.Y. July 12, 2013) (finding that "there is no constitutional right against duplicity per se."). The Second Circuit has further indicated that duplicitous pleadings are not even presumptively invalid in and of themselves. United States v. Olmeda, 461 F.3d 271, 281 (2d Cir. 2006) (citing

16

United States v. Sturdivant, 244 F.3d 71, 75 n.3 (2d Cir. 2001)).  Thus, the mere presence of duplicitous charges cannot provide a basis for habeas relief.  That said, the strictures against duplicitous counts in an indictment, see e.g., N.Y. C.P.L. § 200.30(1), are intended to avoid potential forms of prejudice that could rise to a constitutional violation.  Specifically, these strictures are concerned with avoiding "the uncertainty of whether a general verdict of guilty conceals a finding of guilty as to one crime and a finding of not guilty as to another, avoiding the risk that the jurors may not have been unanimous as to any one of the crimes charged, assuring the defendant adequate notice, providing the basis for appropriate sentencing, and protecting against double jeopardy in a subsequent prosecution."  United States v. Margiotta, 646 F.2d 729, 733 (2d Cir. 1981); see also Olmeda, 461 F.3d at 281.  As the Second Circuit has written, "[i]f the doctrine of duplicity is to be more than an exercise in mere formalism, it must be invoked only when an indictment affects the policy considerations" underlying the doctrine.  United States v. Murray, 618 F.2d 892, 897 (1980).  The alleged fault in the indictment came from its assertion that petitioner injured two people.  While, under state law, this likely should have been charged as two offenses, the trial judge instructed the jury that to convict, they must find petitioner injured both parties, charging "it must be both of them.  If you have any reasonable doubt or if you feel that one did not receive physical injury, then in regard to Count Two, you must find the defendant not guilty." Trial Tr. 950.  Thus, there is no opportunity for a split verdict or other lack of unanimity. Petitioner was on notice of the charges.  Moreover, the indictment, particularly when paired with the jury charge in this case, adequately guards against double jeopardy violations.

In the instant case, as noted, it was clear that only one charged assault took place, albeit involving several thrusts of a knife, each of which wounded the victim.  Indeed, it was abundantly clear from the court's repeated instructions that the jury was to accept the law from the court (T. [part 3] at 7, 9, [part 5] at 365-66, 368), that the statements of the attorneys were not evidence (T.[part 5] 368), and the court's instruction on the second degree assault count did not divide the assault into separate segments, but rather, the court instructed that the jury had to find that "on or about August 11, 2015, in the County of Kings, the defendant, Lorenzo McGill (sic), caused physical injury to Mohammed Khalifa by means of a dangerous instrument.  And second, that the defendant did so with the intent to cause physical injury to Mohammed Khalifa.  And third, that the defendant was not justified.  Therefore, if you find that the People have proven beyond a reasonable doubt each of those three elements, you must find him guilty of the crime of assault in the second degree as charged in

17

the second count" (T. [part 5] at 391).  Thus, there was no reasonable possibility that, in convicting, the jury had not been unanimous as to that charge.  <u>Cf</u>. <u>Harnett v. Conway</u>, 2014 U.S. Dist. LEXIS 161456 at *14-17, 2014 WL 6390285 (S.D.N.Y. 2014) (rejecting habeas claim that appellate counsel was ineffective for not raising claim that sodomy charge was duplicitous where complainant testified to three acts of sodomy but there was only one sodomy charge [so that it was allegedly impossible to ascertain what alleged act of sodomy was found by the jury to have occurred]; state court duplicitous charge case relied on by defendant involved multiple acts over a period of as long as ten to sixteen months, and multiple criminal acts each week during these periods and it was far from clear that that case would have been found applicable to the defendant's case, which involved three anal penetrations within a few minutes; [and citing a state court case rejecting a duplicitous claim and holding that the multiple punches and/or kicks delivered by the defendant constituted a single uninterrupted assault rather than a series of distinct criminal acts, and another state court case finding that the defendant's groping of different body parts of victims did not constitute separate sexual abuse charges but instead arose from a single, uninterrupted occurrence of forcible compulsion]).

Respondent relies upon the discussion of this claim in the Respondent's Brief to the Appellate Division in full support of its positions that the prosecutor's summation did not render the second-degree assault count duplicitous and that defendant is not entitled to habeas relief on this claim (<u>see</u> Respondent's Exhibit G at 59-62).

### POINT V

<u>THE DECISION OF THE APPELLATE DIVISION, FINDING MERITLESS DEFENDANT'S CLAIM THAT THE TRIAL COURT ERRED IN PRECLUDING THE TESTIMONY OF DEFENDANT'S WIFE AS COLLATERAL, IS ENTITLED TO AEDPA DEFERENCE.  MOREOVER, THE CLAIM IS MERITLESS.</u>

On appeal, defendant claimed that the trial court erred in precluding, as collateral, testimony from defendant's wife, who, it had been represented to the court, was prepared to testify that defendant

routinely carried with him a wire stripper that defendant used for his hobby of fixing headphones and similar items.  Defendant claimed that the testimony would not have been collateral because it would have corroborated defendant's testimony that he stabbed Khalifa with a wire stripper that he kept with him and not with a knife, as the State contended (see Respondent's Exhibit B at 60-64).  The State argued in response that the claim was unpreserved because the arguments raised on appeal were not raised when the evidence was proposed to the trial court, and that, in any event, the testimony was collateral because defendant's wife was not present at the time of the charged incident and could not have known what instrument defendant used to stab Khalifa.  The State further argued that any error was harmless because, whatever the stabbing instrument was, the issue was still whether defendant was justified in stabbing Khalifa because defendant feared that Khalifa was about to harm him (see Respondent's Exhibit G at 61-67).  The Appellate Division did not specifically address this claim, relegating it to the "remaining contentions" that it found to be meritless.  People v McGriff, 175 A.D.3d at 1433.  Because the Appellate Division did not find the claim to be procedurally barred, its adjudication of the claim as meritless is entitled to AEDPA deference.  Moreover, the claim is meritless because the preclusion of defendant's wife's non-eyewitness testimony that defendant routinely carried a wire stripper that he used for hobbies did not deprive defendant of the right to present a defense and the ruling was not an abuse of the trial court's broad discretion.

It is "not the province of a federal habeas court to reexamine state-court determinations  on state-law questions, "including those related to admissibility of evidence.  Estelle v. McGuire, 502 U.S. 62, 67-68 (1991).  Rather, a federal habeas court "is limited to deciding whether a conviction violated the Constitution, laws or treaties of the United States."  Id. at 68.  "[T]o establish that an erroneous application of state rules of evidence violates the federal guarantee of due process, [petitioner] must also demonstrate that the state court's erroneous conclusions about New York

evidence law were so egregious as to implicate the Fourteenth Amendment's guarantee of due process." Evans v. Fischer, 712 F.3d 125, 133 (2d Cir. 2013). Even if an erroneous state law evidentiary ruling does rise to the level of constitutional error, it may still be found harmless unless the error "had substantial and injurious effect or influence in determining the jury's verdict." Henry v. Speckard, 22 F.3d 1209, 1215 (2d Cir. 1994) (quoting Brecht v. Abrahamson, 507 U.S. 619, 623 [1993]). Accordingly, in order to obtain habeas relief on a claim that the state court made an error in an evidentiary ruling, defendant must show that the ruling was an error of constitutional magnitude and that it was not harmless under Brecht. See also Perez v. Phillips, 210 Fed. Appx. 55, 57-58 (2d Cir. 2006). A defendant bears a "heavy burden" because, generally, "rulings by state trial courts on evidentiary issues, even if erroneous, do not rise to the level of a constitutional violation.:" Bonet v. McGinnis, 2001 U.S. Dist. LEXIS 10629, 2001 WL 849454, at *2 (S.D.N.Y. July 27, 2001) (internal quotation marks omitted); see also Crane v. Kentucky, 476 U.S. 683, 689 (1986) ("We acknowledge . . . our traditional reluctance to impose constitutional constraints on ordinary evidentiary rulings by state trial courts.").

In Garcia v. Franchi, 2020 U.S. Dist. LEXIS 9862 at *20, 2020 WL 353099 (E.D.N.Y. 2020), the court noted that, "When a trial court excludes evidence relevant to a defense theory, '[it] is the materiality of the excluded evidence to the presentation of the defense that determines whether a defendant has been deprived of a fundamentally fair trial.' [Rosario v. Kuhlman, 839 F.2d 918 (2d Cir. 1988)] at 925. The materiality of excluded evidence, in turn, is determined by considering whether the evidence's admission could have 'create[d] a reasonable doubt that did not otherwise exist.' Jones, 229 F.3d at 120. 'In a close case, additional evidence of relatively minor importance might be sufficient to create reasonable doubt.' Id. (quoting United States v. Agurs, 427 U.S. 97, 112, 96 S. Ct. 2392, 49 L. Ed. 2d 342 (1976) (internal quotations omitted)); see Sims v. Stinson, 101 F.

Supp. 2d 187, 198 (S.D.N.Y. 2000) (acknowledging that for an evidentiary error to reach constitutional magnitude, 'it must have been crucial, critical, highly significant' (quoting Collins v. Scully, 755 F.2d 16, 19 (2d Cir. 1985))).  Therefore, a petitioner seeking habeas relief on the basis of an allegedly erroneous evidentiary ruling must establish that the trial court's error 'deprived [him] of a fundamentally fair trial.' Zarvela v. Artuz, 364 F.3d 415, 418 (2d Cir. 2004) (quoting Rosario v. Kuhlman, 839 F.2d 918, 925 (2d Cir. 1988)). Moreover, a federal habeas court reviews the evidentiary error 'objectively in light of the entire record before the jury.' Collins, 755 F.2d at 19."

Here, the Appellate Division's conclusion that the trial court did not err in precluding defendant's wife's testimony was not an unreasonable application of United States Supreme Court precedent.  Defendant's wife was not with defendant when the confrontation with Khalifa took place. She therefore had no personal knowledge that defendant used a wire stripper and not a knife to stab Khalifa.  Her testimony that the defense sought to offer, which was that defendant routinely carried a wire stripper, did not preclude defendant from having used a knife during the charged incident. Moreover, defendant was charged with using a dangerous instrument to assault and cause injury to Khalifa, and even if defendant did use a wire cutter, as he claimed, that was not exonerating.  While the optics of carrying a wire stripper might have been more sympathetic than defendant having at his disposal a knife with a four or inch blade, the testimony was, as the trial court found, collateral, particularly because there was a photograph in evidence clearly showing a pointed instrument in defendant's hand that appeared to be a blade at the time of the assault and, whatever that item was, it was clearly capable of having inflicted the perforating wounds to Khalifa that caused Khalifa to bleed profusely, as observed by several witnesses.  Thus, the exclusion of defendant's wife's testimony did not result in the exclusion of testimony that might have been sufficient to create a reasonable doubt as to defendant's guilt of assaulting Khalifa with a dangerous instrument.  This case was not about

whether defendant stabbed Khalifa or about what dangerous instrument he used, but rather, it turned

solely on whether the jury found that Khalifa posed a threat to defendant with a large brick such that

defendant was justified in defending himself with whatever he had.  It did not matter whether

defendant used a knife or a wire stripper and the state courts did not deny defendant due process by

excluding evidence that he was in the habit of carrying a wire stripper.

POINT VI

THE DECISION OF THE APPELLATE DIVISION UPHOLDING THE TRIAL
COURT'S DETERMINATION THAT DEFENDANT DID NOT SATISFY HIS
STEP ONE BURDEN IN ESTABLISHING A BATSON VIOLATION IS
ENTITLED TO AEDPA DEFERENCE.  MOREOVER, DEFENDANT ENTIRELY
FAILED TO CREATE A RECORD ESTABLISHING A PRIMA FACIE CASE OF
DISCRIMINATION IN THE PROSECUTOR'S EXERCISE OF PEREMPTORY
STRIKES.

On direct appeal, defendant claimed that the trial court erred in denying his Batson challenge

upon the determination that defendant failed to satisfy his step-one burden of establishing a prima

facie case of discrimination.  The Appellate " agree[d] with the Supreme Court's determination that

the defendant failed to make a prima facie showing that the prosecution exercised its peremptory

challenges in a discriminatory manner (see Batson v Kentucky, 476 U.S. 79 [1986]; People v

Childress, 81 NY2d 263, 266-268 [1993]; People v Morla, 245 AD2d 468 [1997] [parallel citations

omitted])."  People v. McGriff, 175 A.D.3d at 1433.  That determination is entitled to AEDPA

deference and is fully supported by the record.

As the Second Circuit noted in Sorto v. Herbert, 497 F.3d 163, 171 (2d Cir. 2007), "The

existence of a prima facie Batson case is a mixed question of law and fact.  Overton, 295 F.3d at 276-

77.  On habeas review, then, we will disturb the state court ruling only if it 'was contrary to, or

involved an unreasonable application of, clearly established Federal law.'  Id. at 277 (quoting 28

U.S.C. § 2254(d)(1)").  In Carmichael v. Chappius, 848 F.3d 536 (2d Cir. 2017), a case in which the

22

Second Circuit reversed the district court's grant of habeas relief to the defendant upon the district court's conclusion that the Appellate Division had unreasonably applied <u>Batson</u> in determining that the defendant had failed to establish a prima facie case of discrimination in the State's use of peremptory strikes, the Second Circuit asserted that:  "While statistical evidence alone may, in some circumstances, suffice to establish a <u>prima facie</u> case of discrimination during jury selection, the Appellate Division did not apply <u>Batson</u> and its progeny in an unreasonable manner when it concluded that, in the circumstances presented, the statistical evidence did not warrant an inference of discrimination."  <u>Id</u>. at 546.  The Second Circuit went on to explain that, "Courts must rely on their own judgment and experience to determine whether the objecting party has established a <u>prima facie</u> showing 'that the circumstances give rise to an inference that a member of the venire was struck because of his or her race.'  For that reason, we must afford the Appellate Division's ruling 'more leeway' on habeas review."  <u>Id</u>. at 547.  The Second Circuit concluded:

> [T]he fact that numerical evidence may have permitted an inference of discrimination does not establish that a contrary conclusion must be an unreasonable application of <u>Batson</u> and its progeny.  The AEDPA establishes a "highly deferential standard for evaluating state-court rulings:" a state court's error must be "beyond any possibility for fairminded disagreement" if it is to warrant reversal on a habeas petition in federal court.  Deference to state courts is especially important when reviewing habeas claims predicated on a violation of the first step of the <u>Batson</u> framework because <u>Batson</u> and its progeny provide state courts with limited guidance on what constitutes a <u>prima facie</u> case of discrimination.

> The Appellate Division's conclusion that there was insufficient evidence of discrimination was simply not unreasonable under the circumstances presented. The District Court erroneously applied too stringent a standard on habeas review.

<u>Id</u>. at 549.

As the State pointed out on appeal in the instant case, defendant did nothing but cite the number of African-American potential jurors who were challenged.  Defendant did not address the number of African-American jurors who had been seated, nor did he establish that non-African-American jurors were selected despite having given similar <u>voir dire</u> responses to the African-

American jurors who were stricken, or that anyone similarly situated in any way to the jurors who were stricken were not challenged by the State, or that the prosecutor had made any statements evincing bias.  See Scott v. Griffin, 2018 U.S. Dist. LEXIS 156307 at *22-25 (E.D.N.Y. 2018) (denying habeas relief where Appellate Division affirmed trial court's decision that defendant failed to establish prima facie case of discrimination; habeas courts must afford Appellate Division's ruling on a first-step Batson analysis "more leeway" because the first step is a "paradigmatic 'general standard'" and courts must rely on their own judgment and experience to determine whether the objecting party has established a prima facie showing that a juror was struck because of race; where defendant simply listed names of African-American jurors prosecutor struck and asserted it was a systematic removal of African-American jurors, and the trial judge found that assertion to be insufficient to make out a prima facie case of discrimination, the Appellate Division's agreement with that assessment was not contrary to, nor an unreasonable application of Batson); McCall v. Capra, 102 F. Supp. 3d 427, 438-39 (E.D.N.Y 2015) (state court did not unreasonably apply Batson in concluding that defendant failed to establish prima facie case of discrimination; defendant only asserted that prosecutor used challenges against several prospective African-American jurors but did not demonstrate any other circumstances supporting a prima facie showing; first raised challenge when only one African-American juror had been struck and that "one data point alone" was not sufficient ground for a Batson violation; renewed Batson challenge after second African-American juror struck but defendant "never mentioned the number of minorities who actually sat on the jury, or the number of minorities not challenged by the prosecutor, or any other surrounding information that would raise an inference of racial discrimination.  In the absence of any supporting evidence to give meaning to these numbers, the mere fact that the prosecutor struck the two African American jurors sat in the first round is insufficient to establish an inference of discrimination"); cf. Miller-El v.

24

Dretke, 545 U.S. 231, 241 (2005) ("More powerful than the bare statistics are side-by-side comparisons of some black venire panelists who were struck and white ones who were not.").

Because defendant has entirely failed to establish that the decision of the Appellate Division, that the trial court did not err in finding no prima facie case of discrimination, was an unreasonable application of Batson, defendant is not entitled to habeas relief on this claim.  For an additional discussion of why defendant failed to establish a prima facie case of discriminatory strikes, this Court is respectfully referred to the Respondent's Brief to the Appellate Division (see Respondent's Exhibit G at 68-75).

<u>CONCLUSION</u>

<u>FOR ALL OF THE AFOREMENTIONED REASONS, DEFENDANT'S PETITION FOR A WRIT OF HABEAS CORPUS SHOULD BE DENIED IN ALL RESPECTS</u>.

Dated:   Brooklyn, New York
             April 15, 2021

Respectfully submitted,

ERIC GONZALEZ
District Attorney
Kings County

LEONARD JOBLOVE
DIANE R. EISNER
Assistant District Attorneys
        Of Counsel

25

<u>Certificate of Service</u>

I hereby certify that on April 15, 2021, the foregoing document was filed with the Clerk of the Court and served in accordance with the Federal Rules of Civil Procedure, and/or the Eastern District's Local Rules, and/or the Eastern District's Rules on Electronic Service upon the following party:

Lorenzo McGriff
17-A-0545
Otisville Correctional Facility
P.O. Box 8
Otisville, NY 10963-0008

*Diane R. Eisner*

Diane R. Eisner
Assistant District Attorney
Office of the Kings County District Attorney
 350 Jay Street
Brooklyn, New York 11201
(718) 250-2489

26