1   SUPREME COURT OF THE STATE OF NEW YORK
     COUNTY OF KINGS:  CRIMINAL TERM : PART 33
 2   ------------------------------------------------X
     THE PEOPLE OF THE STATE OF NEW YORK          :
 3                                                :
                        - against -              :  IND.#
 4                                               :  6248/15
     LORENZO MCGRIFF                              :HEARING
 5                                               :
                             Defendant           :
 6   ------------------------------------------------X
                              Kings Supreme Court
 7                            320 Jay Street
                              Brooklyn, New York  11201
 8

 9                            September 21, 2016

10   B E F O R E :
                 HONORABLE MIRIAM CYRULNIK
11                               Justice

12

13   A P P E A R A N C E S :

14         FOR THE PEOPLE:

15

16             OFFICE OF KENNETH THOMPSON, ESQ.
               Kings County District Attorney
17               BY:  LAWRENCE MOTTOLA, ESQ.
                     Assistant District Attorney
18

19         FOR THE DEFENDANT:

20             BROOKLYN DEFENDER SERVICES
               BY: JAMIE BURKE, ESQ.
21

22

23
                         NADONNA FERGUSON, RPR
24                       OFFICIAL COURT REPORTER

25


                         NVF

- PROCEEDINGS -                    Page 2

1          **THE CLERK:**  Calling number two from the Part 33

2     calendar indictment 6248 of 2015, Lorenzo McGriff.  Case is

3     schedule for hearing today.  Defendant is out on bail.

4          **MS. BURKE:**  Jamie Burke, Brooklyn Defender

5     Services 177 Livingston Street Brooklyn, New York 11201 on

6     behalf of Mr. McGriff.

7          Good morning.

8          **THE COURT:**  Good morning.

9          **MR. MOTTOLA:**  For the office of the District

10    Attorney Lawrence Mottola, M-O-T-T-O-L-A.  Good morning.

11         **THE COURT:**  Good morning.

12         Good morning, Mr. McGriff.  Sir, why don't you have a

13    seat.  And counsel, why don't you come up.

14         (At which time, there was an off-the-record

15         discussion held)

16         **MR. MOTTOLA:**  Before we start, just for the record

17    I did turn over a copy that was requested by counsel of one

18    of the surveillance videos.  She already had it.  But I

19    turned over another copy.  And a copy of the memo book of

20    the Officer who is about to testify, Officer Louard.

21         **THE COURT:**  Okay.  We are on for a Dunaway/Wade?

22         **MR. MOTTOLA:**  Yes.

23         **THE COURT:**  Call your first witness.

24         **MR. MOTTOLA:**  The People call Police Officer Caleb

25    Louard.

1          **COURT OFFICER:**  Witness entering.

2          **THE COURT:**  Thank you.

3          (Whereupon, the witness is entering the courtroom)

4          **THE CLERK:**  Raise your right hand, sir.

5    P O L I C E    O F F I C E R  C A L E B   L O U A R D, after

6    having first been duly sworn by the Court Clerk, was examined and

7    testified as follows:

8          **THE WITNESS:**  Yes.

9          **THE CLERK:**  Please be seated.  Get yourself

10         comfortable.  I will ask you to please sit and state your

11         name for the record.  Watch the chairs it has wheels.

12         Get yourself situated and please state your name for

13         the record.  Spell your name for the record and give us

14         your shield number and command, please.

15         **THE WITNESS:**  Okay.  Police officer, Caleb Louard

16         Louard, C-A-L-E-B, L-O-U-A-R-D, shield number is 2374.

17         Command is 84th Precinct.

18         **THE CLERK:**  Thank you, very much, sir.

19         **THE COURT:**  Mr. Mottola, whenever you are ready.

20         **MR. MOTTOLA:**  Thank you, Your Honor

21   DIRECT EXAMINATION

22   BY MR. MOTTOLA::

23         Q     Officer, how long have you been a member of the NYPD?

24         A     Fifteen years.

25         Q     And where you are currently assigned?

1    A    Actually fifteen and a half years.

2    Q    Where are you currently assigned?

3    A    Eighty-fourth precinct.

4    Q    How long have you been there?

5    A    About four and a half years.

6    Q    So, I want to direct your attention to August 11, 2015,

7  were you working that day?

8    A    Yes, I was.

9    Q    What was your tour?

10   A    I was 07:05 a.m. to 3:40 p.m.

11   Q    And what was your assignment that day?

12   A    Patrol.

13   Q    Do you recall what sector you were patrolling?

14   A    Yes.  Sector Adam and Boy.  We call it A and B.

15   Q    And what vicinity does that sector cover?

16   A    Brooklyn Heights and Brooklyn Bridge Park.

17   Q    Did you have a partner that day?

18   A    Yes.

19   Q    Who was your partner?

20   A    Police Officer Wooden.

21   Q    And were you and Officer Wooden, were you on foot or in

22  a patrol car?

23   A    In a patrol car.  Marked.

24   Q    Were you the driver or recorder?

25   A    I have the recorder.  I was the passenger that day.

NVF

1    Q    And were you in uniform?

2    A    Yes, I was.

3    Q    So I want to direct your attention now to approximately

4    1:15 in the afternoon that day.  What, if anything, happened at

5    that time?

6    A    I just want to refer to my notes.

7              **THE WITNESS:**  Your Honor.

8              **THE COURT:**  Just if you need to refresh your

9         recollection, just let us know what you are looking at.  Go

10        ahead and refresh your recollection.

11             **THE WITNESS:**  I just want to make sure I have the

12        proper time for events.

13             **THE COURT:**  Are you looking at your memo book

14        notes.

15             **THE WITNESS:**  Yes.

16             **THE COURT:**  Okay.

17   A    Okay.

18             **THE COURT:**  Just don't read from them when you

19        testify.  Refresh your recollection if you need to and let

20        us know when you are done.

21             **THE WITNESS:**  I'm ready, Your Honor.

22             **THE COURT:**  Okay.

23   Q    Approximately 1:15 what, if anything happened?

24   A    Approximately 1:15 we received a radio call for an

25   assault in progress, a person being stabbed.

1    Q    Did you get a description of the suspect?

2    A    Yes.  Description was read over the radio.

3    Q    What was that description?

4    A    Male black, wearing a khaki shirt, blue jeans, a blue

5    pants and a red and white sneakers and a hat.  A bucket hat,

6    specifically.

7    Q    Now, did you get a location for this incident?

8    A    Yes.

9    Q    And what was the location the alleged stabbing?

10   A    Court Street and Livingston Street.

11   Q    And that is here in Brooklyn?

12   A    In Brooklyn, Yes.

13   Q    Did you get a description of the person who is

14   allegedly stabbed?

15   A    Yes.  A description I remember was possibly male

16   Hispanic wearing a green shirt.

17   Q    When you received this radio call for the stabbing, do

18   you recall what location you were at?

19   A    Um --

20   Q    Where were you?

21   A    I was in the vicinity of Cadmen Plaza West in Brooklyn

22   Heights.

23   Q    And what did you do once you received this radio call?

24   A    I responded to the location that was given.

25   Q    Where did you first respond to?

1     A     I first was near the corner of Court Street and

2  Livingston Street.

3     Q     And when you arrived at that location, did you see

4  anyone fitting either description?

5     A     No.

6     Q     So what did you do at that time?

7     A     Well, we looked around, myself and my partner, and

8  samaritans or civilians on the street pointed us in the direction

9  of Atlantic Avenue.

10    Q     What happened after they pointed you towards Atlantic

11  Avenue?

12    A     We continued in the patrol car south on Court Street

13  towards Atlantic.

14    Q     And so take us through your?

15    A     Well, the next event was as we were going towards

16  Atlantic, other passersby on Schermerhorn Street pointed us in

17  the direction of west on Schermerhorn Street from Court Street.

18  So we continued in that direction to Clinton Street.  There were

19  other passersby who pointed us in the direction of southbound on

20  Clinton Street.  So we went -- would you like me to continue.

21    Q     Yes?

22    A     So we went the wrong way up Clinton Street and we

23  continued across Atlantic Avenue to Amity Street.

24    Q     I will just stop you there for one second.

25          You were going southbound.  You ultimately get to

 1  Clinton Street?

 2      A    Yes.

 3      Q    And you were going -- it's a one way street, correct.

 4      A    Yes.  One way going north.

 5      Q    So now you are going southbound on Clinton against

 6  traffic?

 7      A    Yes.

 8      Q    So up until this point, had you seen anyone that fit

 9  the description either of the victim or the person who allegedly

10  did the stabbing?

11      A    No.

12      Q    So what happened after that?

13      A    Well, once in the vicinity of Clinton and Amity Street,

14  other passersby pointed to us in the direction toward, back

15  towards Court Street which would be east.  And we continued up

16  Amity Street towards Court Street.  And we continued on to Dean

17  Street which follows the same direction as Court Street.  I mean

18  Amity Street.  But it staggers a little bit.  And then when we

19  got to Dean Street near the corner of Boerum Place, I saw the

20  victim fitting the description.

21      Q    And when you saw the victim, what condition was this

22  person in?

23      A    Well, he was laboring.  He was walking.  He appeared to

24  have multiple stab wounds.

25      Q    Was he bleeding?

1    A    He was bleeding profusely.

2              **MS. BURKE:**  Objection to the leading.

3              **THE COURT:**  Sustained.  Try not to do that.

4    Q    Did you notice anything else about this appearance?

5    A    All right.  I noticed that he was bleeding profusely

6    and I seen multiple stab wounds on his body.

7    Q    Where did you see the stab wounds?

8    A    I seen at least two stab wounds to his head and face.

9    One to his arm near his elbow.  And two to his torso area which

10   appeared to be more towards his back.

11   Q    Did you speak to this person?

12   A    Yes.

13   Q    And what, if anything, did that person say to you?

14             **MS. BURKE:**  Objection.

15             **THE COURT:**  Overruled.

16   A    Well, I was telling him to stop.

17             **MS. BURKE:**  Objection.  Nonresponsive.

18             **THE COURT:**  Sustained.

19   Q    What did that person say to you, if anything?

20   A    Well, when we stopped him he didn't say anything

21   immediately.  But he went around the corner to --

22             **MS. BURKE:**  Objection.  Nonresponsive.

23             **THE COURT:**  Overruled.  Let him just give it.  Go

24        ahead.  Let's hear it.

25   A    He went around the corner to Boerum Place and that is

 1   when he pointed in the direction of Dean -- no Bergen Street and

 2   then he said he stabbed me.

 3        Q    Did you say anything to him to this person?

 4        A    Yes.  I kept telling him to stop.  You know, stop

 5   walking.  To get down.

 6        Q    Did he ultimately stop?

 7        A    He ultimately stopped and he knelt down.

 8        Q    And what was your partner doing at this time?

 9        A    She was coming up behind me to remain with the victim

10   with EMS.

11        Q    Did you later learn the name of that person, of the man

12   that was stabbed?

13        A    Yes.

14        Q    What was his name?

15             **THE WITNESS:**  Can I refer to my notes, Your Honor,

16        for recollection.

17             **THE COURT:**  Yes.  No problem.  Just use them to

18        refresh your recollection.  And let us know when you have

19        done that.

20             **THE WITNESS:**  I didn't need my notes.  I remember

21        now.

22        A    His name was Kahlif Mohammad.

23        Q    So after Mr. Mohammad pointed in the direction you said

24   of Bergen Street, what, if anything, did you do?

25        A    Well, myself and another officer went to the direction

 1    of Bergen Street or Boerum.  And that is when we looked up and

 2    down the street.  Another passerby pointed us in the direction to

 3    the south side of Bergen Street and said he's hiding behind the

 4    minivan.

 5              **MS. BURKE:**  Objection, your honor.

 6              **THE COURT:**  Overruled.

 7        Q    When you say another Officer, was that Officer Wooden?

 8        A    No.  It was Officer Isaac.

 9        Q    What was Officer Wooden doing?

10        A    Officer Wooden remained with the victim.

11        Q    So after this other bystander pointed you in the

12    direction behind a van?

13        A    Yes.

14        Q    What did you do?

15        A    Myself and Officer Isaac went to where she told us, you

16    know, to go to behind the van and that is when we seen the person

17    matching the description.

18        Q    What was that person wearing when you saw them?

19        A    Khaki shirt, blue jeans, red and white sneakers.

20        Q    Was it a male or female?

21        A    Male.

22        Q    And the race of that person?

23        A    Black.

24        Q    Did you know who that person was at that time?  Did you

25    know their name?

1      A    No.

2      Q    Did you later learn that person's name?

3      A    Yes.

4      Q    What was it?

5      A    It was --

6                 THE WITNESS:  Your Honor, may I refer to my notes.

7                 THE COURT:  Yes, you may.

8                 THE WITNESS:  I'm ready, Your Honor.

9                 THE COURT:  Okay.

10                THE WITNESS:  I am referring to the folder.

11                THE COURT:  Okay.

12                THE WITNESS:  That I have my files in.

13                THE COURT:  Okay.

14     A    The name was Lorenzo McGriff.

15     Q    When you first observed Mr. McGriff, what position was

16  he in?  Was he standing on the ground?

17     A    No.  He was on the ground, I believe, on his stomach

18  near the bottom of the minivan.

19     Q    Did you or the other --

20                THE COURT:  Near.

21                THE WITNESS:  The bottom.

22                THE COURT:  Okay.

23     Q    Did you or the other officer, did any of you say

24  anything?

25                MS. BURKE:  Objection.

MR. MOTTOLA - DIRECT - P.O. C. LOUARD     Page 13

1          **THE COURT:**  Sustained.

2      Q    Did you say anything to Mr. McGriff when you saw him on

3   the ground?

4      A    Yes, I told him --

5          **MS. BURKE:**  Objection.

6          **THE COURT:**  Overruled.

7      A    All right.  I told him to, you know, stop and show me

8   your hands.

9      Q    And what happened after that?

10     A    Well, Mr. McGriff wasn't cooperating at that moment to

11  my commands to show me his hands or to give me his hands.  And

12  then I had to move closer to Mr. McGriff and physically grab his

13  hands to handcuff him.

14     Q    And did you eventually handcuff the defendant?

15     A    Yes.

16     Q    I am going to ask you to look around the courtroom

17  today.  If you see the defendant the person that you handcuffed

18  that day in court, please point to him and indicate who he is by

19  an article of clothing?

20     A    Okay.  The gentlemen sitting next to the lady and he is

21  wearing a collared shirt.  Mr. Lorenzo McGriff. (indicating)

22         **THE COURT:**  Indicating the defendant.  Thank you.

23     Q    So once you had the defendant in handcuffs, what

24  happened after that?

25     A    Well, we radioed into other units that we had the

1   perpetrator and to organize a show-up with the victim.

2        Q    Did there come a time where someone that was brought to

3   the scene to identify the defendant?

4        A    Yes.

5        Q    Do you know the name of that person?

6        A    I believe I have it in my notes.  I don't recall the

7   name just off the top of my head.

8        Q    Do you recall if it was a male or a female?

9        A    Female.

10       Q    And what happened when that female was brought to the

11  scene?

12       A    She had positively identified Mr. McGriff as being the

13  person that stabbed Mr. Kahlif Mohammad.

14       Q    Did you have the opportunity to search the defendant?

15       A    Yes.

16       Q    Did you ever recover a knife of any kind?

17       A    No.

18       Q    Officer, I am going to show you an eight and a half by

19  eleven photograph.

20            **MR. MOTTOLA:**  I ask that that be deemed marked

21       People's 1 for identification.

22            **COURT OFFICER:**  So marked.

23            (Whereupon, People's 1, was marked for

24            identification)

25       Q    So Officer looking at that photograph, did you take

1  that photo?

2      A    Yes, I did.

3      Q    Where did you take that photo?

4      A    Inside the holding cell at the 84th Precinct.

5      Q    Was that the same day that you placed the defendant

6  under arrest?

7      A    Yes.

8      Q    Does that photograph fairly and accurately depict what

9  he was wearing when you observed him on Bergen Street on

10  August 11, 2015?

11     A    Yes.

12         **MR. MOTTOLA:**  Your honor, I will ask that Peoples'

13     1 for identification be entered and received as People's 1

14     in evidence.

15         **MS. BURKE:**  Objection, Judge.  Relevance of the

16     picture.

17         **MR. MOTTOLA:**  Probable cause.  It matches the

18     exact description of the person who did the stabbing.

19         **MS. BURKE:**  The picture was taken after the

20     arrest.

21         **THE COURT:**  Overruled.

22         (Whereupon, People's 1, was moved into evidence).

23         **MR. MOTTOLA:**  I have no further questions,

24     Officer.

25         **MS. BURKE:**  May I, Your Honor.

1           **THE COURT:**  Yes.   Just give me one second.

2           (Whereupon, there was a brief pause in the

3       proceedings)

4           **THE COURT:**  Go ahead.   Thank you.

5    CROSS-EXAMINATION

6    BY MS. BURKE::

7       Q   Officer Louard, right?

8       A   Yes.

9       Q   You said that you saw Mr. Mohammad walking down on Dean

10   Street, correct?

11      A   Mr. Mohammad, Yes.

12      Q   You said he was bleeding profusely?

13      A   Yes.

14      Q   You say you stopped and counted the stab wounds on him?

15      A   Yes.

16      Q   How long did you stay with him?

17      A   Approximately one to two minutes, the most.

18      Q   Did you render aid?

19      A   Yes, we had EMS with us.

20      Q   How close were you to him?

21      A   I was right next to him.

22      Q   And he is bleeding but you didn't render aid?

23      A   No, I didn't need to render aid.

24          **MS. BURKE:**  Move to strike.

25          **THE COURT:**  Sustained.   But your testimony was

1      that EMS was with you.

2                **THE WITNESS:**  They were with us.  Physically right

3      next to me.

4      Q      You said that you had given him some commands to stop,

5  correct?

6      A      Yes.

7      Q      But he continued to walk?

8      A      Yes.

9      Q      Approximately how far did he walk?

10     A      Approximately, one quarter of a city block.

11     Q      So you must have told him to stop several times?

12     A      Yes.

13     Q      And he ignored you and continued to walk?

14     A      Yes.

15     Q      Even though he was bleeding profusely?

16     A      Yes.

17     Q      You say that you eventually had a conversation with

18  him, correct, with Mr. Mohammad.

19     A      Can you explain what you mean by conversation.

20     Q      Like we are having.  You talk.  I talk.  Conversation.

21     A      I wouldn't say it was a conversation.  I gave him

22  orders to stop.  He made an utterance and that was the extent of

23  it.

24     Q      On direct examination you said I spoke to the victim.

25  He responded.  That is not what happened?

1       A    I gave him commands to stop several times and he made

2   an utterance which I said earlier, he then he pointed in the

3   direction of Bergen Street and said he stabbed me.  That was the

4   extent of our conversation.

5       Q    So on direct examination when you said you spoke to him

6   and he wasn't immediately responsive, is that true or not true?

7       A    Immediately, yes, he wasn't responsive, right.

8       Q    So eventually he responded to you?

9       A    Yes.

10      Q    But you kept telling him to stop?

11      A    Yes.

12      Q    Was he saying things as you were telling him to stop?

13      A    Not until he made the utterance.

14      Q    So it is your testimony he was saying nothing when he

15  was walking this quarter block as you told him to stop?

16      A    Not until he actually stopped, no.

17      Q    And you told him to get on the ground, right?

18      A    Yes.

19      Q    He got on the ground?

20      A    Eventually he did.

21      Q    So he gave you some resistance?

22      A    Well, he refused my commands.  He didn't give me any

23  physical resistance.

24      Q    Did there come a time when you put him on the hood of

25  the police car?

1        A    Who are you referring to?

2        Q    Mr. Mohammad.  That is the only person we are talking

3    about now?

4        A    I don't recall doing that, no.

5        Q    And you said he directed you down further down Dean

6    Street, correct?

7        A    No.  He directed us further down Boerum Place towards

8    Bergen street.

9        Q    And you came across another civilian who pointed

10   further down Bergen Street, correct?

11       A    We came across a civilian on Bergen Street near the

12   corner or Boerum Place and pointed to the opposite side of Bergen

13   Street.

14       Q    So on Bergen street?

15       A    Yes.

16       Q    And the first time that you saw Mr. McGriff he was

17   behind a van, correct?

18       A    Yes.

19       Q    You said the first time that you observed him, he was

20   already on the ground on his stomach?

21       A    Yes.

22       Q    Had you not told him to get on the ground?

23       A    I don't recall if I told him to get on the ground.

24       Q    So you demanded that Mr. Mohammad get on the ground?

25       A    Yes.

1    Q    But you didn't demand Mr. McGriff get on the ground; is

2  that your testimony?

3    A    Yes.

4    Q    Mr. McGriff, in your mind, was the perpetrator, correct

5  at that time?

6    A    At the time I observed Mr. McGriff, yes, he matched the

7  description of the perpetrator.  So I determined him to be.

8    Q    And this is the perpetrator who you had heard that hurt

9  Mr. Mohammad?

10   A    Yes.

11   Q    But you didn't demand that he get on the ground?

12   A    Because he was already down, ma'am.

13   Q    You said that he wasn't cooperating?

14   A    Yes.

15   Q    You said show me your hands, is that what you said?

16   A    Give me your hands.

17   Q    You said give me your hands.  You didn't say show me

18  your hands?

19   A    Give me your hands.  If I said show me your hands, I

20  may have.  But I know I said give me your hands.

21   Q    You may have said both?

22   A    I may have.

23   Q    You said he wasn't cooperating because he didn't give

24  you his hands?

25   A    Yes.

1    Q    Was he flailing his arms?

2    A    I don't believe him to be flailing his arms.

3    Q    When he was laying on the ground, was he moving about?

4    A    I don't believe he was moving much, no.

5    Q    When he was on the ground, did he try to push you away

6    from him?

7    A    No, he didn't try to push me, no.

8    Q    And you said you cuffed him.  How long did it take you

9    to cuff him?

10   A    How long?  I don't recall how long it would take to

11   handcuff him.

12   Q    And you're the one that put the cuffs on him?

13   A    Yes, with the assistance of another officer.

14   Q    Was Mr. McGriff saying anything to you?

15   A    I don't recall him making any statements at that time.

16   Q    So he's not flailing, he is not moving, he is not

17   fidgeting and he is not talking at the time?

18   A    At the time when I first observed him, he was resisting

19   giving me his hands when I went to attempt to handcuff him.

20   Q    How many times did you ask him to give you his hands?

21   A    I don't recall how many times.

22   Q    Did Mr. Mohammad come and ID Mr. McGriff?

23   A    No.

24   Q    The young lady that did come to ID him, did you have a

25   conversation with her?

 1    A    Not at that moment, no.

 2    Q    So how did you know that she ID'd him?

 3    A    Because I seen her point him out at the scene.

 4    Q    You saw her point to him?

 5    A    Yes.

 6    Q    That is it.  You didn't hear her say that is him?

 7    A    I wasn't within ear shot of her at that moment.  I

 8  spoke to her later.  But officers that did the showup confirm

 9  that he was the perpetrator.

10    Q    So you don't know that she ID'd him.  You were told

11  that she ID'd him; is that correct?

12    A    Yes, I was told.  That is how I know.

13    Q    So you don't know.  You were told later?

14    A    Being the officer that had custody of the alleged

15  perpetrator, I can't be the person who brings the victim to the

16  showup also.

17    Q    So you didn't bring the victim?

18    A    No, I did not.

19    Q    And you are calling her a victim.  Why?

20    A    Not the victim.  The witness.  I didn't bring the

21  witness to do the show up because I was holding Mr. McGriff.

22    Q    You said you later had a conversation with her?

23    A    Yes.

24    Q    Was it at the scene or at the precinct?

25    A    I don't recall when I first spoke to her.  I might have

NVF

1    spoke to her at the scene.  But I definitely spoke to her later

2    at the precinct.  I don't recall if I spoke to her at the scene.

3        Q    You spoke to this woman at the precinct?

4        A    Yes.

5        Q    Was this before or after you took the photo?

6        A    Before.

7        Q    You said you searched Mr. McGriff but did not recover a

8    knife, right?

9        A    Correct.

10       Q    The person that was closest to you on Bergen Street,

11   the last person that pointed in the direction of Mr. McGriff, did

12   that person come and ID him?

13       A    No.

14       Q    Do you know who that person is?

15       A    No, I don't.

16           **MS. BURKE:**  Nothing further, Your Honor.

17   REDIRECT EXAMINATION

18   BY MR. MOTTOLA::

19       Q    I just want to go back to the woman who was brought

20   back to the scene to identify the defendant?

21           You testified that at some point she pointed to the

22   defendant.

23       A    Yes.

24       Q    Did anyone else on the scene, did any other officer say

25   anything to you after that happened?

 1              **THE COURT:**  Sorry.  Did anyone say anything?

 2        Q    Anything to you after the woman pointed to the

 3    defendant?

 4        A    Yes.

 5              **MS. BURKE:**  Which woman, Your Honor.

 6              **THE COURT:**  The eyewitness who made the ID.

 7              **MS. BURKE:**  I am sorry.  According to his --

 8              **THE COURT:**  You were busy talking.  He asked a

 9        question about the person who made the ID at the scene.

10              **MR. MOTTOLA:**  I will reask the question.

11        Q    Officer you indicated a woman was brought to the scene

12    and pointed to the defendant, correct?

13        A    Correct.

14        Q    After that woman pointed to the defendant, did anyone

15    else say anything to you on the scene, any other officers?

16        A    Yes.

17        Q    What was said to you?

18        A    Officer --

19              **MS. BURKE:**  Objection.

20              **THE COURT:**  Overruled.

21        A    The Officer that did the showup said that that is a

22    positive.

23        Q    And do you know who that Officer is?

24              **MS. BURKE:**  I'm sorry.  What did the Officer say.

25        A    Positive.  Positive ID.

1    Q    Who was that Officer?  Do you know that officer's name?

2    A    I believe it was Lieutenant Dominguez.

3    Q    It was your testimony that you also had a conversation

4    with this woman subsequent to her pointing out the defendant,

5    correct?

6    A    Yes.

7    Q    Did she identify the defendant to you?

8         **MS. BURKE:**  Objection.

9         **THE COURT:**  Sustained.

10   Q    Did she say anything to you?

11        **MS. BURKE:**  Objection.

12        **THE COURT:**  Overruled.

13   A    Yes.  She stated that the person that she identified

14   was the person that she seen stab the victim, Yes.

15        **MR. MOTTOLA:**  Thank you, Officer.  I have no

16       further questions.

17   RECROSS-EXAMINATION

18   BY MS. BURKE::

19   Q    The woman that you just spoke about that said that Mr.

20   McGriff was the person she identified, when did she say this to

21   you?

22   A    I don't recall exactly when but it was that same day I

23   don't recall exactly what time it was.

24        **THE COURT:**  Was it at the precinct or in the

25       street?

1           **THE WITNESS:** It was at the precinct, right?

2           **THE COURT:** It's not right. It's a question.

3           **THE WITNESS:** Okay. Yes, I was at the precinct,

4      Your Honor. Not on the street, no.

5      Q    This was after you had arrested Mr. McGriff, correct.

6      A    Yes.

7      Q    And you said Lieutenant Dominguez was the officer that

8  did the showup?

9      A    Yes. It was several officers but I remember a

10 lieutenant Dominguez.

11     Q    And you said Lieutenant Dominguez says specifically to

12 you positive ID?

13     A    Positive ID.

14     Q    That's what he said to you?

15     A    That is what he said.

16          **MS. BURKE:** Nothing further.

17          **THE COURT:** I have just a question.

18          At the precinct when you had a conversation with the

19      eyewitness, the woman who made the identification, was that

20      after you took a photograph of Mr. McGriff?

21          **THE WITNESS:** Before.

22          **THE COURT:** Did you show her the photograph of Mr.

23      McGriff at any point.

24          **THE WITNESS:** The photograph that you marked

25      People's 1? No, I don't believe I did show her this

1          photograph.

2                    **THE COURT:**  Did you show her any photograph of Mr.

3          McGriff?

4                    **THE WITNESS:**  No, I don't recall that I did, no.

5                    **MR. MOTTOLA:**  Judge, can I ask a question?

6                    **THE COURT:**  Yes, both of you can ask questions.

7      RE-REDIRECT EXAMINATION

8      BY MR. MOTTOLA::

9          Q    We keep referring to her as this woman.  Do you have

10     anything in your paperwork that you can reflect the person that

11     identified the defendant?

12         A    I do.

13                   **THE WITNESS:**  May the court allow me to refer to

14         my memo book or my notes?

15                   **THE COURT:**  Yes.

16                   **THE WITNESS:**  Thank you.

17               (Whereupon, witness complies)

18                   **THE WITNESS:**  Yes, Your Honor.  Referring to

19         handwritten paper that I used to write notes on.

20                   **MS. BURKE:**  May I?

21                   **THE COURT:**  Do you have those?

22                   **MR. MOTTOLA:**  You should have those.  I can show

23         it to counsel.

24                        (handing)

25                   **MR. MOTTOLA:**  Subject to redaction, Your Honor.

NVF

1       **MS. BURKE:**  First time I have seen that, Your

2    Honor.  I don't recall it being part of the package, just

3    for the record.

4            **THE COURT:**  May I see that.

5            **THE WITNESS:**  Yes, your honor.

6                    (handing)

7            **THE COURT:**  Approach.

8            (At which time, there was an off-the-record

9        discussion held)

10           **THE COURT:**  Let's do this portion on the record

11    and we can have the witness step out and do the argument or

12    what we need to do.

13           Officer Louard, you were referring to a piece of paper

14    that we have now given back to you that has some names,

15    phone numbers, Etc, some notations about the case, correct?

16           **THE WITNESS:**  Yes, Your Honor.

17           **THE COURT:**  When did you prepare that?

18           **THE WITNESS:**  I don't recall whether I wrote this

19    either the day of or the day after.  I don't recall exactly

20    when I wrote that.

21           **THE COURT:**  I am going to have you step down.

22    Wait outside, please.  Please don't discuss your testimony

23    with anyone.  I will call you right back.

24           (Whereupon, the witness was excused)

25           **THE COURT:**  Why don't you approach first.

1          (At which time, there was an off-the-record

2      discussion held)

3          **THE COURT:** All right.  Just for the record,

4      Mr. Mottola, you took the original of that copy of that

5      original and redacted certain information before it was

6      given to defense counsel.  If you can just put on record

7      what you redacted.

8          **MR. MOTTOLA:** Yes, your honor.  So there was a

9      page that the Officer took out that was, according to him,

10     it was created the day of or the day after with contact

11     information and some notes.  I blacked out only the phone

12     numbers, dates of birth and addresses of the witnesses.

13     Nothing else.  And I provided that copy to counsel.

14         **MS. BURKE:** Okay.  Judge, just for the record,

15     this is the first time I am receiving this police

16     paperwork.  Even though it had written notes by the officer

17     and he testified that they were made at or near the time of

18     the arrest and it contains information about the incident

19     along with some other names and times, I am just given this

20     piece of paper and I haven't been given an opportunity to

21     explore it or its significance to my client.  I know that

22     there are other police personnel names on here.  There are

23     a couple of other what appears to be civilians names on

24     there.  I hadn't had an opportunity to do any type of

25     investigation as to the people that are mentioned in this

1   paperwork.  And I don't know what affect it would have on

2   my questioning of the Officer here at this particular

3   hearing, but it may affect what questions I may have at

4   trial based on any investigation that I would do.  And I

5   would just say that it is late service of these discovery

6   documents.  And I would need an opportunity to explore it.

7              **THE COURT:**  Okay.

8              **MS. BURKE:**  May I just add that when the Court

9   received this file yesterday as the trial ready file, one

10  of the things of significance that you did state to me and

11  the Assistant District Attorney is that there had been a

12  six month -- sorry.  A three-month gap between this Court

13  appearance and the last Court appearance in June which

14  should have given us plenty of time to prepare our case for

15  trial.  That is true if I had had all of the information.

16  I don't know what significance that new information holds.

17  It may not hold any but it maybe the linchpin to this

18  entire case.  I don't know that, Your Honor.  But given

19  that it was just given to me today on the eve of trial is

20  just unfair to my client.

21             **THE COURT:**  Well, I mean, certainly, you have an

22  opportunity to ask the Officer about anything that is

23  written down on there.  If you need to reopen the hearing

24  based on further investigation, I will consider that

25  certainly.  But we weren't planning to pick until tomorrow

Case 1:21-cv-00703-AMD-LB  Document 6-1  Filed 04/15/21  Page 31 of 57 PageID #: 190

- PROCEEDINGS -                          Page 31

1    at a minimum.  You can compare what is on that with the

2    discovery that you had, the DD5s.  And if there is

3    anything, if either of those names at the top do not appear

4    in any of your discovery, then certainly you will be

5    entitled to an opportunity to look into it further.  But if

6    you have all of that in some other form, I am certainly

7    willing to give you an opportunity, you know, later today

8    to take a look at it at least if you ultimately then

9    determine that there is someone that is mentioned or

10   something about it that you had no idea about that that

11   isn't in any of the other discovery, I will grant you the

12   adjournment.

13         **MS. BURKE:**  I can tell the Court that there is a

14   name, two names, that I don't recognize as part of this

15   discovery.

16         **THE COURT:**  Come on up.

17         (At which time, there was an off-the-record

18         discussion held)

19         **THE COURT:**  Just put your name on the record,

20   counsel before we start.

21         **MR. WITTWER:**  Brooklyn Defender Services by Ben

22   Wittwer W-I-T-T-W-E-R.

23         **THE COURT:**  Good morning.

24         **MR. WITTWER:**  Good morning, Your Honor.

25         **THE COURT:**  And you are going to be second seating

NVF

1    Ms. Burke?

2              **MR. WITTWER:**  That is right.

3              **THE COURT:**  We had a discussion at the bench.  I

4    understand, Ms. Burke, that one of the names that remains

5    on that sheet is in fact a name that you are not familiar

6    with and that was not in the other paperwork, correct.

7              **MS. BURKE:**  That's correct, Your Honor.

8              **THE COURT:**  Mr. Mottola, I think your

9    representation was that this was an individual on Court

10   Street at the time.

11             **MR. MOTTOLA:**  Yes, your honor.  It was a young

12   woman working for some kind of a company and her job was to

13   hand out -- she was handing out informational fliers on the

14   corner.

15             **THE COURT:**  She did not testify.

16             **MR. MOTTOLA:**  No, she did not testify.  I have had

17   one conversation with her, which was approximately a year

18   ago and she was not a witness to anything.  She was one of

19   many people on Court Street that saw a commotion.  Did not

20   identify anybody.  Was not able to articulate anything

21   substantive in this case.  Could not identify the defendant

22   or anyone involved.

23             **THE COURT:**  What I will do is ask you to turn over

24   to defense counsel contact phone number.  If it still

25   works, it works hopefully.  Whatever number you reach this

1       individual at so that counsel can do her own investigation.

2                **MR. MOTTOLA:**  I will turn that over today.

3                **THE COURT:**  Okay.  Thank you.  And further I

4       understand that the information in the middle of the

5       document that references a Sergeant Huang, H-U-A-N-G, is

6       the officer who is the who you referred to as the one under

7       time and the Sergeant who approved the arrest.

8                **MR. MOTTOLA:**  That is my understanding, yes.

9                **THE COURT:**  So counsel you have an opportunity to

10      ask the witness about it.  And then, again, if there is

11      further investigation on your part that leads to other

12      questions on that issue, I will reopen the hearing if you

13      need to.

14               **MS. BURKE:**  Thank you, your honor.

15               **THE COURT:**  We can recall the witness, please.

16      Thank you.

17               **COURT OFFICER:**  Witness entering.

18               (Whereupon, the witness is entering the courtroom)

19               **THE COURT:**  Have a seat, Officer.

20               **THE CLERK:**  Officer, you are reminded that you are

21      still under oath.

22               **THE WITNESS:**  Yes.

23               **THE CLERK:**  Thank you.

24

25  REDIRECT EXAMINATION

- PROCEEDINGS -                    Page 34

1  BY MR. MOTTOLA::

2       Q    Officer, before you were asked to step outside, I had

3  asked you if you could name the woman that made the

4  identification of the defendant.  What was her name?

5       A    Yes.  Kadesha Guy.

6            **MR. MOTTOLA:**  Thank you, Officer.  I have no

7       further questions,.

8  RE-RECROSS EXAMINATION

9  BY MS. BURKE::

10      Q    Officer, who is Sergeant Huang, H-U-A-N-G?

11      A    He's a sergeant at the 84th Precinct.

12      Q    And what relationship does he have with this case?

13      A    He was the patrol supervisor on the day of question.

14  He was at the scene.

15      Q    And when did he come up on the scene?

16      A    I don't know what time he arrived at the scene.

17      Q    Did you have a conversation with him about this case?

18      A    At some point, yes.

19      Q    At the scene or at the precinct?

20      A    I spoke to him at the scene, Yes, and at the precinct.

21      Q    And the handwritten memo that you previously looked at,

22  you put by Sergeant, is that Huang?

23      A    Huang.  Yes, he was present during the identification

24  procedure also.

25      Q    So the ID wasn't made to you, correct?

1           **MR. MOTTOLA:** Objection as to the form of the

2       question. I am not sure he testified he saw the point out,

3       so.

4           **THE COURT:** It is clear to me. Overruled. You

5       can answer that.

6   A   Can you ask that question again.

7   Q   The identification wasn't made to you directly, correct

8   by Ms. Guy?

9   A   Meaning did she tell me directly? No, she would have

10  told the Officer who did the show up.

11  Q   Not who she would have told. Did she tell you

12  directly?

13  A   No, she didn't tell me at that time, no.

14  Q   And you testified that at the precinct she told you

15  about the identification prior to you making the photograph?

16  A   Making that particular photograph, yes.

17          **MS. BURKE:** Nothing further.

18          **THE COURT:** Okay.

19          **MR. MOTTOLA:** I have no further questions.

20          **THE COURT:** Thank you, very much, Officer. Thank

21      you, very much. You may step down. This time you can take

22      your stuff.

23          (Whereupon, the witness was excused).

24          **THE COURT:** Mr. Mottola?

25          **MR. MOTTOLA:** I have no further witnesses, Your

1    Honor. If the Court is inclined for me -- the issue is

2    that my understanding of the way identification was done is

3    that the officer is able to articulate enough to satisfy

4    the Wade portion of this hearing. If the Court is not

5    incline to rule that way, Lieutenant Dominguez is on

6    vacation, which is part of the scheduling issues. If he is

7    required to testify, he is not back until the earliest is

8    Monday. So I would rest otherwise, but I am seeking

9    direction from the court.

10   **THE COURT:** Mr. Mottola, it doesn't work that way.

11   Last time I checked you have the burden. If you think you

12   have enough, you rest. If you think you might not have

13   enough, I can't tell you in advance and give you

14   essentially an advisory opinion as to whether or not you

15   have enough.

16   **MR. MOTTOLA:** I was meaning more towards

17   scheduling regarding if we adjourned until Monday.

18   **THE COURT:** Come on up.

19   (At which time, there was an off-the-record

20   discussion held)

21   **THE COURT:** Thank you again for your patience. We

22   had another discussion at the bench. As I said, I am

23   not -- I don't think it is appropriate and I am not in a

24   position to tell the People what they should or should not

25   do. But certainly, I would want to give the People an

- PROCEEDINGS -                          Page 37

1    opportunity if you want to speak to your Appeal Bureau and

2    decide if you have enough and you will rest on Monday.  I

3    also want to give defense counsel an opportunity to

4    investigate the information that was disclosed to her

5    today.  So I will put the hearing over until Monday.

6         In addition, whether you decide to call another

7    witness or not, I will ask you to have Officer Louard on

8    phone alert in case defense counsel needs an additional

9    opportunity to ask him further questions, I want him

10   available.

11            **MR. MOTTOLA:**  Yes, your honor.

12            **THE COURT:**  It would be helpful, Ms. Burke, if you

13   can, if you decided to or the end of the week that you will

14   need him, if you can let Mr. Mottola know, it would be even

15   easier.

16            **MS. BURKE:**  I will, Your Honor.

17            **MR. MOTTOLA:**  Just so the record is clear.  I will

18   be providing counsel with the information that the Court

19   directed me to turn over, the number.  And I will get it to

20   you over lunch.

21            **MS. BURKE:**  9/26.  What time, your honor.

22            **THE COURT:**  10:00 a.m.

23            **THE CLERK:**  Hearing continued until Monday.

24   Thank you.

25            **THE COURT:**  There is a request for minutes.

1          **MS. BURKE:**  Yes.  We are making a request for the

2     minutes overnight.  I guess as soon as possible or two

3     days.  We are paying.

4          **THE COURT:**  Bail is continued.  We will see you

5     10:00 a.m. Monday morning for the continued hearing.

6          Thank you, very much.

7          (Whereupon, the case was adjourned to Monday,

8     September 26, 2016 at 10:00 a.m.)

9               *         *         *         *         *

10     IT IS HEREBY CERTIFIED THAT THE FOREGOING IS A TRUE

11     AND ACCURATE TRANSCRIPT OF THE PROCEEDINGS.

12

13
       NADONNA V. FERGUSON
14     Official Court Reporter

15
          (not certified without original signature)
16

17

18

19

20

21

22

23

24

25

1  SUPREME COURT OF THE STATE OF NEW YORK
   COUNTY OF KINGS:  CRIMINAL TERM : PART 33
2  ---------------------------------------------------X
   THE PEOPLE OF THE STATE OF NEW YORK        :
3                                             :
                  - against -                 : IND.#
4                                             : 6248/15
   LORENZO MCGRIFF                            :CONT'D
5                                             :HEARING
                         Defendant            :
6  ---------------------------------------------------X

7                                    Kings Supreme Court
                                     320 Jay Street
8                                    Brooklyn, New York  11201

9

10                                   September 26, 2016

11  B E F O R E :
                   HONORABLE MIRIAM CYRULNIK
12                                   Justice

13

14  A P P E A R A N C E S :

15        FOR THE PEOPLE:

16

17              OFFICE OF KENNETH THOMPSON, ESQ.
                Kings County District Attorney
18                 BY:  LAWRENCE MOTTOLA, ESQ.
                        Assistant District Attorney
19

20        FOR THE DEFENDANT:

21              BROOKLYN DEFENDER SERVICES, ESQ.
                BY:  JAMIE BURKE
22              BY:  BENJAMIN WITTWER

23
                           NADONNA FERGUSON, RPR
24                         OFFICIAL COURT REPORTER

25

                           NVF

- PROCEEDINGS -

1    **THE CLERK:** Calling number six on the Part 33

2    calendar, indictment 6248 of 2015, Lorenzo McGriff, the

3    defendant is out on bail. The case is a continued hearing.

4    **MS. BURKE:** Jamie Burke, Brooklyn Defender

5    Services, 177 Livingston Street, Brooklyn, New York, 11201

6    on behalf of Mr. McGriff.

7    Good morning.

8    **THE COURT:** Good morning.

9    **MR. WITTWER:** Benjamin Wittwer, W-I-T-T-W-E-R,

10   also on behalf of Mr. McGriff. Good morning.

11   **THE COURT:** Good morning.

12   **MR. MOTTOLA:** For the Office of the District

13   Attorney, Lawrence Mottola.

14   Good morning.

15   **THE COURT:** Good morning.

16   Mr. McGriff, good morning. Have a seat.

17   **THE DEFENDANT:** Good morning.

18   **THE COURT:** Again, my apologies for keeping

19   everyone waiting this morning. I was involved in a meeting

20   with an organization that just took a lot longer than I

21   expected.

22   **MR. MOTTOLA:** Before we continue the hearing, I

23   did -- since we adjourned last week, I have been in contact

24   with the officers involved with this case including

25   Lieutenant Domingez, whose name was mentioned by officer

- PROCEEDINGS -

1    Louard during the hearing.  The Officer who did the showup

2    was actually Sergeant Huang.  He is working today.  He

3    reported to the 84th Precinct at 10:30 this morning.  I

4    spoke to him.  He was changing and getting his paperwork

5    from the case and was suppose to meet me on the

6    20th floor 15 minutes ago.  So he is in route.  I do not

7    have a cell phone number for him, unfortunately.  He is RDO

8    Saturday and Sunday, so he didn't get the change of tour

9    appearance.  But he is in route.  And he's the only other

10   Officer I expect to call from the case.

11              **THE COURT:**  Okay.  You want to approach?

12              (At which time, there was an off-the-record

13         discussion held)

14              **THE COURT:**  It is going to be a brief second call.

15              (Whereupon, the case was second call)

16              **MR. MOTTOLA:**  Before I call my next witness just

17   for the record, I did turn over.  Sergeant Huang is here.

18   He brought with him his memo book.  There was a report, an

19   incident report.  He also created that.  This is the first

20   time I am seeing it.  I did provide it to counsel.  It is

21   unredacted.

22              **THE COURT:**  Okay.

23              **MR. MOTTOLA:**  So we are prepared to go forward

24   with his testimony now.

25              The People call Sergeant William Huang.

NVF

- PROCEEDINGS -

1          **THE COURT:** Okay.

2          **COURT OFFICER:** Ready, Judge.

3          **THE COURT:** Yes, thank you.

4          (whereupon, the witness is entering the courtroom)

5          **THE CLERK:** Please raise your right hand, sir.

6          **THE WITNESS:** I do.

7          **THE CLERK:** Please be seated. Once you are

8     comfortable, I will ask you to please state your name for

9     the record and spell your name and give us your shield

10    number and command.

11         **THE WITNESS:** Sure. Sergeant William Huang, from

12    the 84th Precinct, H-U-A-N-G, shield number 1344.

13         **THE COURT:** You have to speak up a little bit

14    louder.

15         **THE CLERK:** And what precinct was it?

16         **THE WITNESS:** From the 84th Precinct.

17         **THE CLERK:** Thank you.

18         **THE COURT:** Mr. Mottola, whenever you are ready.

19         **MR. MOTTOLA:** Thank You.

20  **DIRECT EXAMINATION**

21  BY MR. MOTTOLA::

22    Q    Good morning, Sergeant?

23    A    Good morning.

24    Q    How long have you been employed by the NYPD?

25    A    Ten years.

- PROCEEDINGS -

1    Q    And how long have you been at the 84th precinct?

2    A    Approximately three.

3    Q    So I want to direct your attention to August 11, 2015.

4    Were you working that day?

5    A    Yes, I was.

6    Q    And what was your tour that day?

7    A    0655, by 1552.

8          **THE COURT:** Which is 6:55 in the morning.

9          **THE WITNESS:** 6:55 a.m. until 3:52 p.m.

10         **THE COURT:** Thank you.

11   Q    So I want to direct your attention to approximately

12   1:30 in the afternoon on that day.  Where were you at that time?

13   A    I was in the station house at that time.

14         **MS. BURKE:** Judge, I would just note for the

15         record that Sergeant Huang seems to be reading from a piece

16         of paper in front of him.

17         **THE COURT:** Sergeant, if you need to refresh your

18         recollection with some document, you certainly can do that.

19         Just let us know and don't read from anything.

20         **THE WITNESS:** Okay.

21   Q    And while you were in the station house at that time

22   what, if anything, happened?

23   A    It was a call for a male stab at, I believe, 65 Court

24   Street.

25   Q    And that is in Brooklyn that location?

- PROCEEDINGS -

1      A      Yes.

2      Q      Once you received that call, what did you do?

3      A      Me and the lieutenant, we went to respond.

4      Q      What was the name of the lieutenant?

5      A      Lieutenant Jurs, J-U-R-S,.

6      Q      Did you and the lieutenant, did you take a vehicle or

7   did you go on foot?

8      A      We went in an unmarked police vehicle.

9      Q      And who was the driver?

10      A      Lieutenant Jurs.

11      Q      Where exactly did you and the lieutenant respond?

12      A      We responded to Atlantic and Fourth.  There was a

13   witness that was at the location.

14            **THE COURT:**  Atlantic and?

15            **THE WITNESS:**  Fourth Avenue.

16      Q      And what was the name of that witness?

17      A      Kadesha Guy.

18      Q      Did there come a time where Kadesha Guy was in your

19   police vehicle?

20      A      Yes.

21      Q      And what was the purpose of that.

22      A      To do a show up.

23      Q      What was the location that you were taking Ms. Guy?

24      A      We brought her to 24 Bergen Street.

25      Q      And why did you bring her to 24 Bergen Street?

- PROCEEDINGS -

1     A    Because one of sectors had the suspect in custody.

2     Q    And so when you picked up Ms. Guy from Atlantic and

3  Fourth when you were on your way to 24 Bergen street, what, if

4  anything, did you say to her while she was in the vehicle?

5     A    We asked her if she can identify the suspect in the --

6  to the witness -- to the incident that she witnessed.

7     Q    And what happened when you arrived at 24 Bergen Street?

8     A    She identified Mr. Lorenzo McGriff.

9     Q    And who did she identify him as?

10    A    The suspect in the stabbing.

11    Q    Did you say anything else to her while she was in the

12 car?

13    A    No, no.

14         **MR. MOTTOLA:**  Thank you, Sergeant, I have no

15       further questions.

16 CROSS-EXAMINATION

17 BY MR. WITTWER::

18    Q    Good morning, Sergeant.

19    A    Good morning.

20    Q    You testified that you were initially notified of the

21 incident at around 1:54 p.m. that the call came in?

22    A    The call came in around 1:15 p.m.

23    Q    And the location of the incident, to your

24 understanding, was 65 Court Street?

25    A    I don't go over there.  I head over to Atlantic Avenue

Case 1:21-cv-00703-AMD-LB   Document 6-1   Filed 04/15/21   Page 46 of 57 PageID #: 205

- PROCEEDINGS -

1    and Fourth Avenue.

2         Q    Right.  But the location that you were -- that the

3    incident supposedly occurred at, you were in front 64 Court

4    Street?

5         A    Yes.

6         Q    Do you know where abouts on Fourth that is?  Like two

7    blocks?

8         A    Not that I can remember right now.

9         Q    About how far is Atlantic and Fourth Avenue from 65

10   Court Street?

11              MR. MOTTOLA:  Objection.

12              THE COURT:  Sustained.

13        Q    When you arrived at Atlantic and Fourth Avenue, that is

14   where you met Ms. Kadesha Guy?

15        A    Yes.

16        Q    Were there any other individuals with her?

17        A    I can't remember.

18        Q    Where was she when you saw her?  Was she inside or

19   outside?

20        A    I don't remember that part.

21        Q    Do you remember if she was standing near the vehicle?

22        A    I believe so, yes.  She was, Yes.

23        Q    What kind of vehicle was that?

24              MR. MOTTOLA:  Objection.

25              THE COURT:  Sustained.

- PROCEEDINGS -

1    Q    Do you remember if there was any damage to her vehicle?

2         MR. MOTTOLA:  Objection.

3         THE COURT:  Sustained.

4    Q    And when you met with Ms. Guy, did you get out of your

5    vehicle to speak to her?

6    A    Yes, I believe so.

7    Q    And what was the first thing that you said to her when

8    you met her at Atlantic and Fourth?

9    A    I asked her if she was the witness to the incident.

10   Q    And she said that she was?

11   A    Yes.

12   Q    And did she say anything about the incident to you at

13   that time?

14   A    She just stated that she saw the incident.

15   Q    What did she state that she saw?

16   A    I can't remember verbatim.

17   Q    And then you asked her if she would be willing to be

18   transported to a different location to the showup?

19   A    Yes.

20   Q    Did you tell her anything else about the nature of what

21   she was going to be doing?

22   A    I just told her to see if she can identify the suspect.

23   Q    And it was you and Lieutenant Jurs who were driving --

24   I'm sorry -- withdrawn.

25        When Ms. Guy got in the vehicle, she got in the rear

- PROCEEDINGS -

1   of your vehicle?

2        A    Yes.

3        Q    Was there anyone else in the rear of your vehicle?

4        A    Not that I can remember, no.

5        Q    And Lieutenant Jurs was driving?

6        A    Yes.

7        Q    And you were in the front passenger's seat.

8        A    Yes.

9        Q    And then you drove to 24 Bergen?

10       A    Yes.

11       Q    And about how far is that from 24 Bergen to Atlantic

12   and Fourth?  How long did you travel?

13            **MR. MOTTOLA:**  Objection.

14            **THE COURT:**  Sustained.

15       Q    While you were transporting Ms. Guy to 24 Bergen what,

16   if anything, did she say?

17       A    I don't remember.

18       Q    Did you ask her any questions?

19       A    Just if she can identify the suspect in the incident

20   that she witnessed.

21       Q    Did you ask her anything about the incident that she

22   witnessed.

23       A    Not that I can remember, no.

24       Q    You don't believe that you asked her a single

25   investigatory question while you were driving?

- PROCEEDINGS -

1      A     When I do a showup, we just ask them if they can
2    identify the suspect and that is all I ask.

3      Q     Did Lieutenant Jurs ask her any questions?

4      A     Not that I can remember, no.

5      Q     Did you give her any instructions relating to the
6    identification procedure?

7      A     Just to point out the suspect.  If she can ID the
8    suspect.

9      Q     And did you tell her that you were taking her to
10   someone who was the suspect in the stabbing?

11     A     Not that I remember, no.

12     Q     So why did you tell her you were taking her to 24
13   Bergen?

14     A     Because we have someone possible that was involved in
15   the incident.

16     Q     And you told her this before she had laid eyes on Mr.
17   McGriff at that point?

18     A     I believe so, Yes.

19     Q     And when you took her -- when you arrived at 24 Bergen
20   did you get out of the squad car once you arrived?

21     A     I don't think so, no.

22     Q     Did Ms. Guy get out of the squad car?

23     A     No.

24     Q     So she performed the identification from a seated
25   position inside the squad car?

- PROCEEDINGS -

1      A     Yes.

2      Q     Was the windows opened or were they up or down?

3      A     I don't remember.

4      Q     And did you show her any individuals besides Mr.

5    McGriff?

6      A     I don't think so, no.

7      Q     And was Mr. McGriff in handcuffs at that point?

8      A     I believe so, Yes.

9      Q     Where was he physically located?

10     A     I don't remember where.

11     Q     Was he standing up?

12     A     I don't remember.

13     Q     You don't recall if he was standing or sitting?

14     A     I don't remember.  I believe he was out in the street

15   on the public sidewalk.

16     Q     He was not in the squad car.  He was in the open?

17     A     Not that I can know of, no.

18     Q     Were there any officers standing besides him at the

19   time of the identification?

20     A     That I don't remember.

21     Q     You don't remember if there were any police officers

22   with him?

23     A     There was a police officer but I don't remember who

24   exactly was standing next to him.

25     Q     Do you remember how many police officers were standing

- PROCEEDINGS -

1  next to him?

2       A    More than two.

3            **THE COURT:**  More than two.

4            **THE WITNESS:**  Yes.

5       Q    And were those officers wearing uniforms?

6       A    Yes.

7       Q    All of them?

8       A    I believe so, Yes.

9       Q    And who actually asked Ms. Guy to identify the suspect,

10 was that you?

11      A    Yes.

12      Q    And do you remember as close as you can exactly what

13 you said to her?

14      A    Was there anybody that you can recognize in regards to

15 the stabbing that you witnessed.

16      Q    And what did she say?

17      A    She said Yes.  That individual that is sitting right

18 next to you.

19      Q    That is sitting right next to you?

20      A    To you.

21      Q    To me?

22      A    Yes.  Mr. Lorenzo --

23      Q    She said yes and she pointed at Mr. McGriff.

24      A    Yes.

25      Q    Does she physically point?

- PROCEEDINGS -

1        A    I believe so, Yes.

2        Q    And so you said you asked her do you see anyone that
3    you recognize.  Did she indicate anything about Mr. McGriff other
4    than that fact that she recognized him?

5        A    I believe the clothing description that he was wearing
6    at the time.

7        Q    What clothing did she describe?

8        A    I don't remember.  I have to take a look at the notes.

9        Q    Would looking at the notes help refresh your
10   recollection?

11       A    Yes.

12            **THE COURT:**  You can do that.  Just let us know
13       what you are looking at.

14            **THE WITNESS:**  This is our sprint system.  It
15       basically records every incident that we transmit through
16       the radio.

17            **THE COURT:**  So you use that to refresh your
18       recollection.  And then let us know when you have done
19       that.

20       A    It says perpetrator male black wearing black bucket hat
21   blue jeans pants.

22            **THE COURT:**  Don't read from the document, please.
23       Thank you.

24            **THE WITNESS:**  Sorry.

25       A    That was the description.

- PROCEEDINGS -

1    Q    Did she also describe the shirt that Mr. McGriff was

2  wearing?

3    A    I don't remember.  But whatever was on the Sprint

4  system.

5    Q    Did she say that he was wearing a brownish shirt?

6    A    I don't remember.  It doesn't say that in the sprint

7  system.

8    Q    Are you sure?

9    A    Can I take another look.

10         **MR. WITTWER:**  Sure.

11         **THE COURT:**  Well, let me interrupt for a second.

12      Regardless what it says on the Sprint.  Is that what she

13      said.  You're reading from your refreshing your

14      recollection about what he was wearing.  The question is

15      did she specifically identify any clothing.

16         **THE WITNESS:**  Not that I remember.  She just

17      pointed.

18         **THE COURT:**  That answers that question.  Let's

19      move on.

20    Q    And so she pointed to him.  And what, if anything,

21  about him did she say?

22    A    That's the individual.

23    Q    That's the individual?

24    A    That committed the stabbing that she witnessed.

25    Q    And so did she actually say when she identified Mr.

- PROCEEDINGS -

1   McGriff that he had stabbed someone or was it -- are you just

2   surmising the context?

3                    **MR. MOTTOLA:**  Objection.

4                    **THE COURT:**  Sustained.

5       Q     Did she actually say at the time that she identified

6   Mr. McGriff that he had stabbed someone?

7       A     I believe -- I don't remember what she said verbatim

8   but I remember her pointing him out.

9       Q     So the only thing you're sure from your memory was that

10  she pointed at Mr. McGriff?

11      A     Right.

12      Q     Indicated some recognition of him?

13      A     Of the incident.

14      Q     And your understanding is that the complaining witness

15  in this case, Kahlif Mohammad, was located at the corner of

16  Boerum Place and Dean Street; is that correct?

17                   **MR. MOTTOLA:**  Objection.

18                   **THE COURT:**  Sustained.

19      Q     Sergeant Huang, you prepared a report in this case,

20  correct?

21      A     Yes.

22      Q     And in the report, you described information about the

23  incident outside the scope of the identification procedure that

24  you conducted, correct.

25                   **MR. MOTTOLA:**  Objection.

- PROCEEDINGS -

1           **THE COURT:** Sustained.

2           **MR. WITTWER:** One moment, please.

3     Q   I want to take you back to when you met with Ms. Guy at

4 Atlantic and Fourth Avenue. How did you know that she would be

5 at that location?

6     A   I believe she flagged us down.

7     Q   So were -- before she flagged you down, were you

8 planning on stopping at that location?

9     A   Yes.

10     Q   So why?

11     A   Because that is where the call came back to that the

12 witness was at Atlantic and Fourth Avenue.

13     Q   So at the time -- to your knowledge, at the time that

14 Ms. Guy called 911 to describe the incident she was at Atlantic

15 Avenue and Fourth?

16     A   Yes.

17     Q   And then you said -- just to clarify. She flagged you

18 down. Your unmarked car was driving by and she flagged you down?

19     A   We had the lights on.

20     Q   So she must have been outside at the time that you

21 arrived?

22           **MR. MOTTOLA:** Objection.

23           **THE COURT:** Sustained.

24     Q   Had any other police officers responded to that

25 Atlantic and Fourth location prior to yourself and Lieutenant

- PROCEEDINGS -

1    Jurs?

2        A    No, we were the first.

3              **MR. WITTWER:**  I have nothing further.

4              **THE COURT:**  Thank you.  Redirect.

5              **MR. MOTTOLA:**  No, your honor.

6              **THE COURT:**  Thank you, very much, Sergeant Huang.

7        You may step down.

8              (Whereupon, the witness was excused)

9              **MR. MOTTOLA:**  The People rest, Your honor.

10             **THE COURT:**  Okay.

11             **MS. BURKE:**  Judge, we are not putting a case on.

12             **THE COURT:**  Okay.  Defense rest.  Okay.  Are you

13       prepared to argue?

14             **MR. MOTTOLA:**  Yes, I am.

15             **MS. BURKE:**  Yes.

16             **THE COURT:**  Counsel, you want to come up.

17             (At which time, there was an off-the-record

18             discussion held)

19             **THE COURT:**  Based on our discussion at the bench,

20       Mrs. Burke, you indicated that you prefer to write on the

21       issues raised and I am told that you can get your

22       arguements memorandum of law whatever you are submitting to

23       us by the close of business Friday, which is the 30th of

24       September.

25             **MS. BURKE:**  Yes, your honor.

NVF

- PROCEEDINGS -

1          **THE COURT:**  And the People have requested a week

2     People's reply is due by the close of business 10/7.  And

3     we will put it on back here for decision 10/14.

4          **MS. BURKE:**  Thank you.

5          **THE COURT:**  So it will be 10/14 for decision.

6     Bail is continued.  Thank you, very much.

7          **THE COURT:**  Ms. Burke, you orderded the minutes.

8          **MS. BURKE:**  Yes.

9          (Whereupon, the case was adjourned to

10     october 14th at 10:00 a.m.)

11              *         *         *         *         *

12     IT IS HEREBY CERTIFIED THAT THE FOREGOING IS A TRUE

13     AND ACCURATE TRANSCRIPT OF THE PROCEEDINGS.

14

15

16     NADONNA V. FERGUSON
       Official Court Reporter

17

           (not certified without original signature)

18

19

20

21

22

23

24

25