1

1    SUPREME COURT OF THE STATE OF NEW YORK
     COUNTY OF KINGS - CRIMINAL TERM - PART 33
2    -----------------------------------------------X
     THE PEOPLE OF THE STATE OF NEW YORK,
3
                                   Plaintiff,
4              -against-

5    LORENZO MCGRIFF,
                                   Defendant.
6    -----------------------------------------------X
     Indictment # 6248/15            TRIAL
7
                                   320 Jay Street
8                                  Brooklyn, New York 11201

9                                  December 12, 2016

10   B E F O R E :

11                 HONORABLE MIRIAM CYRULNIK,
                            Justice.
12
     A P P E A R A N C E S :
13

14             OFFICE OF ERIC GONZALEZ, ESQ.
                    ACTING DISTRICT ATTORNEY - KINGS COUNTY
15                  350 Jay Street
                    Brooklyn, New York 11201
16             BY:  LAWRENCE MOTTOLA, ESQ.
                    STEPHANIE D'AGOSTINO, ESQ.
17                  Assistant District Attorneys
                    For the People
18

19             BROOKLYN DEFENDER SERVICES
                    177 Livingston Street
20                  Brooklyn, New York 11201
               BY:  JAMIE BURKE, ESQ.
21                  BEN WITTWER, ESQ.
                    For the Defendant
22

23

24
                        VANESSA DEL VALLE
25                      Senior Court Reporter

VdV

1          THE CLERK:  Calling number one from the Part

2     33 calendar, indictment 6248 of 2015, Lorenzo McGriff.

3     Defendant is out on bail.

4          MS. BURKE:  Jamie Burke, Brooklyn Defender

5     Services, 177 Livingston Street, Brooklyn, New York

6     11201 on behalf of Mr. McGriff.

7          Along with.

8          MR. WITTWER:  Ben Wittwer.

9          Good morning again.

10          MR. MOTTOLA:  For the Office of the District

11     Attorney, Lawrence Mottola.  Good morning.

12          MS. BURKE:  Good morning, Your Honor.

13          THE COURT:  Good morning.

14          Good morning, Mr. McGriff.  Have a seat.

15          All right.  Matter was on for trial.

16          MR. MOTTOLA:  Yes.  The People are ready

17     today, Your Honor.

18          THE COURT:  Okay.

19          MS. BURKE:  Defense counsel's ready, Your

20     Honor.

21          THE COURT:  Okay.  Before we proceed, we had

22     discussed this briefly at the bench, I will ask it

23     again for the record, is there any final offer before

24     we move proceed?

25          MR. MOTTOLA:  A plea to the top count.  I

1    believe it was 15 years jail.

2         MS. BURKE:  That offer's respectfully

3    declined.

4         THE COURT:  Mr. McGriff, you had an

5    opportunity to discuss the offer with counsels,

6    correct?

7         THE DEFENDANT:  Yes.

8         THE COURT:  Okay.  Did you have enough time

9    to discuss it?

10        THE DEFENDANT:  Yes.

11        THE COURT:  Anyone threaten you or force you

12   to decline it and proceed to trial?

13        THE DEFENDANT:  No.

14        THE COURT:  There you go.  Okay.

15        All right.  So based on our discussion, we

16   are number one on the list for a panel for tomorrow

17   morning.  So, today I would like to just take care of

18   any pretrial applications, Mr. Mottola.

19        MR. MOTTOLA:  Yes, Judge.

20        Regarding Sandoval, I would only seek to

21   introduce the defendant's, he has one felony

22   conviction.  If you look at the rap sheet it looks like

23   it's old.  The plea itself was entered June 28, 1993.

24   To the reduced charge of manslaughter in the first

25   degree.

1        So while that was, you know, 20 years ago.

2        THE COURT:  More.

3        MR. MOTTOLA:  Yeah, more.  At this rate, I

4   would just make note that the defendant was

5   incarcerated 15 years.  He wasn't released on parole

6   until 2009.  So, his parole only expired, looks like

7   November of 2014, and our incident happened

8   approximately ten months after that.

9        So, I just, I suspect the defendant will

10  testify in this case.  I just don't want, I would like

11  to ask whether or not he's been convicted obviously of,

12  or rather, he pled guilty to manslaughter in the first

13  degree.  Otherwise at least ask, you know, whether or

14  not he is convicted of a felony.

15       At that point I would also like to make the

16  defendant and defense aware of the fact that if he

17  opened the door to anything that he's been out of

18  trouble for such a long time, or this happened so long

19  ago, this period of incarceration plus the period of

20  time he is on parole is all relevant, if something like

21  that was said.

22       I would like to point out, if possible, the

23  reason why he was out of trouble, because he was locked

24  up for 15 years and that he was on parole.

25       Also I will make the Court aware of the facts

1    briefly.

2              The defendant alleged in that case to have

3    been almost struck by a car as he was a pedestrian.

4    The defendant alleged in the homicide statement that

5    the driver of the car got out of the car, came at him

6    aggressively.  At which point the defendant produced a

7    firearm, fired one shot and struck the female that was

8    on scene.  Who was pronounced dead on arrival to the

9    hospital.

10              The facts in that case, I would argue to the

11    Court, are analogous in the sense the defendant having

12    testified in grand jury, he is alleging justification

13    here as well.  Is alleging, like he did in that case,

14    that the victim was being antagonistic, was using

15    racial slurs, and that the defendant responded in kind

16    instead of using a firearm, struck the victim in this

17    case five times with the knife.

18              Those are the facts of the case.  I would

19    seek to ask as much of that as the Court will allow.

20    Or in the alternative, as least ask whether or not he

21    had been convicted of a felony.

22              That's it.  Thank you.

23              MR. WITTWER:  Thank you, Your Honor.

24              The -- I am asking that the conviction be

25    excluded in its entirety.  You have already heard about

1       the long lapse in time.  What's significant under

2       Sandoval is the time from which the acts were allegedly

3       themselves committed, not when Mr. McGriff took the

4       plea.  Not his period of incarceration, but when these

5       acts actually happened.  Because these are the acts

6       that the People purportedly believe bear on his

7       credibility for truth telling, which is the only basis

8       on which this evidence can be brought forward.

9               We have 25 year lapse since the alleged acts

10      for the underlying conviction for Sandoval.  We also

11      have a manslaughter allegation, so it's not a crime of

12      dishonesty, not a crime that involves lying or

13      stealing.  It's a crime of impulsive violence, which

14      under the case law has less bearing on credibility than

15      crimes that are, you know, of a different nature.

16              And the fact that it's manslaughter, it

17      doesn't require premeditation.  Doesn't require the

18      formation of a specific intent beyond reckless intent.

19      So I think that's also suggestive of why it has little

20      probative value in terms of his likelihood of telling

21      the truth.

22              I would also note that, you know, this is a

23      case where our defense is going to be justification,

24      self-defense.  So, Mr. McGriff needs to testify and

25      exercise his rights to testify in this case.

1          So, bringing in enormously prejudicial

2     evidence that, you know, largely just goes to suggest

3     that he is a violent individual who has committed

4     violent acts in the past, the definition, real chilling

5     effect in this specific trial.  In order to put on the

6     defense we are putting on, Mr. McGriff has to testify.

7          So, working backwards, the facts of the

8     conviction are just extraordinarily simple.  And

9     they're similar in a way that it is extremely likely

10    that the jury would consider them as propensity

11    evidence, and that the propensity aspect of the

12    information would overwhelm, you know, any legitimate

13    reason for it to come in.

14          The manslaughter charges are more serious

15    charge than he faces in this trial.  So to even allow

16    the People to elicit the fact that the conviction is

17    for manslaughter informs the jury that Mr. McGriff has

18    been convicted of a charge more serious than any that

19    he faces, and I think that makes it particularly

20    prejudicial.

21          I know in People versus Seymour, 77 AD3rd,

22    976, the Court struck a balance where, you know, they

23    allowed in the fact of a felony conviction without the

24    specific charge or the facts.

25          So if the Court is going to permit reference

VdV

Case 1:21-cv-00703-AMD-LB Document 6-2 Filed 04/15/21 Page 8 of 232 PageID #: 224

1      to this conviction, I would ask that it go nowhere

2      beyond just, isn't it true you have a felony

3      conviction.  And then in that case Mr. McGriff would

4      answer yes.  Wouldn't need to worry about opening the

5      door, any of the things that the People are describing.

6              But I would urge the Court where this charge

7      is so remote where it's really not a charge that has

8      significant bearing.  I mean, I didn't hear any

9      analysis from the People about why this has bearing on

10     his credibility at all.  I would ask the Court to

11     exclude it.

12              (Whereupon, there was a pause in the

13     proceedings.)

14              THE COURT:  All right.  I am going to allow

15     the People to ask if, should Mr. McGriff take the

16     stand, it appears that he will, I will allow the People

17     to ask if he's been convicted of a felony.

18              The other facts are, I think, under the

19     circumstances would be extraordinarily prejudicial.

20     But that said, of course if there is some statement in

21     his testimony that opens the door, then I will revisit

22     it.  But you can ask if he was convicted of a felony

23     and we will leave it at that.

24              MR. MOTTOLA:  There is no Molineux

25     application.

VdV

```
1              THE COURT:  Okay.  Miss Burke, Mr. Wittwer,

2       any pretrial applications?

3              MS. BURKE:  No, Your Honor.

4              THE COURT:  Okay.  So we will, just the

5       Antommarchi issue.

6              (Whereupon, there was a pause in the

7       proceedings.)

8              THE COURT:  This afternoon, by the way, you

9       can e-mail us a witness list.

10             MR. MOTTOLA:  Oh, yes.  Absolutely.  I will

11      get your e-mail again.

12             (Whereupon, there was a pause in the

13      proceedings.)

14             MS. BURKE:  Your Honor, we have the

15      Antommarchi that are executed by myself and by

16      Mr. McGriff.

17             THE COURT:  Okay.  All right.

18             Mr. McGriff, I am holding a waiver signed by

19      you and Miss Burke.

20             THE DEFENDANT:  Mmm-hmm.

21             THE COURT:  Indicating you are waiving the

22      right to be present during sidebars with prospective

23      jurors as we go through jury selection.

24             Now, under the law, as I am sure you have

25      already discussed with both counsels, you have a right
```

1       to be present at what the law says every material stage

2       of the trial.  And jury selection is, of course, a

3       material stage of the trial.

4               The way we do jury selection here is when we

5       bring in the entire panel, I ask some questions of them

6       as a group.  When -- and we ask upfront if anybody has

7       any schedule reasons, language issue, various problems

8       that would prevent them from serving as a juror.

9               When we are finished with that, we put people

10      in the box.  We ask them questions as well.  I ask

11      questions, both counsels ask questions.  To see whether

12      there is any, there are any issues with those people

13      serving as fair and impartial jurors, as I am sure you

14      again have discussed with your attorney.

15              It's been my experience there are some things

16      that potential jurors feel uncomfortable saying aloud

17      in open court, so we give them the opportunity to come

18      up to the bench, usually with counsels, and they tell

19      us what the issue is or the reason they cannot serve or

20      whatever, then I rule on it.

21              Everything that takes place up here at the

22      bench is on the record.  So every question that we ask

23      of the potential jurors, any questions that the lawyers

24      might ask, that's all on the record.  So that if there

25      is ever a reason down the line to review it, everything

VdV

1          that takes place in that regard is on the record.

2                     So normally you have a right to come up here

3          with your attorney, and the district attorney, and hear

4          what the potential jurors may have to say.

5                     It is also my experience, frankly, that

6          people will speak more freely if the lawyers are just

7          standing up here.  And we want to give them the

8          opportunity to tell us what their issues are so I can

9          ultimately decide whether they should be excused or

10         not.  So it's my practice then when they, if a

11         defendant waives his right to be present up here, then

12         I give counsel an opportunity to talk to the person on

13         trial and discuss what it is that was said.

14                    So, as I said, by signing this waiver you are

15         giving up your right to be physically present up here

16         at the bench when the prospective jurors step forward

17         to tell us essentially why they can't serve and if

18         there is any reasons why they can't serve.

19                    Do you understand this?

20                    THE DEFENDANT:  Yes.

21                    THE COURT:  Is that what you are agreeing to

22         do by signing this?

23                    THE DEFENDANT:  Yes.

24                    THE COURT:  Okay.  Have you had sufficient

25         time to talk to Miss Burke and Mr. Wittwer about the

1        waiver and what that means?

2                    THE DEFENDANT:  Yes.

3                    THE COURT:  Anyone threaten or force you to

4        sign this?

5                    THE DEFENDANT:  No.

6                    THE COURT:  Okay.  All right.  I do find the

7        waiver was knowingly and voluntarily executed.  I am

8        going to accept that.

9                    We will give you a copy, Miss Burke, all

10       right.  So we are going to -- anything else at this

11       time?

12                    MR. MOTTOLA:  No.

13                    THE COURT:  Like I said, you will e-mail us a

14       copy of the witness list, etcetera.

15                    MR. MOTTOLA:  Yes.

16                    THE COURT:  I am going to put this over for

17       tomorrow morning.  That's December 13.

18                    MS. BURKE:  Thank you.

19                    THE COURT:  For jury selection.

20                    And, Mr. McGriff, I had previously, couple

21       months ago back I had given you the same official

22       warning I am required to do.  Let me do it again.

23                    You've been here before your lawyers each and

24       every time the case has been on.  I am going to do that

25       anyway.  The case is now moved to trial.  And you are

1    directed to be here at, we will make it a 10 a.m. call,

2    please, counsels.

3              MS. BURKE:  Yes.

4              MR. WITTWER:  Yes.

5              THE COURT:  10 a.m. tomorrow.  In this

6    courtroom.  And after, any other time and date as I

7    direct the case goes forward.  If you fail to appear, I

8    will issue a warrant for your arrest and forfeit your

9    bail.

10             Additionally, if I determine you have stayed

11   away to keep the case from going to trial, you should

12   know the case can go forward without you.  You can be

13   tried, convicted and sentenced to a term of

14   incarceration without being here.  So it's in your

15   interest to be here each and every time the case is on

16   so you can work together with both of your lawyers on

17   every aspect of the case.  All right.

18             And finally, just so that you know, I don't

19   use a questionnaire.  I ask various questions of the

20   attorneys -- excuse me, of the panel.  I will go over

21   them with you in the morning before we get rolling.

22             And once we get to the point where we put

23   prospective jurors in the box, I do 16 at a time.  One

24   through eight in the front, nine through 16 in the

25   back.

1          But we will go over this again tomorrow

2     morning.

3          MR. MOTTOLA:  So you don't question them in

4     the box at all.

5          THE COURT:  Of course I do.

6          MR. MOTTOLA:  Oh, you just don't use a

7     questionnaire.

8          THE COURT:  I don't hand them a questionnaire

9     to just go yes or no.

10          MR. MOTTOLA:  Got you.

11          THE COURT:  I ask my list of questions, then

12     you have yours.

13          MR. MOTTOLA:  Right.

14          THE COURT:  We will go over it again in some

15     detail tomorrow morning.

16          All right.  I will see you then.  Thank you

17     very much.  Bail is continued.

18     *      *      *      *      *      *      *      *

19     **(Whereupon, the proceedings were adjourned to
**December 13, 2016.)****

20     *      *      *      *      *      *      *      *

21          It is hereby certified that the foregoing is a true
and accurate transcript of the proceedings.

22

23     *Vanessa del Valle*

24     **VANESSA DEL VALLE**
        Senior Court Reporter

25

VdV

1    **SUPREME COURT OF THE STATE OF NEW YORK**
     **COUNTY OF KINGS : CRIMINAL TERM : PART 33**

2    -----------------------------------------------x
     **THE PEOPLE OF THE STATE OF NEW YORK**

3
                                        **Plaintiff,**

4          -against-

5    **LORENZO MCGRIFF,**

                                 **Defendant.**

6    -----------------------------------------------x
     **Indict. No. 6248/15**       **JURY SELECTION**

7

8                           **320 Jay Street**
                             **Brooklyn, New York**

9
                           **December 13, 2016**

10

11   **B E F O R E :**

12                 **HONORABLE MIRIAM CYRULNIK,**
                     **Justice, and a jury.**

13

14       **(Appearances same as previously noted.)**

15                    **VANESSA DEL VALLE**
                  **Official Court Reporter**

16
              *     *     *     *

17

18       THE CLERK:  Calling number four from the Part

19   33 calendar, indictment number 6248 of 2015, Lorenzo

20   McGriff.  Defendant is out on bail.

21       MS. BURKE:  Jamie Burke, Brooklyn Defender

22   Services, 177 Livingston Street, Brooklyn, New York

23   11201 on behalf of Mr. McGriff.

24       Good morning, Your Honor.

25       MR. WITTWER:  Ben Wittwer, also for

1        Mr. McGriff.  Good morning.

2                THE COURT:  Good morning.

3                MR. MOTTOLA:  For the Office of the District

4        Attorney, Lawrence Mottola.

5                Good morning.

6                MS. D'AGOSTINO:  Office of the District

7        Attorney, Stephanie D'Agostino.

8                Good morning.

9                THE COURT:  Good morning.

10               Mr. McGriff, you are late.  I told your

11       lawyer up at the front I told you 10 o'clock this

12       morning.  All right.  If you are late again I am going

13       to revoke your bail and put you in for the duration of

14       the trial.  That's it.  Have a seat.

15               If the individual in the back is a potential

16       witness, then she needs to step out while we are doing

17       any pretrial --

18               MS. BURKE:  Yes, Your Honor.

19               THE COURT:  All right.

20               MS. BURKE:  One moment, Your Honor, please.

21               THE COURT:  Sure.

22               (Whereupon, there was a pause in the

23       proceedings.)

24               THE COURT:  Okay.

25               MR. MOTTOLA:  Yes.  Okay, Judge.  So there

1      are two things, Your Honor.

2              First, I do have an interstate material

3      witness order.  One of the witnesses on the list,

4      Kadesha Guy, as the Court's aware, we previously had a

5      trap and trace on her phone since her location since

6      grand jury she has been moving.  So she is in Newark,

7      New Jersey.

8              I am going to hand it up to the Court.  She

9      has refused to come in voluntarily at this point.  I am

10     requesting the Court sign the interstate material

11     witness order.

12             She did testify in the grand jury.  As you

13     know, the defense has her testimony.  She was, she had

14     a front row seat to the incident.  She would be a

15     material witness in this case.

16             (Whereupon, there was a pause in the

17     proceedings.)

18             THE COURT:  You have another name in here.

19     Presence of Nicole Stanley is required.

20             MR. MOTTOLA:  Oh, God.  Sorry, Judge.  That's

21     an oversight by the person who drafted that.  I will

22     change that for you immediately.  I have it on the 17th

23     floor to be printed.

24             Our second matter, Your Honor, there is a 911

25     call.  There is one 911 call that the People intend to

18

1     put in during the direct case.  Our position, it's a

2     present sense impression.  I will play it for the Court

3     now.

4               (Whereupon, an audiotape was played.)

5               (Whereupon, the audiotape was stopped.)

6               (Whereupon, there was a pause in the

7     proceedings.)

8               MR. WITTWER:  Is Your Honor waiting to hear

9     from us?  I would object to the admission of the 911

10    call.  Even if it is an exception to the, even if it is

11    potentially an exception to the hearsay rule, it would

12    be violative of Mr. McGriff's constitutional right to

13    confront witnesses against him at trial.

14               In the first place, we don't even know the

15    identity of the caller, so we don't know who this

16    person is.  Clearly they're not available to testify at

17    this trial, which means that there won't be an

18    opportunity for cross examination.

19               I believe that the statements on the

20    recording are testimonial in nature because they are

21    reporting a past crime that occurred.  It does not

22    appear based on anything the caller says or her tone of

23    voice that she feels threatened by what's happened or

24    that her life is in danger.  That this is, you know, a

25    state of emergency type --

VdV

1          THE COURT:  Is that a requirement?

2          MR. WITTWER:  I believe -- well it's a

3     requirement that it be non-testimonial, Your Honor.  I

4     think the only way the People would argue it's

5     testimony -- non-testimonial would be under the idea it

6     is a state ongoing emergency.  I don't understand that.

7     I think it's clearly testimonial.  She is reporting a

8     past alleged criminal activity to the authority so that

9     they can investigate it.  Which is the definition of

10    testimonial statement.

11          And, you know, under Crawford and its

12    progeny, these statements can't be admitted where the

13    live witness has not testified, where we don't know the

14    identity of this live witness.  I don't think it should

15    be admitted.  Nothing on the call is particularly

16    probative or relative to this trial.  The Court should

17    use its discretion to exclude it.

18          THE COURT:  Okay.

19          MR. MOTTOLA:  I just, I defer to Your Honor's

20    judgment.  You heard the call.  It's our position that

21    the witness very much is reporting an event that she

22    just witnessed, as she still witnessing, as she

23    describes the exact location and then the subsequent

24    location as the parties are leaving, heading towards

25    Schermerhorn Street.  And it is very much a present

LORENZO MCGRIFF - JURY SELECTION

20

1    sense impression.

2              It's also our position that the victim was,

3    or that the caller was in a heightened sense of

4    excitement and it would fall and the excited utterance

5    in the alternative.  But I don't see how it's not a

6    present sense impression, Your Honor.

7              I would ask the Court admit the call separate

8    and apart from the defense's argument.

9              THE COURT:  Okay.  I mean it's clear that,

10   it's clear to me on hearing that it, this is something

11   that is being described as it's ongoing.  So I am going

12   to permit its introduction.

13             MS. BURKE:  Note our objection.

14             THE COURT:  Assuming that you lay the

15   appropriate foundation, etcetera.

16             MR. MOTTOLA:  Yes.

17             MR. WITTWER:  Note our objection for the

18   record under Crawford.

19             THE COURT:  Yes.  All right.

20             MR. MOTTOLA:  Is it possible that Stephanie

21   can run down to 17 and get the new material witness

22   order?

23             THE COURT:  Do what she needs to do.

24             MR. MOTTOLA:  Thank you.

25             THE COURT:  You were indicating you are

VdV

LORENZO MCGRIFF - JURY SELECTION

21

1      moving to dismiss one charge?

2              MR. MOTTOLA:  Yes, Your Honor.

3              At this point the People are seeking to

4      dismiss, I believe it's count one.  Just checking.

5              (Whereupon, there was a pause in the

6      proceedings.)

7              MR. MOTTOLA:  Yes.  Count one.  The assault

8      in the first degree, as it's, we cannot meet our burden

9      at trial.

10             THE COURT:  What about the attempted assault

11     one?

12             MR. MOTTOLA:  People are going forward on

13     this count.  And I guess the lesser included assault

14     three.  Assault two, rather.

15             THE COURT:  Well count one is dismissed.

16             Why don't you come up.

17             MR. MOTTOLA:  Yes.

18             (Whereupon, there was a discussion held at

19     the bench off the record.)

20             MR. MOTTOLA:  Judge, just to further clarify

21     the reasoning why the People had dismissed the assault

22     one, it's the reason we can't meet our burden, is that

23     in reviewing the medical records and the injuries

24     suffered by the victim in this case, they do not meet

25     the threshold of serious physical injury.

VdV

LORENZO MCGRIFF - JURY SELECTION

22

1            It's still the People's position that we can

2     proceed as to the other counts, since the allegation is

3     that the defendant struck the victim five times with

4     the knife, to the head and the torso, so that would

5     make out the intent to cause serious physical injury.

6     But the injury suffered, or what's required for the

7     assault one, the victim did not suffer serious physical

8     injury as per the law.

9            THE COURT:  Okay.  Anything else before,

10     while we wait for the panel to come up?

11            MR. MOTTOLA:  Counsel and I did not agree as

12     to the redactions on medical records.  If we had an

13     opportunity, we could do that at some point today.

14            THE COURT:  As long as we get to them before

15     the jury has to see them.

16            MR. MOTTOLA:  Yes.

17            THE COURT:  Or may want to see them,

18     etcetera.

19            Mr. Mottola, what is your direct, 250?

20            MR. MOTTOLA:  2173.

21            THE COURT:  Miss Burke.

22            MS. BURKE:  I am sorry, Your Honor.

23            THE COURT:  Your extension is?

24            MS. BURKE:  116.

25            THE COURT:  Mr. Wittwer, your extension.

VdV

LORENZO MCGRIFF - JURY SELECTION

23

1          MR. WITTWER:  308, Your Honor.

2          THE COURT:  Okay.

3          MR. MOTTOLA:  Judge, will you allow us to

4   comment on justification at all in the voir dire since

5   I know... the defense indicated that's going to be

6   their defense, but they're not required to put a

7   defense on until I present my case.  So, I suspect it

8   will be an issue, but you never know.  If we are

9   allowed, how much would you allow us to talk about it?

10         THE COURT:  Well when you say how much would

11   I allow you to talk about it, I mean...

12         MR. MOTTOLA:  Basically the one that I am

13   getting at, if it's proper for me to ask the jury

14   something along the lines of that it's not what they

15   think self-defense or justification is in their heads.

16   Obviously they have to follow the law as you give it.

17   You are going to give them the law as justification if

18   it becomes relevant.  It's not what they imagine that

19   self-defense be, it's what it actually legally would

20   be.  That's what I would want to ask them.  No hypos or

21   anything.

22         THE COURT:  Okay.

23         MR. MOTTOLA:  Okay.

24         THE COURT:  I mean I am assuming you may make

25   some inquiry in that regard as well when you speak to

1       the jury.

2                   MS. BURKE:  Yes.  But I wanted to do hypos.

3                   THE COURT:  Well if it's within the bounds of

4       appropriate questioning and it's within the bounds of

5       an appropriate hypothetical that isn't based

6       specifically on the facts of this case, you can ask.

7                   I guess, Mr. Mottola, you can go from there

8       as well.

9                   MR. MOTTOLA:  Okay.

10                  MS. BURKE:  Your Honor, just going to the

11      ladies room.

12                  THE COURT:  Yes.

13                  (Whereupon, there was a break in the

14      proceedings and then resumed shortly thereafter.)

15                  THE COURT:  What's your direct extension, by

16      the, way Miss D'Agostino?

17                  MS. D'AGOSTINO:  2413.

18                  MS. BURKE:  Judge, I actually had a question

19      about whether my client's wife can go sit in during the

20      jury voir dire but not during the testimony.

21                  THE COURT:  I would prefer not, just in terms

22      of the --

23                  MS. BURKE:  Okay.

24                  THE COURT:  Yeah.  Since there's going to be

25      questioning and perhaps hypotheticals that somehow are

1          connected to testimony in some way, I don't...

2                    MS. BURKE:  Your Honor, there will be two

3          alternates.

4                    THE COURT:  That would be my plan, just so we

5          have some, you know.

6                    Mr. Mottola, your -- come on up, please.

7                    MR. MOTTOLA:  Oh, sure.  Sorry, Judge, in

8          advance.

9                    (Whereupon, there was a discussion held at

10         the bench off the record.)

11                   THE COURT:  Good to go.  We have a panel

12         outside.  Good to go?

13                   MR. WITTWER:  Yes.

14                   MR. MOTTOLA:  Perfect.

15                   (Whereupon, there was a pause in the

16         proceedings.)

17                   COURT OFFICER:  Ready for the panel, Your

18         Honor?

19                   THE COURT:  Yes.  Thank you.

20                   COURT OFFICER:  Okay.  Panel entering.

21                   (Whereupon, the prospective jury entered the

22         courtroom.)

23                   THE CLERK:  Folks, I am going to ask you to

24         please make sure your phones are off, vibrate, silent

25         mode.  It's very distracting.  Thank you very much.

1                  All the prospective jurors only, please stand

2       up and raise your right hand.  Everyone who just walked

3       in, prospective jurors, everyone, stand up.  Raise your

4       right hand, everybody.  Okay.

5                  (Whereupon, the prospective jurors were sworn

6       by the clerk of the court, after which the proceedings

7       continued as follows:)

8                  PROSPECTIVE JURY:  Yes, I do.

9                  THE CLERK:  Thank you, folks.  Be seated.

10                 THE COURT:  Morning, everyone.

11                 PROSPECTIVE JURY:  Good morning.

12                 THE COURT:  Just a reminder again to please

13      make sure your phones are turned off and put away.

14                 My name is Miriam Cyrulnik.  This is the

15      Supreme Court of the State of New York, Kings County.

16      Welcome to Part 33.  We're about to begin the trial of

17      a criminal case.  The name of this case is called

18      People of the State of New York versus Lorenzo McGriff.

19      I am going to start by introducing the parties in this

20      case to you.

21                 First of all, representing the People,

22      Assistant District Attorney Lawrence Mottola.

23                 MR. MOTTOLA:  Good morning, everyone.

24                 PROSPECTIVE JURY:  Good morning.

25                 THE COURT:  And Assistant District Attorney

1     Stephanie D'Agostino.

2              MS. D'AGOSTINO:  Good morning.

3              PROSPECTIVE JURY:  Good morning.

4              THE COURT:  Let me introduce to you next

5     defense counsels.

6              Miss Jamie Burke.

7              MS. BURKE:  Good morning.

8              PROSPECTIVE JURY:  Good morning.

9              THE COURT:  And Mr. Benjamin Wittwer.

10             MR. WITTWER:  Good morning, everyone.

11             PROSPECTIVE JURY:  Good morning.

12             THE COURT:  And seated between them is

13    Mr. Lorenzo McGriff.

14             THE DEFENDANT:  Good morning.

15             PROSPECTIVE JURY:  Good morning.

16             THE COURT:  Is there anyone who knows either

17    of the assistant district attorneys, either defense

18    counsel, the defendant or me?  If so, please raise your

19    hand.

20             Indicating none.  Okay.

21             Now the following individuals may be called

22    as witnesses in this case or you may hear their names

23    through testimony.  Police Officer Caleb Louard, Police

24    Officer Anthony Isaac, Police Officer Jeffrey Boardman,

25    Sergeant William Huang, Duardy Paulino, Kadesha Guy,

28

Janelle Toribio, Ashley Reyes, Nicolette McGriff,

Dominique Boyd, Israel Colon, and Mohammed Kalifa.

(Whereupon, there was a pause in the

proceedings.)

MS. BURKE:  Your Honor, may we approach?

THE COURT:  Sure.

(Whereupon, there was a discussion held at

the bench off the record.)

THE COURT:  All right.  Thank you.

Let me just make one adjustment to one of the

names you heard.  The correct name is Nicole McGriff.

Please raise your right hand if you know any

of those people.

Indicating none.  Okay.

This case concerns an allegation that on or

about August 11, 2015, in the vicinity of 65 Court

Street, here in Kings County, that the defendant, with

the intent to cause serious physical injury to Mohammed

Kalifa, attempted to cause such injury to Mohammed

Kalifa by means of a knife.

Is there anyone who knows anything about this

case?

Indicating none.

Under our law, ladies and gentlemen, the

defendant in this matter, as every defendant in every

1          matter, is presumed innocent.  The indictment provides

2          a defendant with notice of the charges against him but

3          it is not proof of anything.  It is the burden of the

4          district attorney to prove the defendant's guilt beyond

5          a reasonable doubt.

6                    Is there anyone who cannot accept or follow

7          the fact that the defendant is presumed innocent and

8          the district attorney must prove the defendant's guilt

9          beyond a reasonable doubt?

10                   Indicating none.  All right.

11                   Is there anyone who cannot understand or

12         communicate in the English language?

13                   Some hands, although clearly understood

14         enough of the question.

15                   (Whereupon, there was laughter in the

16         courtroom.)

17                   THE COURT:  Let's have them.  If there's an

18         issue, let's have them line up, sergeant, officer.

19         Thank you.

20                   Counsels want to approach?

21                   (Whereupon, there was a discussion held at

22         the bench off the record.)

23                   THE COURT:  Have them have their jury cards

24         out, please, one at a time.

25                   (Whereupon, there was a discussion held at

1          the bench on the record.)

2                    THE COURT:  This is Khuram Majeed.

3                    Yes, sir.  What is your native language?

4                    PROSPECTIVE JUROR:  Excuse me?

5                    THE COURT:  What is your native language?

6                    PROSPECTIVE JUROR:  Urdu.

7                    THE COURT:  Mmm-hmm.

8                    How long are you in the United States?

9                    PROSPECTIVE JUROR:  15.

10                   THE COURT:  15 years.  Very nice.

11                   Are you working?

12                   PROSPECTIVE JUROR:  Yes.

13                   THE COURT:  What do you do?

14                   PROSPECTIVE JUROR:  Stockroom.

15                   THE COURT:  Did you go to school here?

16                   PROSPECTIVE JUROR:  No.

17                   THE COURT:  Did you study English here?

18                   PROSPECTIVE JUROR:  No.

19                   THE COURT:  How did you learn to speak?  You

20     are understanding me, I am understanding you.

21                   PROSPECTIVE JUROR:  I still don't understand.

22     Basic only.

23                   THE COURT:  You can?

24                   PROSPECTIVE JUROR:  I know basic.

25                   THE COURT:  You know basic.

1          PROSPECTIVE JUROR:  Yeah.

2          THE COURT:  Questions?

3          MS. BURKE:  No.

4          MR. MOTTOLA:  No.

5          THE COURT:  Okay.  Consent.

6          MR. MOTTOLA:  Yes.

7          MS. BURKE:  Yes.

8          THE COURT:  Thank you.

9          You can mark him excused for language.

10         Thank you.  We will send you downstairs, sir.

11    Thank you.

12         This is Farah Adam.

13         Yes, sir.

14         PROSPECTIVE JUROR:  Yes.

15         THE COURT:  Good morning.

16         PROSPECTIVE JUROR:  Good morning.

17         THE COURT:  Where are you from, Mr. Adam?

18         PROSPECTIVE JUROR:  From sudan.

19         THE COURT:  How long are you in the United

20    States?

21         PROSPECTIVE JUROR:  Like 11 years.

22         THE COURT:  11 years.

23         Are you working?

24         PROSPECTIVE JUROR:  Yes.

25         THE COURT:  What do you do?

1          PROSPECTIVE JUROR:  Taxi driver.

2          THE COURT:  Taxi driver.

3          And did you, how did you study for the test

4      to become a taxi driver?

5          PROSPECTIVE JUROR:  Yes.

6          THE COURT:  What is your native language?

7          PROSPECTIVE JUROR:  Arabic.

8          THE COURT:  Arabic.

9          Is the test given in Arabic?

10         PROSPECTIVE JUROR:  No.  English.

11         THE COURT:  In English.

12         PROSPECTIVE JUROR:  Yes.

13         THE COURT:  So you were able -- did you go to

14     school here?

15         PROSPECTIVE JUROR:  Yes.  A little bit.

16         THE COURT:  What does a little bit mean?

17         PROSPECTIVE JUROR:  Couple of months.

18         THE COURT:  Couple of months.  Uh-huh.

19         And are you, but you drive a cab for the City

20     of New York?

21         PROSPECTIVE JUROR:  Yeah.

22         THE COURT:  So you need to be able to read

23     street signs.  Need to be able to communicate with

24     passengers, correct?

25         PROSPECTIVE JUROR:  Yeah.

1          THE COURT:  So what is the issue with

2    language?

3          PROSPECTIVE JUROR:  Huh?

4          THE COURT:  What is your problem with

5    language?

6          PROSPECTIVE JUROR:  I know a little bit how

7    to talk to the passenger and, but not too much.

8          THE COURT:  Mmm-hmm.

9          Where did you go?  Did you go to school?

10         PROSPECTIVE JUROR:  Huh?

11         THE COURT:  Where did you go to school?

12         PROSPECTIVE JUROR:  Last year.

13         THE COURT:  Last year where?

14         PROSPECTIVE JUROR:  Fulton.  Brooklyn.

15         THE COURT:  Fulton Street.  Okay.

16         MR. MOTTOLA:  No questions.

17         MS. BURKE:  No questions.

18         THE COURT:  Okay.  Thank you.

19         Excuse him for language.

20         Thank you, sir.

21         PROSPECTIVE JUROR:  Okay.

22         THE COURT:  This is Lay Ping Leow.

23         PROSPECTIVE JUROR:  Yes.

24         THE COURT:  Okay.  Yes, Miss Leow.  Where are

25    you from?

1      PROSPECTIVE JUROR:  Malaysia.

2      THE COURT:  How long are you in the United

3  States?

4      PROSPECTIVE JUROR:  More than 30 years.

5      THE COURT:  30 years.  Wow.

6      PROSPECTIVE JUROR:  Long time.

7      THE COURT:  Long time.

8      Did you go to school here?

9      PROSPECTIVE JUROR:  No.

10      THE COURT:  How old are you?

11      PROSPECTIVE JUROR:  I am 54.

12      THE COURT:  Mmm-hmm.

13      So you came here in your 20's?

14      PROSPECTIVE JUROR:  Yes.

15      THE COURT:  Yes.

16      Are you working?

17      PROSPECTIVE JUROR:  No.  Not now.

18      THE COURT:  Not now.

19      What are you --

20      PROSPECTIVE JUROR:  I work for dental office

21  before I take the job, three years.

22      THE COURT:  You obviously, you've been living

23  in this country for over 30 years.

24      PROSPECTIVE JUROR:  Uh-huh.

25      THE COURT:  Where did you train to be a

1    dental assistant?

2                    PROSPECTIVE JUROR:  I just work for front

3    desk in Chinatown.

4                    THE COURT:  Uh-huh.  Right.

5                    And so what are you doing now?

6                    PROSPECTIVE JUROR:  Housewife.  Just doing

7    housework.

8                    THE COURT:  You have children?

9                    PROSPECTIVE JUROR:  I have two children.  I

10   live with my son.

11                   THE COURT:  Very nice.

12                   Where does he go to school?  Does he work?

13                   PROSPECTIVE JUROR:  Working.

14                   THE COURT:  Doing what?

15                   PROSPECTIVE JUROR:  Pharmacist.

16                   THE COURT:  He is a pharmacist.  Okay.  Very

17   nice.

18                   Where -- how did you learn to speak English?

19                   PROSPECTIVE JUROR:  I just, like, learn from

20   T.V.

21                   THE COURT:  Uh-huh.

22                   So you watch English T.V.?

23                   PROSPECTIVE JUROR:  Uh-huh.  I can't talk

24   simple English.  I understand little, not that well.

25                   THE COURT:  I see.  Thank you.  Have a seat.

1          PROSPECTIVE JUROR:  Here.

2          THE COURT:  Have a seat.

3          PROSPECTIVE JUROR:  Okay.

4          THE COURT:  For someone who has been here for

5     30 years and they, but if it's okay with you two, we

6     will just put her card aside and not call her.

7          MR. MOTTOLA:  Yes.

8          THE COURT:  Tell you 30 years and everybody

9     else has heard that, if that's okay with you.

10          MR. MOTTOLA:  Okay.

11          (Whereupon, the following took place on the

12     record in open court.)

13          THE COURT:  Okay.  Thank you.

14          Counsel, if you need a minute to speak with

15     your client.

16          MS. BURKE:  Yes.

17          (Whereupon, there was a pause in the

18     proceedings.)

19          MS. BURKE:  Thank you.

20          THE COURT:  Okay.

21          MS. BURKE:  Yes.  Thank you.

22          THE COURT:  You're welcome.

23          Thank you for your patience, ladies and

24     gentlemen.

25          Is there anyone who has a medical problem

VdV

1      that would prevent them from serving as a juror?

2            Indicating none.  Nice healthy group.  Nice

3      to hear.

4            (Whereupon, there was laughter in the

5      courtroom.)

6            THE COURT:  Okay.  Now as I said before, this

7      is a criminal trial.  And we need people who can make a

8      decision, either not guilty or guilty.  This includes

9      being able to deliberate with your fellow jurors.

10            Is there anyone who as a result of religious

11      or personal beliefs cannot render such a decision?

12            All right.  Counsels, come on up.

13            (Whereupon, there was a discussion held at

14      the bench on the record.)

15            THE COURT:  Good morning.  This is Kenneth

16      Brown.

17            Yes, Mr. Brown.

18            PROSPECTIVE JUROR:  Because of my Christian

19      belief, I do not think I could pass judgment on anyone.

20            THE COURT:  Well we have potential jurors

21      from all faiths who sit and able to.  What is the --

22            PROSPECTIVE JUROR:  I just have a belief that

23      I can't make an --

24            THE COURT:  You feel you can't make a

25      decision?

1          PROSPECTIVE JUROR:  I just can't.  No.

2          THE COURT:  Because?

3          PROSPECTIVE JUROR:  Because of my beliefs.

4          THE COURT:  You think.

5          PROSPECTIVE JUROR:  I cannot pass judgment on

6     anyone.

7          THE COURT:  Uh-huh.

8          PROSPECTIVE JUROR:  That's the bottom line.

9          THE COURT:  Mmm-hmm.  Okay.

10         Well now understand this is not a substitute

11    for sitting on a jury.  They send you downstairs to sit

12    on a civil case where you would still have to serve.

13         Do you understand that?

14         PROSPECTIVE JUROR:  Mmm-hmm.

15         THE COURT:  Okay.  All right.  Consent?

16         MR. MOTTOLA:  Yes.

17         THE COURT:  All right.  Thank you.  Send you

18    back downstairs.

19         Mark it civil.

20         PROSPECTIVE JUROR:  Hi.

21         THE COURT:  Just a minute.  This is Jacob

22    Plasse.

23         Yes, sir.

24         PROSPECTIVE JUROR:  Yeah.  I don't feel

25    comfortable being part of a case send another black man

1          to jail.

2                    THE COURT:  Mr. Plasse, first of all, no one

3          is, no one is saying anything at all about a decision,

4          about --

5                    PROSPECTIVE JUROR:  That's what deliberating.

6                    THE COURT:  No, I understand.  So tell me

7          what do you do for a living.

8                    PROSPECTIVE JUROR:  Composer.

9                    THE COURT:  You make decisions in your

10         everyday life, correct?

11                   PROSPECTIVE JUROR:  Yeah.

12                   THE COURT:  Okay.  And sometimes you have

13         occasion, I am sure, to decide if someone is being

14         truthful with you or not truthful with you, etcetera.

15                   Is that correct?

16                   PROSPECTIVE JUROR:  Yes.

17                   THE COURT:  Okay.

18                   PROSPECTIVE JUROR:  But my decisions don't

19         result in confiscations of someone's freedom.

20                   THE COURT:  Well listen.  There is no

21         question that this is not an easy task.  No one here is

22         going to tell you it's an easy task.  However, there

23         are obligations that we all have as citizens of this

24         country.  There aren't many of them.  There aren't many

25         of them.  And this is one of them.

1          PROSPECTIVE JUROR:  You asked if somebody

2     feels comfortable deliberating with other jurors with

3     about --

4          THE COURT:  I didn't say comfortable

5     deliberating, I said able to.

6          PROSPECTIVE JUROR:  Able to, yeah.  I won't.

7          THE COURT:  Really?  You already know you

8     won't be able to have an honest discussion about the

9     evidence or anything else?

10          PROSPECTIVE JUROR:  I won't be a part of

11     sending --

12          THE COURT:  You are refusing?

13          PROSPECTIVE JUROR:  No.  You can send me

14     there to do it, but I am already -- if you are asking

15     if I am going to be willing to deliberate with others

16     about that decision, that's going to be hard for me to

17     do.

18          THE COURT:  No one, as I am going repeat to

19     you again, Mr. Plasse, no one said this is easy.  No

20     one said this is easy.  But you don't get a pass just

21     for that.  As I said, there are certain obligations

22     that we will have.  Frankly, if you or a family member

23     were siting in that chair, you would expect to have a

24     jury of people who were going to listen and listen with

25     an open mind and consider it fairly.

1          PROSPECTIVE JUROR:  This is something with

2     judging him was fair, then I would be okay with that.

3               THE COURT:  Okay.  Have a seat.

4               This is Fernande Giordani.

5               Good morning.

6               PROSPECTIVE JUROR:  Good morning.

7               THE COURT:  Yes, ma'am.  What is your issue,

8     ma'am?

9               You need to speak up a little bit so the

10     court reporter can hear you.

11               PROSPECTIVE JUROR:  So you can, if you can...

12     if you have easier just defend, you can participate in

13     that, you have to step up.

14               THE COURT:  What is the issue?

15               PROSPECTIVE JUROR:  I am Jehovah's witness.

16               THE COURT:  Okay.  So we will mark your card

17     for a civil case.  We will send you back downstairs to

18     hear a case, a civil case, where they're arguing over

19     money or arguing things of that nature.  That, you can

20     sit on.  Okay.  Have a good day.

21               PROSPECTIVE JUROR:  Thank you.

22               THE COURT:  Good morning.

23               This is Elma Reeves.

24               How are you?

25               PROSPECTIVE JUROR:  I am doing fine.  You?

1          THE COURT:  Good.  Thank you.

2          What's the issue, Miss Reeves?

3          PROSPECTIVE JUROR:  My issue, I work for the

4     Department of Corrections and usually put me on civil

5     cases because I have interaction with inmates.  And we

6     had an issue where someone was having a criminal case,

7     defendant happened to be seen, there was a slashing.

8     From then they usually put me on civil cases.  I didn't

9     know I was coming up here.

10          THE COURT:  What do you do for DOC?

11          PROSPECTIVE JUROR:  I am a review specialist.

12     I handle grievances, so on.  I try to prevent

13     litigations.

14          THE COURT:  Okay.  Go ahead.  You got a

15     little ahead of us.  That's okay.  We will send you

16     down.

17          Mark it for civil.

18          Send you back downstairs.

19          PROSPECTIVE JUROR:  All right.  Thank you.

20          THE COURT:  Thank you.  Back down to the

21     central jury.

22          (Whereupon, there was a discussion held at

23     the bench off the record.)

24          THE COURT:  All right, ladies and gentlemen,

25     thank you again for your patience.

VdV

1          Let me talk to you a bit about scheduling.

2          We anticipate that this trial will be

3     finished by December 23.  Now we like to give everybody

4     the outside date.  It's my hope that we will proceed as

5     expeditiously, as quickly as possible and be done

6     earlier than that.  But I want to give you that outside

7     date sort of just in case.

8          Absent exceptional circumstances, the jury in

9     this case will not sit past 5 o'clock.  Otherwise --

10    unless you are otherwise instructed by me, you'd be

11    expected to be in the jury room by 9:45 promptly each

12    morning.

13         You will not be sequestered for this case.

14         Meaning as they used to do in years past

15    where they would keep the deliberating jury together

16    and send them to a hotel overnight.  We don't do that

17    anymore.

18         So I am going to ask in just a moment if

19    there is anyone who has a scheduling problem prevents

20    them from serving as a juror.  And but before you raise

21    your hands on this issue, I must advise you that in our

22    system, everyone must serve as a juror when they're

23    called to do so.  Although we realize this may not be

24    convenient for a variety of reasons, no one is exempt.

25    Lawyers do jury duty, Judges do jury duty.  I did my

1    jury duty last May.

2         To this point, all of our jobs are important.

3    It's never easy for an employee or employer to

4    accommodate jury service.  However, inability to miss

5    work for whatever reason is not sufficient to be

6    excused from jury duty.  You should be aware that by

7    law an employer cannot discriminate against an employee

8    due to their jury service.

9         And finally, anyone who intends to inform the

10   Court about travel plans that would prevent them from

11   serving on this case, you should have their proof ready

12   when they approach the bench.  If your proof is on your

13   cell phone, you can go ahead and open it to whatever

14   document you need to show the Court before you

15   approach.

16        So, if anyone has any scheduling issues, just

17   follow the officer's instructions.

18        Counsel, come on up.

19        (Whereupon, there was a discussion held at

20   the bench on the record.)

21        THE COURT:  Before we have them.

22        All right.  By the way, there was a question

23   from one of the potential jurors and just in terms of

24   scheduling.

25        We will not sit on Friday afternoon for those

1      of you for whom there is a religious observance or some

2      other issue, we will not work on Friday afternoon.

3                  (Whereupon, there was a discussion held at

4      the bench on the record.)

5                  THE COURT:  Okay.  This is Philippe

6      Majdalani.

7                  Yes, sir.

8                  PROSPECTIVE JUROR:  So I am actually leaving

9      town on Friday driving to Pennsylvania for, I start my

10     Christmas vacation on Friday.  My last day off is this

11     Thursday.  So Christmas vacation starts on Friday.

12                 THE COURT:  What do you do for a living?

13                 PROSPECTIVE JUROR:  I work in the

14     entertainment industry, postproduction for feature

15     films.  Out of the office from the 16th until the 3rd

16     of January.  I am back in the office on --

17                 THE COURT:  When did you get the jury duty

18     notice?

19                 PROSPECTIVE JUROR:  Two, three weeks ago.  A

20     week ago.

21                 THE COURT:  You knew it was just like a

22     couple of days before your vacation.

23                 PROSPECTIVE JUROR:  I thought it would be a

24     couple of days on the case.  I didn't know it was going

25     to be like a trial going for two weeks.

1          THE COURT: Sometimes trials do. Sometimes

2     trials do.

3          Any way for you to postpone leaving town?

4          PROSPECTIVE JUROR: No.

5          THE COURT: Have you postponed jury service

6     previously?

7          PROSPECTIVE JUROR: No.

8          THE COURT: Send you downstairs. You can

9     postpone your jury service for a time when you will be

10     free to serve.

11          PROSPECTIVE JUROR: How long will I have to

12     be available for?

13          THE COURT: If you are not selected for a day

14     or if you are picked, it could take two weeks. Some

15     trials take longer. I don't know. If you stay and you

16     are not selected, you are done. If you stay and you

17     are selected, you are here. So that's your choices.

18          THE CLERK: If you go down to try to postpone

19     your jury service, usually call you back within six

20     months.

21          PROSPECTIVE JUROR: So what do you suggest I

22     do?

23          THE COURT: I can't suggest anything to you,

24     Mr. Majdalani. I am just telling you that we will give

25     you the opportunity to postpone it if you rather, but

47

1          it may be an equally inconvenient time.  If you have

2          fixed plans, you cannot stay, by all means, you know,

3          consider postponing it.

4                    PROSPECTIVE JUROR:  Then what if I stay and I

5          don't get --

6                    THE COURT:  If you stay and you don't get

7          paneled, then you are done.  Could be today or at most

8          tomorrow and you will be done.  So, but again, if you

9          get picked you are here.

10                   PROSPECTIVE JUROR:  I see.  I don't know what

11         to do.

12                   THE COURT:  Well totally up to you.

13                   PROSPECTIVE JUROR:  So I have to decide right

14         now?

15                   THE COURT:  Yes.  Do you want me to talk to

16         these four people while you tell me what you want to

17         do, fine.

18                   PROSPECTIVE JUROR:  I will go back in the

19         line and think about it then.

20                   THE COURT:  Okay.  This is Xiang Dong Ye.

21         Yes.

22                   PROSPECTIVE JUROR:  I say --

23                   THE DEFENDANT:  Speak louder.

24                   PROSPECTIVE JUROR:  I say I cannot come every

25         day.

1          THE COURT: If are selected as a juror you

2    must be here every day.

3          PROSPECTIVE JUROR: It's not selected. Maybe

4    my English not.

5          THE COURT: I asked that before. You didn't

6    say a word. All of a sudden you think the trial must

7    be a week or more.

8          What is the issue? Why can't you come every

9    day?

10         PROSPECTIVE JUROR: Every day it's the

11   holiday half day.

12         THE COURT: The only half day is Friday.

13   Otherwise it's every day.

14         PROSPECTIVE JUROR: Oh. Um, my, I am a

15   bookkeeper and I, every day I have a lot of work.

16         THE COURT: I understand you have a lot of

17   work. So does everybody. Jury service is an

18   obligation. That's very important. And if you are

19   selected, you must be here. You must be here.

20         PROSPECTIVE JUROR: It's scheduled to every

21   day?

22         THE COURT: 9:45 to 5 o'clock. If we finish

23   a little bit earlier on a given day, you might be able

24   to leave a little early. If you are here, it's a full

25   day. The more we work each day, the shorter the trial

LORENZO MCGRIFF - JURY SELECTION

49

1     is.

2                PROSPECTIVE JUROR:  Because my company only

3     one --

4                THE COURT:  This is no either.  When you come

5     for, selected for a jury, you must be here.  That's all

6     there is to it.  All right.  Have a seat, please.

7                Come on up.

8                PROSPECTIVE JUROR:  Good morning.

9                THE COURT:  Good morning.

10               This is Tara Cascone.

11               Yes.

12               PROSPECTIVE JUROR:  Good morning.  So I --

13               THE COURT:  You have to speak up.

14               PROSPECTIVE JUROR:  I currently work as a New

15    York City Department of Education substitute panel.  I

16    am on assignment with one child.  I do go in every day

17    Monday through Friday.  But if I don't go in and I

18    don't get compensated because I am a substitute because

19    it's a lengthy case, I won't be getting compensated --

20               THE COURT:  This is not, frankly not that

21    lengthy.  So I mean this is not that lengthy a case, in

22    the scheme of things.  So, it's an obligation we all

23    have.  If you are not selected you, then you are done,

24    but if you are selected you must be here.  Okay.  Thank

25    you.

1           This is Francesco Stanisci.

2           Yes, sir.

3           PROSPECTIVE JUROR:  Hi.  I do apologize.  You

4    know, I am babysitting five days a week for my two

5    grandchildren.  That's the reason.  I know.  I

6    understand.

7           THE COURT:  Okay.

8           PROSPECTIVE JUROR:  My daughter, she is a

9    teacher and her husband works from 4 o'clock in the

10   morning until late in the afternoon, so there is nobody

11   else that they can take care of the kids.  And then

12   during some place else, you know, costs a lot of money.

13   I just retired three years ago.  That's all I am doing.

14          THE COURT:  Well, Mr. Stanisci, as I said,

15   everybody has to serve.

16          PROSPECTIVE JUROR:  I do understand.

17          THE COURT:  Okay.

18          PROSPECTIVE JUROR:  So there is nothing --

19          THE COURT:  Well I mean if I tell you you can

20   postpone your jury service for a length of time, it

21   will be the same issues.

22          PROSPECTIVE JUROR:  Not make a difference.

23          THE COURT:  Yes.  If you are here and you are

24   selected, then you must be here.  I cannot just

25   automatically excuse you.

VdV

1          PROSPECTIVE JUROR:  Okay.  I understand.

2    Thank you.

3          THE COURT:  Thank you.

4          PROSPECTIVE JUROR:  I am going to opt for the

5    postponement.

6          THE COURT:  All right.

7          PROSPECTIVE JUROR:  Question for you.  I do

8    have a trip planned in February out of town for a week.

9    If I do get called during that week --

10          THE CLERK:  You have to talk with them.

11          THE COURT:  You have to talk with them

12    downstairs.  Ultimately there comes a point they won't

13    allow you to continue to postpone it.  It's once or

14    twice usually.  I think it might be twice.  But if they

15    call you and you are there, there will come a point,

16    Mr. Majdalani, no matter how inconvenient it is you

17    have to serve.  So, you know, keep that in mind.  They

18    may try to accommodate you if you tell them

19    downstairs --

20          PROSPECTIVE JUROR:  Because --

21          THE COURT:  Like I said, you know, allow you

22    to postpone it.

23          Mark it downstairs for him to postpone it.

24          PROSPECTIVE JUROR:  Back to where I was?

25          THE COURT:  Yes.  Back downstairs.  Yes.

LORENZO MCGRIFF - JURY SELECTION

52

1          This is Jian Yao Chen.

2          Yes.

3          What is the scheduling issue, sir?

4          (Whereupon, there was a pause in the

5     proceedings.)

6                THE COURT:  Sir?

7                PROSPECTIVE JUROR:  Yes.

8                THE COURT:  What is the problem?

9                PROSPECTIVE JUROR:  No English.

10               THE COURT:  When I asked before, sir, look at

11    me, please.  When I asked before, you did not come up

12    and ask the other people about English.  You didn't say

13    anything.

14               PROSPECTIVE JUROR:  I didn't understand.

15               THE COURT:  How long are you in the United

16    States?

17               PROSPECTIVE JUROR:  Huh?

18               THE COURT:  How long are you here in America?

19               PROSPECTIVE JUROR:  Uh, how long, 25.

20               THE COURT:  25 years.  Oh, that's nice.

21    That's fine.

22               PROSPECTIVE JUROR:  Thank you.

23               THE COURT:  And did you go to school here?

24               PROSPECTIVE JUROR:  Yeah.

25               THE COURT:  Where did you go to school?

1          PROSPECTIVE JUROR:  Yeah, school.

2          THE COURT:  Have a seat.

3          Just leave the card to the side.

4          Have a seat.

5          This is Yung Hsien Ng Tam.

6          Yes, ma'am.

7          PROSPECTIVE JUROR:  I have three issues.

8          First one, I am not traveling.  My supervisor

9    is traveling.  He is leaving on December 19.  I usually

10   take over her duties.

11         THE COURT:  So?  That's not an issue.  Go

12   ahead.

13         PROSPECTIVE JUROR:  Okay.  Second thing is

14   that I am paid per diem basis.  Really long trial.

15   That's difficult.

16         THE COURT:  Appreciate it's really not that

17   long a trial.

18         PROSPECTIVE JUROR:  Third one is that I am in

19   lieu of changing jobs, I give them two week notice

20   while I am in work.

21         THE COURT:  Your employer cannot discriminate

22   against you if you change jobs.  It requires a letter

23   from the Court saying that you are seated during, I am

24   happy to provide it.

25         PROSPECTIVE JUROR:  Okay.

LORENZO MCGRIFF - JURY SELECTION

54

1          THE COURT:  Perfect.  Thank you.

2          PROSPECTIVE JUROR:  Good morning, everyone.

3          THE COURT:  Good morning.

4          This is Alexander Marte.

5          Yes, sir.

6          PROSPECTIVE JUROR:  Yes.  I already know this

7     is one of my obligations.  I want to ensure whether

8     this is a possible reason for me possibly postpone my

9     date.  I have finals with my grad school, five classes,

10    and it's last day of classes December 20.  Wondering

11    whether that will be --

12         THE COURT:  Have you postponed your service

13    previously?

14         PROSPECTIVE JUROR:  No.

15         THE COURT:  How come you didn't think to

16    postpone it when you saw the date to be here?

17         PROSPECTIVE JUROR:  Overwhelmed with

18    fellowship and grad school.

19         THE COURT:  What are you studying?

20         PROSPECTIVE JUROR:  Urban planning over at

21    NYU.

22         THE COURT:  Well here's the deal.  If you

23    want an opportunity to postpone it, let you do that.

24    But apparently no matter when I do, whenever date you

25    set, you are still going to be in school.  Still be an

VdV

1      issue.

2                    PROSPECTIVE JUROR:  Rather have it be in the

3      beginning part of the school year.

4                    THE COURT:  Can't guarantee it.  I can't

5      guarantee when or between three and six months down the

6      road.  Could be when you have finals or interviews.  I

7      have no idea.  Give you an opportunity to postpone it.

8      But like I say, there's always a risk for the last time

9      after which they don't let you postpone it, just as

10     inconvenient or more so.  It's up to you.

11                   PROSPECTIVE JUROR:  Sure.  I will do it right

12     now.

13                   THE COURT:  He will postpone it.

14                   THE CLERK:  Okay.  Central jury room on the

15     second floor.

16                   THE COURT:  Thank you.

17                   This is Melina Grant.

18                   Yes, ma'am.

19                   PROSPECTIVE JUROR:  My only scheduling

20     problem would be pickup for my children for next week.

21     They go to school until the 23rd of December and I

22     usually pick them up in the afternoon.  My husband is

23     able to visit his sick mom in Trinidad.

24                   THE COURT:  Maybe you can have a neighbor?

25                   PROSPECTIVE JUROR:  I don't have anybody.

LORENZO MCGRIFF - JURY SELECTION

56

1      THE COURT:  No children?  Don't have friends

2  they could stay with couple of hours after school?

3      PROSPECTIVE JUROR:  Not that I know right

4  now.

5      THE COURT:  Don't know want to tell you.

6      PROSPECTIVE JUROR:  So I will have to try to

7  make type of arrangements.

8      THE COURT:  If you are selected as a juror

9  you have to be here.  If you stay, you are not

10  selected, then you are finished either today or

11  tomorrow.

12      PROSPECTIVE JUROR:  Okay.

13      THE COURT:  Okay.

14      PROSPECTIVE JUROR:  Good morning.

15      THE COURT:  Good morning.

16      Matthew Moran.

17      Yes, sir.

18      PROSPECTIVE JUROR:  My situation is child

19  care situation.  I am self-employed.  Next week my

20  daughter is not in school.  Supposed to be taking care

21  of her all day for the, you know, Monday to Friday.

22      THE COURT:  How old is she?

23      PROSPECTIVE JUROR:  Six.

24      THE COURT:  Where is school -- she goes to

25  public school?

1          PROSPECTIVE JUROR:  She does not.

2          THE COURT:  Well I mean, who else normally

3     takes care of her?

4          PROSPECTIVE JUROR:  Person normally takes

5     care of her in a pinch, freelance position.  I travel.

6     Take a full-time job.  We don't have anyone to take

7     care of her during the day.

8          THE COURT:  What school does she go to that

9     ends so early?

10          PROSPECTIVE JUROR:  Packer.

11          Before you make assumptions about --

12          THE COURT:  Mr. Moran, I don't make

13     assumptions about anything.  And I respectfully got to

14     tell you that is not, that's kind of judgmental on your

15     part.

16          Question is, is there any family member who

17     can help you out or friend?

18          PROSPECTIVE JUROR:  I don't have someone like

19     this.  Normally my mother-in-law comes from Philly.

20     She is old.  Can't drive right now.  I was going to go

21     with my daughter to take care of her.

22          THE COURT:  Who?  Is there a spouse, partner

23     in your life?

24          PROSPECTIVE JUROR:  Yeah.  I have a spouse.

25          THE COURT:  And your spouse is not able?

LORENZO MCGRIFF - JURY SELECTION

58

1        PROSPECTIVE JUROR:  School teacher, public

2    school, so she is on that week.

3        THE COURT:  Well so you have a choice of if

4    you want an opportunity to postpone your jury service

5    for a different time or you want --

6        PROSPECTIVE JUROR:  That would be much

7    pleasurable.

8        THE COURT:  Have you postponed it previously?

9        PROSPECTIVE JUROR:  Maybe 20 years ago, not

10   in --

11       THE COURT:  Keep in mind whenever they pick

12   you there will be, come a point whether it's easy or

13   not, you will have to be able to serve.

14       PROSPECTIVE JUROR:  I understand.  It's an

15   exceptional week.  That's all.

16       THE COURT:  Okay.  Thank you.  You can go

17   downstairs.

18       PROSPECTIVE JUROR:  Thank you.

19       (Whereupon, the following took place on the

20   record in open court.)

21       THE COURT:  All right.  Thank you all for

22   your patience.

23       The folks in the jury box, just going to ask

24   you to grab your things and step out.  Just wait to the

25   side.  You didn't guarantee that you were being picked

1    just 'cause you were sitting there.

2            PROSPECTIVE JUROR:  Seats are more

3    comfortable.

4            THE COURT:  You might be back there in just a

5    moment.  So we don't know yet.

6            So while they're doing that, we're now going

7    to select at random some prospective jurors to sit in

8    the jury box so that the Court and the attorneys can

9    ask some questions to help you determine -- no, ma'am,

10   not that way -- to help us determine who can be a fair

11   juror.

12           It's not anyone's intention to embarrass you

13   or to pry in your private lives, but we are seeking

14   fair and impartial jurors.  So please be honest in your

15   answers.  All right.

16           And for those of you who are not called, I

17   will ask you to pay attention so if you are called you

18   will understand the kinds of questions that we are

19   asking.  All right.

20           Just a moment you are going to hear the clerk

21   call out your name, some names.  And please, if you

22   hear your name while you are standing up, just say

23   here, got it.  Something so we know you heard us.

24           All right.  Grab your things, your coats,

25   etcetera, and follow the sergeant's instructions.

1    Thank you.

2              THE CLERK:  Okay.  In seat number one we have

3    Natalie Nikolayeva.

4              Did I say the last name right?

5              PROSPECTIVE JUROR:  Yes.  Nikolayeva.

6              THE CLERK:  Okay.  Please step up.

7              Natalie, N-A-T-A-L-I-E, Nikolayeva,

8    N-I-K-O-L-A-Y-E-V-A.

9              Seat number two Lena Tom.

10             First name L-E-N-A, last name T-O-M.

11             PROSPECTIVE JUROR:  Here.

12             THE CLERK:  Seat number three, Stephen Kelly.

13             PROSPECTIVE JUROR:  Here.

14             THE CLERK:  First name S-T-E-P-H-E-N, Kelly

15   K-E-L-L-Y.

16             And seat number four, Morley Bland.  Please

17   step up.

18             First name M-O-R-L-E-Y, last name B-L-A-N-D.

19             Seat number five, Sean McGuinness.

20             PROSPECTIVE JUROR:  Here.

21             THE CLERK:  First name S-E-A-N, McGuinness

22   M-C-G-I-N-N-I-S.

23             Seat number six, Luis Diaz.

24             First name L-U-I-S, D-I-A-Z.

25             Seat number seven, Leena Patel.

1          First name L-E-E-N-A, P-A-T-E-L.

2          Seat number eight, Jonathan Wilson.

3          PROSPECTIVE JUROR:  Right here.

4          THE CLERK:  Thank you.

5          First name J-O-N-A-T-H-A-N, W-I-L-S-O-N.

6          Seats number nine, Bernard Baptiste.

7          First name B-E-R-N-A-R-D, B-A-P-T-I-S-T-E.

8          Seat number 10, Jacqueline Fung.

9   J-A-C-Q-U-E-L-I-N-E, F-U-N-G.

10          Seat number 11, Khandija Barrow.  First name

11   K-H-A-N-D-I-J-A, B-A-R-R-O-W.

12          Seat number 12, Ashley Dunn.  A-S-H-L-E-Y,

13   D-U-N-N.

14          THE COURT:  You could have stayed there.

15          PROSPECTIVE JUROR:  Yeah.

16          THE CLERK:  Seat number 13, Alexander

17   Gladskiy.  Last name Gladskiy.  G-L-A-D-S-K-I-Y,

18   A-L-E-X-A-N-D-E-R.

19          Seat number 14, David Johnson.  Last name

20   J-O-H-N-S-O-N, first name David.

21          PROSPECTIVE JUROR:  I am back.

22          THE COURT:  You are back.  Comfortable chair.

23          THE CLERK:  Seat number 15, Brian Bennett.

24          PROSPECTIVE JUROR:  Here.

25          THE CLERK:  First name B-R-I-A-N,

LORENZO MCGRIFF - JURY SELECTION

62

1       B-E-N-N-E-T-T.

2               And in seat number 16, Chanel Brown.

3       C-H-A-N-E-L, B-R-O-W-N.

4               THE COURT:  Okay.  Everybody take a deep

5       breath.  I am going to ask some questions of each of

6       you to start.  Just reminder.  Obviously I have the

7       microphone.  It's really easy for me to be heard.  You

8       unfortunately don't.  So I will ask you all when you

9       answer, nice and loud, please.  As loudly as you can so

10      they can hear you in the far corners of the room.

11              All right.  Let's start with you,

12      Miss Nikolayeva.  Good morning.

13              PROSPECTIVE JUROR:  Good morning.

14              THE COURT:  What part of Brooklyn do you live

15      in?

16              PROSPECTIVE JUROR:  South Brooklyn.

17              THE COURT:  What?

18              PROSPECTIVE JUROR:  South Brooklyn.

19              THE COURT:  South Brooklyn.

20              How long have you lived in Brooklyn?

21              PROSPECTIVE JUROR:  For 12 years.

22              THE COURT:  Okay.  Your marital status?

23              PROSPECTIVE JUROR:  I have a partner.

24              THE COURT:  Okay.  Any children?

25              PROSPECTIVE JUROR:  Yes, I do have a

VdV

1    daughter.

2              THE COURT:  Okay.  And are you currently

3    working?

4              PROSPECTIVE JUROR:  Yes, I am.

5              THE COURT:  What do you do?

6              PROSPECTIVE JUROR:  I am a office manager in

7    a medical practice.

8              THE COURT:  Okay.  And is your partner

9    working?

10             PROSPECTIVE JUROR:  Yes, he is.

11             THE COURT:  Doing what?

12             PROSPECTIVE JUROR:  He is doing construction.

13             THE COURT:  Okay.  Thank you.

14             Miss Tom, hello.

15             PROSPECTIVE JUROR:  Hi.

16             THE COURT:  What part of Brooklyn do you live

17   in?

18             PROSPECTIVE JUROR:  Gravesend.

19             THE COURT:  Okay.  And your marital status?

20             PROSPECTIVE JUROR:  Single.

21             THE COURT:  Any children?

22             PROSPECTIVE JUROR:  No.

23             THE COURT:  Are you currently working or in

24   school?

25             PROSPECTIVE JUROR:  Yes, working.

1              THE COURT:  Working.  What do you do?

2              PROSPECTIVE JUROR:  I am an affiliate manager

3     for mobile advertising firm.

4              THE COURT:  Okay.  Thank you.

5              Mr. Kelly, how are you?

6              PROSPECTIVE JUROR:  Hi.

7              THE COURT:  What part of Brooklyn is home?

8              PROSPECTIVE JUROR:  Outside Clinton Hill.

9              THE COURT:  Clinton Hill.

10             How long are you living in Brooklyn?

11             PROSPECTIVE JUROR:  About one year.

12             THE COURT:  Where were you before that?

13             PROSPECTIVE JUROR:  Maryland.

14             THE COURT:  Maryland.

15             Miss Tom, I forgot to ask you how long you

16    are living in Brooklyn.

17             PROSPECTIVE JUROR:  All my life.

18             THE COURT:  Okay.  And, Mr. Kelly, your

19    marital status?

20             PROSPECTIVE JUROR:  Single.

21             THE COURT:  Any children?

22             PROSPECTIVE JUROR:  No.

23             THE COURT:  Okay.  Are you currently working?

24             PROSPECTIVE JUROR:  Yes.

25             THE COURT:  What do you do?

Case 1:21-cv-00703-AMD-LB   Document 6-2   Filed 04/15/21   Page 65 of 232 PageID #: 281

1          PROSPECTIVE JUROR:  So my official title is

2     buying program.  I write down bonds.

3          THE COURT:  Do you have a science background?

4          PROSPECTIVE JUROR:  Yes.

5          THE COURT:  In chemistry?

6          PROSPECTIVE JUROR:  Biology.

7          THE COURT:  Thank you very much.

8          By the way, in the work that you do, is that

9     for a private company?

10          PROSPECTIVE JUROR:  NYU Medical Center.

11          THE COURT:  Do you work with NYU?  Do you

12     ever do any analytical work for any law enforcement

13     agencies, the Office of the Chief Medical Examiner,

14     anything of that nature?

15          PROSPECTIVE JUROR:  Not for law enforcement.

16     No.

17          THE COURT:  Okay.  Thank you.

18          Miss Bland, how are you?

19          PROSPECTIVE JUROR:  Fine.  Thank you.

20          THE COURT:  Good.

21          What part of Brooklyn do you live in?

22          PROSPECTIVE JUROR:  Brooklyn Heights.

23          THE COURT:  How long are you in Brooklyn?

24          PROSPECTIVE JUROR:  44 years.

25          THE COURT:  And your marital status?

1        PROSPECTIVE JUROR:  I am married.

2        THE COURT:  You have children?

3        PROSPECTIVE JUROR:  One.

4        THE COURT:  And are you currently working?

5        PROSPECTIVE JUROR:  I am retired.

6        THE COURT:  Always restrain myself from

7    saying lucky.  Pops out of my mouth.

8            (Whereupon, there was laughter in the

9    courtroom.)

10        THE COURT:  What did you do before you

11   retired medical?

12        PROSPECTIVE JUROR:  Well I worked in

13   corporate interior design.  I also worked in catering

14   and had a take-out food store.

15        THE COURT:  All right.  Is your spouse

16   currently working?

17        PROSPECTIVE JUROR:  He is an architect.

18        THE COURT:  Okay.  How about your, is it son

19   or daughter?

20        PROSPECTIVE JUROR:  Daughter.

21        THE COURT:  Working in law enforcement or the

22   law?

23        PROSPECTIVE JUROR:  No.

24        THE COURT:  Okay.  Thank you.

25        Mr. McGuinness, good morning.

1          PROSPECTIVE JUROR:  Good morning.

2          THE COURT:  Still morning.

3          What part of Brooklyn?

4          PROSPECTIVE JUROR:  Williamsburg.

5          THE COURT:  How long are you in Brooklyn?

6          PROSPECTIVE JUROR:  My entire life.

7          THE COURT:  Okay.  And your marital status?

8          PROSPECTIVE JUROR:  Single.

9          THE COURT:  Any kids?

10          PROSPECTIVE JUROR:  One daughter.

11          THE COURT:  And are you currently working?

12          PROSPECTIVE JUROR:  Right now, no.

13          THE COURT:  Okay.  What are you trained to do

14  or interested in doing?

15          PROSPECTIVE JUROR:  Culinary arts.

16          THE COURT:  Okay.  The two of you have to

17  have a conversation.

18          (Whereupon, there was laughter in the

19  courtroom.)

20          THE COURT:  Okay.  Thank you.

21          Mr. Diaz, how are you, sir?

22          PROSPECTIVE JUROR:  Good.  How are you?

23          THE COURT:  Good.

24          What part of Brooklyn do you live in?

25          PROSPECTIVE JUROR:  Midwood.

1          THE COURT:  Midwood.  Okay.

2          How long are you in Brooklyn?

3          PROSPECTIVE JUROR:  14 years.

4          THE COURT:  And your marital status?

5          PROSPECTIVE JUROR:  Married.  Yes.

6          THE COURT:  Any children?

7          PROSPECTIVE JUROR:  Three children.

8          THE COURT:  Three.

9          Are you currently working?

10         PROSPECTIVE JUROR:  Yes.

11         THE COURT:  What do you do?

12         PROSPECTIVE JUROR:  Superintendent.

13         THE COURT:  Okay.  Is your spouse, your wife

14    working?

15         PROSPECTIVE JUROR:  Not right now.

16         THE COURT:  What did she do?

17         PROSPECTIVE JUROR:  She used to be, she work

18    in the salon like a stylist.

19         THE COURT:  A stylist.  Okay.

20         PROSPECTIVE JUROR:  Yes.

21         THE COURT:  Okay.  Thank you.

22         Miss Patel, hello.

23         PROSPECTIVE JUROR:  Hi.

24         THE COURT:  What part of Brooklyn do you live

25    in?

LORENZO MCGRIFF - JURY SELECTION

1    PROSPECTIVE JUROR:  Near Sunset Park.

2    THE COURT:  How long you living in Brooklyn?

3    PROSPECTIVE JUROR:  23 years.

4    THE COURT:  And your marital status?

5    PROSPECTIVE JUROR:  Married.

6    THE COURT:  Any kids?

7    PROSPECTIVE JUROR:  Two.

8    THE COURT:  Okay.  Are you currently working?

9    PROSPECTIVE JUROR:  Yes.

10   THE COURT:  What do you do?

11   PROSPECTIVE JUROR:  Finance in Citibank.

12   THE COURT:  Okay.  And is your spouse

13   working?

14   PROSPECTIVE JUROR:  Yes.

15   THE COURT:  Doing what?

16   PROSPECTIVE JUROR:  He is an engineer.

17   THE COURT:  Okay.  Thank you.

18   Mr. Wilson, how are you?

19   PROSPECTIVE JUROR:  I am well.  Thank you.

20   THE COURT:  Good.

21   What part of Brooklyn is home?

22   PROSPECTIVE JUROR:  Bed-Stuy.

23   THE COURT:  How long are you living in

24   Brooklyn?

25   PROSPECTIVE JUROR:  Three years.

70

1      THE COURT:  Okay.  Before that?

2      PROSPECTIVE JUROR:  I was in Maryland.

3      THE COURT:  Okay.  And your marital status?

4      PROSPECTIVE JUROR:  Single.

5      THE COURT:  Any children?

6      PROSPECTIVE JUROR:  No kids.

7      THE COURT:  Are you currently working?

8      PROSPECTIVE JUROR:  Yes.  Web designer.

9      THE COURT:  Okay.  Thank you.

10     Mr. Baptiste, how are you?

11     PROSPECTIVE JUROR:  Fine.  Thank you.

12     THE COURT:  Good.

13     What part of Brooklyn is home?

14     PROSPECTIVE JUROR:  East Flatbush.

15     THE COURT:  How long are you in Brooklyn?

16     PROSPECTIVE JUROR:  30 years.

17     THE COURT:  And your marital status?

18     PROSPECTIVE JUROR:  Single.

19     THE COURT:  Single.

20     Any children?

21     PROSPECTIVE JUROR:  Two.

22     THE COURT:  Are you currently working?

23     PROSPECTIVE JUROR:  Yes.

24     THE COURT:  What do you do, sir?

25     PROSPECTIVE JUROR:  Construction.

1           THE COURT:  Okay.  Thank you.

2           Miss Fung, good morning.

3           PROSPECTIVE JUROR:  Good morning.

4           THE COURT:  What part of Brooklyn?

5           PROSPECTIVE JUROR:  Midwood section.

6           THE COURT:  How long are you in Brooklyn?

7           PROSPECTIVE JUROR:  24 years.

8           THE COURT:  And your marital status?

9           PROSPECTIVE JUROR:  Single.

10          THE COURT:  Children?

11          PROSPECTIVE JUROR:  No.

12          THE COURT:  Okay.  Are you currently

13    employed?

14          PROSPECTIVE JUROR:  Yes.  I am a market

15    research associate for a credit rating agency.

16          THE COURT:  Is that something that would have

17    required a finance study background of, something of

18    that nature?

19          PROSPECTIVE JUROR:  Yes.

20          THE COURT:  Okay.  I am old.  I have to just,

21    takes me a little to checkup if they talk about

22    anything having to do with the web, things of that

23    nature of, to sort of play catch up a little bit.

24    Thank you.

25          PROSPECTIVE JUROR:  Thank you.

LORENZO MCGRIFF – JURY SELECTION

72

1          THE COURT:  Miss Barrow, good morning.

2          PROSPECTIVE JUROR:  Good morning.

3          THE COURT:  What part of Brooklyn do you live

4    in?

5          PROSPECTIVE JUROR:  East New York.

6          THE COURT:  And how long are you living in

7    Brooklyn?

8          PROSPECTIVE JUROR:  Four years.

9          THE COURT:  Where were you before that?

10         PROSPECTIVE JUROR:  The Bronx.

11         THE COURT:  The Bronx.  Okay.  We allow cross

12   borough, you know.

13         (Whereupon, there was laughter in the

14   courtroom.)

15         THE COURT:  What is your marital status?

16         PROSPECTIVE JUROR:  Single.

17         THE COURT:  Any children?

18         PROSPECTIVE JUROR:  No.

19         THE COURT:  Okay.  And are you currently

20   working?

21         PROSPECTIVE JUROR:  Yes, ma'am.

22         THE COURT:  What do you do?

23         PROSPECTIVE JUROR:  Nutrition assistant at

24   New York-Presbyterian Hospital.

25         THE COURT:  Okay.  Thank you.

1          Miss Dunn, hi again.

2          What part of Brooklyn do you live in?

3          PROSPECTIVE JUROR:  Prospect Park south.

4          THE COURT:  How long are you living in

5     Brooklyn?

6          PROSPECTIVE JUROR:  Five years.

7          THE COURT:  Okay.  Before that?

8          PROSPECTIVE JUROR:  Queens.

9          THE COURT:  Okay.  And your marital status?

10          PROSPECTIVE JUROR:  Single.

11          THE COURT:  Single.

12          (Whereupon, there was laughter in the

13     courtroom.)

14          THE COURT:  Okay.  Any children?

15          PROSPECTIVE JUROR:  No.  Thank you.

16          THE COURT:  Okay.  No.  Thank you.

17          All right.  And are you currently working or

18     in school?

19          PROSPECTIVE JUROR:  I am working.  I am

20     senior analyst for a retail company.

21          THE COURT:  Here I am asking if you are still

22     in school.  Okay.  Thank you.

23          Mr. Gladskiy, hello.

24          PROSPECTIVE JUROR:  Good morning.

25          THE COURT:  What part of Brooklyn do you live

1  in?

2          PROSPECTIVE JUROR:  Midwood.

3          THE COURT:  How long you living in Brooklyn?

4          PROSPECTIVE JUROR:  Seven years.

5          THE COURT:  Before that?

6          PROSPECTIVE JUROR:  I just came to the U.S.

7  seven years ago.  From Uzbekistan.

8          THE COURT:  And your marital status?

9          PROSPECTIVE JUROR:  I am married.

10         THE COURT:  Any children?

11         PROSPECTIVE JUROR:  No.

12         THE COURT:  Okay.  Are you currently working?

13         PROSPECTIVE JUROR:  Yes.

14         THE COURT:  What do you do?

15         PROSPECTIVE JUROR:  System engineer.

16         THE COURT:  And is your spouse working?

17         PROSPECTIVE JUROR:  No.  She is a student.

18         THE COURT:  Student.  Where?

19         PROSPECTIVE JUROR:  Brooklyn College.

20         THE COURT:  Okay.  All right.  Thank you.

21         Mr. Johnson, hello again.

22         PROSPECTIVE JUROR:  Good morning.

23         THE COURT:  What part of Brooklyn is home?

24         PROSPECTIVE JUROR:  Sunset Park.

25         THE COURT:  How long are you in Brooklyn?

LORENZO MCGRIFF - JURY SELECTION

75

1          PROSPECTIVE JUROR:  Since I was born.

2          THE COURT:  Oh, okay.  Lifer like me.

3          And your marital status?

4          PROSPECTIVE JUROR:  Married.

5          THE COURT:  Any children?

6          PROSPECTIVE JUROR:  One child.

7          THE COURT:  Okay.  Are you currently working?

8          PROSPECTIVE JUROR:  No, ma'am.  Retired.

9          THE COURT:  Retired.  And what did you do

10    before you retired?

11          PROSPECTIVE JUROR:  I retired as a lieutenant

12    from the New York City Fire Department.

13          THE COURT:  And is your spouse currently

14    working?

15          PROSPECTIVE JUROR:  She is.

16          THE COURT:  What does she do?

17          PROSPECTIVE JUROR:  School crossing guard.

18          THE COURT:  Okay.  Thank you very much.

19          Mr. Bennett, hello.

20          PROSPECTIVE JUROR:  Hello.

21          THE COURT:  What part of Brooklyn do you live

22    in?

23          PROSPECTIVE JUROR:  Flatbush.

24          THE COURT:  How long are you in Brooklyn?

25          PROSPECTIVE JUROR:  All my life.

1          THE COURT:  And your marital status, sir?

2          PROSPECTIVE JUROR:  Single.

3          THE COURT:  Any children?

4          PROSPECTIVE JUROR:  No children.

5          THE COURT:  Okay.  Are you currently working?

6          PROSPECTIVE JUROR:  Yes.

7          THE COURT:  What did you do?

8          PROSPECTIVE JUROR:  I am an actor.

9          THE COURT:  You are an actor.

10         PROSPECTIVE JUROR:  Yes.

11         THE COURT:  Stage, film, anything?

12         PROSPECTIVE JUROR:  Yeah, television.

13         THE COURT:  Okay.  Interesting job.

14    Difficult, I am sure.

15         PROSPECTIVE JUROR:  Yeah.

16         THE COURT:  Requires a lot of perseverance to

17    stick with that.

18         PROSPECTIVE JUROR:  Yes.

19         THE COURT:  Okay.  Miss Brown, hi.

20         What part of Brooklyn is home for you?

21         PROSPECTIVE JUROR:  Bensonhurst.

22         THE COURT:  And how long have you lived in

23    Brooklyn?

24         PROSPECTIVE JUROR:  My whole life.

25         THE COURT:  And your marital status?

1          PROSPECTIVE JUROR:  Single.

2          THE COURT:  Single.

3          Any children?

4          PROSPECTIVE JUROR:  No.

5          THE COURT:  Okay.  Are you currently working?

6          PROSPECTIVE JUROR:  Yes.

7          THE COURT:  What do you do?

8          PROSPECTIVE JUROR:  I am a manager at a shoe

9    store.

10          THE COURT:  Okay.  Thank you, all.

11          All right.  So I am going to ask the next set

12    of questions of all of you as a group.  If the answer

13    is yes, raise your hand.  If there's something that you

14    would like to address privately, let me know.  We will

15    have you come up and speak with me and the lawyers up

16    here at the bench.

17          Have any of you or any members of your family

18    ever worked for the New York City Police Department,

19    the court system, or the District Attorney's Office?

20          Okay.  Miss Patel.

21          PROSPECTIVE JUROR:  Yes.  My husband.  He is

22    an engineer.

23          THE COURT:  With?

24          PROSPECTIVE JUROR:  NYPD.

25          THE COURT:  Okay.  Will in his work -- how

1      long has he been with P.D.?

2                PROSPECTIVE JUROR:  15, 12 to 15.  I can't

3      remember.

4                THE COURT:  Was he ever a patrol officer or

5      anything of that nature?

6                PROSPECTIVE JUROR:  No.  He is engineer.

7                THE COURT:  But in his work does he have

8      regular contact with police officers?

9                PROSPECTIVE JUROR:  I would say so.  I am not

10     sure.

11               THE COURT:  Okay.  Is there anything about

12     the fact that he works as an engineer with P.D.,

13     anything about that by itself that would make it hard

14     for you to be fair and impartial here?

15               PROSPECTIVE JUROR:  No.

16               THE COURT:  Okay.  Thank you.

17               Mr. Johnson, I saw your hand up.

18               PROSPECTIVE JUROR:  School crossing guards

19     are under the police department.  And my brother-in-law

20     is a retired sergeant from the police department.

21               THE COURT:  Okay.  Do you discuss work with

22     both with your spouse and with your brother-in-law?

23               PROSPECTIVE JUROR:  My wife likes to discuss

24     her work.

25               THE COURT:  Okay.  In her work does she have

1      regular contact with uniformed officers with other

2      police officers?

3              PROSPECTIVE JUROR:  She is under a sergeant

4      at the precinct.

5              THE COURT:  Okay.  Is there anything either

6      in the fact of their employment where they work,

7      etcetera, that would make, by itself make it hard for

8      you to be fair and impartial?

9              PROSPECTIVE JUROR:  I don't think so.

10             THE COURT:  Okay.  Thank you.

11             Anybody else?

12             Because this is a criminal case there are

13     police officers involved.  And there will be testimony

14     from police officers as well as civilians.

15             In a trial, a police officer is just like any

16     other witness.  And their testimony gets no more

17     weight, no less weight than any other witness who might

18     be called.

19             There anyone among you who could not treat a

20     police officer just like any other witness?  Okay.  All

21     right.

22             Have any of you or any members of your family

23     ever been the victim of a crime?

24             Okay.  Miss Bland.

25             PROSPECTIVE JUROR:  I've had my wallet taken

LORENZO MCGRIFF - JURY SELECTION

80

1       out of my purse twice.

2               THE COURT:  Was it reported to the police?

3               PROSPECTIVE JUROR:  In one instance, yes.

4               THE COURT:  Anybody apprehended?

5               PROSPECTIVE JUROR:  No.

6               THE COURT:  Okay.  Is there anything in

7       either of those experiences or the fact that nobody was

8       apprehended or anything else about it that would affect

9       your ability to be fair and impartial here?

10              PROSPECTIVE JUROR:  No.

11              THE COURT:  Okay.  Miss Nikolayeva.

12              PROSPECTIVE JUROR:  I was attacked last year

13      on the street.

14              THE COURT:  I am sorry to hear that.  Are you

15      comfortable speaking.

16              PROSPECTIVE JUROR:  Yes.  Of course.

17              THE COURT:  Okay.  Were you injured?

18              PROSPECTIVE JUROR:  No.  Just few scratches.

19      It was...

20              THE COURT:  Was this a stranger or someone

21      you knew?

22              PROSPECTIVE JUROR:  It was a stranger.  She

23      was a woman under influence of drugs.  She just tried

24      to grab my hair.  I had to hit back and she was

25      captured and stood the trial last year.

1          THE COURT:  The case did go to trial?

2          PROSPECTIVE JUROR:  Yes.

3          THE COURT:  Did you have to testify?

4          PROSPECTIVE JUROR:  No.  I just spoke with

5     the D.A. Office.

6          THE COURT:  Okay.  Was this here in Brooklyn?

7          PROSPECTIVE JUROR:  Yes.

8          THE COURT:  Is there anything in your, in the

9     experience at all, whether it's either the fact that it

10    happened, the way your interaction, if any, with police

11    officers who might have responded, your interaction

12    with the D.A.'s Office, with defense counsel, if you

13    had any interaction of that type, anything that would

14    affect your ability to be fair and impartial here?

15         PROSPECTIVE JUROR:  No.  I think everything

16    came out clear and fair.

17         THE COURT:  Okay.  Thank you for that.

18         Anybody else?  Okay.

19         Have any of you or any members of your family

20    ever been arrested or convicted of a crime?

21         Okay.  Mr. Kelly.

22         PROSPECTIVE JUROR:  Yeah.  Do I need to go

23    into the details?

24         THE COURT:  Yeah.  If you want to come up and

25    speak privately with us you can.

LORENZO MCGRIFF - JURY SELECTION

82

1          PROSPECTIVE JUROR:  Yeah.

2          THE COURT:  Okay.  Come on up.

3          Counsels.

4          (Whereupon, there was a discussion held at

5     the bench on the record.)

6          THE COURT:  You need to speak loud enough for

7     the court reporter and for the lawyers to hear you.

8     Yes.

9          PROSPECTIVE JUROR:  Details.  What details do

10    you need to know?

11         THE COURT:  Well was it you?

12         PROSPECTIVE JUROR:  I was arrested.  Yeah.

13         THE COURT:  Okay.  Was it here in Brooklyn?

14         PROSPECTIVE JUROR:  No.  It was back in

15    Maryland.

16         THE COURT:  Okay.

17         PROSPECTIVE JUROR:  The charges were

18    eventually dropped, but I think it was very, say, like

19    I did -- it was a very bad situation, like a bad

20    experience with police.  You know, they are very

21    manipulative and very untrustworthy in their actions.

22         THE COURT:  Were you incarcerated at all?

23         PROSPECTIVE JUROR:  No.

24         THE COURT:  What were the nature of the

25    charges?

VdV

1            PROSPECTIVE JUROR:  They were drug related

2     charges.

3            THE COURT:  Did the case go to trial when you

4     say they eventually --

5            PROSPECTIVE JUROR:  It did go to trial.

6            THE COURT:  Was it a jury trial?

7            PROSPECTIVE JUROR:  No.

8            THE COURT:  Was it a trial before a Judge?

9            PROSPECTIVE JUROR:  Yes.

10            THE COURT:  And you were acquitted after

11     trial?

12            PROSPECTIVE JUROR:  There was like a

13     probationary period.  Then eventually everything was in

14     Maryland, they have expungement and probation of the

15     judgment.

16            THE COURT:  How long were you on probation?

17            PROSPECTIVE JUROR:  About 18 months.

18            THE COURT:  How long ago was this?

19            PROSPECTIVE JUROR:  This was almost a decade

20     ago now.

21            THE COURT:  Okay.  And do you believe that --

22     you have indicated you had a negative impressions,

23     experiences with the police.  Would that affect your

24     ability to be fair and impartial?

25            PROSPECTIVE JUROR:  Honestly it probably

LORENZO MCGRIFF - JURY SELECTION

84

1    would.   I have many other experiences afterwards --

2              THE COURT:   I just asked before about is

3    there anyone who could not treat a police officer like

4    any other witness.

5              PROSPECTIVE JUROR:   Yeah.   I was... thinking

6    hard about it a time.   And yeah.   I have relatives who

7    are police officers, so I try to be impartial, but I've

8    had many personal experiences.

9              THE COURT:   What relatives are police

10   officers?

11             PROSPECTIVE JUROR:   Two of my aunts are

12   police officers.

13             THE COURT:   Just asked before if you had any

14   members of your family who were.

15             PROSPECTIVE JUROR:   I thought you meant

16   specific in New York.   They're back in Maryland.

17   Sorry.

18             THE COURT:   Okay.   You have questions?

19             MR. MOTTOLA:   No.   You covered it, Judge.

20             THE COURT:   Any questions by you?

21             MS. BURKE:   (Indicating).

22             THE COURT:   Thank you.   Have a seat.

23             (Whereupon, the following took place on the

24   record in open court.)

25             THE COURT:   Thank you, Mr. Kelly.

VdV

1          Anyone else?  Mr. McGuinness.

2          PROSPECTIVE JUROR:  Whatever I will say, say

3   it from here.  I don't care.

4          THE COURT:  If you want to speak privately

5   you can.

6          PROSPECTIVE JUROR:  No.  That's fine.

7          I was convicted of theft in the state of New

8   Jersey.  It was reduced down to an ordinance of October

9   of this year.

10          THE COURT:  How long ago was that?

11          PROSPECTIVE JUROR:  October of this year.

12   And we had the trial just before Thanksgiving, so a few

13   days before Thanksgiving.

14          THE COURT:  Was it a trial with a jury?

15          PROSPECTIVE JUROR:  No.

16          THE COURT:  Okay.  So you said it was reduced

17   to an ordinance.  I assume that's a violation of, not a

18   criminal conviction.

19          PROSPECTIVE JUROR:  Yes.  So does that not

20   apply or should I...

21          THE COURT:  Is there anything in your

22   experience that would make it hard for you to be fair

23   and impartial here?

24          PROSPECTIVE JUROR:  No.  The cops were

25   pleasant.  I am fine with it.

1          THE COURT:  Okay.  Thank you.

2          Anybody else?  All right.

3          Have any of you ever served on a jury before?

4          Okay, Miss Bland.  Civil, criminal, grand

5     jury?

6          PROSPECTIVE JUROR:  One was criminal, one was

7     civil.

8          THE COURT:  About how long ago was the

9     criminal matter?

10          PROSPECTIVE JUROR:  I don't know.  I mean

11     could have been 20 years ago.

12          THE COURT:  Do you remember what kind of case

13     it was?

14          PROSPECTIVE JUROR:  Assault in an elevator.

15          THE COURT:  Without telling us the outcome of

16     the cases, did the juries deliberate and reach a

17     verdict in these matters?

18          PROSPECTIVE JUROR:  Not in the civil case.

19     But yes in the criminal case.

20          THE COURT:  Okay.  Is there anything about

21     your experience on the jury that would affect your

22     ability to be fair and impartial here?

23          PROSPECTIVE JUROR:  No.

24          THE COURT:  Okay.  Thank you.

25          Anybody else?  Yes, Miss Patel.

1          PROSPECTIVE JUROR:  Yes.  Civil case.

2          THE COURT:  Yes.  About how long -- here in

3     Brooklyn?

4          PROSPECTIVE JUROR:  Yeah -- yes.

5          THE COURT:  And?

6          PROSPECTIVE JUROR:  I think ten years.  I

7     can't remember.

8          THE COURT:  Okay.  Did the jury deliberate

9     and reach a verdict?

10          PROSPECTIVE JUROR:  Yes.

11          THE COURT:  Okay.  Was there anything in the

12     experience that would make it hard for you to be fair

13     and impartial here?

14          PROSPECTIVE JUROR:  No.

15          THE COURT:  Okay.  Thank you.

16          Anybody else?  All right.

17          And my last question to you is this.

18          At the end of the trial I am going to explain

19     the law to you as it applies in this case.  If you are

20     selected as a juror, you are required to follow the law

21     as I give it to you, whether you agree with it or not.

22          Is there anyone among you who could not do

23     that?  Okay.  Thank you.

24          All right.  That ends my questions and the

25     attorneys will now have an opportunity to ask you some

LORENZO MCGRIFF - JURY SELECTION

88

1    questions.  We will start with the assistant district

2    attorney Mr. Mottola.

3              MR. MOTTOLA:  Yes.  Thank you, Judge.  Could

4    I just have one second?

5              THE COURT:  Sure.

6              (Whereupon, there was a pause in the

7    proceedings.)

8              MR. MOTTOLA:  Good afternoon, everyone.

9              THE COURT:  I offer the lawyers like a five

10   minute warning before you --

11             MR. MOTTOLA:  Yes.  That's fine.

12             Good morning -- good afternoon, everyone.  My

13   name is Lawrence Mottola.  I am the district attorney

14   in this case.  That's Stephanie D'Agostino.  She will

15   be assisting me as well.

16             Just want to thank you for taking your time

17   for being here today.  The Judge told you a little bit

18   about what the case is, right?  It's, there is an

19   alleged stabbing that occurred somewhere on Court

20   Street last August.

21             Anyone sitting here right now just hearing

22   that it's assault on Court Street with a knife, anyone

23   feeling uncomfortable with the facts of that case just

24   hearing those vague details?  Maybe this isn't the

25   right case for me.  You know, there's violence

1        involved.  I can't be fair for one reason or the other.

2        Anybody?  Everyone's okay with that fact pattern?

3        Okay.

4                Miss Nikolayeva, okay.  I got that right.  I

5        am going to pick on you only because you are the only

6        person on this jury that unfortunately had this.

7                You were the victim of a crime, right?  Of a

8        violent crime.  I don't want to go too much into the

9        details, but you were on the street it sounds like and

10       you were attacked by a stranger, correct?

11               PROSPECTIVE JUROR:  Yes.

12               MR. MOTTOLA:  You didn't suffer any injuries,

13       right?  Some scratches.

14               PROSPECTIVE JUROR:  Yes.

15               MR. MOTTOLA:  What did you do when that

16       person attacked you?

17               PROSPECTIVE JUROR:  What I were doing, I was

18       walking from the grocery store to work.

19               MR. MOTTOLA:  Going to work?

20               PROSPECTIVE JUROR:  Yes.

21               MR. MOTTOLA:  Okay.  And this person came up

22       from behind you or what?

23               PROSPECTIVE JUROR:  I passed her on the

24       street.  She was just talking to the strangers.  She

25       was obviously not well.  Doing -- and I passed by, then

1    I just sensed somebody's just running behind me.  Then

2    she grabbed my hair.  Was unexpected.

3              MR. MOTTOLA:  Okay.

4              PROSPECTIVE JUROR:  I had to hold her until

5    the police arrived.

6              MR. MOTTOLA:  Okay.  Did I hear you the

7    person was not well?

8              PROSPECTIVE JUROR:  Yes.  She was saying

9    weird things so, to the strangers.  Everybody passed

10   by.  For some reason she was talking about the women

11   who have blond hair.  I have blond.  To her at this

12   moment passing by, so for some reason it's just was --

13             MR. MOTTOLA:  Okay.  Something happened or

14   something about you upset this woman.  You don't know

15   who she is.

16             PROSPECTIVE JUROR:  No.

17             MR. MOTTOLA:  She pulls your hair.

18             PROSPECTIVE JUROR:  Yes.

19             MR. MOTTOLA:  Luckily you are not injured so

20   you kept her on scene.  You said you held her there for

21   the police.

22             PROSPECTIVE JUROR:  Well we had a fight, so

23   we had to fight a little bit.  And I had hit her back a

24   few times.  Then the hold until the police arrived.

25             MR. MOTTOLA:  You hit her back, right?

1       That's okay.  That's what we call self-defense.

2               If you are picked for this jury, you sit on

3       the jury, you may hear that application.  You may hear

4       the law about self-defense from the Judge.  I'm not

5       going to go into too much with you.

6               But if I understand correctly, she pulls your

7       hair and you held her, you restrained her.

8               PROSPECTIVE JUROR:  Well discuss more into

9       the details of the case, what happened.  If that's what

10      you want to do, I can do that.

11              MR. MOTTOLA:  Well I just asking did you pull

12      out any kind of weapon.

13              PROSPECTIVE JUROR:  No.

14              MR. MOTTOLA:  She pulled your hair, right?

15              So you, what I imagine, you held her or you,

16      maybe you punched her, something along those lines.

17              Would that be fair to say?

18              PROSPECTIVE JUROR:  Probably.

19              MR. MOTTOLA:  Okay.  But you didn't do

20      anything excessive.

21              PROSPECTIVE JUROR:  No.

22              MR. MOTTOLA:  Okay.

23              MS. BURKE:  Objection, Your Honor.

24              THE COURT:  Sustained.

25              MR. MOTTOLA:  Okay.  So, you're going to hear

1        from many witnesses in this case, some of which are

2        police officers, and you all said you can treat the

3        police officers like any other witness.  When they

4        testify, you are going to look at them and you are

5        going to give them the same tests that you would give

6        any other witness 'cause you will hear from civilians,

7        too.  And you can all do that.  You can see them.  They

8        may be in uniform, they may not.  You won't have the

9        uniform affect you either positively or negatively.

10              Everyone agrees to do that?  Everyone can do

11        that?  Okay.

12              Now the person you wouldn't hear from in this

13        case is, there was a name mentioned, Mohammed Kalifa.

14        You will hear testimony about Mr. Kalifa, about his

15        injuries, about his condition that day.  You'll see

16        surveillance videos.  You are not going to hear from

17        him, however.  So the actual victim in this case will

18        not be testifying.

19              Is that a problem for any of you that are

20        sitting here now that you could not render a verdict

21        one way or the other without hearing from the person

22        that was injured?  You couldn't do it even if you hear

23        from other eyewitnesses and the officers and the video.

24              Is that an issue for anybody?  You are not

25        going to hear about him.  You are not going to hear

1           what's going on with him.  Nothing at all.

2                     Mr. Wilson, you are okay with that?  You

3           don't need to hear from the witness?

4                     PROSPECTIVE JUROR:  No.

5                     MR. MOTTOLA:  Miss Patel.

6                     PROSPECTIVE JUROR:  (Indicating).

7                     MR. MOTTOLA:  Everyone can do that?

8                     PROSPECTIVE JUROR:  Yeah.

9                     MR. MOTTOLA:  Okay.  Now, who has been, I

10          imagine most of you ride the subway at some point,

11          right?  Most of you ride the subway.

12                    PROSPECTIVE JUROR:  Yes.

13                    MR. MOTTOLA:  Or you walking down the street.

14                    Has anyone ever encountered a homeless person

15          or a panhandler similar, you know, to Miss Nikolayeva's

16          experience?  Maybe you are not attacked by that person

17          but they've aggressively asked you for money.

18                    Everyone had that experience?  Right?

19          Happens pretty frequently.

20                    Okay.  And, Miss Brown, I see you nodding.

21                    PROSPECTIVE JUROR:  Yes.

22                    MR. MOTTOLA:  Say you are walking to the

23          grocery store and there's a man, maybe he is homeless,

24          maybe he is not, asking you for money.

25                    What do you do?

LORENZO MCGRIFF - JURY SELECTION

94

1          PROSPECTIVE JUROR:  It's times if I have

2     change I will give it to him.  Or I will just say I am

3     sorry I don't have it.

4          MR. MOTTOLA:  Okay.  Mr. Bennett.

5          PROSPECTIVE JUROR:  The same thing.

6          MR. MOTTOLA:  Okay.  So that's if they're

7     asking for money.

8          PROSPECTIVE JUROR:  Yes.

9          MR. MOTTOLA:  What if they're not asking for

10    money.  What if they're just being nasty?  What if --

11    there's 8 million people in New York, they're not all

12    nice.

13         What if you're walking to the subway and

14    there's a person you don't know standing there, or he

15    is following you, or he says something to you, or he's

16    verbally nasty to you?  I don't know.  He makes fun of

17    your glasses, let's say.

18         Have you had something similar like that

19    happen or have any of you had anything similar where

20    you are on the street, someone says something, either

21    they curse or they just, you know, they make a gesture,

22    a rude gesture to you that upset you?

23         Anyone ever had that experience?

24         PROSPECTIVE JUROR:  Yes.

25         MR. MOTTOLA:  Miss Bland.

1           PROSPECTIVE JUROR:  Yeah.  All the time.

2           MR. MOTTOLA:  Sure.  All the time, right?

3           PROSPECTIVE JUROR:  Yeah.  Every day.

4           MR. MOTTOLA:  No one else has had that

5      experience?

6           Miss Fung, you are nodding.

7           PROSPECTIVE JUROR:  Just ignore it.

8           MR. MOTTOLA:  You ignore it, right?

9           What if you can't ignore it?  What if it

10     reaches the level where maybe you are afraid?

11          PROSPECTIVE JUROR:  I go somewhere else.  I

12     move.

13          THE COURT:  I can't hear you.

14          PROSPECTIVE JUROR:  Yes.  I move.  I go

15     somewhere else.

16          MR. MOTTOLA:  You go somewhere else.  Okay.

17          These are all things you could do.

18          You ever call the police?

19          PROSPECTIVE JUROR:  No.  Never risen to that

20     level.  No.

21          MR. MOTTOLA:  So, Miss Bland, it happens to

22     you all the time, or it has happened to you, I guess.

23          What have you done in those situations?

24          PROSPECTIVE JUROR:  I get out of wherever I

25     am.  I change cars on the subway.  I get off the

LORENZO MCGRIFF - JURY SELECTION                96

1    subway, whatever.  I just move to another location.

2              MR. MOTTOLA:  Okay.  Now you are our only

3    criminal juror on the panel, so you actually saw a

4    trial, right?

5              PROSPECTIVE JUROR:  Oh, yes.

6              MR. MOTTOLA:  Okay.  You were a juror.  You

7    sat there.  And I assume witnesses were called in that

8    case.

9              PROSPECTIVE JUROR:  Mmm-hmm.

10             MR. MOTTOLA:  Right.  They testified about

11   what they saw, right?

12             PROSPECTIVE JUROR:  Mmm-hmm.

13             MR. MOTTOLA:  Okay.  You didn't have -- or

14   did you have a surveillance video of the crime?

15             PROSPECTIVE JUROR:  No.

16             MR. MOTTOLA:  No.

17             In this case you will have the benefit, if

18   you are picked, you will see a couple of videos.  You

19   will see at least one video of the incident, but you

20   are also going to hear from at least two witnesses that

21   were there.  That were in the vicinity somewhere on

22   street level observing the event from a different

23   location.

24             They're going to come in here.  They're going

25   to swear to tell the truth like every witness.  They're

1          going to tell you to the best of their memory what they

2          saw.  You have to rely on this testimony.  What they

3          tell you, that's evidence.

4                   Everyone understand that concept?  The video

5          doesn't show the whole story, so you will have to rely

6          on these eyewitnesses, right.  They're going to tell

7          you what's going on.  That testimony, that is evidence.

8                   Does everyone understand that?  Okay.

9                   Everyone's nodding okay.

10                  The police officers in this case, you are

11         going to see video of their involvement as well.  You

12         don't know any of the police officers, right?  You

13         heard Officer Louard, Officer Isaac.

14                  No one recognized any of those officers,

15         right?

16                  Anyone had any particularly negative

17         experience?  Without going into details, Mr. Kelly, we

18         spoke.  With police officers in New York City.  Just

19         raise your hand if you have.  No one.  Okay.

20                  Everyone's okay with the police?  You're all

21         agreeing when they come in here you will listen to what

22         the officers have to say, you will see video of their

23         involvement, maybe you will treat them like you treat

24         the civilians that testify.

25                  Everyone can do that?  Okay.

1            Now, you don't know Mr. McGriff, right.  But

2      you can see Mr. McGriff as he is seated there now.  You

3      will not see Mr. Kalifa, okay.  You are never going to

4      hear from him.

5            And Mr. McGriff, there may be family here for

6      him as the trial progresses.  At the end of this case,

7      right, this is Criminal Court, this is, we know what's

8      going on here.

9            If you are picked to be a juror, you will

10     have to deliberate at the end of the case, and there is

11     a real possibility that the evidence may show that the

12     defendant is guilty of something and you may have to

13     return that verdict.

14            Is everyone comfortable with that concept?

15     As you sit here now, you are saying if I meet my

16     burden, which is proof beyond a reasonable doubt, and

17     you believe some criminal activity happened that you

18     could return a verdict of guilty, and you are not going

19     to be in the jury room a week from now saying it's

20     close to Christmas, I want to get out of here.  You

21     know, we are arguing over the evidence.  Just forget

22     it.  I think he is guilty but not guilty is my verdict.

23            Is that, I just, we just want fair jurors.

24     We want jurors that will honor the oath but will not

25     let sympathy, emotion or stuff like this get in the

1       way.

2                    Can everyone do that?  Anyone have an issue

3       with that?  Everyone's nodding.  Everyone can do that.

4                    Mr. Diaz, you can do that for me?

5                    PROSPECTIVE JUROR:  Yes.

6                    MR. MOTTOLA:  Mr. McGuinness, if you were

7       picked.

8                    PROSPECTIVE JUROR:  Yes.

9                    MR. MOTTOLA:  Okay.  Thank you for your

10      attention, everyone.

11                   THE COURT:  Okay.  All right, Miss Burke.

12                   MS. BURKE:  Good morning, ladies and

13      gentlemen.  My name is Jamie Burke.  And along with my

14      co-counsel, Ben Wittwer, we are the attorneys for

15      Mr. Lorenzo McGriff.

16                   I am going to you ask you some questions.

17      Some of them may be personal.  Forgive me if I am

18      prying, but we have to ensure that Mr. McGriff gets a

19      panel of jurors that are going to be fair to him during

20      this trial.

21                   Now before we get started I need to ask you,

22      did anybody walk in and had the opinion, I wonder what

23      it is that he did?  Did that thought cross your mind at

24      all to you?  Even fleetingly?

25                   (Whereupon, there was a pause in the

1      proceedings.)

2              MS. BURKE:  As you sit here today looking at

3      Mr. McGriff, does it look like he's done something

4      wrong?  Yes or no?  Shake heads.  Nod.  Something so I

5      can know what you are thinking, how you are feeling.

6      Most of you are sitting there quietly.

7              During the trial you are not going to have an

8      opportunity to talk.  This is the only time I get to

9      talk with you, so I would appreciate verbal answer if

10     possible.

11             PROSPECTIVE JUROR:  No.

12             MS. BURKE:  Okay.  Thank you.

13             The burden of proof in this case rest solely

14     with this table (indicating).  With the prosecutor.

15     They have to prove beyond a reasonable doubt that

16     Mr. McGriff committed the crimes that he is excused of.

17             I need assurances and promises from each and

18     every one of you that if you are picked on this jury,

19     that you are gonna hold Mr. Mottola and Miss D'Agostino

20     to their job.  That if they don't prove one of the

21     elements, any one of the elements, that you will

22     promise me that you are gonna return a verdict of not

23     guilty for Mr. McGriff.

24             Four out of five doesn't count.  Three out of

25     five doesn't count.  If it's five elements, they have

1          to prove each and every element.

2                  Can I get a promise from each and every one

3          of you that if you are picked, it has is be one hundred

4          percent or nothing.  Can I get that promise from each

5          you?

6                  PROSPECTIVE JUROR:  Yes.

7                  PROSPECTIVE JUROR:  Yes.

8                  PROSPECTIVE JUROR:  Yes.

9                  MS. BURKE:  Now, Mr. McGriff may testify or

10         he may not testify.  I anticipate that he's going to

11         testify.

12                 How many of you have been accused of

13         something and have said, I am not even going to dignify

14         that with an answer, and just said I am not going to

15         answer that?

16                 Have any of you been accused of something,

17         said you are not going to respond?  You're just showing

18         me blank faces.  I need answers, people.

19                 PROSPECTIVE JUROR: Nothing serious.  Just in

20         conversation.  Or at home.  Yes, I've said that.

21                 MS. BURKE:  So, if you hear from Mr. McGriff,

22         if you -- if you don't hear from Mr. McGriff, would you

23         hold that against him?

24                 PROSPECTIVE JUROR:  No.

25                 PROSPECTIVE JUROR:  No.

1          MS. BURKE:  How many of you want to hear his

2     story?

3          PROSPECTIVE JUROR:  I would like to hear his

4     story.

5          PROSPECTIVE JUROR:  Same.

6          MS. BURKE:  So you want to hear it, but if

7     you don't hear it, is that going to be a problem in

8     your deliberation?

9          PROSPECTIVE JUROR:  No.

10          THE COURT:  Do you all understand that you

11     may not?  It's not just we're gonna, you know, trust

12     you that you are not gonna hold it against him.  It's a

13     question of law.  You may not hold it against him if he

14     makes the choice that he is allowed to make, that he is

15     entitled to make, not to testify.

16          Is there anyone who has a problem with that?

17          PROSPECTIVE JUROR:  No.

18          PROSPECTIVE JUROR:  No.

19          THE COURT:  Okay.

20          MS. BURKE:  And you heard a little bit about

21     the allegations in this case that there was an assault

22     involving a weapon.  Mr. Mottola described it as a

23     knife.  And that Mr. Kalifa got stabbed with this

24     instrument.  This is considered a violent crime.

25          Does the nature of these charges cause

Case 1:21-cv-00703-AMD-LB   Document 6-2   Filed 04/15/21   Page 103 of 232 PageID #: 319

1    anybody a problem?  Is there a problem with

2    deliberating on a case that involves a stabbing?

3                PROSPECTIVE JUROR:  No.

4                MS. BURKE:  I know it's probably easier to

5    deal with a turnstile jumping or something like that.

6    But everybody can promise me that they're willing to

7    listen to the facts, no matter the nature of the crime,

8    and come back with a verdict?

9                PROSPECTIVE JUROR:  Yes.

10               PROSPECTIVE JUROR:  Yes.

11               MS. BURKE:  You know that Mr. McGriff has

12   been indicted on these charges.  He is charged with

13   felonies.

14               Does the fact that he's been indicted in any

15   of your minds means that he is guilty of something?

16               PROSPECTIVE JUROR:  No.

17               PROSPECTIVE JUROR:  No.

18               MS. BURKE:  There is the presumption of

19   innocence for Mr. McGriff.  The law states that as he

20   sits here today you must assume, presume, that he is

21   innocent.  That no matter what he's been charged with,

22   what he looks like he did, what he sounds like he did,

23   what I look like I did, he is innocent.  Unless this

24   table (indicating) overcomes that burden.

25               And it's a high standard to make for them.

1      And I need a promise from each of you if you are chosen

2      as a juror in this case that you are gonna keep that

3      presumption of innocence for Mr. McGriff from the

4      moment this trial opens until you start deliberating.

5                  Can I get that promise from each of you?

6                  PROSPECTIVE JUROR:   Yes.

7                  PROSPECTIVE JUROR:   Yes.

8                  MS. BURKE:   You can't make up your mind once

9      you hear one person testify.   You can't make up your

10     mind once you hear the police officer testify.   You

11     can't make up your mind once you hear a civilian

12     testify.   You can't make up your mind once Mr. McGriff

13     testifies or doesn't testify.

14                 It is until after all of the evidence is in

15     should you be allowed to make a decision as to guilt or

16     innocence.   Once you deliberating with your fellow

17     jurors.

18                 Can you keep that in mind for me?

19                 PROSPECTIVE JUROR:   Yes.

20                 PROSPECTIVE JUROR:   Yes.

21                 PROSPECTIVE JUROR:   Sure.

22                 MS. BURKE:   Now, Mr. Mottola did tell you

23     that there was an encounter on the street and there was

24     some nasty words that were said.   And if Mr. McGriff

25     takes the stand he is gonna tell you what those words

1    were.  Sometimes words are hurtful.  Sometimes words

2    are insidious.  Sometimes words can make you angry.

3              Has anyone been called a name that has made

4    them angry?

5              PROSPECTIVE JUROR:  Yes.

6              MS. BURKE:  What was that name?

7              PROSPECTIVE JUROR:  Just some racial slurs.

8    Cracker.  Stuff like that.  Whatever.

9              MS. BURKE:  And you --

10             PROSPECTIVE JUROR:  Bitch.

11             MS. BURKE:  The B word.

12             PROSPECTIVE JUROR:  Yeah.

13             MS. BURKE:  I won't say it out loud.

14             PROSPECTIVE JUROR:  All right.

15             MS. BURKE:  You may hear words like that.

16   You may hear racial slurs.  You may hear words that

17   cause most people to feel uncomfortable.  You may hear

18   the N word.  You may hear terms that are racially

19   biased.

20             Is there anything about hearing those words

21   that would prevent you from being fair jurors in this

22   case?  Either for or against.

23             PROSPECTIVE JUROR:  No.

24             MS. BURKE:  Anyone?  By a show of hands,

25   anyone?  Okay.

LORENZO MCGRIFF - JURY SELECTION

106

```
 1          Now, Miss Bland, not to pick on you, but you

 2     said that you were a victim of a crime previously, that

 3     your wallet was stolen a couple of times, and one time

 4     you called the police but the person was never caught.

 5          Does that color your opinion about the police

 6     in New York City?

 7          PROSPECTIVE JUROR:  No.

 8          MS. BURKE:  Has anyone here had any, I know

 9     most people have said they haven't had any bad

10     experience with New York City Police Department.  And

11     we have spoken to you already.

12          Has anyone had a good experience with New

13     York City Police Department that would make them favor

14     the police at all?

15          PROSPECTIVE JUROR:  No.

16          MS. BURKE:  Miss Brown is the only one that

17     said no.

18          Mr. Johnson, you have family members.

19     Brother-in-law.

20          PROSPECTIVE JUROR:  Yes.

21          MS. BURKE:  Who is retired sergeant.

22          PROSPECTIVE JUROR:  Yes.

23          MS. BURKE:  Do you talk to him about any of

24     his prior cases?

25          PROSPECTIVE JUROR:  Not really.  No.  He's
```

1       been retired for a good period of time now.

2                   MS. BURKE:  You say you are also retired from

3       the fire department of New York.

4                   PROSPECTIVE JUROR:  Yes, ma'am.

5                   MS. BURKE:  How long did you serve?

6                   PROSPECTIVE JUROR:  30 years.

7                   MS. BURKE:  One of the witnesses may be an

8       employee of the fire department.  An EMT technician.

9                   If that person were to testify, would you

10      give any favor to that person's testimony because it's

11      a fellow fire department employee?

12                  PROSPECTIVE JUROR:  No.  When I retired they

13      weren't really part of the fire department.

14                  MS. BURKE:  So you would treat that person as

15      you would any other witness?

16                  PROSPECTIVE JUROR:  Yes, ma'am.

17                  MS. BURKE:  When you're looking at the

18      witnesses trying to decide if they're telling the truth

19      or if they're lying, because you have to judge what

20      they're saying, you have to think about whether it

21      makes sense or not, what are the things that you look

22      for in a story, to know whether somebody is lying or

23      not?

24                  PROSPECTIVE JUROR:  Consistency.

25                  MS. BURKE:  I am sorry.

1          PROSPECTIVE JUROR:  Consistency.

2          MS. BURKE:  Consistency from Miss Brown.

3          What about you?  Did you say?

4          PROSPECTIVE JUROR:  I said consistency as

5     well.

6          MS. BURKE:  Consistency as well from Miss, I

7     am sorry, Dunn.  This is Miss Brown.

8          Anything else?  What about body language?

9          PROSPECTIVE JUROR:  Yes.

10         MS. BURKE:  You think body language is

11     important?

12         PROSPECTIVE JUROR:  Yes.

13         PROSPECTIVE JUROR:  Appearance.

14         MS. BURKE:  I am sorry.  Repeat that,

15     Miss Dunn.

16         PROSPECTIVE JUROR:  Yes.  Some maybe could be

17     nervous.

18         MS. BURKE:  Are you nervous as you sit here?

19         PROSPECTIVE JUROR:  No.

20         MS. BURKE:  Good.  Body language.

21     Consistency in their story.  And sometimes a story

22     doesn't make sense because people may only see a piece

23     of something that happened.  Often times you need to

24     see the entire thing in order to know what really

25     happened.

1           Like if you see a trailer for a movie you're

2   thinking oh, this movie is a comedy.  Then you get and

3   see the entire film and you find out it's a tragedy.

4   It's better to see the whole thing.  Or can you tell

5   what's gonna happen from the snippets that you see?

6           Who needs to see the whole thing?

7           PROSPECTIVE JUROR:  (Indicating).

8           MS. BURKE:  I think everyone raised their

9   hand except you, Mr. Baptiste.  You have been

10  noncommittal at all.  I am going to pick on you just a

11  little bit.  If you see a video of an occurrence, and

12  say it's 20 seconds in time, maybe even a minute in

13  time, but the actual incident occurred for a period of

14  five minutes.  Do you give more weight to what you see

15  in the video, or do you give more weight to the telling

16  of the actual story that occurred for five minutes?

17          PROSPECTIVE JUROR:  I would give more weight

18  to the story.

19          THE COURT:  I can't hear you, sir.  I am

20  sorry.  I need to be able to hear you.

21          PROSPECTIVE JUROR:  I give more weight to the

22  story for five minutes.

23          MS. BURKE:  Why is that, Mr. Baptiste?

24          PROSPECTIVE JUROR:  Well there might be more

25  evidence in it.

1          MS. BURKE:  You said there will be more

2     evidence in the story, in the complete story, rather

3     than just the snippet of the video.

4          PROSPECTIVE JUROR:  Yes.

5          MS. BURKE:  Does anyone agree with

6     Mr. Baptiste?  Don't be shy.

7          PROSPECTIVE JUROR:  Yes.

8          MS. BURKE:  Miss Bland.  Anyone else?

9     Miss Brown.  Mr. Diaz, you almost put your hand up.

10         PROSPECTIVE JUROR:  No.  I said yes.  Yes.

11             (Whereupon, there was laughter in the

12     courtroom.)

13         MS. BURKE:  Okay.

14         PROSPECTIVE JUROR:  I say yes.

15         MS. BURKE:  I just want to make sure I

16     understand that.

17             What about you, Mr. Wilson?

18         PROSPECTIVE JUROR:  Yes.  Could be uncovered

19     throughout the entire picture.

20         MS. BURKE:  I just want to cover one last

21     area.  And that is, I need to ask you is there anything

22     that I've said that colors your opinion of this trial.

23         PROSPECTIVE JUROR:  No.

24         PROSPECTIVE JUROR:  No.

25         MS. BURKE:  Is there anything that I failed

1    to ask you that you think it's important for me to know

2    when choosing you as a juror?

3             PROSPECTIVE JUROR:  No.

4             PROSPECTIVE JUROR:  No.

5             MS. BURKE:  Anybody?  I know everything I

6    need to know about you?

7             PROSPECTIVE JUROR:  Could be more to the

8    story, though.

9             MS. BURKE:  I know everything I need to know

10   about you, Mr. Kelly?

11            PROSPECTIVE JUROR:  Probably.

12            (Whereupon, there was laughter in the

13   courtroom.)

14            MS. BURKE:  Miss Bland has her hand up.

15            PROSPECTIVE JUROR:  I did some volunteer work

16   in Florida at one point for the public defenders

17   office, but I don't feel that I've had two other jury

18   experiences.  I don't feel that that colored it, but.

19            MS. BURKE:  Your prior jury experience, you

20   said it went to deliberation.  One went to

21   deliberation.

22            Would you have a problem deliberating fully

23   on this case?

24            PROSPECTIVE JUROR:  No.

25            MS. BURKE:  If you were in deliberation and

1        you were the one person, the one person that did not

2        believe Mr. McGriff was guilty of any of the crimes

3        charged, and all 11 of your fellow jurors says, come

4        on, Mrs. Brown.  Come on, Miss Brown.  We need to go.

5        It's lunchtime.  It's Christmastime.  I got things to

6        do.  I gotta go shopping.  I got dinner to make.  I got

7        my babies at home.  Would you cave?

8                 PROSPECTIVE JUROR:  No.  I am going to stick

9        with what I believe.

10                MS. BURKE:  Would you stick by what you

11       believe in, sir?

12                PROSPECTIVE JUROR:  Yes.

13                MS. BURKE:  Would you stick by what you

14       believe in, Mr. Johnson?

15                PROSPECTIVE JUROR:  Yes.

16                MS. BURKE:  Would you stick by what you

17       believe in, Miss Dunn?

18                PROSPECTIVE JUROR:  Yes.

19                MS. BURKE:  Miss Barrow.

20                PROSPECTIVE JUROR:  Yes.

21                MS. BURKE:  Mr. Baptiste.

22                PROSPECTIVE JUROR:  I am sorry.

23                (Whereupon, there was laughter in the

24       courtroom.)

25                MS. BURKE:  If you were the last man

1      standing.

2              (Whereupon, there was laughter in the

3      courtroom.)

4              MS. BURKE:  You were the lone juror deciding

5      guilt or innocence and the other 11 jurors wanted to

6      leave, but your opinion was different than theirs,

7      would you hold out?

8              PROSPECTIVE JUROR:  No.

9              MS. BURKE:  Why not, Mr. Baptiste?  And thank

10     you for your honesty.

11             PROSPECTIVE JUROR:  Majority rules.

12             THE COURT:  I am sorry.  What did you say?

13             MS. BURKE:  He said majority rules.

14             Is that right, Mr. Baptiste?

15             PROSPECTIVE JUROR:  Yes.

16             THE COURT:  Mr. Baptiste and everyone else,

17     this is not majority rules.  Majority rules when you

18     are on the playground.  Majority rules when you vote

19     for president.

20             (Whereupon, there was laughter in the

21     courtroom.)

22             THE COURT:  But it's a case majority rules

23     there.  Absolutely.  But in a criminal case when a jury

24     is deliberating, your verdict must be unanimous.

25     Meaning everyone must agree to it.

1           Do you understand that?

2           PROSPECTIVE JUROR:  Yes.

3           THE COURT:  Would you be able to follow those

4    instructions, Mr. Baptise?  If I gave you the

5    instructions and that was the law and that you were

6    required to follow it, would you be able to follow

7    that?

8           PROSPECTIVE JUROR:  Yes.

9           THE COURT:  Anyone among you who could not

10   follow that instruction?

11          MS. BURKE:  Miss Tom, you would follow that

12   instruction?

13          PROSPECTIVE JUROR:  (Indicating).

14          MS. BURKE:  To the letter.

15          PROSPECTIVE JUROR:  Yes.

16          MS. BURKE:  Miss Patel.

17          PROSPECTIVE JUROR:  Yes.

18          MS. BURKE:  Okay.  So that means everybody

19   wanted to go to McDonald's and you wanted to go to

20   Burger King, you would still stick out and go to Burger

21   King?

22          PROSPECTIVE JUROR:  Yep.

23          MS. BURKE:  And the last question is, is

24   there anything about Mr. McGriff as you look at him,

25   because he hasn't said a word, as you look at him right

1        now, is there anything about his appearance, his

2        demeanor, his anything, his clothes, his haircut,

3        anything about him?

4                Don't talk about my hair.

5                (Whereupon, there was laughter in the

6        courtroom.)

7                MS. BURKE:  Anything about him that would

8        prevent you from being a fair and impartial juror on

9        this case?

10                PROSPECTIVE JUROR:  No.

11                PROSPECTIVE JUROR:  No.

12                PROSPECTIVE JUROR:  No.

13                MS. BURKE:  Thank you for your time.

14                THE COURT:  Okay.  All right, ladies and

15        gentlemen, all right.  Given our, given the hour I am

16        going to send all of you out to lunch.  I am going to

17        ask you to be back outside the courtroom at 2:15 sharp.

18                When you get back, please do not come into

19        the courtroom until the officer calls for you, but you

20        are all expected back.

21                In the interim, a couple of instructions,

22        which if you are selected as jurors you are going to

23        hear every single time we part company.

24                Please do not discuss this case amongst

25        yourselves or with anyone else.  Please don't go on

1    your phones over lunch and do any independent research

2    about the case, about the facts of the case, about the

3    law connected with the case, or about any of the

4    parties in the case; including Mr. McGriff, the

5    lawyers, or me.

6              Please don't post any information online

7    about what you are doing in the case or anything having

8    to do with the case.  And again, there's no discussion

9    with anyone about anything connected with this matter.

10             All right.  So again, we will see you back at

11   2:15.  Again, do not come into the courtroom until you

12   are called by the officer.  Thank you very, very much

13   for your attention.

14             PROSPECTIVE JUROR:  Thank you.

15             (Whereupon, the prospective jury left the

16   courtroom.)

17             THE COURT:  All right, Miss Burke, Judge

18   Morgenstern needs you for five minutes.

19             MS. BURKE:  Judge, you can't get me out of

20   it?

21             THE COURT:  Five minutes or so.

22             If you want to talk for a few minutes, you

23   know, we will do the challenges right after lunch.

24   Give you an opportunity to kind of mull them over.

25             MR. MOTTOLA:  Sure.  The two material witness

1        orders were given to me.  I, apparently you need the

2        Court's -- it's the back page has to be signed by the

3        Judge.

4               THE COURT:  I will see you.  Second call.  We

5        will see you at 2:15.  All right.  Thank you very much.

6               (Whereupon, other business was conducted and

7        then the case continued.)

8               (Whereupon, luncheon recess is taken, after.

9        which the proceedings continued as follows:)

10               *    *    *    *    *    *    *

11        **A F T E R N O O N          S E S S I O N**

12               *    *    *    *    *    *    *

13               THE COURT:  I will give you a chance to talk.

14        Let me know when both sides are ready.

15               (Whereupon, there was a pause in the

16        proceedings.)

17               THE COURT:  Ready?

18               MS. BURKE:  Yes.

19               MR. MOTTOLA:  Yes, Judge.

20               THE CLERK:  As to seats one through 12,

21        People, challenges for cause?

22               MR. MOTTOLA:  Yes.  Number three and number

23        nine.

24               THE COURT:  Let's do them one at a time,

25        please.

1          MR. MOTTOLA:  Sure.

2          THE COURT:  Then by number and by name.

3          MR. MOTTOLA:  Yes.

4          So number three, Stephen Kelly.

5          THE CLERK:  Challenge for cause?

6          THE COURT:  Miss Burke.

7          MS. BURKE:  You said one through?

8          THE CLERK:  One through 12 just for cause.

9          MS. BURKE:  Okay.

10         THE CLERK:  He is challenging seat number

11    three for cause.

12         MS. BURKE:  Okay.  Judge, I don't believe

13    that... Mr. -- I believe that Mr. Kelly rehabilitated

14    himself.  He is the gentleman who at the bench said the

15    police left a bad taste at his mouth based on how

16    unfairly he was treated in Maryland.  He had gone to

17    trial.  Case was eventually being dismissed after being

18    on probation for 18 months.

19         I believe that's the same gentleman we are

20    referring to.  Did say he was treated unfairly by the

21    police.  Didn't like the way they treated him.

22         He also stated he has family members that are

23    police officers, that he had struggled with it.  And

24    initially the question of whether or not he could be

25    fair initially.  But after thinking about it, even at

1    the bench he seemed to have wavered in his answer about

2    being biased against the police, towards being that he

3    could be fair to the police.  Because even though he

4    had not personally had any good interaction with police

5    personnel from Maryland, he didn't say anything about

6    NYPD.  And he also stated that he has family members

7    who are police, so I think that he could be fair and

8    impartial.

9             MR. MOTTOLA:  Just briefly, Your Honor.

10            I don't remember the juror number three being

11   rehabilitated after he said that he could not be fair.

12   I remember something along the lines of him saying he

13   could not be fair to the police officers.

14            He did talk about his family members, but I

15   thought --

16            THE COURT:  He said he had relatives, aunts

17   who are police officers.  I asked about relatives who

18   were on the police force.  You didn't mention that.  He

19   said, well I thought you meant only in New York.

20            He indicated specifically here at the bench

21   he could not be fair.  And I don't believe he said

22   anything that would rehabilitate him, so that challenge

23   for cause is granted.

24            THE CLERK:  Mr. Mottola, what was the other

25   seat number?

1          MR. MOTTOLA:  Number nine, Bernard Baptiste.

2          THE COURT:  Go ahead.  Make a record.

3          MR. MOTTOLA:  Sure.

4          Mr. Baptiste was fine up until the point at

5     which I think we all realized he said it was majority

6     rules.  I know Your Honor tried to instruct him on the

7     law.  I don't know that, he didn't give me an answer

8     that assures me that he will not go with the majority

9     one way or the other.

10         I don't know if the Court would rather try to

11    rehabilitate him separately, but up until this point

12    it's our position, at least, he was not clear.  Must be

13    unanimous and he could follow the law.

14         MS. BURKE:  No objection.

15         THE COURT:  Okay.  Cause is granted on

16    consent.

17         THE CLERK:  And, Mr. Mottola, any other

18    challenges for cause as to seats one through 12?

19         MR. MOTTOLA:  No.

20         THE CLERK:  Okay.  Miss Burke, any challenges

21    for cause one through 12?

22         MS. BURKE:  One moment, Your Honor.

23         THE COURT:  Sure.

24         (Whereupon, there was a pause in the

25    proceedings.)

1          MS. BURKE:  No, Your Honor.

2          THE COURT:  Okay.

3          THE CLERK:  Okay.  Mr. Mottola, any

4   peremptory challenges, seats one through 12?

5          MR. MOTTOLA:  Yes.  Just juror number, it's

6   11.  Was it Barrow?  And juror number 12, Ashley Dunn.

7   Those two.

8          THE CLERK:  Miss Burke, any peremptory

9   challenges, seats one through 12?

10          MS. BURKE:  Yes, Your Honor.  Number two,

11   Lena Tom.

12          (Whereupon, there was a pause in the

13   proceedings.)

14          MS. BURKE:  Number seven, Leena Patel.

15   Number ten, Jacqueline Fung.

16          THE CLERK:  That's it seats one through 12?

17          MS. BURKE:  Yes.

18          THE CLERK:  Leaves seat number one, Natalie

19   Nikolayeva will become juror number one.  Seat number

20   four, Morley Bland, will become juror number two.

21   Seats number five, Sean McGuinness, becomes juror

22   number three.  Seat number six, Luiz Diaz, will become

23   juror number four.  Seat number eight, Jonathan Wilson,

24   will become juror number five.  That's it.

25          As to the next four seats, 13 through 16,

1          People, challenges for cause?

2                    MR. MOTTOLA:  No.

3                    THE CLERK:  Okay.  Miss Burke, challenges for

4          cause seats 13 through 16?

5                    MS. BURKE:  No, Your Honor.

6                    THE CLERK:  Mr. Mottola, any peremptory

7          challenges seats 13 through 16?

8                    MR. MOTTOLA:  No.

9                    THE CLERK:  And, Miss Burke, any peremptory

10         challenges seats 13 through 16?

11                   MS. BURKE:  Number 13, Alexander Gladskiy,

12         and number 14, David Johnson.

13                   THE CLERK:  That's it?  Okay.

14                   That means seat number 15, Brian Bennett,

15         will become juror number six.  And seat number 16,

16         Chanel Brown, will become juror number seven.

17                   MS. BURKE:  One moment, Your Honor.

18                   (Whereupon, there was a pause in the

19         proceedings.)

20                   MS. BURKE:  Judge, can we withdraw our

21         challenge to number 14?

22                   THE CLERK:  For number 14.

23                   MR. MOTTOLA:  Sure.

24                   THE CLERK:  David Johnson.

25                   MS. BURKE:  Yes.

LORENZO MCGRIFF - JURY SELECTION

123

1          THE CLERK:  Yes.  Sure.  Can you make sure?

2          MS. BURKE:  Number eight.

3          THE COURT:  No.  He will be juror number six.

4          THE CLERK:  Okay.  So the challenge as to

5    number 14, David Johnson, is withdrawn.  And that

6    person becomes juror number six.  Which means Brian

7    Bennett will be juror number 7.

8          And is it Chanel Brown?

9          THE COURT:  Yes.

10         THE CLERK:  Will become juror number eight.

11         THE COURT:  By the way, Miss Burke, you

12   withdrew that challenge as to prospective juror number

13   14 after consultation with your client, correct?

14         MS. BURKE:  Yes, Your Honor.

15         THE COURT:  Okay.

16         THE CLERK:  At the end of round one, the

17   defense has used four peremptory challenges and the

18   People have exercised two peremptory challenges.

19         COURT OFFICER:  You want the box people

20   first?

21         THE COURT:  Just the box people.

22         But, counsels, come up for just a second.

23         THE CLERK:  The front two rows are good.

24         COURT OFFICER:  Okay.  Thank you.

25         (Whereupon, there was a discussion held at

LORENZO MCGRIFF - JURY SELECTION

124

1     the bench off the record.)

2               COURT OFFICER:  Ready, Your Honor?

3               THE COURT:  Yes.  Thank you.

4               COURT OFFICER:  Panel entering.

5               (Whereupon, the prospective jury entered the

6     courtroom.)

7               THE CLERK:  Okay, folks.  Please listen up.

8     If I call your name, you have been selected to serve as

9     jurors in this case.  Please remain seated if I call

10    your name.  Have to exchange information with you guys.

11    If I don't call your names, you will be asked to follow

12    out.

13              Juror number one, Natalie Nikolayeva.

14              PROSPECTIVE JUROR:  Here.

15              THE CLERK:  That is juror number one.

16              Juror number two, Morley Bland.

17              Juror number three, Sean McGuinness.

18              Juror number four, Luiz Diaz.

19              Juror number five, Jonathan Wilson.

20              Juror number six, David Johnson.

21              Juror number seven, Brian Bennett.

22              And juror number eight, Chanel Brown.

23              Okay.  Those names, please remain seated.

24              If I did not call your name, you are excused

25    with the thanks of the Court.  Please return to the

1      central jury room on the second floor.

2                  (Whereupon, the prospective jury left the

3      courtroom.)

4                  THE COURT:  All right, ladies and gentlemen,

5      so you've been selected as the first group of jurors in

6      this matter.  We are going to continue with jury

7      selection.  While we are doing that, I am not going to

8      ask you to wait around while we do that.

9                  Based upon my schedule and continued jury

10     selection I will, we will not be taking any testimony

11     tomorrow.  I will be asking you to report to the jury

12     room that you will see in just a few minutes on

13     Thursday morning at 9:30 promptly.  Keep in mind it may

14     take a little bit of time to get up in the elevators,

15     so leave yourselves time to get there 9:30 promptly.

16                 Before you leave we're going to give you some

17     information and take some information.  We are going to

18     give you an emergency number where you can call in the

19     event of a problem.  And we are going to ask you for an

20     emergency contact number where we can reach you,

21     particularly if you're late, and we will call you and

22     look for you.

23                 So if you give us a cell phone number, please

24     make sure that when you are in transit coming here that

25     you leave it on so we can reach you.

LORENZO MCGRIFF - JURY SELECTION

126

1          And as I said, in just a moment you are going

2     to follow the officer.  She will show you the jury room

3     that you are going to report to each and every day that

4     you are here.  And then on Thursday morning we will

5     have some opening instructions by the Court, you will

6     hear openings by the attorneys, and then we will

7     proceed with testimony in this case.

8          So you actually are seated jurors.  You are

9     now on trial.  In the interim I am going to ask you the

10    same thing as I said before lunch.  Please don't

11    discuss this case amongst yourselves or anyone else.

12    You may tell family members, employers, etcetera, that

13    you are seated jurors and when you need to be here, but

14    beyond that, no discussion about this case with anyone

15    for any reason.  No research online on the internet

16    about anything having to do with the case or anybody

17    connected with the case.

18         We will go into more detail on Thursday

19    morning about why that is so important.

20         When you -- one thing I neglected to say

21    earlier, when you're coming up in the elevator you may

22    see some of the attorneys, etcetera.  You may see some

23    of the parties in the elevator.  They have been

24    instructed by me not to speak to you.  Not to say good

25    morning.  Not to have any contact with you at all.

1          So if you happen to see them in the elevator

2     and they don't smile and say hello, they're not being

3     rude, they're simply following my instructions in that

4     regard.

5          If I happen to see you, because my robing

6     room is behind the courtroom, I may see you coming and

7     going in the morning.  I won't be smiling at you

8     either.

9          And so again, with that, just how to maintain

10    complete impartiality.  That's how it's done.

11         Finally I know it's supposed to be pretty

12    cold out.  On Thursday, if you want to bring some

13    coffee or tea or bottle of water, something with you to

14    make yourselves more comfortable while you are sitting

15    here, by all means feel free to do that.

16         So if you grab your things and follow Officer

17    Lopez Delis she will show you the jury room.  And thank

18    you so much for your service and we will see you

19    Thursday morning.  Thank you very, very much.

20              JUROR:  Thank you.

21              COURT OFFICER:  Follow me.

22              (Whereupon, the jury left the courtroom.)

23              COURT OFFICER:  Ready, Your Honor?

24              THE COURT:  Yes.

25              COURT OFFICER:  Jurors entering.

LORENZO MCGRIFF - JURY SELECTION

1    (Whereupon, the prospective jury entered the

2  courtroom.)

3    THE CLERK:  Folks, please listen up and step

4  forward when I call your name.  Follow direction of the

5  court officer as to which seat to sit.

6    Seat number one, Tedgardo Mercene.

7    First name T-E-D-G-A-R-D-O, last name

8  M-E-R-C-E-N-E.

9    COURT OFFICER:  Step up, sir.

10    THE CLERK:  Seat number two, Xiang dong Ye.

11  X-I-A-N-G, last name D-O-N-G, and after that, Y-E.

12    Seat number three, Lena Mikhli.

13    PROSPECTIVE JUROR:  Here.

14    THE CLERK:  Did I say the last name right?

15    PROSPECTIVE JUROR:  Yes.

16    THE CLERK:  L-E-N-A, please step up.  That's

17  seat number three.  Last name M-I-K-H-L-I.

18    Seat number four, Francesco Stanisci.

19    PROSPECTIVE JUROR:  Yes.

20    THE CLERK:  F-R-A-N-C-E-S-C-O, last name

21  S-T-A-N-I-S-C-I.

22    Seat number five, Amani Parker.  First name

23  A-M-A-N-I, P-A-R-K-E-R.

24    Seat number six, Gerard Philip.  First name

25  G-E-R-A-R-D, P-H-I-L-I-P.

1           Seat number seven, Matthew Cullum.

2     M-A-T-T-H-E-W, C-U-L-L-U-M.

3           Seat number eight, Belquis Payne.

4     B-E-L-Q-U-I-S, P-A-Y-N-E.

5           Seat number nine, Tara Cascone.  First name

6     T-A-R-A, last name C-A-S-C-O-N-E.

7           Seat number 10, Moser Christopher.

8           PROSPECTIVE JUROR:  Yes.

9           THE CLERK:  Christophe.  M-O-S-E-R,

10    C-H-R-I-S-T-O-P-H-E.

11          Seat number 11, Andrea Solstad.

12          First name A-N-D-R-E-A, S-O-L-S-T-A-D.

13          Seat number 12, Joseph Weber last name

14    W-E-B-E-R-last name.  First name Joseph.

15          Seat number 13, Maya Khamrak.

16          First name M-A-Y-A, K-H-A-M-R-A-K.

17          Seat number 14, Darryl Ramsey.

18          D-A-R-R-Y-L, Ramsey R-A-M-S-E-Y.

19          Seat number 15, Pauline Stewart.

20    P-A-U-L-I-N-E, Stewart S-T-E-W-A-R-T.

21          Seat number 16, Yung Hsien Ng Tam.  Y-U-N-G,

22    H-S-I-E-N, N-G, T-A-M.

23          THE COURT:  All right, ladies and gentlemen,

24    good afternoon.  I am sure you were all listening very

25    tentatively this morning, so you have a clear idea

1          about what kinds of questions I am going to ask.

2                    So let's start with you, Mr. Mercene, if we

3          can.  Good afternoon.

4                    PROSPECTIVE JUROR:  Good afternoon.

5                    THE COURT:  What part of Brooklyn do you live

6          in?

7                    PROSPECTIVE JUROR:  Canarsie area.

8                    THE COURT:  How long are you living in

9          Brooklyn?

10                   PROSPECTIVE JUROR:  About 22 years.

11                   THE COURT:  Okay.  And your marital status?

12                   PROSPECTIVE JUROR:  Married.

13                   THE COURT:  Children?

14                   PROSPECTIVE JUROR:  Three children.

15                   THE COURT:  Three.

16                   Are you currently working?

17                   PROSPECTIVE JUROR:  I am working as a nurse.

18                   THE COURT:  As a nurse.

19                   In what kind of setting, a hospital or in

20         another kind of setting?

21                   PROSPECTIVE JUROR:  In New York.

22                   THE COURT:  Which hospital?

23                   PROSPECTIVE JUROR:  In Brookdale.

24                   THE COURT:  Okay.  You have any specialty,

25         any special service that you are assigned to?

1          PROSPECTIVE JUROR:  Medical surgical.

2          THE COURT:  Medical surgical.  Okay.

3          And is your spouse currently working?

4          PROSPECTIVE JUROR:  Yes.

5          THE COURT:  Doing what?

6          PROSPECTIVE JUROR:  She is a nurse, too.

7          THE COURT:  Nurse also.  Okay.

8          Same hospital?

9          PROSPECTIVE JUROR:  Yes.

10         THE COURT:  Okay.  Also a medical surgical

11    floor?

12         PROSPECTIVE JUROR:  Neonatal.

13         THE COURT:  Okay.  All right.  Thank you.

14         Miss Ye.  Hello again.

15         What part of Brooklyn do you live in?

16         PROSPECTIVE JUROR:  Bensonhurst.

17         THE COURT:  Sorry.  You have to speak louder.

18         PROSPECTIVE JUROR:  Bensonhurst.

19         THE COURT:  And how long are you living in

20    Brooklyn?

21         PROSPECTIVE JUROR:  16 years.

22         THE COURT:  16 years.

23         And are you married?

24         PROSPECTIVE JUROR:  Yes.

25         THE COURT:  We need to hear you, ma'am.

1            PROSPECTIVE JUROR: Married.

2            THE COURT: Married.

3            Any children?

4            PROSPECTIVE JUROR: Two.

5            THE COURT: Okay. And you told us you work

6 as a bookkeeper.

7            PROSPECTIVE JUROR: Yes.

8            THE COURT: Okay. Is your husband working?

9            PROSPECTIVE JUROR: Yes.

10           THE COURT: What does he do?

11           PROSPECTIVE JUROR: Hotel worker.

12           THE COURT: Sorry?

13           PROSPECTIVE JUROR: Hotel worker.

14           THE COURT: Hotel. Okay. Thank you.

15           Miss Mikhli, hello.

16           PROSPECTIVE JUROR: Hi.

17           THE COURT: What part of Brooklyn is home?

18           PROSPECTIVE JUROR: Midwood.

19           THE COURT: And how long are you living in

20 Brooklyn?

21           PROSPECTIVE JUROR: Born and raised.

22           THE COURT: Oh, born and raised. Okay.

23 There you go.

24           And your marital status?

25           PROSPECTIVE JUROR: Single.

1          THE COURT:  Any children?

2          PROSPECTIVE JUROR:  No.

3          THE COURT:  Are you currently working?

4          PROSPECTIVE JUROR:  Yes.  I am a respiratory

5    therapist.

6          THE COURT:  Okay.  Thank you.

7          Mr. Stanisci, hello again.

8          What part of Brooklyn is home?

9          PROSPECTIVE JUROR:  Dyker Heights.  44 years.

10         THE COURT:  Okay.

11         PROSPECTIVE JUROR:  Married, three kids, four

12    grandchildren.  I am retired as a medical engineer.  My

13    wife, she's an educational consultant.

14         THE COURT:  Thank you very much.  Okay.

15         PROSPECTIVE JUROR:  You are welcome.

16         (Whereupon, there was laughter in the

17    courtroom.)

18         THE COURT:  Miss Parker, the pressure's on.

19    Okay.

20         (Whereupon, there was laughter in the

21    courtroom.)

22         THE COURT:  What part of Brooklyn do you live

23    in?

24         PROSPECTIVE JUROR:  East New York.

25         THE COURT:  And how long are you living in

1          Brooklyn?

2                    PROSPECTIVE JUROR:  My whole life.

3                    THE COURT:  Okay.  And your marital status?

4                    PROSPECTIVE JUROR:  Single.

5                    THE COURT:  Any children?

6                    PROSPECTIVE JUROR:  No.

7                    THE COURT:  Okay.  And are you currently

8          working?

9                    PROSPECTIVE JUROR:  No.

10                   THE COURT:  In school?

11                   PROSPECTIVE JUROR:  No.

12                   THE COURT:  Okay.  What are you -- what was

13         the last job you had, or what are you trained to do,

14         that kind of thing.

15                   PROSPECTIVE JUROR:  My last job I worked at

16         Burlington.  I just stopped working there, what was it,

17         like last week.

18                   THE COURT:  Okay.  Right in time for the

19         Christmas rush.

20                   PROSPECTIVE JUROR:  Yeah.

21                   THE COURT:  All right.  Thank you.

22                   Mr. Philip, hello.

23                   PROSPECTIVE JUROR:  How you doing?

24                   THE COURT:  I am well.  Thank you.

25                   What part of Brooklyn do you live?

LORENZO MCGRIFF – JURY SELECTION

135

1          PROSPECTIVE JUROR:  Crown Heights.

2          THE COURT:  Sorry?

3          PROSPECTIVE JUROR:  Crown Heights.

4          THE COURT:  And how long are you living in

5    Brooklyn?

6          PROSPECTIVE JUROR:  21 years.

7          THE COURT:  Okay.  And your marital status?

8          PROSPECTIVE JUROR:  Single.

9          THE COURT:  Any children?

10         PROSPECTIVE JUROR:  No.

11         THE COURT:  Okay.  And are you currently

12   working?

13         PROSPECTIVE JUROR:  Yes.

14         THE COURT:  What do you do?

15         PROSPECTIVE JUROR:  Car service technician,

16   as well as a recording engineer.

17         THE COURT:  Recording engineer.  Okay.

18         So that would be like in the music field,

19   etcetera.

20         PROSPECTIVE JUROR:  Yes.

21         THE COURT:  Great.  Thank you.

22         Mr. Cullum, how are you, sir?

23         PROSPECTIVE JUROR:  Well thanks.

24         THE COURT:  Good.

25         What part of Brooklyn do you live?

LORENZO MCGRIFF - JURY SELECTION

136

1          PROSPECTIVE JUROR:  Williamsburg.

2          THE COURT:  How long are you living in the

3    borough?

4          PROSPECTIVE JUROR:  Six years.

5          THE COURT:  Okay.  Before that?

6          PROSPECTIVE JUROR:  Queens.

7          THE COURT:  Oh, Queens.  Okay.  All right.

8    Close.

9          And your marital status?

10         PROSPECTIVE JUROR:  Married.

11         THE COURT:  Any children?

12         PROSPECTIVE JUROR:  No.

13         THE COURT:  Okay.  Are you currently working?

14         PROSPECTIVE JUROR:  Yes.

15         THE COURT:  What do you do?

16         PROSPECTIVE JUROR:  I am sales at an

17   investment bank.

18         THE COURT:  And is your spouse working

19   outside?

20         PROSPECTIVE JUROR:  Yes.  She is in sales.

21         THE COURT:  Okay.

22         PROSPECTIVE JUROR:  At Facebook.

23         THE COURT:  Okay.  Thank you.

24         Miss Payne, hello.

25         PROSPECTIVE JUROR:  Hello.

1          THE COURT:   What part of Brooklyn do you come

2     from?

3          PROSPECTIVE JUROR:   Midwood.

4          THE COURT:   Okay.   And how long are you

5     living in Brooklyn?

6          PROSPECTIVE JUROR:   Eight years.

7          THE COURT:   Before that?

8          PROSPECTIVE JUROR:   Staten Island.

9          THE COURT:   Oh.   Okay.   We New Yorkers tend

10    to stick around, right?

11         PROSPECTIVE JUROR:   Yes.

12         THE COURT:   Your marital status?

13         PROSPECTIVE JUROR:   Separated.

14         THE COURT:   Separated.

15         Children?

16         PROSPECTIVE JUROR:   One.

17         THE COURT:   Okay.   And are you currently

18    working?

19         PROSPECTIVE JUROR:   Yes.

20         THE COURT:   What do you do?

21         PROSPECTIVE JUROR:   Call center

22    representative at DeWitt 311.

23         THE COURT:   Oh, okay.   So you are the person

24    who gives us all the information about where, who to

25    call and where else to file the complaints.

1          PROSPECTIVE JUROR:  Yes.

2          THE COURT:  Got it.  Okay.

3          Is your ex-partner working, do you know?

4          PROSPECTIVE JUROR:  I don't know.

5          THE COURT:  Okay.  Thank you for that.

6          Miss Cascone, hello again.  What part of

7    Brooklyn do you live?

8          PROSPECTIVE JUROR:  Bensonhurst.

9          THE COURT:  And how long in Brooklyn?

10          PROSPECTIVE JUROR:  All my life.

11          THE COURT:  Lifer.  Okay.

12          And your marital status?

13          PROSPECTIVE JUROR:  Single.

14          THE COURT:  Any children?

15          PROSPECTIVE JUROR:  No.

16          THE COURT:  Okay.  And I know you told us you

17    work as a substitute paraprofessional.

18          PROSPECTIVE JUROR:  In the Department of

19    Education.

20          THE COURT:  Is there any particular

21    population of kids that you work with?

22          PROSPECTIVE JUROR:  Hispanic and Asian.

23          THE COURT:  Is it, are there, you are a para

24    because language issue or other issues?

25          PROSPECTIVE JUROR:  Various.  Language.  You

VdV

1    know, emotional.  A bunch of different --

2                THE COURT:  Issues the children have to

3    contend with.

4                PROSPECTIVE JUROR:  Yeah.

5                THE COURT:  Okay.  Thank you.

6                Mr. Christophe, hello.

7                PROSPECTIVE JUROR:  Hi.

8                THE COURT:  What part of Brooklyn you live

9    in?

10               PROSPECTIVE JUROR:  Clinton Hill.

11               THE COURT:  And how long are you living in

12   Brooklyn?

13               PROSPECTIVE JUROR:  Ten years.

14               THE COURT:  And your marital status, sir?

15               PROSPECTIVE JUROR:  Married.

16               THE COURT:  Any children?

17               PROSPECTIVE JUROR:  One.

18               THE COURT:  And are you currently employed?

19               PROSPECTIVE JUROR:  Yes.

20               THE COURT:  What do you do?

21               PROSPECTIVE JUROR:  Fashion designer.

22               THE COURT:  Now I will have to be really

23   careful about how I show up each day.

24               (Whereupon, there was laughter in the

25   courtroom.)

1          THE COURT:  All right.  And is your spouse

2     working outside the home, too?

3          PROSPECTIVE JUROR:  Yes.

4          THE COURT:  Doing what?

5          PROSPECTIVE JUROR:  Advertising.

6          THE COURT:  Okay.  Thank you.

7          Miss Solstad, good afternoon.

8          PROSPECTIVE JUROR:  Good afternoon.

9          THE COURT:  What part of Brooklyn do you live

10    in?

11         PROSPECTIVE JUROR:  Clinton Hill.

12         THE COURT:  I will just ask again everybody

13    to keep your voices up if you can so everyone can hear

14    you in the courtroom.

15         How long are you living in Brooklyn?

16         PROSPECTIVE JUROR:  Lifer.

17         THE COURT:  A lifer.  Okay.

18         And your marital status?

19         PROSPECTIVE JUROR:  I have a boyfriend.

20         THE COURT:  Okay.  And children?

21         PROSPECTIVE JUROR:  No.

22         THE COURT:  Okay.  Are you currently working?

23         PROSPECTIVE JUROR:  No, I am not.

24         THE COURT:  Okay.  What are you -- what was

25    your last position and what are you looking to do,

1          trained to do, that kind of thing.

2                    PROSPECTIVE JUROR:  I am an artist but I work

3          as a seamstress.

4                    THE COURT:  Okay.  Miss Solstad, meet

5          Mr. Christophe.

6                    (Whereupon, there was laughter in the

7          courtroom.)

8                    THE COURT:  And is your boyfriend working as

9          well?

10                    PROSPECTIVE JUROR:  Yes.

11                    THE COURT:  Doing what?

12                    PROSPECTIVE JUROR:  He is a journalist.

13                    THE COURT:  Okay.  Thank you.

14                    Mr. Weber, good afternoon, sir.

15                    What part of Brooklyn do you live in?

16                    PROSPECTIVE JUROR:  Williamsburg.

17                    THE COURT:  And how long are you living in

18          Brooklyn?

19                    PROSPECTIVE JUROR:  Whole life.

20                    THE COURT:  Okay.  And are you married, sir?

21                    PROSPECTIVE JUROR:  Yes.

22                    THE COURT:  Children?

23                    PROSPECTIVE JUROR:  Four children.

24                    THE COURT:  Are you currently working?

25                    PROSPECTIVE JUROR:  Yes.

LORENZO MCGRIFF - JURY SELECTION

142

1      THE COURT:  What do you do?

2      PROSPECTIVE JUROR:  Sell cleaning supplies.

3      THE COURT:  Okay.  Is your spouse working

4   outside the home?

5      PROSPECTIVE JUROR:  No.

6      THE COURT:  Okay.  Thank you.

7      Miss Khamrak, hello.

8      What part of Brooklyn do you live in?

9      PROSPECTIVE JUROR:  East New York.

10      THE COURT:  And how long are you living in

11   Brooklyn?

12      PROSPECTIVE JUROR:  19 years.

13      THE COURT:  Okay.  And your marital status?

14      PROSPECTIVE JUROR:  Single.

15      THE COURT:  Single.

16      Any children?

17      PROSPECTIVE JUROR:  Two.

18      THE COURT:  Okay.  Are you currently working?

19      PROSPECTIVE JUROR:  Yes.

20      THE COURT:  What do you do?

21      PROSPECTIVE JUROR:  Home care agency.

22      THE COURT:  Okay.  Thank you.

23      Mr. Ramsey, how are you, sir?

24      PROSPECTIVE JUROR:  I am all right.

25      THE COURT:  Good.

1          What part of Brooklyn do you call home?

2          PROSPECTIVE JUROR:  Kensington.

3          THE COURT:  Sorry?

4          PROSPECTIVE JUROR:  Kensington.

5          THE COURT:  How long are you living in this

6     fair borough?

7          PROSPECTIVE JUROR:  I have been living in

8     Brooklyn most of my life.

9          THE COURT:  Okay.  Your marital status?

10          PROSPECTIVE JUROR:  Married.

11          THE COURT:  Children?

12          PROSPECTIVE JUROR:  Three.

13          THE COURT:  Okay.  Are you currently working?

14          PROSPECTIVE JUROR:  Yes.

15          THE COURT:  What do you do?

16          PROSPECTIVE JUROR:  New York City Transit

17     supervisor.

18          THE COURT:  Okay.  Is your spouse working

19     outside the home?

20          PROSPECTIVE JUROR:  No.

21          THE COURT:  Okay.  Thank you.

22          Miss Stewart, good afternoon.

23          PROSPECTIVE JUROR:  Good afternoon.

24          THE COURT:  What part of Brooklyn do you live

25     in?

1          PROSPECTIVE JUROR:  Canarsie.

2          THE COURT:  And your marital status?

3          PROSPECTIVE JUROR:  Married.

4          THE COURT:  How long you living in Brooklyn

5    by the way?

6          PROSPECTIVE JUROR:  29 years.

7          THE COURT:  Any children?

8          PROSPECTIVE JUROR:  One and one grandson.

9          THE COURT:  Okay.  Wonderful.  That's the

10   good stuff, right?

11         Are you currently employed?

12         PROSPECTIVE JUROR:  Yes.

13         THE COURT:  What do you do?

14         PROSPECTIVE JUROR:  I am a accountant --

15         THE COURT:  Accountant.

16         PROSPECTIVE JUROR:  ACS.

17         THE COURT:  Okay.

18         MS. BURKE:  Sorry, Judge.  Hear.

19         THE COURT:  An accountant at --

20         PROSPECTIVE JUROR:  ACS.

21         THE COURT:  Is your spouse working outside

22   the home?

23         PROSPECTIVE JUROR:  Yes.  Plumbing.

24         THE COURT:  Just as an aside, Miss Stewart,

25   in your capacity working at ACS, do you have occasion

1      to testify in court?

2                  PROSPECTIVE JUROR:  No.

3                  THE COURT:  No.  Okay.  All right.  Thank

4      you.

5                  Miss Hsien, hello again.

6                  What part of Brooklyn are you living in?

7                  PROSPECTIVE JUROR:  Bensonhurst.

8                  THE COURT:  And how long are you in Brooklyn?

9                  PROSPECTIVE JUROR:  I've been here off and

10     on, but recently two years.

11                 THE COURT:  Okay.  Where did you live before

12     that?

13                 PROSPECTIVE JUROR:  Netherlands.

14                 THE COURT:  Your marital status?

15                 PROSPECTIVE JUROR:  Single.  No kids.

16                 THE COURT:  Okay.  And we did discuss work.

17     Just if you could remind me and just tell the attorneys

18     again what do you do for a living?

19                 PROSPECTIVE JUROR:  I work at a temp agency

20     long term now as an assistant.

21                 THE COURT:  Okay.  Thank you very much.

22                 All right.  So again I am going to ask some

23     questions of you as a group.  If the answer is yes,

24     just raise your hand.  We will get to everybody.  If

25     there is something you like to speak more privately

1          about, by all means let me know.  We will have you come

2          up and speak at the bench.

3                    Have any of you or any members of your family

4          ever worked for the New York City Police Department,

5          the Court system or the District Attorney's Office?

6                    All right.  So, Mr. Cullum, let's start with

7          you.

8                    PROSPECTIVE JUROR:  Yeah.  I have a

9          sister-in-law currently works for the NYPD,

10         father-in-law who chief of police NYPD.  Just retired a

11         few years ago.  And also a mother-in-law.  Retired

12         lieutenant NYPD.

13                   THE COURT:  So your father-in-law retired

14         chief.

15                   PROSPECTIVE JUROR:  (Indicating).

16                   THE COURT:  Your sister in-law's currently on

17         the job doing assigned where, do you know?

18                   PROSPECTIVE JUROR:  A sergeant either the 9th

19         or the 19th upper east side.

20                   THE COURT:  Okay.  How long ago, if you know,

21         did your father-in-law and your mother-in-law retire?

22                   PROSPECTIVE JUROR:  Father-in-law I think it

23         was five years, and mother-in-law probably eight.

24                   THE COURT:  Okay.  Do they talk about their

25         work?

1      PROSPECTIVE JUROR:  Yeah.

2      THE COURT:  Is there anything in either of

3  the fact that they were or are police officers that any

4  of the anecdotes they might have told you about the

5  discussions or just the fact they do this job, anything

6  surrounding that that would affect your ability to be

7  fair and impartial here?

8      PROSPECTIVE JUROR:  No.

9      THE COURT:  Okay.  All right.  Thank you.

10      Miss Parker, I think you had your hand up.

11      PROSPECTIVE JUROR:  You said worked for NYPD.

12      THE COURT:  Either NYPD, the courts or the

13  District Attorney's Office.

14      PROSPECTIVE JUROR:  My mother is a 911

15  operator.

16      THE COURT:  Okay.  How long has she been

17  doing that?

18      PROSPECTIVE JUROR:  Like over 15 years.

19      THE COURT:  Do you talk with her about her

20  work or does she talk to you about her work?

21      PROSPECTIVE JUROR:  Occasionally.

22      THE COURT:  Okay.  Is there anything in the

23  fact she, the job she does, what she might have said

24  about it or about her experiences that would affect

25  your ability to be fair and impartial here?

LORENZO MCGRIFF - JURY SELECTION

148

1      PROSPECTIVE JUROR:  No.

2      THE COURT:  Okay.  Okay.  Thank you.

3      Anybody else?  Miss Cascone.

4      PROSPECTIVE JUROR:  Yes.  My father's a

5  retired Correction officer for Rikers Island.

6      THE COURT:  City or state?

7      PROSPECTIVE JUROR:  City.

8      My grandfather was a retired sergeant for

9  NYPD.

10     THE COURT:  Let's start with your dad.

11     How long ago did he retire from Corrections?

12     PROSPECTIVE JUROR:  2008.  I think it was

13  2007.

14     THE COURT:  How about your grandfather?

15     PROSPECTIVE JUROR:  Many years ago.

16     THE COURT:  Many years ago.  Okay.

17     Did they talk about their work with you?

18     PROSPECTIVE JUROR:  Not currently, but in the

19  past.

20     THE COURT:  In the day.

21     PROSPECTIVE JUROR:  Yeah, in the day.

22     THE COURT:  Okay.  Is there anything in the,

23  either what they talked to you about, their

24  experiences, stories they might have told you, things

25  that have come up that would affect your ability to be

1          fair and impartial here?

2                    PROSPECTIVE JUROR:   No.

3                    THE COURT:   Okay.   Thank you for that.

4                    Anybody else?

5                    All right.   So, as I said earlier, because

6          this is a criminal case, police officers are involved.

7          And there will be testimony from police officers as

8          well as civilians.   In a trial, a police officer is

9          just like any other witness.   And their testimony gets

10         no greater weight, no less weight than any other kind

11         of witness, if you will.

12                   Is there anyone here who could not treat a

13         police officer like any other witness?

14                   (Whereupon, there was a pause in the

15         proceedings.)

16                   THE COURT:   No.   Okay.

17                   Have any of you -- indicating none, by the

18         way.

19                   Have any of you or any members of your family

20         ever been the victim of a crime?

21                   Okay.   Miss Payne.

22                   PROSPECTIVE JUROR:   Yes.   I was a victim of a

23         crime.

24                   THE COURT:   Are you comfortable sitting there

25         and discussing it or would you prefer to come up?

1          PROSPECTIVE JUROR:  I am comfortable

2     discussing it.

3          THE COURT:  Okay.

4          PROSPECTIVE JUROR:  I was on the bus one

5     time, and a sex offender, a registered sex offender he

6     had his, um, he exposed himself.  He was rubbing up

7     against my back and then other people saw him and then

8     the police came, he got arrested.  And there was a

9     restraining order or order of protection.

10          THE COURT:  Order of protection.

11          PROSPECTIVE JUROR:  Yeah.

12          THE COURT:  Was this here in Brooklyn?

13          PROSPECTIVE JUROR:  Yes.

14          THE COURT:  And about how long ago?

15          PROSPECTIVE JUROR:  Five years ago.

16          THE COURT:  Did the case ever go to trial?

17          PROSPECTIVE JUROR:  I didn't follow up with

18     it.  It was like the district attorney, they did

19     everything.  I never really followed up with it or

20     nothing like that.

21          THE COURT:  Okay.  Was there -- very

22     regrettable that this happened to you.

23          Is there anything in the experience, the

24     experience itself, whether your interaction with the

25     police, with the assistant district attorney, anything

1          at all in that entire episode that would affect your

2          ability to be fair and impartial here?

3                    PROSPECTIVE JUROR:  No.

4                    THE COURT:  Okay.  Thank you for that.

5                    Couple of other hands.

6                    Miss Cascone.

7                    PROSPECTIVE JUROR:  Yes.  I got robbed last

8          week.

9                    THE COURT:  Last week?

10                    PROSPECTIVE JUROR:  Yeah.

11                    THE COURT:  Oy.

12                    PROSPECTIVE JUROR:  It wasn't reported,

13          though.  I had left my bag outside of the school.  I

14          was working, where I work, I had not realized I left it

15          there.  I went back.  They stole my money and my

16          MetroCards, my wallet.

17                    THE COURT:  Was this here in Brooklyn?

18                    PROSPECTIVE JUROR:  Yes.

19                    THE COURT:  Did you report it to the police?

20                    PROSPECTIVE JUROR:  No.

21                    THE COURT:  So this was taken.  You were not

22          outside when whoever it was took it?

23                    PROSPECTIVE JUROR:  I was, but I had already

24          left it.  I rounded the corner.  Once I realized I left

25          it, I came back and it was gone.

1          THE COURT:  Okay.  Is there anything in that

2    circumstance that would affect your ability to be fair

3    and impartial here?

4          PROSPECTIVE JUROR:  No.

5          THE COURT:  Okay.  Thank you for that.

6    That's unfortunate.

7          Anybody else?

8          Miss Solstad.

9          PROSPECTIVE JUROR:  I was harassed on the

10   subway and followed home.  And then he ran after me and

11   I ended up having to stop a car to take me home.  But

12   he was mentally disturbed.

13         THE COURT:  Was that here in Brooklyn?

14         PROSPECTIVE JUROR:  Yeah.  On the G train.

15         THE COURT:  About how long ago?

16         PROSPECTIVE JUROR:  About two years ago.

17         THE COURT:  When you said you stopped the

18   car, were the police notified?

19         PROSPECTIVE JUROR:  So that night it was late

20   at night, there was a car coming down Lafayette.  I was

21   running.  I realized that I was going opposite my house

22   so I stopped a car and I said, you have to take me home

23   because the man was across the street.  And he was

24   yelling at me.  And the man took me home but my phone

25   was dead at that time.

LORENZO MCGRIFF - JURY SELECTION

1     I went the next day to the precinct to make a

2     report.  They said, well why don't you call the cops

3     last night?  I said I couldn't.  And then they said,

4     well technically that's not our precinct so we can't

5     really take the report for you.

6          At that time I was at the, at this point just

7     could not, you know, I was like, can I talk to anyone

8     here?  They said we will just send the report over.

9     Then it was kind of a runaround.

10         THE COURT:  So we will start with the

11    important part.  You were not injured.

12         PROSPECTIVE JUROR:  No.

13         THE COURT:  Okay.  Good.

14         Was there... was there anything in the,

15    either the experience, or as you eluded to your

16    interaction with the officers in that precinct,

17    anything that would affect your ability to be fair and

18    impartial here?

19         PROSPECTIVE JUROR:  I would say my experience

20    was frustrating.  Hopefully not, definitely an

21    exception, so I would say no.

22         THE COURT:  Okay.  Thank you for that.

23         Anybody else?  Miss Tam.

24         PROSPECTIVE JUROR:  Was by my sister.  She

25    was mugged and beaten in the Bronx.

VdV

1                THE COURT:  Was she injured?

2                PROSPECTIVE JUROR:  She was, but she refused

3        to go to the doctor, so.

4                THE COURT:  Do you know if she called the

5        police?

6                PROSPECTIVE JUROR:  I believe she did file a

7        report but nothing came of it.

8                THE COURT:  How long ago was this?

9                PROSPECTIVE JUROR:  It was like five years.

10                THE COURT:  Five years ago.  Okay.

11                Is there anything in the, in what you know of

12        her experience that would affect your ability to be

13        fair and impartial here?

14                PROSPECTIVE JUROR:  No.

15                THE COURT:  Okay.  Thank you.

16                Anybody else?  Okay.

17                Have any of you or any members of your family

18        ever been arrested or convicted of a crime?

19                Okay.  Miss Payne.

20                PROSPECTIVE JUROR:  One of my cousins she

21        had, she was arrested for an assault.

22                THE COURT:  Do you know was that here in

23        Brooklyn?

24                PROSPECTIVE JUROR:  I believe it was in the

25        Bronx.

1      THE COURT:  Okay.  Do you know how long ago

2  that was?

3      PROSPECTIVE JUROR:  I would say seven years

4  ago.

5      THE COURT:  Do you know what happened with

6  her case?

7      PROSPECTIVE JUROR:  I don't know.  But I do

8  know she served four months in Rikers Island.

9      THE COURT:  Did you go up to the Bronx to

10  watch any of the court proceedings?

11      PROSPECTIVE JUROR:  No.

12      THE COURT:  Anything like that?

13      PROSPECTIVE JUROR:  No.

14      THE COURT:  Did you visit her when --

15      PROSPECTIVE JUROR:  I was in Egypt at the

16  time.  I didn't find out about it until after.

17      THE COURT:  Is there anything in what the

18  family told you about the whole incident that would

19  affect your ability to be fair and impartial here?

20      PROSPECTIVE JUROR:  No.

21      THE COURT:  Okay.  Thank you.

22      Mr. Ramsey, I think you had your hand up.

23      PROSPECTIVE JUROR:  Yes.

24      THE COURT:  Yes.

25      PROSPECTIVE JUROR:  My older brother.  He got

1    in trouble a few times.

2              THE COURT:  Was that here in Brooklyn?

3              PROSPECTIVE JUROR:  Yes.

4              THE COURT:  About how long ago, Mr. Ramsey?

5              PROSPECTIVE JUROR:  The first time back in

6    the late '70s and the second time I think late '80s.

7              THE COURT:  Do you remember what the cases

8    involved?

9              PROSPECTIVE JUROR:  I think it was robbery

10   first one, and I think the second one was some type of

11   domestic abuse or fight.  Something like that.

12             THE COURT:  Was he incarcerated at any time?

13             PROSPECTIVE JUROR:  Yes.

14             THE COURT:  Upstate?

15             PROSPECTIVE JUROR:  Yes.

16             THE COURT:  The first time or the second

17   time?

18             PROSPECTIVE JUROR:  Both.

19             THE COURT:  Both?

20             PROSPECTIVE JUROR:  Yeah.

21             THE COURT:  Okay.  And there's been nothing

22   since the last one?

23             PROSPECTIVE JUROR:  No.

24             THE COURT:  Okay.  Did you come to court to

25   watch any of the court proceedings?

1      PROSPECTIVE JUROR:  Nah.  I was young.

2           THE COURT:  Okay.  Did you ever go visit him

3      when he was upstate?  The family go to see him?

4           PROSPECTIVE JUROR:  I think so.

5           THE COURT:  Is there anything in either what

6      you remember of those events or what your family might

7      have said, what he said about either or both of those

8      experiences that would affect your ability to be fair

9      and impartial here?

10          PROSPECTIVE JUROR:  No.

11          THE COURT:  I am sorry?

12          PROSPECTIVE JUROR:  No.

13          THE COURT:  Let me just, I am not sure if I

14     heard you correctly.  Asked if there is anything that

15     would affect your ability to be fair and impartial.

16     You didn't say I don't know.

17          PROSPECTIVE JUROR:  I said no.

18          THE COURT:  Oh, you said no.  Okay.  Thank

19     you.

20          PROSPECTIVE JUROR:  Mmm-hmm.

21          THE COURT:  Just check on that.  Okay.  Thank

22     you for sharing that.

23          Anybody else?  Okay.

24          Have any of you ever served on a jury before?

25          Mr. Ramsey, civil, criminal.

VdV

1              PROSPECTIVE JUROR:  Civil.

2              THE COURT:  About how long ago?

3              PROSPECTIVE JUROR:  It was a while ago.  Six

4       years.

5              THE COURT:  That's about right.

6              PROSPECTIVE JUROR:  Yeah.

7              THE COURT:  Did the jury deliberate and reach

8       a verdict?

9              PROSPECTIVE JUROR:  Yes.

10              THE COURT:  Okay.  Was there anything about

11       that experience that would affect your ability to be

12       fair and impartial here?

13              PROSPECTIVE JUROR:  No.

14              THE COURT:  Okay.  Thank you.

15              Miss Stewart.

16              PROSPECTIVE JUROR:  Criminal case.

17              THE COURT:  Criminal case.  Here in Brooklyn?

18              PROSPECTIVE JUROR:  Yes.  2006 I think.

19              THE COURT:  Sorry?

20              PROSPECTIVE JUROR:  2006.

21              THE COURT:  Okay.  Do you remember what kind

22       of case it was?

23              PROSPECTIVE JUROR:  Domestic.

24              THE COURT:  Domestic violence.

25              PROSPECTIVE JUROR:  I think it was domestic

1    violence.

2              THE COURT:  Okay.  Without telling us the

3    outcome, did the jury deliberate and reach a verdict?

4              PROSPECTIVE JUROR:  Mistrial.

5              THE COURT:  Mistrial.

6              Was it a mistrial because they could not

7    agree or was there --

8              PROSPECTIVE JUROR:  Two of us could not

9    agree.

10             THE COURT:  Okay.  Is there anything in your

11   experience as a juror on that case that would affect

12   your ability to be fair and impartial here?

13             PROSPECTIVE JUROR:  No.

14             THE COURT:  Okay.  Thank you.

15             Anybody else?  Prior jury service?  Okay.

16             And finally, at the end of the trial I am

17   going to explain the law to all of you, or to the

18   jurors as it applies in this case.  And if you are

19   selected as a juror, you're required to follow the law

20   as I give it to you, whether you agree with it or not.

21             Anyone among you who could not do that?

22             Indicating none.

23             Okay.  Well that concludes my questions.  And

24   the attorneys will now have an opportunity to ask you

25   some questions.  We will start with Mr. Mottola.

1            Reminder it's 15 and 15.

2            MR. MOTTOLA:  Yes.  Thank you, Judge.

3            THE COURT:  Do you need the five minute just

4      in case if we get there?

5            MR. MOTTOLA:  Sure.

6            Good afternoon, everyone.  You heard most of

7      my questions this morning.  Many of them are going to

8      be the same.  So, before I start talking to you about

9      what I asked the first panel, if anyone heard anything

10     this morning that you want to comment on, you can just

11     raise your hand and let me know.  If there is something

12     that you feel makes you a bad juror in this case, or if

13     there's something want to bring to our attention, just

14     raise your hand.  Okay.

15            I want to start with what I told the jury

16     this morning.  You are not going to hear from the

17     victim in this case, right.  The person that allegedly

18     was stabbed.  Okay.  You will hear from other civilians

19     that were there and you will hear from police officers

20     and you will see some videos of the incident.  But you

21     are not going to hear from the victim.

22            Is that a problem for anyone as they're

23     sitting here now just say you know what, I have to hear

24     from the victim.  Anybody?

25            Mr. Mercene, you are okay with that?

1          may not get answers to any of those questions.  That

2          would be an issue for you?

3                     PROSPECTIVE JUROR:  Yeah.  I think it would.

4                     MR. MOTTOLA:  Okay.  Miss Solstad.

5                     PROSPECTIVE JUROR:  So if there were no

6          witnesses, there wouldn't be a case?

7                     MR. MOTTOLA:  I mean, right.  I mean

8          hypothetically in another case if there were no

9          witnesses and a crime happened, then the victim was not

10         cooperative, the case would not go forward.  But that's

11         not -- I want to keep you focused on the incident here.

12         I will go into more detail with you.

13                    You will hear from at least one civilian

14         witness who was an eyewitness to the incident.  You

15         will see at least one surveillance video showing

16         something happening on the street involving an

17         altercation.  Allegedly the defendant and this other

18         person.  And you'll hear from police officers that

19         responded pretty much a short period of time to that

20         crime scene.

21                    So, you will be hearing evidence especially

22         from at least one eyewitness.  Do you understand?  So

23         it's not a situation where you don't have an eyewitness

24         like you posed to me.

25                    Would that be an issue that if you do not

1       hear from the victim for you, or could you still treat

2       the evidence, could you look at the evidence, make a

3       decision one way or the other without hearing from that

4       person?

5                   PROSPECTIVE JUROR:  That's a difficult

6       question.

7                   MR. MOTTOLA:  Right.

8                   THE COURT:  Here's the thing.  As Mr. Mottola

9       said, there's no specific requirement that the D.A.

10      prove their case in any particular way.  As long as the

11      district attorney presents sufficient evidence that you

12      find credible and believable, that convinces all 12

13      jurors beyond a reasonable doubt of each element of the

14      crime.

15                  Now it may be that the complaining witness

16      will testify, it may be that the complaining witness

17      will not testify.  And it would be your obligation as

18      jurors, if you were selected, to evaluate the evidence

19      that you do have before you basically to see if it's

20      sufficient to meet their burden.

21                  But the question is, that for some people

22      without the complaining witness necessarily they're, no

23      matter what else the district attorney might present

24      that you could never, you could never vote to convict

25      somebody if you didn't have the complaining witness

1     there.

2               So I believe that's essentially what

3     Mr. Mottola's trying to find out.

4               MR. MOTTOLA:  Right.

5               THE COURT:  So, Mr. Mercene, are you telling

6     us that no matter what other evidence there is,

7     assuming that you find it to be credible and you

8     believe it, etcetera, that no matter what, without the

9     complaining witness physically in court testifying, you

10    could never vote to convict.

11              Is that what you are saying?

12              PROSPECTIVE JUROR:  Yes.

13              THE COURT:  Mmm-hmm.

14              MR. MOTTOLA:  Mr. Ramsey, same question.

15              PROSPECTIVE JUROR:  I am kind of like in

16    between.  I just yes.  I would say yes.

17              MR. MOTTOLA:  Yes, you could?

18              PROSPECTIVE JUROR:  I couldn't.

19              THE COURT:  You could not.

20              PROSPECTIVE JUROR:  No.

21              THE COURT:  Under any circumstances?

22              PROSPECTIVE JUROR:  No.  I couldn't.

23              THE COURT:  Okay.

24              MR. MOTTOLA:  And Miss Solstad.

25              Just so I can clarify so I can understand

1     you, sir, and you also.  Just you will hear from people

2     that are going to get up into this chair and they are

3     going to swear to tell the truth.  They are going to

4     tell you that they were on the street this day and

5     maybe they saw certain events happen.

6            You will also have an opportunity to review

7     or at least see one video taken from the street from a

8     camera and you will hear from police officers.  You may

9     hear from other eyewitnesses as well.  Okay.

10           So even if you believe all those people and

11    you watch the video, you make your own assessment of

12    what you see, you are saying you would still need the

13    victim himself to be here.

14           PROSPECTIVE JUROR:  I would like to hear

15    their side of the story, the victim.  Yes.

16           MR. MOTTOLA:  Miss Solstad.

17           PROSPECTIVE JUROR:  Hard to say there is an

18    objective truth without hearing both.

19           MR. MOTTOLA:  That's something Miss Burke

20    touched on when she spoke to the first panel also.

21    There is no obligation you hear from anyone on the

22    defense side.  The burden is entirely mine.  So, you

23    might not hear from the victim.  You might also never

24    hear from Mr. McGriff.

25           And do you understand that that's not like

1        the burden is on me to prove my case.

2                Do you understand that?

3                PROSPECTIVE JUROR:  Yes.

4                MR. MOTTOLA:  Are you comfortable with that?

5                You have to understand that principle if you

6        are going to be a juror in this case.

7                MS. BURKE:  Judge, objection.  And permission

8        to approach.

9                THE COURT:  Come on up.

10               (Whereupon, there was a discussion held at

11       the bench off the record.)

12               THE COURT:  All right.  The objection is

13       sustained.

14               Ladies and gentlemen, let me clarify for you

15       just one point.  That we are not equating whether the

16       complaining witness testifies with whether or not

17       Mr. McGriff chooses to testify.  The burden is always

18       on the People to prove the case beyond a reasonable

19       doubt.  Mr. McGriff and his attorneys have no burden to

20       do anything at all.  They can present evidence if they

21       choose.  They don't have to.  He can decide if he

22       wishes to, to testify.

23               He is under no obligation at all to testify.

24       And again, should he choose not to do that, you may not

25       hold that against him.  Under the law you may not hold

Case 1:21-cv-00703-AMD-LB   Document 6-2   Filed 04/15/21   Page 166 of 232 PageID #: 382

1  that against him in any way.

2          Does everybody understand that?  Anyone who

3  is not clear about that?

4          All right.  Continue, counsel.

5          MR. MOTTOLA:  Okay.  So I am going to move on

6  just outside of the three jurors that I was speaking

7  to.

8          Does anyone else, everyone else is okay with

9  the concept you will not hear from the victim in this

10  case?  Everyone could be fair and listen to the other

11  witnesses?  Everyone can do that?  Okay.

12          So now is it Miss Payne?

13          PROSPECTIVE JUROR:  Yes.

14          MR. MOTTOLA:  I want to talk to you --

15          THE COURT:  Five minutes.

16          MR. MOTTOLA:  Sure.

17          The incident briefly when you were on the

18  bus, without going into too many details, but when you

19  first noticed that this stranger was doing whatever it

20  was he was doing, what did you do?

21          PROSPECTIVE JUROR:  Well someone had tapped

22  me on the shoulder 'cause I totally didn't know what

23  was going on.  It was a crowded bus.  So she tapped me

24  on the shoulder.  Told me what happened.  I didn't see

25  anything at all actually.

1          MR. MOTTOLA:  Okay.

2          PROSPECTIVE JUROR:  It was a lot of people

3     who saw it happening.  I didn't actually see it happen,

4     but I did see the person who did it.

5          MR. MOTTOLA:  Okay.  Did you tell the bus

6     driver?

7          PROSPECTIVE JUROR:  Yes.

8          MR. MOTTOLA:  Did you change your seat?

9          PROSPECTIVE JUROR:  Well the bus driver

10    stopped so the police could come.  They arrested him.

11         MR. MOTTOLA:  Okay.  There was no physical

12    contact with you and that person outside of the

13    incident?

14         PROSPECTIVE JUROR:  Correct.

15         MR. MOTTOLA:  Okay.  Were other passengers on

16    the bus doing anything to this person?

17         PROSPECTIVE JUROR:  They didn't, um, assault

18    him or anything.  They didn't do anything really.

19         MR. MOTTOLA:  Okay.  Miss Solstad, your

20    incident you mentioned, I think the person was

21    following you and they were, you mentioned something

22    about their mental state.

23         PROSPECTIVE JUROR:  He was very agitated and

24    walking up and down the subway car and yelling.  I had

25    my headphones on.  Started screaming at me in

1   particular.  I would walk away.  There was like some

2   people in like the far right who didn't really do

3   anything.  I didn't really know what to do.  I got off

4   the next stop, then he followed me from there.

5               MR. MOTTOLA:  Then at that point it

6   escalated, right?  You made it out of the subway.

7               PROSPECTIVE JUROR:  Right.

8               MR. MOTTOLA:  These are all the different

9   things you did to get away from this person.

10              PROSPECTIVE JUROR:  Correct.

11              MR. MOTTOLA:  Okay.  Just a couple of other

12  things, ladies and gentlemen.

13              You are going to hear from people you don't

14  know.  The police officers you don't know.  Any

15  civilians who testify, you don't know any of them.

16  They're going to come in here, they are going to swear

17  to tell the truth.  They're going to tell you what they

18  remember to the best of their ability.

19              But your job, if you are picked, is going to

20  be, you might have to compare different versions of

21  events, right?  How do you determine credibility of a

22  witness?  I want to just go into this briefly.

23              Is it Mr. Stanisci?  Let's say you meet

24  someone on the train.  They're asking you, you know,

25  they give you your routine about they're homeless there

1        or that they need a dollar.  How do you determine

2        whether or not this guy is homeless or his story is

3        true?  He is a stranger.

4                    PROSPECTIVE JUROR:  Right.

5                    MR. MOTTOLA:  What type of skills do you use

6        determining whether someone's telling you the truth?

7                    PROSPECTIVE JUROR:  Depends on, you know, the

8        way he's dressed, the way he approaches, the way he

9        speaks.  And many times I just give the dollar anyway.

10                   MR. MOTTOLA:  Right.  Okay.

11                   Who has kids?  Actually, Mr. Ramsey, you have

12       three children.  They're older now.

13                   PROSPECTIVE JUROR:  Yes.

14                   MR. MOTTOLA:  Okay.  When they were younger

15       did they ever get into any kind of fights?

16                   PROSPECTIVE JUROR:  Not really.

17                   MR. MOTTOLA:  Okay.  Well fine.

18                   Did they ever make a mess in the house?

19                   PROSPECTIVE JUROR:  Of course.

20                   MR. MOTTOLA:  Of course.  Maybe

21       hypothetically you hear a noise in the kitchen, you run

22       inside.  You see the cookie jar or some equivalent

23       broken.  You ask your kids what happened.  Maybe you

24       get two versions of events.

25                   How do you determine which child is telling

1          the truth?  What kind of skills do you use?

2                    PROSPECTIVE JUROR:  They both did it.  If

3          nobody man up, they both did it.

4                    (Whereupon, there was laughter in the

5          courtroom.)

6                    MR. MOTTOLA:  I like it.

7                    Anyone else?  Okay.

8                    (Whereupon, there was laughter in the

9          courtroom.)

10                    MR. MOTTOLA:  What if they both said neither

11          of us did it.  A raccoon did it, daddy.

12                    PROSPECTIVE JUROR:  That's even worse.

13                    MR. MOTTOLA:  Because a raccoon couldn't have

14          done it.

15                    PROSPECTIVE JUROR:  Right.  Now you, now you

16          messing with my intelligence.

17                    MR. MOTTOLA:  How do you know that?

18                    PROSPECTIVE JUROR:  There is no raccoon

19          running around my house.

20                    MR. MOTTOLA:  You have to use your common

21          sense.  Everybody understands that makes you a good

22          juror.  You all promise to do that?  All right.

23                    Thank you for your time.

24                    THE COURT:  Okay.  Thank you.

25                    Mr. Wittwer.

1          MR. WITTWER:  Yes, Your Honor.  Please give

2     me a five minute warning as well.

3          THE COURT:  There you go.

4          MR. WITTWER:  Good afternoon, everyone.

5          PROSPECTIVE JUROR:  Good afternoon.

6          MR. WITTWER:  I represent Lawrence McGriff.

7     Miss Burke.

8          I know you all sort of watched the other

9     group do this.  I just want to remind you really is

10    important you speak up and you tell us what you have to

11    say during this time, because it's a really good

12    opportunity for us to get information about you all.

13    There is no wrong answers.  Someone might be a good

14    juror for another trial.  Don't let me talk over you.

15    Bust your hands up if I am not noticing you have

16    something to say, okay.

17         I am going to start off kind of a downer

18    topic.  Violence.  It's bad, right?  We can all agree

19    as a society generally we don't like it when people

20    hurt other people.  In what cases do we condone

21    violence?  Like when is violence something that

22    generally we say okay, it's okay in that circumstances?

23    Who can give me an example?

24         PROSPECTIVE JUROR:  Self-defense.

25         MR. WITTWER:  Self-defense.  Okay.  So what

1    do you mean?

2              PROSPECTIVE JUROR:  So, if somebody's

3    assaulting you, coming at you to fight back, you don't

4    want them to hurt you.

5              MR. WITTWER:  Okay.  So the key then is that

6    you're in danger of being hurt at that point.

7              PROSPECTIVE JUROR:  Yes.

8              MR. WITTWER:  Are you saying, ma'am,

9    Miss Cascone, then it's okay to hurt somebody else?

10             PROSPECTIVE JUROR:  If it's between you and

11   that person.  I mean you don't want to get hurt.  Yeah.

12             MR. WITTWER:  If you can prevent yourself

13   from being hurt, that might be an area where violence

14   is okay.

15             PROSPECTIVE JUROR:  Right.

16             MR. WITTWER:  Anyone disagree with that

17   before I move on?

18             Does anyone have another example of when

19   violence is okay?  I saw a few hands.

20             I think I saw your hand up, Miss Parker.

21             PROSPECTIVE JUROR:  Yes.  If you are trying

22   to protect your family or yourself and it's your life

23   or that person's life, then that's okay to take action

24   to protect yourself.

25             MR. WITTWER:  So Miss Parker's talking about

1          protection here.  The idea of protecting yourself or

2          another person, right?  If someone else is in danger,

3          we have seen -- I mean police officers use violence.

4          Violence sometimes to protect the community.  Military

5          members serving active duty, they use violence.

6                    Does anyone think that violence can never be

7          justified for any reason?

8                    Let me ask you this.  Because we got

9          different looking people, different size people.  Is

10         there anyone who thinks they personally could never see

11         themselves committing an act of physical violence?

12                    Mr. Weber, you never.  Why is that?

13                    THE COURT:  You have to raise your voice.  I

14         cannot hear you.

15                    PROSPECTIVE JUROR:  I have a fear of

16         violence.

17                    MR. WITTWER:  You would be afraid to hurt

18         someone.  Do you think everyone else has that fear?

19                    PROSPECTIVE JUROR:  No.

20                    MR. WITTWER:  Do you think it's okay if a

21         different person who -- like do you have a problem with

22         other people using violence to protect themselves?

23                    PROSPECTIVE JUROR:  Yes.  I can't see

24         violence.

25                    THE COURT:  I can't hear you.

LORENZO MCGRIFF - JURY SELECTION                    177

1          PROSPECTIVE JUROR:  I can't see violence.

2          THE COURT:  Okay.

3          MR. WITTWER:  So you have an issue with

4     seeing violence.  It's scary.

5          PROSPECTIVE JUROR:  Yeah.

6          MR. WITTWER:  Do you have an issue with

7     violence that's used to protect someone?

8          (Whereupon, there was a pause in the

9     proceedings.)

10          PROSPECTIVE JUROR:  Depends on the case.

11          MR. WITTWER:  Are you someone who is just

12     generally going to be made uncomfortable by something

13     that has to do with violence?

14          PROSPECTIVE JUROR:  Yes.

15          MR. WITTWER:  Mr. Weber, in this trial there

16     will be discussions of violence.

17          PROSPECTIVE JUROR:  The video see violence.

18          MR. WITTWER:  You would be able to?

19          PROSPECTIVE JUROR:  I would not be able.

20          MR. WITTWER:  You would not be able to.

21          PROSPECTIVE JUROR:  No.

22          MR. WITTWER:  Do you think you are just too

23     squeamish so you, do you, do you think seeing a scary

24     image distract you from hearing the facts in this case?

25          PROSPECTIVE JUROR:  Yes.

1              MR. WITTWER:  Thank you.

2              Does anyone else feel that way?  Mr. Weber is

3       not the first person I heard say that.  Anyone else for

4       whom the fact that this trial is going to involve

5       violence is going to really upset you?

6              Miss Parker.

7              PROSPECTIVE JUROR:  Well like four years ago,

8       um, my teachers were married and her husband stabbed

9       her to death, so it kind of, it bothers.

10             MR. WITTWER:  You seem kind of upset talking

11      about.  I don't want to make you go further.

12             But let me just ask you, are you saying that

13      because of something that happened in your past, when

14      you hear about violence, you find it very emotionally

15      upsetting?

16             PROSPECTIVE JUROR:  I think about that

17      happening and it bothers me.  Like thought somebody

18      stabbing someone.

19             MR. WITTWER:  Make it upset and kind of hard

20      to focus on what is going on.  I am not going to ask

21      any more about it.  I am sorry.

22             Does anyone else have that kind of reaction?

23      I want to talk to you again about protecting yourself

24      and defending yourself.

25             Miss Payne, and don't, if I ask anything that

1    makes you uncomfortable, just stop me.  You don't have

2    to answer.  I know that you saw kind of a scary thing

3    happen on a bus that you talked about earlier.

4    Fortunately you weren't hurt or anything like that.

5    But were you afraid at that time?

6              PROSPECTIVE JUROR:  Yes.

7              MR. WITTWER:  And what was so scary?

8              PROSPECTIVE JUROR:  That someone could be so

9    debased that they would do that.

10             MR. WITTWER:  Particularly in public, right?

11             PROSPECTIVE JUROR:  Yes.

12             MR. WITTWER:  You're in a bus full of

13   strangers, right?

14             PROSPECTIVE JUROR:  Yes.

15             MR. WITTWER:  Crowded bus and there is a

16   stranger and he doesn't seem to care it's a public

17   situation.

18             PROSPECTIVE JUROR:  Yes.  His wife was in the

19   front of the bus in a wheelchair.

20             MR. WITTWER:  Oh, wow.

21             PROSPECTIVE JUROR:  I was in the back there

22   with the back entrance, so he actually went towards me

23   to do that, like, he victimized me.

24             MR. WITTWER:  He actually approached you?

25             PROSPECTIVE JUROR:  Yes.

1          MR. WITTWER:  You really have nowhere to go.

2          PROSPECTIVE JUROR:  Yes.

3          MR. WITTWER:  How did that make you feel?  If

4     that's a hard question to answer, that's okay.

5          PROSPECTIVE JUROR:  In disbelief.  I don't...

6     it's just unbelievable.

7          MR. WITTWER:  Was there a point where you

8     wondered like, is this going to escalate?  Could this,

9     you know, could he actually do something to me?

10          PROSPECTIVE JUROR:  By the time he started

11     going crazy the police were already there.  So I never

12     felt -- after it happened I never felt threatened or

13     anything.

14          MR. WITTWER:  If the police hadn't come do

15     you know what you would have done?

16          PROSPECTIVE JUROR:  If the police hadn't come

17     I would have gotten off the bus probably, you know,

18     gotten as far away as I possibly could have.

19          MR. WITTWER:  You would have tried to get

20     away from him to whatever extent you could.

21          PROSPECTIVE JUROR:  Yes.

22          MR. WITTWER:  Miss Solstad, again, same

23     issue.  I am sure it is a traumatizing experience.  If

24     you don't want to talk about it, don't talk about it.

25          To the extent you are willing, when this

1    guy's following you, what is going through your head?

2           PROSPECTIVE JUROR:  I thought I was going to

3    be raped.

4           MR. WITTWER:  Wow.  And did you think about

5    like what you might do if he caught up to you?

6           PROSPECTIVE JUROR:  When I was in that subway

7    car I didn't realize how serious the situation was.  I

8    had my headphones on, which is terrible.  There is a

9    woman sitting across from me.  When she walked past me,

10   she handed me some pepper spray in my hand and she said

11   spray it and run.

12          MR. WITTWER:  Wow.

13          PROSPECTIVE JUROR:  I had no idea what to do

14   with it.  And I was just like, this is like I, like I

15   all of a sudden really realized much more of a panic

16   situation than I was understanding it was.

17          I remember after this had happened I was so

18   angry that no one on that car helped.  He is a big guy.

19   He was like screaming at me 'cause he thought he was

20   like talking to me as if I was his ex-girlfriend or

21   something and saying some pretty lewd thing.

22          MR. WITTWER:  You said, I think, earlier he

23   had mental health issues.  How did you come to know

24   that?

25          PROSPECTIVE JUROR:  Just rambling up and down

1          the car.  I didn't think he was talking to me at first.

2          I thought he was just being crazy.  I don't know.

3                    MR. WITTWER:  Do you think he might have been

4          under the influence of drugs, something like that?

5                    PROSPECTIVE JUROR:  I don't know.  Maybe.

6          But you know, that, or mentally ill.  And then later on

7          when I like complained to the police department, I

8          wasn't, like, taken seriously.  I told another

9          girlfriend of mine, don't be out late on the subway.

10         This is this guy hanging out in the subway stop.  She

11         said oh, people told me about that guy.

12                   MR. WITTWER:  You feel frustrated nothing's

13         been done.

14                   PROSPECTIVE JUROR:  Yeah.  I don't know what

15         happened after that.

16                   MR. WITTWER:  Sort of discomforting to think

17         might still be out there.

18                   PROSPECTIVE JUROR:  Yes.

19                   MR. WITTWER:  When you were handed the pepper

20         spray you didn't use it, right?

21                   PROSPECTIVE JUROR:  No.

22                   MR. WITTWER:  Why not?

23                   PROSPECTIVE JUROR:  I felt more scared of

24         using it.  Running to me was the thing felt most, I was

25         most capable of.

183

1          MR. WITTWER:  Do you feel running wasn't an

2     option, you had to use the pepper spray, you would have

3     done it?

4          PROSPECTIVE JUROR:  I have never even

5     touched.  I have never used a weapon of any sort.

6          MR. WITTWER:  It's hard to know, right?  It's

7     hard to know what you would do in a dangerous

8     situation.

9          Does that anyone think that's true or not

10    true?  And when you're trying to get out of a dangerous

11    situation, there are a number of ways to handle that.

12    That kind of depend on the specifics of the situation,

13    right?

14          Any runners in here?  You look kind of like a

15    runner.  Mr. Cullum, you can probably outrun most

16    people.

17          (Whereupon, there was laughter in the

18    courtroom.)

19          MR. WITTWER:  You don't know.  It's a gamble,

20    right?  What if you can't.  You know, I am not out

21    running with anyone, right?

22          (Whereupon, there was laughter in the

23    courtroom.)

24          MR. WITTWER:  But at the same time it's hard

25    to know.  So does everyone agree that it's really hard

1          in a dangerous, scary situation know what's right to

2          do?  But it sounds like everyone also seems to be on

3          the same page that violence can be justified if you're

4          in danger.

5                    Does anyone not think that's true except

6          perhaps Mr. Weber?

7                    Okay.  I also, I am going to switch gears

8          here for a second.

9                    You've all heard that Mr. McGriff is presumed

10         innocent.  Can someone tell me what that means?

11                   A brave sole.  Mr. Philip.  Thank you.

12                   What does it mean to be presumed innocent?

13                   PROSPECTIVE JUROR:  Basically there's

14         nothing -- well not really nothing to show.  There's

15         nothing brought up yet to say that he is guilty so you

16         can't say.

17                   MR. WITTWER:  When there is nothing brought

18         up of evidence of guilt, then we assume the person's

19         innocent.

20                   So if you had to deliberate right now and

21         vote on whether Mr. McGriff is guilty or not guilty,

22         how would you vote?

23                   PROSPECTIVE JUROR:  Not guilty, 'cause I

24         don't have anything to say against him.  I don't have

25         anything.  No evidence.

1    during this voir dire period?

2              PROSPECTIVE JUROR:  Kind of.  Not really.

3              MR. WITTWER:  You are not picking everything

4    up.  Is that because, just because you are not fluent

5    in the English language?

6              (Whereupon, there was a pause in the

7    proceedings.)

8              PROSPECTIVE JUROR:  Yes.

9              MR. WITTWER:  Yes.  Thank you for letting me

10   know.

11             Miss Khamrak, now that I have explained a

12   little bit more, how do you feel about the presumption

13   of innocence?  What does it means?

14             PROSPECTIVE JUROR:  It means that defendant

15   innocent.

16             MR. WITTWER:  Unless?  What makes them not

17   innocent?

18             (Whereupon, there was a pause in the

19   proceedings.)

20             MR. WITTWER:  That's okay.  This isn't a

21   quiz.  I am going to move on.

22             You've all heard the burden of proof is on

23   the government.  And that means, and I know the Judge

24   just explained to you recently that they have to put on

25   evidence.  We might put on evidence, we might not.  But

1    this case is really about whether their evidence

2    convinces you beyond a reasonable doubt.

3            And what they need to prove specifically is

4    not that Mr. McGriff did something you disagree with or

5    you don't think you would have done in that situation;

6    but that he did something illegal, that he committed a

7    crime.

8            I want to introduce another thing to you

9    which we have already talked a little bit, which is

10   this idea of self-defense and the idea specifically

11   that sometimes you are justified in hurting someone

12   else in terms of self-defense.

13           Does anyone think that Mr. McGriff needs to

14   prove that he was acting in self-defense?  No one?

15   Does anyone -- Mr. Cullum, you do?

16           PROSPECTIVE JUROR:  I mean if all I am shown

17   is a video of something taking place that might

18   indicate someone, I would like to understand what

19   happened even before or after on a judgment call as to

20   whether that was self-defense.

21           MR. WITTWER:  That makes sense in a way to

22   sort of reconcile that with the fact that the burden of

23   proof is on the prosecution.

24           THE COURT:  Counsel, just stay away from the

25   burden.

1          MR. WITTWER:  Does everyone understand that

2     the government needs to prove that Mr. McGriff was not

3     acting in self-defense?

4          Mr. Moser, you understand that?

5          PROSPECTIVE JUROR:  Yes.  Can you repeat the

6     question, please?

7          MR. WITTWER:  That the government needs to

8     prove that Mr. McGriff was not acting in self-defense.

9          THE COURT:  Counsel, like I said, I will give

10    them the law and I will talk about the burden of proof,

11    okay.

12         MR. WITTWER:  Is there anyone who thinks

13    Mr. McGriff needs to satisfy you that he was acting in

14    self-defense in order to not be guilty at this trial?

15         (Whereupon, there was a pause in the

16    proceedings.)

17         MR. WITTWER:  Everyone understand the

18    question that I asked?  I will move on.

19         THE COURT:  You have about a minute.

20         MR. WITTWER:  A minute?

21         Miss Solstad, I want to ask you a specific

22    question because you were one of the people who had had

23    concerns if Mr. Kalifa doesn't testify at the trial.

24         If the government presents evidence that

25    satisfies you that a crime was committed without

1    Mr. Kalifa testifying, are you comfortable voting based

2    on that evidence?

3            PROSPECTIVE JUROR:  I find it difficult.

4    Based on my experience, like from people who are

5    watching me in that incident I described to you,

6    perhaps they thought I was his family.  It's only

7    really from my point of view.  They're unable to

8    understand I felt I was victimized.

9            MR. WITTWER:  Thank you.

10           Miss Burke asked this last time.  I want to

11   make sure you all have an opportunity to answer.  There

12   will be some really disturbing and vial language that

13   you hear about during this trial.  Specifically it will

14   be like racial language, racial slurs.

15           And you are going to need to hear it because

16   that's, you know, there will be evidence that this

17   language was used.

18           Is there anyone who will have such a hard

19   time hearing these words they don't think they can sit

20   as a juror in this case?  Anyone heard those words used

21   before in public?  Miss Payne.

22           PROSPECTIVE JUROR:  I've heard N word.  B

23   word.  Every word you possibly --

24           MR. WITTWER:  How do you feel when you hear

25   those words?

LORENZO MCGRIFF - JURY SELECTION

191

```
 1              PROSPECTIVE JUROR:  I laugh it off sometimes.
 2      In my job I hear it all the time.  On the phone.  It
 3      doesn't affect me.  It's just words.
 4              THE COURT:  Thank you.
 5              Let me just ask Miss Khamrak, what is your
 6      native language, ma'am?
 7              PROSPECTIVE JUROR:  Russian.
 8              THE COURT:  How long are you in the United
 9      States?
10              PROSPECTIVE JUROR:  20 years.
11              THE COURT:  Did you go to school here?
12              PROSPECTIVE JUROR:  Just -- no.  I just took
13      maybe courses to learn English.
14              THE COURT:  Where did you take courses?
15              PROSPECTIVE JUROR:  There was a place... a
16      community place, you know.
17              THE COURT:  Okay.  Have you -- did you have
18      any trouble understanding any of the questions that I
19      asked?
20              PROSPECTIVE JUROR:  No.  But some of question
21      I didn't understand because it's too hard to me because
22      my language is simple, you know.
23              THE COURT:  Were there questions --
24              PROSPECTIVE JUROR:  I could speak about my
25      life, about my, you know, some kitchen.  Like just a
```

LORENZO MCGRIFF - JURY SELECTION

192

1          kitchen language, you know?

2                    THE COURT:  Were there questions that were

3          asked -- let me finish.

4                    Were there questions asked by the lawyers

5          that you did not understand?

6                    PROSPECTIVE JUROR:  You know, not all the

7          questions, but most question I understand.  But you

8          know, I understand maybe better than I could talk

9          about, you know, just explain in English.  I understand

10         90 percent, but then I trying to talk, it's not 90

11         percent.  It just, I can't explain but I understand,

12         you know.

13                   THE COURT:  Okay.  Do you read the newspaper

14         in English?

15                   PROSPECTIVE JUROR:  Occasionally.

16                   THE COURT:  Occasionally.  Okay.  Thank you

17         very much.

18                   PROSPECTIVE JUROR:  You're welcome.

19                   THE COURT:  All right, ladies and gentlemen,

20         I am going to have everybody step out, including the

21         folks in the audience.  And then we will call you back

22         in.

23                   In the meantime, please don't discuss the

24         case amongst yourselves or with anyone else, and we

25         will bring you back in a little while.  Thank you for

1          your attention.

2                    (Whereupon, the prospective jury left the

3          courtroom.)

4                    (Whereupon, there was a pause in the

5          proceedings.)

6                    THE COURT:  All right.  Ready?

7                    MS. BURKE:  Yes, Your Honor.

8                    THE COURT:  On the last round there were

9          eight jurors selected.  People used two peremptory

10         challenges, defense used four.

11                   THE CLERK:  People used two, defense used

12         four.

13                   As to seats one through four, People,

14         challenges for cause?

15                   MR. MOTTOLA:  Yes.  Number one.  Oh, sorry.

16         It's Tedgardo Mercene.

17                   THE COURT:  Just make your record so we don't

18         have to --

19                   MR. MOTTOLA:  Oh, yes.  He was pretty

20         unequivocal he would need to hear from the witness,

21         from the victim in this case.

22                   MR. WITTWER:  No objection.

23                   THE COURT:  Thank you.  On consent.

24                   THE CLERK:  Any other challenges for cause in

25         seats one through four?

1          MR. MOTTOLA:  No.

2          THE CLERK:  Okay.  Mr. Wittwer, challenge

3    for cause, seats one through four.

4          MR. WITTWER:  Yes.  Juror number two, Zhang

5    Dong Ye.  I think she doesn't understand enough

6    English.

7          THE COURT:  Consent.

8          MR. MOTTOLA:  Consent.

9          THE COURT:  Thank you.

10          MR. MOTTOLA:  No problem.

11          THE CLERK:  Is that it, Mr. Wittwer?

12          MR. WITTWER:  Yes.

13          THE CLERK:  Okay.  Mr. Mottola, any

14    peremptory challenges, seats three and four?

15          MR. MOTTOLA:  No.

16          THE CLERK:  Mr. Wittwer, peremptory

17    challenges seats three or four?

18          (Whereupon, there was a pause in the

19    proceedings.)

20          MR. WITTWER:  Yes.  We are going to exercise

21    a peremptory on juror number three, Miss Mikhli.

22          THE COURT:  Is that it?

23          MR. WITTWER:  Yes.

24          THE CLERK:  Seat number four, Francesco

25    Stanisci becomes juror number nine.

1            We will take the next three seats.

2            As to seats five, six, seven, People,

3      challenges for cause?

4            MR. MOTTOLA:  None for cause.

5            THE CLERK:  None for cause.  All right.

6            Mr. Wittwer, any challenges for cause as to

7      those three seats?

8            MR. WITTWER:  Yes.  Juror number five, Amani

9      Parker, got very upset when we started talking about

10     the subject matter.  I am just afraid she won't be able

11     to focus.

12           MR. MOTTOLA:  No objection.

13           THE CLERK:  Parker, she is excused on

14     consent.

15           MR. WITTWER:  That's the only challenge for

16     cause in that.

17           THE CLERK:  Okay.  Mr. Mottola, any

18     peremptory challenges as to seats six or seven?

19           MR. MOTTOLA:  Yes.  Seat --

20           MR. WITTWER:  I apologize.  I did not realize

21     we were including seven.

22           THE COURT:  We said it's seats five, six or

23     seven peremptory.

24           MR. WITTWER:  Simply misunderstood.  I

25     apologize.  Don't want to miss my opportunity to

1     challenge seven for cause, Matthew Cullum.  He has

2     close familial relationships with police officers.  His

3     father-in-law is a retired police chief with the New

4     York City Police Department.  And his sister-in-law on

5     active duty with the NYPD.

6            I think those ties are substantial enough he

7     can't be a fair and impartial juror where the People

8     are calling large number of police witnesses.

9            MR. MOTTOLA:  Counsel had an opportunity to

10    ask Mr. Cullum if he could be fair.  He never indicated

11    in any way that his relationship would bias him.  I do

12    not believe cause is made out.

13           MR. WITTWER:  I want to add to the record

14    co-counsel reminded me he speaks to those family

15    members about their jobs.  They talk about work.

16           THE COURT:  They're retired four years.  I

17    asked him specifically.  He said he could be fair.  And

18    he was not challenged when you had an opportunity to

19    question him.

20           The challenge for cause is denied.

21           THE CLERK:  Okay.  Mr. Mottola, any

22    peremptory challenges as to seats six or seven?

23           MR. MOTTOLA:  Yes.  Seat number six, Gerard

24    Philip.

25           THE CLERK:  Gerard Philip, that is peremptory

1          challenge.

2                    Seat number seven, Mr. Cul --

3                    THE COURT:  Wait.  Any other challenges as to

4          seven?

5                    MR. MOTTOLA:  No.

6                    THE COURT:  All right.

7                    THE CLERK:  Mr. Wittwer, peremptory challenge

8          as to seat number seven.

9                    MR. WITTWER:  Yes.  Exercise a peremptory

10         challenge on seat number seven, Matthew Cullum.

11                   THE CLERK:  Okay.

12                   THE COURT:  All right.  So we have next three

13         seats, eight, nine and ten.

14                   Challenges for cause, People.

15                   MR. MOTTOLA:  None for cause.  No.

16                   THE CLERK:  Mr. Wittwer.

17                   MR. WITTWER:  None for cause.

18                   THE CLERK:  Okay.  Mr. Mottola, peremptory

19         challenges seats eight, nine or ten.

20                   MR. MOTTOLA:  Yes.  Seat number nine, Tara

21         Cascone.

22                   THE CLERK:  Nine Cascone.

23                   Anything else, Mr. Mottola, for peremptory

24         challenges?

25                   MR. MOTTOLA:  No others.

1          THE CLERK:  Mr. Wittwer, any peremptory

2     challenges as to those seats, eight or ten?

3          MR. WITTWER:  Yes.  Exercising a peremptory

4     challenge on juror number ten, Christophe Mosley.

5          THE CLERK:  Okay.  Seat number eight, Belquis

6     Payne, becomes juror number ten.

7          As to the next two seats, 11 and 12,

8     Mr. Mottola, challenge for cause.

9          MR. MOTTOLA:  Yes, Your Honor.  Juror number

10    11, Andrea Solstad.  I tried my best when speaking to

11    her to ask her, to push her on the fact that the victim

12    would not be testifying.  And I think ultimately she

13    said it would be difficult and she would need to hear

14    from him.

15          MR. WITTWER:  I would just note that the fact

16    that jurors may weigh, the fact that the victim is not

17    testifying and draw negative inferences from it is

18    completely legally permissible.  In fact, there's an

19    instruction that would probably be relevant to this

20    trial in that regard.  Miss Solstad was not as

21    unequivocal as Mr. Mercene.

22          I think she was more suggesting that she

23    thought it was problematic for the People to meet their

24    burden without the complainant testifying was a

25    completely permissible stance to take.  I don't believe

1          MR. MOTTOLA:  I used mine.

2          MR. WITTWER:  No.

3          THE COURT:  There is none.

4          MR. MOTTOLA:  Yeah, there is none.

5          THE COURT:  All right.  Seats 13 and 14,

6     challenges for cause, People.

7          MR. MOTTOLA:  Yes, Your Honor.  As to both I

8     do believe --

9          MS. BURKE:  We will consent.

10          MR. MOTTOLA:  Okay.

11          THE CLERK:  That's 13 and 14.

12          THE COURT:  Yes.

13          THE CLERK:  All right.

14          As to seats 15 and 16, challenges for cause,

15     Mr. Mottola.

16          MR. MOTTOLA:  No.  None for cause.

17          MR. WITTWER:  No challenges for cause.

18          THE CLERK:  Okay.  Mr. Mottola, peremptory

19     challenges as to those two seats, 15 or 16.

20          MR. MOTTOLA:  Just number 15, Pauline

21     Stewart.

22          THE CLERK:  And, Mr. Wittwer, as to seat

23     number 16, peremptory challenge.

24          MR. WITTWER:  Yes.  We will exercise a

25     peremptory on juror number 16, Yung Hsien Tam.

1          THE CLERK:  At the end of round two, People

2     exercised seven peremptory challenges, and defense has

3     also exercised seven peremptory challenges.

4          MR. MOTTOLA:  Defense eight, right?

5          THE COURT:  Count them up.  I think they have

6     different numbers, please.  I have one two, three, four

7     defense peremptories this round.

8          MR. MOTTOLA:  Correct.

9          MR. WITTWER:  Yes.

10         MR. MOTTOLA:  Yes.  And four this round.

11         THE COURT:  For a total of seven.

12         As to the People I have one, two, three, four

13    also exercised, for total of six.

14         MR. MOTTOLA:  Correct.

15         (Whereupon, there was a pause in the

16    proceedings.)

17         THE COURT:  Correct?

18         MS. BURKE:  I have six for the People, seven

19    for defense.

20         THE COURT:  Correct.

21         THE CLERK:  I had seven for defense.

22         THE COURT:  Six for the People.

23         THE CLERK:  Okay.

24         COURT OFFICER:  Ready for the jurors in the

25    box?

1          THE COURT:  Yes.  Thank you.

2          COURT OFFICER:  Ready?

3          THE COURT:  Yes.

4          (Whereupon, the prospective jury entered the

5     courtroom.)

6          THE COURT:  The last two were not part of

7     this round.

8          COURT OFFICER:  Okay.  All right.

9          THE COURT:  They're not part of this round.

10     Have them step outside.

11          THE CLERK:  Okay, ladies and gentlemen, if I

12     call your names, you've been selected to serve as a

13     juror in this case.  Please remain seated.

14          Juror number nine will be Francesco Stanisci.

15     Juror number ten, Belquis Payne.

16          Those two people, please remain seated.

17     Everyone else is excused with the thanks of the Court.

18     Follow the court officer's instructions outside.

19          Belquis Payne, remain seated.  Remain seated.

20          COURT OFFICER:  Everyone else, follow me.

21          THE COURT:  All right, folks, you've been

22     selected as the next two jurors.  We are going to

23     continue jury selection.  I will not make you wait

24     around while we are doing that.  We are going to just,

25     a few minutes send you on your way.  We will be

1    continuing jury selection tomorrow.  So I am going to

2    ask you to be in the jury room Thursday morning at 9:30

3    promptly.

4            Before you leave today you will follow the

5    officer.  She will just show you the jury room you are

6    going to report to each morning.

7            In the interim, please don't discuss the case

8    amongst yourselves or with anyone else.  You may tell

9    your employers or family that you are a seated juror,

10   when you need to be here, but other than that, no

11   discussion about the case.  No research online about

12   the case or anyone connected with the case.

13           If you -- we will take a contact phone number

14   from you where you can be reached if you are late, we

15   have to find you, and give you a phone number where you

16   can reach us in the event of an emergency.

17           If you like to bring water or coffee, tea, or

18   something with you in the mornings so you are more

19   comfortable sitting here, you may certainly do that.

20           All right.  Grab your things.  Follow Officer

21   Lopez Delis to the jury room.  We will see you Thursday

22   morning.  Thank you so much.

23               COURT OFFICER:  Follow me, guys.

24               (Whereupon, the jury left the courtroom.)

25               COURT OFFICER:  Ready for the jurors?

LORENZO MCGRIFF - JURY SELECTION

204

1          THE COURT:  Yes.

2          What's the matter?

3          MR. MOTTOLA:  I just wanted, I don't -- I

4    double-checked my charts.  I just think the defense

5    used four and four in the first round.

6          THE CLERK:  Defense used four in the first

7    round, peremptory challenges in this round.  People

8    used two in the first round.

9          MR. MOTTOLA:  So this round of the defense

10   challenged seat number three.

11         THE COURT:  Right.

12         MR. MOTTOLA:  Seat number seven.

13         THE COURT:  Right.  Seat number ten.

14         MR. MOTTOLA:  Ten.  And then seat number 14,

15   that's four, that's eight.

16         MS. BURKE:  I have that we used three in the

17   first round.

18         MR. MOTTOLA:  Right.

19         THE COURT:  No.  No.  Wait.  Just a minute.

20   Stop.

21         Okay.  In the first round you used, you

22   exercised your peremptory on number two, Miss Tom.

23   Number seven, Miss Patel.  Miss Fung, number ten.  And

24   Mr. Gladskiy, number 13.

25         MS. BURKE:  Correct.  My apologies.

VdV

1            MR. MOTTOLA:  Correct.

2            THE CLERK:  Yes.  That's correct.

3            THE COURT:  In this round, this last round

4    you challenged Miss Mikhli, Mr. Cullum, Mr. Christophe,

5    and Miss Tam.

6            MR. MOTTOLA:  Yes.

7            MS. BURKE:  Correct.

8            THE COURT:  So that's eight.  Yes.

9            MR. MOTTOLA:  Yes.

10           THE CLERK:  Miss Mikhli was a defense

11   peremptory.

12           MR. MOTTOLA:  Yes.

13           THE COURT:  Miss Mikhli was a defense.  One,

14   two, three, four -- so the end of the second round

15   defense used eight, People used six.

16           (Whereupon, the prospective jury entered the

17   courtroom.)

18           THE COURT:  All right, ladies and gentlemen,

19   we are going to continue with jury selection.  When you

20   hear your name, please gather your things, step up,

21   follow the sergeant's instructions.  If you can say

22   here, yes, I heard you.  Something like that.

23           THE CLERK:  Seat number one, Glen Mendez.

24   G-L-E-N, M-E-N-D-E-Z.  That's seat number one.

25           Seat number two, Simone Billingslea.

LORENZO MCGRIFF - JURY SELECTION

206

1          PROSPECTIVE JUROR:  Billingslea.

2          THE CLERK:  S-I-M-O-N-E, last name

3     B-I-L-L-I-N-G-S-L-E-A.

4          And seat number three, Joshua Ortega.

5          Last name O-R-T-E-G-A, first name Joshua.

6          Seat number four, Yihua Peng.

7          First name Y-I-H-U-A, last name P-E-N-G.

8          PROSPECTIVE JUROR:  Here.

9          THE CLERK:  Seat number six, Alisa Hidary.

10         PROSPECTIVE JUROR:  Here.

11         THE CLERK:  First name A-L-I-S-A,

12    H-I-D-A-R-Y.

13         MS. BURKE:  Judge, was this seat number five?

14         THE CLERK:  Yes.

15         MS. BURKE:  Okay.

16         THE CLERK:  Seat number six, Melina Grant.

17    M-E-L-I-N-A, G-R-A-N-T.

18         PROSPECTIVE JUROR:  Here.

19         THE CLERK:  That's seat number six.

20         Seat number seven, Victoria Jones.

21    J-O-N-E-S, first name Victoria.  Seat number seven.

22         Seat number eight, Suncica Jasarovic.

23         PROSPECTIVE JUROR:  It's okay.

24         THE CLERK:  Another one I am not going to be

25    able to say.

VdV

1          (Whereupon, there was laughter in the

2     courtroom.)

3          THE CLERK:  S-U-N-C-I-C-A, last name

4     J-A-S-A-R-O-V-I-C.

5          Seat number nine, David Auerbach.

6          PROSPECTIVE JUROR:  Here.

7          THE CLERK:  First name David, last name

8     A-U-E-R-B-A-C-H.  Seat number nine.

9          Seat number 10, Amanda Trock.

10         PROSPECTIVE JUROR:  Here.

11         THE CLERK:  Last name T-R-O-C-K, first name

12     Amanda.

13         Seat number 11, Christopher Fanelli.

14         PROSPECTIVE JUROR:  Here.

15         THE CLERK:  Last name F-A-N-E-L-L-I, first

16     name Christopher.

17         Seat number 12, Shaquan Nelson.

18         First name S-H-A-Q-U-A-N, Nelson N-E-L-S-O-N.

19     Seat number 12.

20         Seats number 13, Jesus Galvez.

21         First name J-E-S-U-S, last name G-A-L-V-E-Z.

22     Seat number 13.

23         Seat number 14, William Flounoy, junior.

24         PROSPECTIVE JUROR:  Flounoy.

25         THE CLERK:  Last name F-L-O-U-N-O-Y, junior,

1    first name William.  Seat number 14.

2              Seat number 15, Elyse Barton.

3              First name E-L-Y-S-E, B-A-R-T-O-N.

4              And seat number 16, Oventon Callwood.

5    O-V-E-N-T-O-N, C-A-L-L-W-O-O-D.

6              THE COURT:  All right.  I will just remind

7    you again as I said each round of the microphone, it's

8    very easy for me, but I have, they have to hear you,

9    essentially, next door.

10             As loudly as you can, Mr. Mendez, good

11   afternoon.

12             PROSPECTIVE JUROR:  Good afternoon.

13             THE COURT:  How are you?

14             PROSPECTIVE JUROR:  I am good.

15             THE COURT:  Good.

16             What part of Brooklyn do you live?

17             PROSPECTIVE JUROR:  Canarsie.

18             THE COURT:  How long are you living in

19   Brooklyn?

20             PROSPECTIVE JUROR:  About 29 years.

21             THE COURT:  Okay.  Your marital status?

22             PROSPECTIVE JUROR:  Single.

23             THE COURT:  Any children?

24             PROSPECTIVE JUROR:  No.

25             THE COURT:  Are you currently working?

1          PROSPECTIVE JUROR:  Yes.

2          THE COURT:  What do you do?

3          PROSPECTIVE JUROR:  Automaker.

4          THE COURT:  Okay.  Thank you.

5          Miss Billingslea, good afternoon.

6          PROSPECTIVE JUROR:  Good afternoon.

7          THE COURT:  What part of Brooklyn do you

8    live?

9          PROSPECTIVE JUROR:  Mill Basin.

10         THE COURT:  How long you living in this

11   borough?

12         PROSPECTIVE JUROR:  11 years on and off.

13         THE COURT:  Okay.  And your marital status?

14         PROSPECTIVE JUROR:  Single.

15         THE COURT:  Children?

16         PROSPECTIVE JUROR:  No children.

17         THE COURT:  Okay.  Currently working?

18         PROSPECTIVE JUROR:  I am a student but I do

19   it because I am an out of state opportunity.  I have to

20   come back here for jury duty, so that was interesting.

21         THE COURT:  Okay.  Where do you go to school?

22         PROSPECTIVE JUROR:  Texas Woman's.

23         THE COURT:  What are you studying?

24         PROSPECTIVE JUROR:  Computer science.

25         THE COURT:  Wonderful.  Okay.  Thank you.

VdV

1          Mr. Ortega, good afternoon.

2          PROSPECTIVE JUROR:  Good afternoon.

3          THE COURT:  What part of Brooklyn is home?

4          PROSPECTIVE JUROR:  Williamsburg.

5          THE COURT:  How long are you living in

6   Brooklyn?

7          PROSPECTIVE JUROR:  All my life.

8          THE COURT:  Marital status.

9          PROSPECTIVE JUROR:  Single.  No children.

10          THE COURT:  You currently employed?

11          PROSPECTIVE JUROR:  Yes.  Work for the New

12   York City Police Department, police administrative

13   aide.

14          THE COURT:  Are you assigned to a precinct or

15   1PP?

16          PROSPECTIVE JUROR:  40th Precinct, south

17   Bronx.

18          THE COURT:  How long have you been doing

19   that?

20          PROSPECTIVE JUROR:  A year and two months.

21          THE COURT:  Okay.  Thank you.

22          What -- so I will assume that as an

23   administrative aide you have direct contact on a daily

24   basis with police officers.

25          PROSPECTIVE JUROR:  Every day.

1           THE COURT:  Is there anything about either

2       your job or interaction with police officers, etcetera,

3       that would make it hard for you to be fair and

4       impartial here?

5           PROSPECTIVE JUROR:  No.

6           THE COURT:  Okay.  Thank you.

7           Miss Peng, good afternoon.

8           PROSPECTIVE JUROR:  Good afternoon.

9           THE COURT:  What part of Brooklyn do you live

10      in?

11          PROSPECTIVE JUROR:  Sunset Park.

12          THE COURT:  And how long are you living in

13      Sunset Park?

14          PROSPECTIVE JUROR:  Like ten years.

15          THE COURT:  Ten.

16          PROSPECTIVE JUROR:  20.

17          THE COURT:  20.

18          Are you married?

19          PROSPECTIVE JUROR:  Yes.

20          THE COURT:  Children?

21          PROSPECTIVE JUROR:  Three.

22          THE COURT:  Are you working?

23          PROSPECTIVE JUROR:  Yes.

24          THE COURT:  What do you do?

25          PROSPECTIVE JUROR:  Laundry.

1          MS. BURKE:  I am sorry, Judge, I didn't hear

2    her.

3          THE COURT:  Laundry.

4          And is your husband working?

5          PROSPECTIVE JUROR:  Yes.

6          THE COURT:  What does he do?

7          PROSPECTIVE JUROR:  Together.

8          THE COURT:  Oh, together.

9          Miss Peng, did you study English in the

10   United States?

11         PROSPECTIVE JUROR:  Yeah.

12         THE COURT:  Okay.  Have you had -- do you

13   have -- have you been able to understand all of the

14   questions that I have asked?

15         PROSPECTIVE JUROR:  Mmm, like 80 percent.

16         THE COURT:  Okay.  Counsels wants to come up?

17         (Whereupon, there was a discussion held at

18   the bench off the record.)

19         THE COURT:  Okay.  We are going to excuse

20   Miss Peng.  We will call another.

21         All right, Miss Peng, we are going to excuse

22   you so you can take your things.  Thank you.

23         (Whereupon, a prospective juror left the

24   courtroom.)

25         THE CLERK:  Seat number four, Yvonne Best.

1    Y-V-O-N-N-E, B-E-S-T.  Will replace seat number four.

2    Will now be seat number four.

3              PROSPECTIVE JUROR:  Sorry.

4              (Whereupon, there was laughter in the

5    courtroom.)

6              THE CLERK:  Now they're completely awake.

7              THE COURT:  Having completely embarrassed

8    you.  Excellent.  My work here is done.

9              How are you doing?

10             PROSPECTIVE JUROR:  Good.

11             THE COURT:  What part of Brooklyn do you live

12   in?

13             PROSPECTIVE JUROR:  Crown Heights.

14             THE COURT:  And your marital status?

15             PROSPECTIVE JUROR:  Single.

16             THE COURT:  Any children?

17             PROSPECTIVE JUROR:  No.

18             THE COURT:  Okay.  Are you currently working?

19             PROSPECTIVE JUROR:  No.

20             THE COURT:  In school?

21             PROSPECTIVE JUROR:  No.

22             THE COURT:  Okay.  What did you go to school

23   for?

24             PROSPECTIVE JUROR:  Computer science.

25             THE COURT:  Okay.

1       PROSPECTIVE JURY:  Bless you.

2       THE COURT:  Okay.  Thank you for that.

3       Miss, is it pronounced Hidary?

4       PROSPECTIVE JUROR:  Yeah.

5       THE COURT:  You tell me how you say it.

6       PROSPECTIVE JUROR:  Hidary.

7       THE COURT:  Okay.  Sorry, Miss Hidary.  Good

8   afternoon.

9       What part of Brooklyn do you live in?

10      PROSPECTIVE JUROR:  Gravesend.

11      THE COURT:  How long are you living in

12  Brooklyn?

13      PROSPECTIVE JUROR:  All my life.

14      THE COURT:  Okay.  And your marital status?

15      PROSPECTIVE JUROR:  Married.

16      THE COURT:  Children?

17      PROSPECTIVE JUROR:  Five.

18      THE COURT:  Are you currently working outside

19  the home?

20      PROSPECTIVE JUROR:  Yes.

21      THE COURT:  What do you do?

22      PROSPECTIVE JUROR:  An event coordinator for

23  a caterer.

24      THE COURT:  Oh.  Here in Brooklyn?

25      PROSPECTIVE JUROR:  (Indicating).

215

```
 1                   THE COURT:  Okay.  Does your spouse work
 2        outside the home?
 3                   PROSPECTIVE JUROR:  Yes.  Importer.
 4        Children's wear.
 5                   THE COURT:  Okay.  Thank you.
 6                   Miss Grant, hello again.
 7                   What part of Brooklyn is home?
 8                   PROSPECTIVE JUROR:  Crown Heights.
 9                   THE COURT:  And your marital status?
10                   PROSPECTIVE JUROR:  Married.
11                   THE COURT:  Children?
12                   PROSPECTIVE JUROR:  Three children.
13                   THE COURT:  And are you currently working?
14                   PROSPECTIVE JUROR:  No.  I am a stay-at-home
15        mom.
16                   THE COURT:  Okay.  Is your spouse working
17        outside the home?
18                   PROSPECTIVE JUROR:  Well, occasionally he has
19        a welding and construction company.
20                   THE COURT:  Okay.  Thank you.
21                   Miss Jones, hello.
22                   PROSPECTIVE JUROR:  Hi.
23                   THE COURT:  What part of Brooklyn do you live
24        in?
25                   PROSPECTIVE JUROR:  Dumbo.
```

1                    THE COURT:  And your marital status?

2                    PROSPECTIVE JUROR:  Single.

3                    THE COURT:  Any children?

4                    PROSPECTIVE JUROR:  No.

5                    THE COURT:  How long are you living in

6         Brooklyn?

7                    PROSPECTIVE JUROR:  About three years.

8                    THE COURT:  Before that?

9                    PROSPECTIVE JUROR:  D.C.

10                    THE COURT:  Are you currently working?

11                    PROSPECTIVE JUROR:  Yes.

12                    THE COURT:  What do you do?

13                    PROSPECTIVE JUROR:  Merchandise buyer.

14                    THE COURT:  Okay.  Thank you.

15                    Miss Jasarovic, what part of Brooklyn do you

16         live in?

17                    PROSPECTIVE JUROR:  Bed-Stuy.

18                    THE COURT:  How long you living in Brooklyn?

19                    PROSPECTIVE JUROR:  Three years.

20                    THE COURT:  Before that?

21                    PROSPECTIVE JUROR:  Iowa.

22                    THE COURT:  Okay.  And your marital status?

23                    PROSPECTIVE JUROR:  Single.

24                    THE COURT:  Any children?

25                    PROSPECTIVE JUROR:  No.

217

1        THE COURT:  Are you working?

2        PROSPECTIVE JUROR:  Yes.

3        THE COURT:  What do you do?

4        PROSPECTIVE JUROR:  Architect.

5        THE COURT:  Dumbo as the, you see the

6   transformation of every neighborhood in Brooklyn.  All

7   right.  Thank you.

8        Mr. Auerbach, how are you?

9        PROSPECTIVE JUROR:  Good.

10        THE COURT:  Good.

11        What part of Brooklyn do you live in?

12        PROSPECTIVE JUROR:  Park Slope.  For 12 years

13   now.

14        THE COURT:  Okay.  And your marital status?

15        PROSPECTIVE JUROR:  Married.  Two kids.

16        THE COURT:  Two.  Okay.

17        Are you currently working?

18        PROSPECTIVE JUROR:  Yeah.  I am a freelance

19   writer.  My wife's a software engineer.

20        THE COURT:  Okay.  Thank you.

21        Miss Trock, hello.  What part of Brooklyn?

22        PROSPECTIVE JUROR:  Crown Heights.

23        THE COURT:  How long are you in this borough?

24        PROSPECTIVE JUROR:  About a year and a half.

25        THE COURT:  Where did you live before that?

1          PROSPECTIVE JUROR:  Morningside Heights.

2          THE COURT:  All right.  Your marital status?

3          PROSPECTIVE JUROR:  I have a boyfriend.

4          THE COURT:  Okay.  Children?

5          PROSPECTIVE JUROR:  No.

6          THE COURT:  Are you currently working?

7          PROSPECTIVE JUROR:  Yes.

8          THE COURT:  What do you do?

9          PROSPECTIVE JUROR:  I am a graduate student.

10    I have two part-time jobs.

11          THE COURT:  Let's start with the graduate

12    program.

13          PROSPECTIVE JUROR:  Educational technology.

14          THE COURT:  And what kind of jobs are your

15    part-time jobs?

16          PROSPECTIVE JUROR:  I am on contract as an

17    instructional designer at a media company.  I teach

18    after school.

19          THE COURT:  Okay.  Thank you.

20          Mr. Fanelli, good afternoon.

21          PROSPECTIVE JUROR:  Good afternoon.

22          THE COURT:  What part of Brooklyn do you live

23    in?

24          PROSPECTIVE JUROR:  Greenpoint.

25          THE COURT:  How long were you in Brooklyn?

1            PROSPECTIVE JUROR:  Six years.

2            THE COURT:  Before that?

3            PROSPECTIVE JUROR:  Manhattan.

4            THE COURT:  Okay.  Brooklyn's the place to

5     be.

6            PROSPECTIVE JUROR:  Yea.

7            THE COURT:  Your marital status?

8            PROSPECTIVE JUROR:  Married.  Two kids.

9            THE COURT:  Okay.  Are you currently working?

10           PROSPECTIVE JUROR:  Yes.

11           THE COURT:  What do you do?

12           PROSPECTIVE JUROR:  Manage computer

13    programers at a corporate law firm.

14           THE COURT:  You said the firm only does

15    corporate work?

16           PROSPECTIVE JUROR:  They have litigation

17    group as well.

18           THE COURT:  Any criminal defense of any kind?

19           PROSPECTIVE JUROR:  Rarely criminal.

20           THE COURT:  Are you involved in any of that?

21           PROSPECTIVE JUROR:  No.

22           THE COURT:  Is your spouse working?

23           PROSPECTIVE JUROR:  Yes, she is.

24           THE COURT:  Doing what?

25           PROSPECTIVE JUROR:  Physical therapist.

1          THE COURT:  Okay.  Thank you.

2          Mr. Nelson, good afternoon.

3          PROSPECTIVE JUROR:  How you doing, Your

4     Honor?

5          THE COURT:  I am good.  Thank you.

6          What part of Brooklyn?

7          PROSPECTIVE JUROR:  East New York.

8          THE COURT:  And how long you living in

9     Brooklyn?

10          PROSPECTIVE JUROR:  All my life.

11          THE COURT:  Okay.  Your marital status?

12          PROSPECTIVE JUROR:  Single.

13          THE COURT:  Any children?

14          PROSPECTIVE JUROR:  One.

15          THE COURT:  Okay.  Are you currently working?

16          PROSPECTIVE JUROR:  Yes.

17          THE COURT:  What do you do?

18          PROSPECTIVE JUROR:  I am a manager at BJs.

19          THE COURT:  Okay.  Thank you.

20          Mr. Galvez.  Mr. Galvez.

21          PROSPECTIVE JUROR:  Yes.

22          THE COURT:  Hi.

23          What part of Brooklyn do you live in,

24     Mr. Galvez?

25          (Whereupon, there was a pause in the

VdV

1      proceedings.)

2                    PROSPECTIVE JUROR:  Um.

3                    THE COURT:  Tell you what.  You want to come

4      up and chat with me a little bit up here?

5                    PROSPECTIVE JUROR:  Carlton Atlantic.

6                    THE COURT:  Yeah?

7                    Come on up, counsels.

8                    (Whereupon, there was a discussion held at

9      the bench on the record.)

10                   PROSPECTIVE JUROR:  I apologize.

11                   THE COURT:  That's okay.

12                   PROSPECTIVE JUROR:  Very nervous.

13                   THE COURT:  I see.  I see.  Okay.

14                   Is it, I know this can be kind of an

15     overwhelming sort of setting for people to be in if you

16     are not familiar with it.

17                   Are you, may I ask, do you have issues with

18     nervousness and anxiety?

19                   PROSPECTIVE JUROR:  Yes.

20                   THE COURT:  Do you currently see a doctor to

21     help you with that?

22                   PROSPECTIVE JUROR:  No.

23                   THE COURT:  No.  Okay.

24                   Is it something that's particular to just the

25     fact that you are here on jury duty, or is it something

1    you kind of have to deal with it other times?

2             PROSPECTIVE JUROR:  Not very good around

3    other people.  I rarely leave my house so I don't

4    really interact with others.  It's this kind of

5    situation is very --

6             THE COURT:  Difficult for you.

7             PROSPECTIVE JUROR:  Yes.

8             THE COURT:  I have to tell you, I think it's

9    such a big step you actually were able to come be able

10   to do.  Do what you need to do.

11            Are you working now?

12            PROSPECTIVE JUROR:  No.

13            THE COURT:  Okay.  I think that we all

14   appreciate the effort that it took for you to get here.

15   And I think if it's okay with you, we will excuse you

16   because I think it's probably very intense for you to

17   have to kind of deal with all those issues on a daily

18   basis.  Would that be okay?

19            PROSPECTIVE JUROR:  Yes.

20            THE COURT:  Okay.  We are going to mark your

21   card excused.  And hopefully things, this was such a

22   big step for you, hopefully you will be able to make

23   some more positive steps and kind of get out, see the

24   world, okay.

25            PROSPECTIVE JUROR:  Okay.

1          THE COURT:  Thank you.  Have a good holiday,

2     okay.

3          PROSPECTIVE JUROR:  Okay.

4          THE COURT:  I am going to excuse you.  Go

5     back downstairs.

6          Just send him on his way.

7          COURT OFFICER:  Yes.

8          THE COURT:  Mr. Galvez, we are going to take

9     care of the card with the paperwork and discharge you

10    and we will send you on your way home, okay.  Good luck

11    to you.

12         PROSPECTIVE JUROR:  Thank you.

13         COURT OFFICER:  Sir, you can follow me.

14         (Whereupon, the following took place on the

15    record in open court.)

16         THE CLERK:  To refill seat number three,

17    Marlene Laplante.  Did I say the last name right?

18         PROSPECTIVE JUROR:  Laplante.

19         THE CLERK:  M-A-R-L-E-N-E.

20         PROSPECTIVE JUROR:  Correct.

21         THE CLERK:  Last name L-A-P-L-A-N-T-E.

22         PROSPECTIVE JUROR:  Correct.

23         THE CLERK:  Thank you.

24         That's seat number 13.

25         THE COURT:  Okay.  Hi.

1          PROSPECTIVE JUROR:  Hi.

2          THE COURT:  Do we pronounce the E at the end

3     or we don't?

4          PROSPECTIVE JUROR:  Yes.

5          THE COURT:  We do.  Okay.

6          So what part of Brooklyn do you live in?

7          PROSPECTIVE JUROR:  East Flatbush.

8          THE COURT:  And how long you living in

9     Brooklyn?

10         PROSPECTIVE JUROR:  32 years.

11         THE COURT:  Okay.  And your marital status,

12    Miss Laplante?

13         PROSPECTIVE JUROR:  Married.

14         THE COURT:  Any kids?

15         PROSPECTIVE JUROR:  Two.

16         THE COURT:  Okay.  Are you currently working?

17         PROSPECTIVE JUROR:  Yes.

18         THE COURT:  What do you do?

19         PROSPECTIVE JUROR:  Hotel job.

20         THE COURT:  Okay.

21         MS. BURKE:  I am sorry, Your Honor.  I didn't

22    hear Miss Laplante.

23         PROSPECTIVE JUROR:  Hotel job.

24         MS. BURKE:  Hotel.

25         THE COURT:  Uh-huh.

1          And, Miss Laplante, is your spouse working as

2     well?

3          PROSPECTIVE JUROR:  No.  He is disabled.

4          THE COURT:  Disabled.  I am sorry.  Okay.

5     Thank you.

6          Mr. Flounoy, good afternoon.

7          PROSPECTIVE JUROR:  Good afternoon.

8          THE COURT:  What part of Brooklyn is home?

9          PROSPECTIVE JUROR:  Downtown Brooklyn.

10          THE COURT:  How long are you in Brooklyn?

11          PROSPECTIVE JUROR:  19 years.

12          THE COURT:  Okay.  And your marital status,

13     sir?

14          PROSPECTIVE JUROR:  Married.

15          THE COURT:  Children?

16          PROSPECTIVE JUROR:  Yes.  Son.  Australia.

17          THE COURT:  Doesn't want you to visit?

18          PROSPECTIVE JUROR:  He wants me to visit,

19     trust me.

20          THE COURT:  There you go.

21          Are you currently working?

22          PROSPECTIVE JUROR:  No.  I am retired.

23          THE COURT:  What did you do before you

24     retired?

25          PROSPECTIVE JUROR:  Wall Street stockbroker.

1          THE COURT:  Is your spouse working?

2          PROSPECTIVE JUROR:  She is an artist.

3          THE COURT:  So always working?

4          PROSPECTIVE JUROR:  Yes actually.

5          THE COURT:  All right.  Thank you.

6          Miss Barton, good afternoon.

7          PROSPECTIVE JUROR:  Hi.

8          THE COURT:  What part of Brooklyn do you live

9     in?

10          PROSPECTIVE JUROR:  Carroll Gardens.

11          THE COURT:  How long are you in Brooklyn?

12          PROSPECTIVE JUROR:  Six years.

13          THE COURT:  Okay.  Before that?

14          PROSPECTIVE JUROR:  Manhattan.

15          THE COURT:  And your marital status?

16          PROSPECTIVE JUROR:  Yes, married.

17          THE COURT:  Married.

18          Any kids?

19          PROSPECTIVE JUROR:  No.  No children.

20          THE COURT:  Are you currently working?

21          PROSPECTIVE JUROR:  Yes.  Advertising.

22          THE COURT:  And your, is your spouse working?

23          PROSPECTIVE JUROR:  Yeah.  He is in sales for

24     a start-up.

25          THE COURT:  Okay.  Thank you.

LORENZO MCGRIFF - JURY SELECTION

227

1          Mr. Callwood, good afternoon.

2          PROSPECTIVE JUROR:  Good afternoon.

3          THE COURT:  What part of Brooklyn do you live

4     in?

5          PROSPECTIVE JUROR:  Georgetown Mall.

6          THE COURT:  Oh, yes.  I am sorry.  I am with

7     you now.  Okay.  Thank you.

8          And your marital status?

9          PROSPECTIVE JUROR:  Married.

10          THE COURT:  Children?

11          PROSPECTIVE JUROR:  Three children.

12          THE COURT:  Okay.  Are you currently working?

13          PROSPECTIVE JUROR:  Yes.

14          THE COURT:  What do you do?

15          PROSPECTIVE JUROR:  Mainly planning and cook.

16          THE COURT:  Is your spouse, wife working

17     outside the home?

18          PROSPECTIVE JUROR:  Yes.

19          THE COURT:  Doing what?

20          PROSPECTIVE JUROR:  A loan officer for Chase.

21          THE COURT:  Okay.  Thank you.

22          All right.  I am going to start as I did

23     before by asking you some questions as a group.  If the

24     answer is yes, raise your hand.  We will speak about

25     it.  If there's something you want to discuss more

1         privately, of course let me know.  We will have you

2         come up.

3               Mr. Ortega, start with you in just a minute.

4               Have any of you or any members of your family

5         ever worked for the New York City Police Department,

6         the Court system, or the District Attorney's Office?

7               Bunch of hands.

8               Mr. Ortega, as I said, we talked to you on

9         that issue.

10              Miss Barton.

11              PROSPECTIVE JUROR:  My father-in-law was a

12        detective.  Retired ten years.  He was a detective

13        undercover and has been in, was in the department for

14        40 plus years.

15              THE COURT:  Here in Brooklyn?

16              PROSPECTIVE JUROR:  Yeah.

17              THE COURT:  Okay.  Is there anything about

18        the nature of the job that he had, the anecdotes he

19        might have told you, just the fact he was a police

20        officer, anything that would affect your ability to be

21        fair and impartial here?

22              PROSPECTIVE JUROR:  No.

23              THE COURT:  Other hands I know.  Mr. Nelson.

24              PROSPECTIVE JUROR:  Yes.  My sister is a

25        court officer.

Case 1:21-cv-00703-AMD-LB   Document 6-2   Filed 04/15/21   Page 223 of 232 PageID #: 439

1           THE COURT:  Okay.  Where?  In this building?

2           PROSPECTIVE JUROR:  Yes.  No.  In the

3      building.  It's not like this building.

4           THE COURT:  Okay.  Schermerhorn Street?

5           PROSPECTIVE JUROR:  Yes.

6           THE COURT:  Now, have you been to the

7      courthouse to watch her work?

8           PROSPECTIVE JUROR:  No.

9           THE COURT:  Okay.  Is there anything about

10     the fact that she is a court officer that would make it

11     hard for you to be fair and impartial here?

12          PROSPECTIVE JUROR:  No.

13          THE COURT:  Thank you.

14          Other hands.  Miss Trock.

15          PROSPECTIVE JUROR:  My uncle's a retired NYPD

16     officer.

17          THE COURT:  And how long ago did he retire,

18     do you know?

19          PROSPECTIVE JUROR:  Maybe about ten years

20     ago.

21          THE COURT:  Do you know where he was

22     assigned, what kind of work he did?

23          PROSPECTIVE JUROR:  I don't know that much

24     about it.

25          THE COURT:  Okay.  Is there anything in the

1      fact he was a police officer or discussions that you

2      may have had make it hard for you to be fair and

3      impartial here?

4              PROSPECTIVE JUROR:  No.

5              THE COURT:  Thank you.

6              Anybody else?  Make sure I get everybody.

7      No.  Okay.

8              So following up on that.  Because this is a

9      criminal case, police officers will be involved.  There

10     will be testimony from police officers as well as

11     civilians.  In a trial, a police officer is just like

12     any other witness and their testimony gets no more

13     weight, no less weight than any other witness who might

14     be called.

15             There anyone among you who could not treat a

16     police officer like any other witness?

17             PROSPECTIVE JUROR:  Just have a concern,

18     'cause in my eyes a police officer is held to a higher

19     level.  It's, they're here to defend me, you know,

20     Americans, the people.  And I would just always assume

21     that their word is a more credible word.  Because of

22     their position.

23             So I don't, like I kept hearing you say that

24     all day, I kept thinking to myself, but he is a police

25     officer.  His word weighs more than the average person,

1           at least in my eyes.

2                   THE COURT:  Okay.

3                   PROSPECTIVE JUROR:  That's what I feel.

4                   THE COURT:  Okay.  All right.  Thank you for

5           that.

6                   Is there anyone else who has similar

7           concerns?  Mr. Auerbach.

8                   PROSPECTIVE JUROR:  Might --

9                   THE COURT:  I can't hear you, sir.

10                  PROSPECTIVE JUROR:  I might be inclined to be

11          a little more sceptical.

12                  THE COURT:  More sceptical.

13                  Any specific reason for that?

14                  (Whereupon, there was a pause in the

15          proceedings.)

16                  PROSPECTIVE JUROR:  General conclusion based

17          on long years --

18                  THE COURT:  Sorry.  I can't hear you.

19                  PROSPECTIVE JUROR:  General conclusions,

20          years of experience, and just stories.  Like no one

21          particular incident that I can point to.

22                  THE COURT:  When you say experience,

23          experiences that you personally have had?

24                  PROSPECTIVE JUROR:  More that I know of from

25          people that I have spoken to.

1           THE COURT:  Did you recognize any of the

2       names of the officers we read out here?

3           PROSPECTIVE JUROR:  (Indicating).

4           THE COURT:  Okay.  Thank you for that.

5           Anybody else?

6           Yes, Mr. Callwood.

7           PROSPECTIVE JUROR:  I had experience with it,

8       experience with them that we had words were taken over

9       mine's.

10          THE COURT:  Where did that take place -- how

11      did that happen?

12          PROSPECTIVE JUROR:  With friends that I hang

13      out with who --

14          MS. BURKE:  He'd like to speak to us

15      privately.

16          THE COURT:  Come on up.

17          (Whereupon, there was a discussion held at

18      the bench on the record.)

19          THE COURT:  So the lawyers need to hear and

20      the court reporter needs to hear.

21          PROSPECTIVE JUROR:  Okay.  I've been arrested

22      a couple of times.  Friends that hanging out, drug

23      possession on them and I get.  I know they would carry

24      a lot of weight, just regular, and I was let go.

25          THE COURT:  Did any of the cases go to trial?

1          PROSPECTIVE JUROR:  No.  None of the cases

2     went to trial.

3          THE COURT:  Did you plead guilty in any of

4     them?

5          PROSPECTIVE JUROR:  One.

6          THE COURT:  About how long ago?

7          PROSPECTIVE JUROR:  It's about five years ago

8     or more.

9          THE COURT:  Do you remember what you took a

10    plea to?

11         PROSPECTIVE JUROR:  They said I had drugs on

12    me but I didn't have it on me, it was my friend and all

13    in the group.  And they said all of us.

14         THE COURT:  Do you remember did they tell you

15    if it was -- what was the sentence, do you remember?

16         PROSPECTIVE JUROR:  I didn't get a sentence.

17    Only spend one night in jail.

18         THE COURT:  Right.

19         PROSPECTIVE JUROR:  And when I see the Judge

20    they said that I had five years probation.  If I was

21    caught in this again, I will do time.

22         THE COURT:  Five years probation.  Okay.

23    Okay.  All right.  Thank you.  We might have some more

24    questions about it tomorrow morning.

25         PROSPECTIVE JUROR:  Okay.

1                THE COURT:  Thank you.

2                (Whereupon, the following took place on the

3        record in open court.)

4                THE COURT:  Mr. Callwood, come on back up.

5                (Whereupon, there was a discussion held at

6        the bench on the record.)

7                THE COURT:  When this was in Brooklyn,

8        correct?

9                PROSPECTIVE JUROR:  No.  This is in Harlem.

10               THE COURT:  Harlem.

11               Do you know who represented you in that case?

12               PROSPECTIVE JUROR:  I forget what her name

13       was.  I know it was a woman.

14               THE COURT:  Was it a Legal Aid attorney?

15               PROSPECTIVE JUROR:  It was one represented by

16       the state.

17               THE COURT:  18-B.

18               Do you know if the case went to the grand

19       jury?

20               PROSPECTIVE JUROR:  No, it never went to the

21       grand jury.

22               THE COURT:  Unless he took a C.I. plea.

23               Okay.  You said you took the, whatever

24       admission you made to the Judge was after the first

25       night in jail or was it a while after you got arrested?

1          PROSPECTIVE JUROR:  It was when I got

2     arrested.  The Court --

3          THE COURT:  The next day.

4          PROSPECTIVE JUROR:  Yes.

5          THE COURT:  That's when you --

6          PROSPECTIVE JUROR:  That's when I had to take

7     the plea.

8          THE COURT:  Would you by any chance have any

9     papers related to that in your house?

10          PROSPECTIVE JUROR:  No.

11          THE COURT:  No.  Okay.

12          Do you have any questions that you want to

13     ask?

14          MS. BURKE:  Judge, can I just inquire?

15          THE COURT:  Sure.

16          MS. BURKE:  Mr. Callwood, did they, did the

17     Court tell you that you ought to be convicted of a

18     felony?

19          PROSPECTIVE JUROR:  No, they didn't say that.

20     They say if I go the grand jury --

21          THE COURT:  Maybe it was an SCI.  Taking a

22     plea they would go to the grand jury.

23          PROSPECTIVE JUROR:  That's what the Judge

24     said.

25          MS. BURKE:  Did you report to probation for

VdV

1    five years?

2               PROSPECTIVE JUROR:  No.

3               MS. BURKE:  Did you ever report to probation?

4               PROSPECTIVE JUROR:  No.  Never.

5               THE COURT:  Okay.  All right.  Thank you.

6               (Whereupon, the following took place in open

7        court on the record.)

8               THE COURT:  All right, ladies and gentlemen,

9        given the lateness of the hour I am going to send all

10       of you and the folks in the audience on your way.  I am

11       going to ask you to be back outside the courtroom

12       tomorrow at 9:45.  Please don't come into the courtroom

13       until we call for you.

14              In the interim, please don't discuss the case

15       amongst yourselves or with anyone else.  You may

16       obviously tell your family members, etcetera, that you

17       are still prospective jurors and you have to be.

18              Please don't do any research online about the

19       case, anything connected with it, or any of the parties

20       connected with the case.

21              And if you see any of the attorneys or

22       Mr. McGriff as you are coming up in the elevator

23       tomorrow or waiting outside the courtroom, they have

24       all been instructed by me not to have interactions with

25       prospective jurors.  So they're not going to smile and

1           say good morning.  Please don't hold it against them

2           for doing so.  And we will see you tomorrow.

3                    If you would like to bring water or coffee or

4           tea with you so you are more comfortable while we are

5           continuing to work, you may certainly do that.

6                    So we will see you at 9:45 sharp.  I thank

7           you for your continued participation.  Thank you.

8                    PROSPECTIVE JUROR:  Thank you.

9                    (Whereupon, the prospective jury left the

10          courtroom.)

11                   THE COURT:  Everybody in the audience, too.

12                   PROSPECTIVE JUROR:  Your Honor --

13                   COURT OFFICER:  Come this way, please.

14                   THE COURT:  Just speak to the officer.

15                   COURT OFFICER:  Step outside.  I will be

16          right out.

17                   (Whereupon, there was a pause in the

18          proceedings.)

19                   THE COURT:  All right.  As far as number 16

20          is concerned... approach for a minute.

21                   (Whereupon, there was a discussion held at

22          the bench off the record.)

23                   THE COURT:  See you at 9:45 tomorrow.  We

24          will continue with questioning.  As I said, you will

25          each have the opportunity to ask more questions.  See

VdV

1      if we can determine if it's something that immediately

2      disqualifies him.  I will have to kind of mull that

3      over.  Okay.

4              MR. MOTTOLA:  Okay.

5              THE COURT:  Okay.  Bail is continued.  Thank

6      you all.

7              MR. WITTWER:  Thank you, Judge.

8      *       *       *       *       *       *       *       *

9      **(Whereupon, the proceedings of People V. Lorenzo
   McGriff, held on December 13, 2016 in front of Hon. Miriam**

10     **Cyrulnik at 320 Jay Street, Brooklyn, New York were
   adjourned to December 14, 2016.)**

11     *       *       *       *       *       *       *       *

12         It is hereby certified that the foregoing is a true
   and accurate transcript of the proceedings.

13

14                    *Vanessa del Valle*
                  **VANESSA DEL VALLE**

15                  Senior Court Reporter

16

17

18

19

20

21

22

23

24

25