SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS : CRIMINAL TERM : PART 33
------------------------------------------------x
THE PEOPLE OF THE STATE OF NEW YORK

                                    Plaintiff,

            -against-

LORENZO MCGRIFF,

                                    Defendant.
------------------------------------------------x
Indict. No. 6248/15              TRIAL

                                320 Jay Street
                                Brooklyn, New York

                                December 19, 2016


B E F O R E :

            HONORABLE MIRIAM CYRULNIK,
                    Justice, and a jury.


        (Appearances same as previously noted.)

                            VANESSA DEL VALLE
                            Official Court Reporter


            *       *       *       *

            THE CLERK:  Calling number three from the

Part 33 calendar, indictment 6248 of 2015, Lorenzo

McGriff.  Case continued on trial.  Parties are

present.  Defendant is out on bail.  Jury panel is not

present.

            MS. BURKE:  One moment, Your Honor.

            THE COURT:  Sure.  You can have a seat.

Thank you.

            MS. BURKE:  Jamie Burke, Brooklyn Defender

                        VdV

1    Services, 177 Livingston Street, Brooklyn, New York

2    11201 on behalf of Mr. McGriff.

3              MR. WITTWER:  Ben Wittwer, also on behalf of

4    Mr. McGriff.

5              Good morning.

6              THE COURT:  Good morning.

7              MR. MOTTOLA:  For the Office of the District

8    Attorney, Lawrence Mottola.

9              Good morning.

10             THE COURT:  Good morning.

11             MS. D'AGOSTINO:  Office of the District

12   Attorney by Stephanie D'Agostino.

13             THE COURT:  Good morning, everyone.

14             Good morning, Mr. McGriff.

15             Miss Burke, ready to go?

16             MS. BURKE:  Yes, Your Honor.

17             THE COURT:  You can line them up.  Thank you.

18             (Whereupon, there was a pause in the

19   proceedings.)

20             COURT OFFICER:  Ready for the jury?

21             THE COURT:  Thank you.

22             COURT OFFICER:  Jury entering.

23             Step in.

24             (Whereupon, the jury entered the courtroom.)

25             THE CLERK:  Good morning.  The jury panel is

LORENZO MCGRIFF - TRIAL

276

1      present and properly seated.

2                  Does each side waive the jury roll call?

3                  MR. MOTTOLA:  So waived.

4                  MS. BURKE:  So waived.

5                  THE CLERK:  Thank you.

6                  THE COURT:  Thank you.

7                  Good morning, everyone.

8                  THE JURY:  Good morning.

9                  THE COURT:  We're back to work and therefore

10     it's cold.

11                 (Whereupon, there was laughter in the

12     courtroom.)

13                 THE COURT:  Okay.  Well hope you all had a

14     restful weekend and/or finished all your holiday

15     shopping.  And we can relax, drink your tea or coffee.

16     Make yourselves comfortable.

17                 Miss Burke, whenever you are ready, or is

18     it --

19                 MS. BURKE:  Your Honor, at this time I would

20     call Nicole McGriff.

21                 MR. MOTTOLA:  Oh, wait a minute.

22                 Could we approach, Your Honor?

23                 THE COURT:  Sure.

24                 (Whereupon, there was a discussion held at

25     the bench off the record.)

VdV

1    THE COURT:  All right, ladies and gentlemen,

2    I am going to step outside with the attorneys for just

3    a moment, and the reporter.  Please don't speculate

4    about the reason for that.  Don't discuss the case

5    amongst yourselves while you are sitting here, and we

6    will be back to you in just a moment.  Thank you.

7         (Whereupon, the following took place outside

8    the presence of the jury.)

9         THE COURT:  Okay.  Mr. Mottola.

10        MR. MOTTOLA:  Yes.  So I just have an

11   application that the defense be required to make an

12   offer of proof as to what Mr. McGriff's wife would say.

13   I don't believe she was a witness at the scene.  I

14   don't know why she is being called.

15        MS. BURKE:  Your Honor, if I may,

16   Miss McGriff had been married to Mr. McGriff for 25

17   years.  She knows what his hobbies are.  She knows the

18   instrument that was used in this incident and she can

19   attest to what it was, because Mr. Mottola has been

20   repeatedly calling it a knife.  And she knows that her

21   husband uses it to repair wires, speakers and wires and

22   things like that.  She knows it's a wire stripper.

23        That's the extent of her testimony.

24        MR. MOTTOLA:  Just if I could just respond

25   just briefly, Your Honor.

LORENZO MCGRIFF - TRIAL

278

1        Whether or not it was a knife or a wire

2    stripper I would argue is collateral, completely.  It's

3    a dangerous instrument he used to plunge into Mohammed

4    Khalifa five times.  He admitted it on the stand.  And

5    several times throughout his own testimony he referred

6    to it as a knife.  He only stuck to it as a wire cutter

7    mostly on direct and occasionally on cross, but

8    ultimately called it a knife, and referred to it as a

9    knife in the grand jury, including the testimony that I

10   impeached him with.

11        THE COURT:  Okay.  I mean, I think that's a

12   collateral issue so... I don't see how that's relevant.

13   I don't see how it's relevant.

14        MS. BURKE:  Note my exception for the record.

15        THE COURT:  Understood.  Okay.  Thank you.

16        (Whereupon, the following took place within

17   the presence of the jury.)

18        MS. BURKE:  May we approach, Your Honor?

19        THE COURT:  Sure.

20        (Whereupon, there was a discussion held at

21   the bench off the record.)

22        THE COURT:  All right, ladies and gentlemen,

23   Miss McGriff is not going to be a witness at this

24   trial.  That is based upon a ruling made by me.  You

25   are not to speculate about the reasons for that ruling.

VdV

LORENZO MCGRIFF - TRIAL

279

1    But simply, that's the reason why she is not

2    testifying.

3                So if she is outside and she wishes to come

4    in and observe, that's certainly fine.

5                (Whereupon, there was a pause in the

6    proceedings.)

7                THE COURT:  All right, Miss Burke.

8                MS. BURKE:  Your Honor, at this time I would

9    call Dominique Boyd.

10                She's in the first room to the left.

11                COURT OFFICER:  Okay.

12                THE COURT:  Okay.

13                (Whereupon, there was a pause in the

14    proceedings.)

15                COURT OFFICER:  Ready for the witness, Your

16    Honor?

17                THE COURT:  Yes.  Thank you.

18                COURT OFFICER:  Witness entering.

19                THE CLERK:  Please face me.  Raise your right

20    hand.

21          **D O M I N I Q U E       B O Y D,**

22    called as a witness, having been first duly sworn by the

23    clerk of the court, was examined and testified as follows:

24                THE WITNESS:  Yes.

25                THE CLERK:  Okay.  Please be seated.  Watch

VdV

DOMINIQUE BOYD - DIRECT EXAMINATION - BURKE

280

1      the chair, it's on wheels.

2              Once you get comfortable I will ask you to

3      please state your name for the record.

4              THE WITNESS:  Okay.

5              THE CLERK:  And also spell your name for the

6      record.

7              THE WITNESS:  Dominique Boyd.

8              THE CLERK:  Spell your name for the record.

9              THE WITNESS:  D-O-M-I-N-I-Q-U-E, B-O-Y-D.

10             THE CLERK:  Thank you very much.

11             THE COURT:  All right.  So, Miss Boyd, just

12     make yourself comfortable again.  When you answer

13     questions, nice and loud so they can hear you in the

14     empty seats in the back.

15             THE WITNESS:  Okay.

16             THE COURT:  Miss Burke, whenever you are

17     ready.

18     DIRECT EXAMINATION

19     BY MS. BURKE:

20         Q    Good morning, Miss Boyd.

21         A    Good morning.

22         Q    By whom are you employed?

23         A    The FDNY.

24         Q    What does FDNY stand for?

25         A    Fire Department of New York.

```
1    Q    What capacity?

2    A    I am sorry?

3    Q    In what capacity are you employed?

4    A    I am an EMT.

5    Q    What is an EMT?

6    A    Emergency medical technician.

7    Q    How long have you been an EMT?

8    A    I've been an EMT for about six years; with the fire

9    department for three.

10   Q    Were you employed as an EMT on August 11, 2015?

11   A    Yes.

12   Q    And were you working that day?

13   A    Yes.

14   Q    Can you tell me what shift you were working?

15   A    Second shift.

16   Q    What is the second shift?  What are the hours?

17   A    9 a.m. to 5 p.m.

18   Q    And during your shift of 9 a.m. to 5 p.m. did you

19   happen to receive a call involving an incident at or around

20   Boerum Place in Brooklyn, New York?

21   A    Uh, well we got the call.  The call was on

22   Livingston Street.

23   Q    Livingston and what?  Do you recall?

24   A    I'm not too sure.

25   Q    Is there something that would refresh your
```

VdV

DOMINIQUE BOYD - DIRECT EXAMINATION - BURKE

282

1    recollection?

2         A    No.  I just know it was on Livingston Street.

3         Q    Okay.  Do you recall approximately what time it

4    was?

5         A    No.

6         Q    Could it have been in the morning or in the

7    afternoon?

8         A    Um, I'm not sure what time it was in.  I know the

9    sun was out, so...

10        Q    Once you received the call what, if anything, did

11   you do?

12        A    Uh, well we went to Livingston, looking for a

13   patient.  We didn't find the patient.  So we riding around

14   and finally found the patient.  I am just not sure exactly

15   where it was.  I know it was in the vicinity but not sure

16   where.

17        Q    Did you write a report as to this incident?

18        A    Yes, I did write the report.

19        Q    Would your report refresh your recollection as to

20   where you found the person?

21        A    Yeah.  You could --

22        Q    Do you have your report with you?

23        A    It's there (indicating).

24             MS. BURKE:  May I, Your Honor?

25             THE WITNESS:  It's in my bag.

VdV

1      COURT OFFICER:  I will get it.

2      MS. BURKE:  Your Honor, for the record, I'm

3    handing what's been retrieved from the witness's bag.

4    It's about three or four pieces of paper.

5      THE COURT:  Okay.  Just use that to refresh

6    your recollection, Miss Boyd.

7      THE WITNESS:  Mmm-hmm.

8      THE COURT:  If it does.  And then when you

9    finish looking at that, let us know.

10      (Whereupon, there was a pause in the

11    proceedings.)

12    A    Okay.  The report just has Livingston and Court.

13    Q    Okay.  Without reading from the report --

14      THE COURT:  Thank you.

15    A    Oh, sorry.

16    Q    Is your recollection refreshed?  Do you remember

17    where the call came to?

18    A    Livingston and Court.

19    Q    Okay.  Does the report reflect where you saw the

20    person at?

21    A    No.

22    Q    When you encountered this person, can you tell me

23    what happened?

24    A    Um, well we got on scene, and I mean there's not

25    much that I remember, but I just know that the patient was

1    like a little irate.  He didn't want us to touch him or he

2    didn't want us to help him.  He was very verbally abusive

3    and really aggressive.

4         Q    And when you say verbally abusive, can you

5    demonstrate for the Court what was said?

6         A    Um, he was calling us, uh, niggers and bitches and

7    he didn't want us to touch him.  He was just saying, don't

8    touch me.  Get off of me.

9              Then we had to call for, um, I had to call another

10   crew to sedate him because he didn't want us to touch him.

11        Q    You testified that we tried to treat him.

12             Who was the other person that was with you?

13        A    My partner, Aniqua Watkins.

14        Q    Is she a black female?

15        A    Yes, she is.

16        Q    How long were you with the patient?

17        A    I'm not sure.  A few minutes.

18        Q    And during the time that you were with him were you

19   able to control him?

20        A    No, we wasn't able to control him, not until the

21   medics get there.

22        Q    What, if anything, did you see the medics do?

23        A    Mmm... I don't really remember much.  I mean... I

24   can't tell you what the medics did.

25        Q    You testified that he was a little erratic you

1    said?

2         A    Yeah.

3         Q    Can you explain to the jury what you mean by that?

4         A    Well he was fighting us and, you know, he didn't

5    want us to touch him.  He was calling us niggers.  He didn't

6    want to be treated at all.  Not even with oxygen.  He didn't

7    want us to touch him.  He was yelling and screaming.

8         Q    And do you recall what he was yelling and

9    screaming?

10        A    Yeah.  Don't touch me.  Get off of me.  He was

11   calling us niggers.  I don't want you niggers to touch me.

12        Q    Did you transport the patient to the hospital?

13        A    Yes, we did.

14        Q    And which hospital did you transport him to?

15        A    To Methodist.

16        Q    How long did it take you to get him to the

17   hospital?

18        A    I'm not sure.

19        Q    Do you recall what type of injuries the patient

20   had?

21        A    Um, stab wounds.

22        Q    You recall where?

23        A    I'm not sure exactly where.

24        Q    Is there something that would refresh your

25   recollection?

1      (Whereupon, there was a pause in the

2      proceedings.)

3           MS. BURKE:  Just for the record, Miss Boyd is

4      looking at her report.

5           THE COURT:  That's okay.  If that would help

6      refresh your recollection, you can go ahead and do

7      that.  Again, just let us know when you are done.  And

8      when you answer, don't read from the report.

9           THE WITNESS:  Okay.

10          (Whereupon, there was a pause in the

11     proceedings.)

12     A     I'm done.

13     Q     Is your recollection refreshed?

14     A     Yes.

15          Okay.  So I know he had a few stab wounds to his

16     face and his back.

17     Q     Okay.  And is this report a fair and accurate

18     representation of what happened on this day?

19     A     Yes, it is.

20     Q     Is it the report that you prepared?

21     A     Yes.

22          MS. BURKE:  At this time I would move the EMT

23     report into evidence as Defense...

24          THE COURT:  As Defense A.

25          MS. BURKE:  Defense A, Your Honor.

VdV

1        THE COURT:  Is that on consent?

2        MR. MOTTOLA:  I have no objection outside of

3     just making it subject to redaction for personal

4     information.

5        THE COURT:  Okay.  That was, I am sorry, EMS

6     report?

7        MS. BURKE:  Yes, Your Honor.

8     Q    Miss Boyd, on the third page of your report there's

9  a paragraph that describes what happened.

10       COURT OFFICER:  You need this back?

11    (Indicating).

12       MS. BURKE:  I am sorry.  Maybe the second

13    page.  May I?

14    Q    Where it says narrative history text?

15    A    Mmm-hmm.

16    Q    Could you read that to the jury, please?

17    A    Patient found ambulatory on scene, patient states

18 he was stabbed by someone.  Patient has two stab wounds to

19 the left side of his back.  One stab wound to right jaw.

20 And one stab wound to left forehead above eyebrow.

21       Patient was very combative, uncooperative, verbally

22 abusive and assaulted crew.  Patient was taken off O 2.

23 Only allowed one set of vitals and not allowing crew to

24 dress wounds.  ALS was called for sedation.  Rescue arrived

25 on scene and took over patient care.  Bleeding was

1    controlled and wound covered.  Patient transported in prone

2    position due to comfort without incident.

3        Q     In that report you said the patient assaulted the

4    crew.

5              Were you one of the crew members that the patient

6    assaulted?

7        A     Well yeah, 'cause he was, um, like I said, he

8    didn't want us to touch him.  So, you know, to get us away

9    from him it was kind of like pushing us off of him, swinging

10   his arms around, trying to get us off of him.

11             MS. BURKE:  Nothing further.

12   CROSS EXAMINATION

13   BY MR. MOTTOLA:

14       Q     Good morning, Miss Boyd.

15       A     Good morning.

16       Q     You've been working for the FDNY you said three

17   years?

18       A     Yes.

19       Q     You have been an EMT for six years?

20       A     Yes.

21       Q     How many, I guess, patients, right, that you refer

22   to them as patients?

23       A     Right.

24       Q     How many patients would you say you've responded to

25   with your ambulance in your six years?

1          MS. BURKE:  Objection.  Relevance.

2          THE COURT:  Overruled.  If I determine

3     ultimately that it is irrelevant I will strike it.

4     A    Can you repeat the question?

5     Q    Approximately how many different patients have you

6     responded to with your ambulance over the six years?

7          MS. BURKE:  Objection to different.

8     A    A lot --

9          THE COURT:  Miss Boyd, if you hear objection,

10    you have to wait for me to tell you whether you can

11    answer.

12         THE WITNESS:  Okay.

13         THE COURT:  All right.  Overruled.

14         Go ahead.

15    A    Thousands of patients.

16    Q    Okay.  Have you ever had difficulty with a patient

17    before?

18    A    All the time.

19    Q    Okay.  Thank you, Miss Boyd.

20         MR. MOTTOLA:  I have nothing further.

21         THE WITNESS:  You're welcome.

22         MS. BURKE:  Nothing further.

23         THE COURT:  Okay.  Miss Boyd, thank you so

24    much.  You may step down.

25         THE WITNESS:  Thanks.

LORENZO MCGRIFF - TRIAL

290

1          (Whereupon, the witness was excused from the
2     stand.)
3          MS. BURKE:  Defense has no further witnesses,
4     Your Honor.
5          THE COURT:  Okay.  Defense rests?
6          MS. BURKE:  Defense rests.
7          THE COURT:  Thank you.
8          Okay, ladies and gentlemen, that will
9     conclude the testimony in this matter.  I am going to
10    send you back into the jury room for a little bit while
11    I address some issues with the attorneys.  Please don't
12    speculate about what those might be.
13         Don't discuss the case amongst yourselves or
14    with anyone else.  And we will bring you back out in
15    just a little while.  Thank you.
16         (Whereupon, the jury left the courtroom.)
17         THE COURT:  Miss Burke, Mr. Wittwer.
18         MR. WITTWER:  Yes, Your Honor.
19         At this time I am moving for a trial order of
20    dismissal pursuant to CPL 209, subsection 10 of the
21    attempt assault one, the top count in this case.  Penal
22    law 110/120, subsection 1.  Because the People --
23         THE COURT:  Keep your voice up a little bit.
24         MR. WITTWER:  Thank you, Your Honor.
25         Because the People have not made out an

VdV

LORENZO MCGRIFF - TRIAL

291

1    intent on Mr. McGriff's part to cause serious physical

2    injury.

3            Your Honor has heard testimony now on the

4    defense case Mr. McGriff was not the aggressor in the

5    incident.  That Mr. McGriff's actions in the incident

6    were to deter the complainant from continuing to pursue

7    and threaten him.  Which suggests that his intention

8    was not to cause a substantial risk of death or

9    disfigurement, rather to subdue his attacker.  And no

10   evidence or medical records that detail the extent of

11   the injuries in this case which do not amount to

12   serious physical injury under our law.

13           The knife wounds that Mr. Khalifa suffered

14   were one inch in length.  They were minor injuries for

15   which he left the hospital less than 24 hours after

16   medical personnel began to treat him.  So we know that

17   the injuries in this case were not significant to the

18   point of serious physical injury.

19           We now have substantial evidence that

20   Mr. McGriff's intent was to fight back rather than to

21   cause grave injury.

22           And again, I would remind the Court there is

23   no evidence Mr. McGriff made statements to the point he

24   wanted to badly injure this individual.  There is no

25   evidence that his intent was to injure him in a more

VdV

LORENZO MCGRIFF - TRIAL

292

1    substantial way than he was.  And I think most

2    significantly there were no intervening factors that

3    would prevented Mr. McGriff from seriously injuring

4    Mr. Khalifa by stabbing him, he simply chose to stop

5    and run.

6              I think the fact that he ran away is also

7    indicative of the fact that there is no evidence that

8    this was an attempt to cause serious physical injury.

9    So I would ask the Court to dismiss that count.

10             THE COURT:  Okay.

11             MR. MOTTOLA:  Just regarding the injury, Your

12   Honor, I renew the comments I made at the trial order

13   of dismissals at the close of the People's case.  We

14   know there is no serious physical injury.  That's why

15   we reduced or dismissed the B felony and the defendant

16   sits charged with the attempted assault in the first

17   degree.

18             Regarding Mr. McGriff's mental state, I would

19   just say that is an issue of credibility and it should

20   be left up to the jury to decide.  And the People rely

21   on the record.

22             THE COURT:  Thank you.

23             (Whereupon, there was a pause in the

24   proceedings.)

25             THE COURT:  All right.  Thank you.

VdV

LORENZO MCGRIFF - TRIAL

293

1          The motion for the trial order of dismissals

2    to count one is denied.

3          Why don't you come up as to pre-charge

4    requests.

5          (Whereupon, there was a discussion held at

6    the bench off the record.)

7          THE COURT:  All right.  I had an opportunity

8    to review the special requests.  People had made a

9    request that the defendant is an interested witness be

10   included, which it is.  And the general charge about

11   that there is no specific way that People are required

12   to prove their case, that's in the language as well.

13         Let's talk, defense had requested

14   justification, which is in there.  Use of physical

15   force.  And they had also made a request for a missing

16   witness charge.

17         Let's put that on the record.

18         MR. WITTWER:  Thank you, Your Honor.

19         We are requesting the missing witness charge.

20   We are asking the Court in its discretion to give the

21   charge.  We noting particularly that the People both in

22   voir dire and opening addressed the fact they weren't

23   going to call the complainant in this case, Mohammed

24   Khalifa.  And throughout voir dire I want to make a

25   record asked, encouraged the jurors that it was

VdV

LORENZO MCGRIFF - TRIAL

294

1    important that they be willing to listen to the facts

2    without the complaining witness and not hold it against

3    them that the complainant isn't called, even though

4    this instruction does, because jurors are permitted in

5    our law to draw inferences from the fact that the

6    complainant is not called.

7         Where the complaining witness would be the

8    most significant eyewitness one would expect the People

9    to call, this is a situation where it is uniquely

10   important we receive this charge.  The four factors

11   that the complainant has material knowledge about the

12   issue.  Clearly he was present for the entire incident.

13   He is in control of the People would be expected to

14   testify favorably.  Testify favorably.

15        Doesn't mean in the case law that the witness

16   would be a good witness or the witness would be a

17   witness that, you know, presented themselves well.  But

18   rather that they would, that they would testify to

19   material information that would allow the People to

20   make their burden.

21        For that reason, Mr. Khalifa is clearly a

22   witness that the People would be expected to call and

23   testify favorably, not because he doesn't have issue,

24   which makes him a difficult witness, which I suspect is

25   the reason why the People decided not to call him.

VdV

LORENZO MCGRIFF - TRIAL

295

1          Remember it was, he was an eyewitness to

2     information that was served as evidence, help the

3     People meet their burden in this case that the third

4     factor not be cumulative.  None of the witnesses the

5     People called were witnesses to the entire set of

6     events.  Mr. Khalifa would add a significant amount of,

7     amount for testimony and evidence for the witness.

8          In terms of availability, the People are

9     aware Mr. Khalifa has been through the justice system

10    prosecuted by the District Attorney's Office since this

11    incident.  So, that means we know for a fact that

12    Mr. Khalifa was actually in the custody and control of

13    the government where the People, while these charges

14    were pending, had an opportunity to speak to him.

15         Additionally, I believe the People have

16    information as to his whereabouts in terms of his

17    brother's address.  So I think we are clearly entitled

18    to the missing witness charge.

19         I am asking the Court, we are raising it now,

20    in its discretion to give the charge because it is so

21    central to this case and because I think that, that the

22    Court should protect Mr. McGriff's right to a fair

23    trial and due process, even where his attorneys made

24    mistakes, to prevent reversible error.

25         Asking the Court in its discretion to give

VdV

1    the instruction.

2              THE COURT:  Yes.

3              MR. MOTTOLA:  Judge, at the bench you

4    presented us with the Court of Appeals case People

5    versus Carr.  I don't have the cite handy.

6              But specifically that the defense is required

7    at the close of the People's case to make this

8    application.  They did not do so.  I know it, as it

9    appears to be a technicality to the defense, it's still

10   an untimely motion.

11             This was not a surprise by the People.  We

12   voir dired the issue.  The defense voir dired on the

13   issue.  They have known from the very beginning

14   Mr. Khalifa was a very high probability he would be

15   missing, would not testify in this case.

16             That's the first ground which I am objecting.

17             Regarding any kind of expectation of

18   Mr. Khalifa, we have testimony before this jury from

19   everyone interacted with him that day, or at least

20   within the proximity of the events of this case, we

21   have three civilian eyewitness females, we have the

22   defendant's version of what happened, we have the

23   ambulance, the EMT that testified this morning.

24   Everything about that testimony suggests that

25   Mr. Khalifa was erratic.  And we know in the medical

LORENZO MCGRIFF - TRIAL

297

1    records was positive on cocaine.

2            There is nothing at all we heard in any way

3    that suggests we could expect anything from him that

4    would in any way further my case, would even be

5    coherent in a court of law.

6            I will also add it's our position there on

7    the third prong of it being cumulative, whatever

8    happened before they got to Court Street wasn't

9    criminal.  It's not relevant.  It is a collateral issue

10   to this case.  We have three eyewitnesses.  You have a

11   911 caller.  You have the defendant's testimony of what

12   happened.  It is cumulative for that very reason.

13           I have nothing else to say, Your Honor.

14   Thank you.

15           MR. WITTWER:  May I briefly add one thing for

16   the record, Your Honor?

17           THE COURT:  You may.

18           MR. WITTWER:  Thank you.

19           I just want to make it clear on the decision

20   not to raise the missing witness charge in the People's

21   case, before the close of the People's case in chief

22   was not a strategic decision by the defense, it was an

23   error.  The Court has a chance to rectify the lean in

24   the case law for the requirement that it be raised

25   prior to the People's resting so they will have notice,

1   so if they choose to, they may perhaps even, you know,

2   be able to call the witness who was missing to avoid

3   the charge.

4          In this case we know that's not the

5   situation.  We know there was no circumstance in which

6   the People was going to attempt to call this witness,

7   because they opened on the fact they weren't calling

8   him, so no harm was done by this late request.  So I

9   think that's relevant in terms of balancing the

10  equities here.  I would just ask the Court to consider

11  that.

12         (Whereupon, there was a pause in the

13  proceedings.)

14         THE COURT:  There is case after case after

15  case that talks about the denial of a missing witness

16  charge made at this stage would not be error.  But I

17  indicated at the bench and I will, since this is an

18  issue that's been all over this case from the

19  beginning, it's really not a surprise to anyone that

20  the issue has come up, I am willing to consider it.

21         My question, Mr. Mottola, is, what efforts

22  have the People made to find Mr. Khalifa?

23         MR. MOTTOLA:  Yes.

24         At the grand jury stage, Your Honor, we did

25  attempt to subpoena him so we could get him to the

LORENZO MCGRIFF - TRIAL

299

1    grand jury and at least interview him before we

2    determined whether or not we would, one, proceed with

3    charges against Mr. McGriff.  And two, put him into the

4    grand jury as a witness.

5            I sent detective investigators to the only

6    residence we have at the time, which is what we had in

7    his medical records, which I later learned is an

8    address that belongs to, I believe one of his actual

9    blood brother.  It's 6th Street address here in

10   Brooklyn.

11           The brother told our investigators then and

12   he told them again in September when they went out,

13   when this case was pending before Your Honor, we

14   attempted to secure Miss Guy with the material witness

15   order and the trap and trace, he had not seen his

16   brother, Mr. Khalifa.  That he had stayed there in the

17   past and that he assumed that was the only address.

18           This is further corroborated from the Defense

19   Exhibit A which was in evidence this morning, the

20   pre-hospital care report Mr. Khalifa.  He did give a

21   date of birth to Miss Boyd 12/10/83.  His address he

22   put unknown, which to me indicates he did not give an

23   address.

24           Outside of the efforts to secure him at the

25   grand jury stage and again at pretrial, we have not

VdV

LORENZO MCGRIFF - TRIAL

300

1    attempted to bring him in under a subpoena since there

2    was no jurisdiction after grand jury to subpoena him by

3    Court order.

4              I have no indication he is even alive at this

5    point.  The last contact he had with Criminal Court I

6    suspect was sometime this fall.  But I do not know that

7    for sure.

8              So those are the efforts the People made to

9    try to locate him.

10             THE COURT:  Were you -- did anyone check with

11   the assistant assigned in this Criminal Court case to

12   see if he ever showed up?

13             MR. MOTTOLA:  Yes, Your Honor.  I believe he

14   did show up.  I believe the case was resolved, however.

15   It was, I think it was sometime after, it was a,

16   shortly after the arrest of Mr. McGriff in this case.

17   I believe there was a misdemeanor case or a lower level

18   felony reduced to Criminal Court which he was making

19   appearances, I believe was resolved many months ago.

20             THE COURT:  Do you have anybody reach out to

21   his defense counsel in that matter?

22             MR. MOTTOLA:  I cannot say.  I can't make

23   that application.  No.

24             THE COURT:  Okay.

25             MR. MOTTOLA:  I did not.

VdV

LORENZO MCGRIFF - TRIAL

301

1          (Whereupon, there was a pause in the

2     proceedings.)

3          MS. BURKE:  Your Honor, it's my understanding

4     that through our investigation Mr. Khalifa was still

5     out on a warrant on the criminal matter.

6          MR. MOTTOLA:  Wouldn't that further my point

7     that he is out there and the police are looking for him

8     and we don't know where he was?  If he stopped at any

9     point, he would have been brought to court and put in

10    our custody and I could have found him.

11         MS. BURKE:  The Court is well aware police

12    looking for people with misdemeanor warrants.  That's

13    usually when they catch them, committing another crime

14    is when the warrant is activated.

15         THE COURT:  Well perhaps he hasn't been

16    arrested in the interim.  We don't know.

17         MS. BURKE:  It's my understanding, if the

18    People were aware, Mr. Khalifa was coming in on his

19    misdemeanor case making appearances in court, then they

20    should have had an opportunity to speak with him then.

21         The fact that they only tried back in August

22    when this case was initiated and again in September,

23    over a year later to try and secure his appearance,

24    says that the People were not diligently looking for

25    him in this matter.

LORENZO MCGRIFF - TRIAL

302

1          MR. MOTTOLA:  Your Honor, I only have

2     subpoena power to compel someone to appear at the grand

3     jury stage.  Outside of that, I only have it once we

4     begin trial.  I sent our detective investigators out

5     when we were here before Judge Cyrulnik, and I went

6     before the Judge to secure a trap and trace for

7     Kadeisha Guy so we could learn about where she was.

8          Because counsel decided to write on a hearing

9     for a showup, the case was adjourned to now.

10          So, the only times I was able to compel

11     Mr. Khalifa was when I made my efforts to do so.  I

12     just, I take offense to the comment that I was not

13     diligent, Your Honor.

14          THE COURT:  Thank you.

15          (Whereupon, there was a pause in the

16     proceedings.)

17          THE COURT:  Come on up.

18          (Whereupon, there was a discussion held at

19     the bench off the record.)

20          THE COURT:  All right.  So based on our

21     discussion at the bench, while I believe that it is an

22     equally strong argument could be made that Mr. Khalifa

23     is not under the control of the People any more than

24     he's under the control of defense counsel, in an

25     abundance of caution I am going to give the missing

LORENZO MCGRIFF - TRIAL

303

 1     witness charge, since if it ever got to that stage and

 2     the Appellate Division determined that it was, indeed

 3     it was required and it wasn't given, it would be, per

 4     se, reversible error.  So I will give that charge just

 5     as I said for that particular reason.

 6              We also discussed that I will submit to the

 7     jury the two counts, attempted assault one and assault

 8     two.

 9              No other lessers beyond that.  Correct?

10              MR. MOTTOLA:  Yes.

11              THE COURT:  Correct.  Okay.

12              All right.  Let me give you, if you want,

13     another by 11 o'clock or so, just go over your

14     remaining notes in anticipation of summation and then

15     we will bring the jury in.  Okay.

16              Second call on the trial case.

17              (Whereupon, there was a break in the

18     proceedings and then resumed shortly thereafter.)

19              (Whereupon, other business was conducted and

20     then the case continued.)

21              THE CLERK:  Recalling the case on trial back

22     on the record.

23              THE COURT:  You can line up the jury.

24              THE CLERK:  The parties are present but the

25     jury panel is not present at this moment.

LORENZO MCGRIFF - TRIAL

304

```
1              (Whereupon, there was a pause in the

2       proceedings.)

3              COURT OFFICER:  Ready, Your Honor?

4              THE COURT:  All right.  Let's go.

5              I have some brief pre-summation instructions

6       anyway so you have a few minutes more.

7              MS. BURKE:  You have brief what, Your Honor?

8       Sorry.

9              THE COURT:  Excuse me, pre-summation

10      instructions.

11             (Whereupon, there was a pause in the

12      proceedings.)

13             THE COURT:  Counsels, you want to take a

14      seat, please?  Let's go.  Okay.

15             COURT OFFICER:  Jury entering.

16             (Whereupon, the jury entered the courtroom.)

17             THE CLERK:  Okay.  The jury panel is present

18      and properly seated.

19             Does each side waive the jury roll call?

20             MR. MOTTOLA:  So waived.

21             MS. BURKE:  So waived.

22             THE CLERK:  Thank you.

23             THE COURT:  Thank you.

24             Members of the jury, you're now going to hear

25      the summations of the lawyers.  Following the
```

LORENZO MCGRIFF - TRIAL

305

1    summations I will instruct you on the law and you'll

2    begin your deliberations.

3            Under our law, defense counsel must sum up

4    first, and the prosecutor must follow.  The lawyers may

5    not speak to you after that time.

6            Summations provide each lawyer with an

7    opportunity to review the evidence and submit for your

8    consideration the facts, inferences and conclusions

9    that they contend may be properly drawn from the

10   evidence.

11           If you find that a lawyer has accurately

12   summarized and analyzed the evidence, and if you find

13   that the inferences and conclusions that the lawyer

14   asks you to draw from that evidence are reasonable,

15   logical and consistent with the evidence, then you may

16   adopt those inferences and conclusions.

17           Members of the jury, I'll ask you to bear in

18   mind the following points.

19           First, you are the finders of fact.  And it

20   is for you and you alone to determine the facts from

21   the evidence that you find to be truthful and accurate.

22   Thus, whatever the lawyers say and however they say it,

23   you should remember that what the lawyers say is simply

24   argument that's being submitted for your consideration.

25           Second, remember that the lawyers are not

VdV

1      witnesses in this case.  So if a lawyer asserts as fact

2      something that is not based on the evidence, you must

3      disregard it.  Remember, nothing the lawyers say at any

4      time is evidence.  So nothing that the lawyers say in

5      their summations is evidence.  You have heard the

6      evidence and you must decide this case on the evidence

7      as you find it and the law as I explain it.

8              Third, during the summations one lawyer's

9      recollection of the evidence may in all good faith

10     differ from the recollection of the other lawyer, or

11     from your own recollection.

12             And the lawyers will undoubtedly differ on

13     the conclusions that are to be drawn from the evidence.

14     It's your own recollection, your own understanding,

15     your own evaluation of the evidence that controls.

16     Regardless of what the lawyers have said or will say

17     about the evidence, you and you alone are the judges of

18     the facts in this case.

19             If during your deliberations you need to have

20     your recollection of the testimony refreshed, you may

21     have all or any portion of the testimony read back to

22     you.

23             Further, remember that under the law I am

24     responsible for explaining the law, not the lawyers.

25     If you think there is any difference between what the

```
 1        lawyers may have said and what I say the law is, your

 2        sworn duty as jurors is to follow my instructions on

 3        the law as you have indicated that you would.

 4              And fifth, if during the summations I sustain

 5        an objection to a comment of a lawyer, then that

 6        comment will be stricken from the record and you must

 7        disregard it as if it had never been said.  If I

 8        overrule an objection, or on my own indicate that a

 9        comment must be disregarded, my ruling indicates only

10        that the comment either does or does not violate one of

11        the rules of law set down for lawyers to follow during

12        summations.  It's not an attempt I have an opinion

13        about what is said or about the facts of the case or

14        whether the defendant is guilty or not guilty.

15              Remember, under the law, you and you alone

16        judge what facts, if any, are proven, whether the

17        defendant is guilty or not guilty.  Not I, and not the

18        lawyers.

19              All right.  We now turn to the summations.

20        And you will hear first from Miss Burke.  Thank you.

21              MS. BURKE:  Good morning, ladies and

22        gentlemen of the jury.

23              THE JURY:  Good morning.

24              MS. BURKE:  The question before you now is

25        whether or not you believe that the prosecution has
```

LORENZO MCGRIFF - SUMMATIONS - BURKE

308

1          proved their case beyond a reasonable doubt.  The

2          question that you are going to have to answer basically

3          is whether or not Lorenzo McGriff is guilty of

4          attempted assault in the first degree and attempted

5          assault in the second degree.  And the reason why you

6          should say no to those questions I am going to

7          elaborate for you.

8                    In order to prove beyond a reasonable doubt,

9          'cause that's their burden, that Mr. McGriff is guilty

10         of attempted assault in the first degree, Mr. Mottola

11         and Miss D'Agostino would have to prove to you that

12         Mr. McGriff intentionally attempted to cause serious

13         physical injury to Mohammed Khalifa by means of a

14         deadly weapon or dangerous instrument.  And they have

15         to also prove to you that he was not justified in doing

16         so.

17                   So, I am going to break these elements down

18         for you.

19                   Intentionally means that someone deliberately

20         has done something to be deliberate about something.

21         It means that you have -- it has to be done in a

22         careful and unhurried way.  Careful and unhurried,

23         that's what deliberate means.  That's how you prove

24         something was intentional.

25                   Now I want you to look at the facts in this

VdV

LORENZO MCGRIFF - SUMMATIONS - BURKE

309

1    case.  And if you look at the facts in this case,

2    there's no way that you would come up with the

3    conclusion that Mr. McGriff's actions were deliberate,

4    careful, planned in any way, shape or form.  And the

5    reason why you must come up with that conclusion is

6    because the incident was quick by all accounts.  By all

7    witnesses accounts it was a very quick incident.

8              On the videos, the videos, each video is a

9    matter of seconds.  Maybe a minute and a half on some.

10   Maybe 30 to 40 seconds on other videos.  The action was

11   quick, according to all the witnesses involved.

12             Miss Toribio, she testified that she

13   witnessed the incident.  She heard yelling.  She saw

14   the encounter and she saw them run away.

15             Miss Guy, whose sister taped the video -- who

16   taped the incident says she heard yelling, she saw some

17   of the stabbing 'cause they went out of view and she

18   saw them run away.

19             The third witness says that she heard

20   yelling, she saw the incident, she saw the parties run

21   away.

22             And each woman that described the incident

23   said it was quick.  It was a matters of seconds.  It

24   was a matter of moments.  It was not carefully planned.

25   It was not long, thought-out thing that it was.

1      Happened in an instant.  That's how you know that the

2      encounter was not deliberate on the part of

3      Mr. McGriff.

4              The last video that you will see, and I will

5      play the videos again, shows that the encounter between

6      the two parties probably lasted maybe about sixty

7      seconds.  Could not have been a deliberate encounter.

8              And the reason why it was not deliberate is

9      because Mr. McGriff did not plan on meeting Mohammed

10     Khalifa that day.  He planned on taking his wife to

11     work as he normally does.  He went to work, did his

12     job, wanted to enjoy his lunch hour in beautiful

13     downtown Brooklyn.  Take his stroll for his daily

14     exercise.

15             He didn't plan on saying oh, let me meet up

16     with Mohammed Khalifa on Joralemon Street.  Or let me

17     let him follow me.  Oh, let me take out this instrument

18     and defend myself against him.  Nothing was planned.

19     Everything was -- the only plan he had was to enjoy

20     your day.  But that's not what happened.  He did

21     encounter Mr. Khalifa.

22             The other element is serious physical injury.

23     I want to come back to his day in a minute.

24             You will know that Mr. Khalifa did not suffer

25     a serious physical injury based on the testimony of the

LORENZO MCGRIFF - SUMMATIONS - BURKE

311

1      witnesses who all say yeah, he was bleeding, but he got

2      up and he chased after Mr. McGriff.  He chased him for

3      blocks.

4              If you were seriously wounded, if you were

5      seriously injured, if you were seriously hurt, you're

6      going to stay there and wait for medical attention.  Or

7      you may not be able to get up to wait for medical

8      attention.  You are not going to chase somebody for

9      block after block after block after block, yelling at

10     them, and screaming at them.  That shows that he was

11     not seriously injured.

12             The testimony of the witnesses say he was

13     bleeding but he was still screaming.  Mr. McGriff's

14     testimony said that Mr. Khalifa followed him and

15     followed him and followed him.

16             The medical records that you're going to look

17     at will show you that he was not seriously injured.  He

18     had superficial wounds.

19             Miss Boyd, the EMT person testified that he

20     didn't want her to touch him.  He did not want her to

21     dress his wounds.  He did not want her to or her

22     partner to tend to him.

23             That's not a man who is seriously, physically

24     injured.  That's a man who has some superficial cuts,

25     not a serious physical injury.

1          But I'll go through the medical testimony

2    with you to make sure that you understand that fully.

3          In the medical records you're gonna see that

4    there was no damage to the arteries, there was no

5    damage to any major organs, there were no damage to,

6    there were no bones that were broken.  Some of the cuts

7    were a centimeter, two to three centimeters.  Had to be

8    stitched.  Some weren't even stitched, some were just

9    dressed.  So these stab wounds (indicating) were not

10   the deep stab wounds that you hear thinking puncturing,

11   penetrating wounds.  They were superficial cuts, not

12   serious physical injury.

13         The third part is with the deadly weapon or

14   instrument.  It is true that Mr. McGriff carried a wire

15   stripper with him, was referred to as a knife by

16   Mr. Mottola.  And even Mr. McGriff may have said knife

17   on the stand, but when he was allowed to explain what

18   it was, he told you what it was.  It's a little thing

19   that you strip wire with because he repairs headphones,

20   earphones and speakers with.  It is not a knife.  It is

21   a weapon that he carried with him because that's his

22   hobby, to repair items with it.

23         He didn't have it in his pocket thinking that

24   he would have to use it to defend himself against

25   Mr. Khalifa.  But he did have this instrument and he

1       did use it against Mr. Khalifa.

2              The main issue and the issue that you should

3       focus on when you're in the jury room is whether or not

4       he is justified in using that instrument against

5       Mr. Khalifa.  That's what this boils down to.  Should

6       he have responded the way he did?  Is he justified in

7       responding the way that he did?

8              The Judge is going to give you some jury

9       instructions on what justification is.  But use your

10      everyday common sense when you are tackling this

11      question.  Did Mr. Khalifa get what he called for?  In

12      plain language, did his mouth write a check that his

13      body couldn't cash?  Did Mr. McGriff respond to what

14      Mr. Khalifa asked for?  Was Mr. McGriff justified in

15      defending himself physically with the amount of force

16      that he did against Mr. Khalifa?

17             The answer is, he was absolutely justified,

18      absolutely without question justified in responding to

19      Mr. Khalifa the way he did.

20             The reason why you should come up with that

21      conclusion is this.  Mr. McGriff on his lunch hour is

22      walking down the street minding his own business.  He

23      encounters a stranger, who bumps him.  Elbows him

24      (indicating) purposely.  Mr. McGriff tries to ignore

25      it, shake it off, continue on his way.  But this

LORENZO MCGRIFF - SUMMATIONS - BURKE

314

1   stranger wouldn't have it.  This stranger wouldn't

2   stop.  This stranger was relentless.  This stranger

3   called him a nigger.  This stranger called him a slave.

4   This stranger told him go back to Africa.  Man he never

5   met before.  Had never seen before.  Had never had an

6   encounter before with him.  Used these words when he

7   met Mr. McGriff.

8           I want to give you a brief history of the

9   word nigger.

10          MR. MOTTOLA:  Objection.

11          THE COURT:  Sustained.

12          MS. BURKE:  Historically --

13          MR. MOTTOLA:  Objection.

14          THE COURT:  Sustained.

15          MS. BURKE:  When the word nigger was used --

16          MR. MOTTOLA:  Objection.

17          THE COURT:  Approach, please.

18          (Whereupon, there was a discussion held at

19   the bench off the record.)

20          MS. BURKE:  When Mr. McGriff was called the N

21   word he explained to you that he thought Mr. Khalifa

22   was a little crazy.  A little off his rocker.  Because

23   who in this day and age would have called somebody on

24   the street and say that to him?  Especially a man

25   Mr. McGriff's size.  He is six foot one, on the plus

VdV

1    side of 275 pounds.  He is a big black man.  He is not

2    the man that you walk up and say those words to.

3    Shouldn't say it to anybody.  He is not the man you

4    should walk up to and say those words to.

5              But even though he was called this word

6    repeatedly, he tried to walk away.  He tried flight.

7    He tried to get away.  He tried to distance himself

8    from this racial hatred.  He tried to distance himself

9    from this crazy man.  He tried to distance himself from

10   this person who was using these vial words.

11             But Mr. Khalifa wouldn't have it.

12   Mr. Khalifa followed him down Joralemon Street, saying

13   slave, go back to Africa.  Nigger.

14             Mr. McGriff kept walking.  Mr. McGriff

15   changed his direction.  Mr. McGriff crossed the street

16   to get away from the hatred.  Mr. McGriff walked up the

17   block to get away from the racism.  Mr. McGriff crossed

18   the street again to try to distance himself from this

19   man.

20             But Mr. Khalifa, who you are going to read in

21   the medical records was high on cocaine, continued to

22   follow him.  This cocaine induced crazy man continued

23   to call him names, continued to walk after him.

24   Continued to follow him.

25             Now if you have a crazy person calling you

LORENZO MCGRIFF - SUMMATIONS - BURKE

316

1      names and walking behind you, you walk faster.  You try

2      to get away.  You try to lose him in the crowd.  But if

3      that person continues to follow you for block after

4      block after block, you get upset, you get concerned,

5      you become more acutely aware of what's going on.  You

6      start fearing for your safety.  Because the word nigger

7      isn't just a word, it's often times used with violence.

8              MR. MOTTOLA:  Objection.

9              THE COURT:  Sustained.

10             MS. BURKE:  Mr. McGriff, he felt that he was

11     in danger.  Mr. McGriff knew the history of the word.

12             THE COURT:  Sustained.

13             Jury's to disregard the last statement.

14             MS. BURKE:  Mr. McGriff tried to get away

15     from the hatred and the violence.  'Til it came a point

16     he even crossed in front of traffic, thinking this

17     guy's not going to follow me in traffic.  I am going to

18     be able to get away from him.  And he thought he had

19     lost him.  Until he turned his back.

20             And when he turned his back, what he saw was

21     this man who is yelling these racist things, who is

22     yelling these ugly words, who is following him

23     repeatedly and repeatedly, block after block, what he

24     saw was the man bending down and picking up a brick

25     (indicating), putting it in a shirt and whirling it

VdV

1    around (indicating).

2              You could imagine what was going through

3    Mr. McGriff's mind as he saw this man, saying these

4    hateful things, and coming at him with a brick.  Coming

5    at him with a dangerous, deadly instrument.  Coming at

6    him, calling him names, and turning this thing

7    (indicating) around and around.  Mr. McGriff felt that

8    his life was in danger and he was justified in feeling

9    that way.

10             So what did Mr. McGriff do?  He defended

11   himself.  He defended himself against the man wielding

12   the brick.  He defended himself against the man who was

13   calling him hateful names.  He turned, he confronted

14   Mr. Khalifa.

15             You heard the testimony of one of the

16   witnesses.  She said I heard him say, you're going to

17   say that again?  What do you think she was referring

18   to?  She was referring to the words that Mr. Khalifa

19   was calling Mr. McGriff.  She was referring to those

20   hateful words.

21             And Mr. McGriff tried to get Mr. Khalifa to

22   back up off of him.  He didn't immediately pull out an

23   instrument and stab Mr. Khalifa.  He told him get out

24   of here.  He pushed him away (indicating).  He tried to

25   intimidate him into turning away.

1      Mr. Khalifa did not turn away.  Mr. Khalifa

2      still had that brick in his hand (indicating).  He

3      still came after Mr. McGriff.  Mr. McGriff tried to

4      walk away.

5      And you're gonna see the video, I will play

6      it in a minute, that when Mr. McGriff turned to walk

7      away, Mr. Khalifa took a step forward with that brick

8      in his hand.  And the only thing left, the only

9      response left for Mr. McGriff to do was to protect

10     himself.  And the way that he protected himself was to

11     take out this instrument and to stab Mr. Khalifa with

12     the instrument.  They struggled.  They fell into the

13     door front.

14     No one knows what happened inside because no

15     one saw what happened inside the store, but Mr. McGriff

16     stabbed Mr. Khalifa until he dropped the brick

17     (indicating).  Until he was no longer a physical

18     threat.  Until he no longer had that deadly weapon in

19     his hand.  Mr. McGriff got up and ran away.

20     But it didn't end there.  'Cause Mr. Khalifa

21     still ran after him.  Still followed him.  Stab wounds

22     to his face, to his side, to his back.  He is bleeding

23     profusely, according to some of the witnesses, but he's

24     still chasing after Mr. McGriff.

25     Why?  Why is he so set on pursuing

1    Mr. McGriff?  We don't know why.  He is not here.  He

2    didn't even come to testify.  Other than seeing a

3    picture of him or a video of him, you don't know any of

4    the thoughts that were going through his mind at the

5    time that he pursued Mr. McGriff.

6            He is not here to tell you why he called

7    Mr. McGriff a nigger.  He is not here to tell you why

8    he called him a slave.  He is not here to tell you why

9    he chased after him block after block after block.

10           He is not here to tell you why he picked up

11   that brick.  He is not here to tell you why he put it

12   in a shirt and swung it as if he was going to hit

13   Mr. McGriff with this brick.  He is not here to tell

14   you why even after he had gotten stabbed by Mr. McGriff

15   he continued to pursue him.  He is not here to tell you

16   why he continued to follow him block after block after

17   block.  And still screaming these words at him.  And

18   still saying these nasty things to him.  And still

19   chase after him.

20           But because he had dropped the block -- the

21   brick, I am sorry, Mr. McGriff only continued to walk

22   away.  You'll notice that as long as Mr. Khalifa did

23   not have that brick in his hand, Mr. McGriff walked.

24   Or ran.  Or walked or ran or changed directions.  As

25   long as he didn't have the brick in his hand.

LORENZO MCGRIFF - SUMMATIONS - BURKE

320

1        But the moment he picked up that brick, the

2    moment he became a physical threat, the moment he

3    attempted to hurt Mr. McGriff with the brick instead of

4    just his words, Mr. McGriff turned and defended

5    himself, and Mr. McGriff was absolutely justified in

6    doing so.

7        Mr. McGriff gets arrested by the police,

8    Mr. Khalifa is worked on by the EMT.  And even while

9    he's being treated, or attempted to be treated by EMT,

10   he's continuing to say these vial things.

11       You saw Miss Boyd up here.  She was trying to

12   render aid and assistance to this man.  What did he do?

13   He said you nigger bitch.  Get your hands off me.

14   Don't touch me nigger bitch.  Don't touch me.

15       These are the words he said to the person who

16   was trying to render aid to him.  He was still out of

17   control.  He was still in a rage.  He was still saying

18   these racist, vial things.  He was still acting out of

19   control.

20       This is the man that Mr. McGriff encountered

21   the entire time.  This is the man that Mr. McGriff

22   defended himself from.  This is the man that

23   Mr. McGriff was absolutely justified in defending

24   himself against.

25       I'm going to play the tapes so I can show you

VdV

LORENZO MCGRIFF - SUMMATIONS - BURKE

321

1     exactly where Mr. Khalifa picked up the brick and show

2     you that Mr. McGriff was walking away up until that

3     point so you can see with your own eyes that

4     Mr. McGriff was not the aggressor.  That Mr. McGriff

5     didn't start this thing.  That it didn't start when

6     Miss Toriio saw it.  It didn't start where the portion

7     where Miss Guy saw it.  It didn't start when the third

8     witness saw it.  It started way before that.

9          It didn't end when Mr. McGriff confronted

10    Mr. Khalifa.  It didn't end even when police arrested

11    Mr. McGriff.  It didn't even end in the ambulance when

12    Mr. Khalifa was calling the treating people, the people

13    who were treating him, these vial, nasty names.

14         You'll see that his behavior continued even

15    in the hospital where he had to be strapped down in

16    order to be treated.  He was acting like a madman.  A

17    madman who even refused medical attention to the point

18    where he signed himself out, less than 24 hours later.

19    The next morning Mr. Khalifa signed himself out of the

20    hospital.

21         You are going to be able to read the medical

22    records and it's going to show you that he pulled the

23    I.V.s out of his arm.  He took off his hospital gown.

24    He demanded his clothes back.  The clothes that had his

25    blood on it.  The clothes that he had on the day

VdV

LORENZO MCGRIFF - SUMMATIONS - BURKE

322

1    before.  He wanted those clothes back.  And you will

2    see that security had to escort him off hospital

3    property.

4          But Mr. Khalifa wasn't here to tell you any

5    of that stuff.  He's missing.  Where is he?  Why isn't

6    he here to face Mr. McGriff?  He followed him for many,

7    many blocks.  Why isn't he here to tell you what

8    happened?  The only person who came here to tell you

9    what happened from the beginning to the end is the man

10   that sits on trial before you.  The man that they're

11   saying intentionally assaulted Mr. Khalifa.

12         And I am telling you Mr. McGriff was

13   justified in answering the call that Mr. Khalifa put

14   out there.  Mr. McGriff, when he could not run any

15   further, when he couldn't walk any further, he stood

16   there and defended himself.

17         Bear with me, ladies and gentlemen.

18         (Whereupon, a videotape was played.)

19         MS. BURKE:  It's almost there.

20         MR. WITTWER:  Dim the lights?

21         MS. BURKE:  Just give me a moment.  I need to

22   make sure I can see the numbers on the computer.

23         (Whereupon, there was a pause in the

24   proceedings.)

25         MS. BURKE:  May we have the lights, please?

LORENZO MCGRIFF - SUMMATIONS - BURKE

323

1          You see Mr. McGriff is coming across the

2     street here (indicating)?  And in his testimony he said

3     that he ran through traffic trying to avoid Mr. Khalifa

4     (indicating).  There is Mr. Khalifa right behind him.

5     You saw where he bent down and picked up the brick.

6          (Whereupon, the videotape was stopped.)

7          MS. BURKE:  I am just going to back it up

8     briefly.

9          (Whereupon, a videotape was played.)

10          MS. BURKE:  Your Honor, may I have the laser

11     pointer?

12          (Whereupon, the videotape was stopped.)

13          MS. BURKE:  This is this.

14          THE COURT:  Yes, that's it.  Red button.

15          MS. BURKE:  One moment.

16          (Whereupon, there was a pause in the

17     proceedings.)

18          (Whereupon, a videotape was played.)

19          MS. BURKE:  Now Mr. McGriff testified that he

20     had already gone through Joralemon Street, had crossed

21     over to the Borough Hall side and (indicating) crossed

22     in front of traffic.  And you see Mr. McGriff slowly

23     walking.  But behind him (indicating) there's

24     Mr. Khalifa, he just bent down and picked up a brick.

25     He's wrapping it in his shirt and he's just whirling it

1      around his head.  There's Mr. Khalifa (indicating)

2      still pursuing Mr. McGriff with this brick in his hand

3      inside his shirt.

4            You'll be able to review this film when you

5      go back in the jury room.  And here is Mr. McGriff

6      coming back to confront Mr. Khalifa (indicating)

7      because he was tired of running.  He saw him with the

8      brick in his hand and he felt his life was in danger.

9      They had an encounter.  Mr. McGriff asked Mr. Khalifa

10     to back up off of him.  He pushed him away.  He told

11     him to leave him alone.

12           You see that he tried to get away from

13     Mr. Khalifa, but that's not what happened.  Mr. Khalifa

14     still had this brick in his hand, whirling it around

15     and coming after Mr. McGriff.

16           You'll also see, I am also going to show you

17     the other video that Miss Guy produced which has a

18     close-up encounter of the two gentlemen.

19           (Whereupon, the videotape was stopped.)

20           MS. BURKE:  In the video from Miss Guy you

21     can see a bit more clearly that Mr. McGriff tried to

22     walk away again, even though Mr. Khalifa had this brick

23     in his hand.

24           Bear with me, ladies and gentlemen.  This is

25     a fast video.

1           (Whereupon, a videotape was played.)

2           MS. BURKE:  This is a video from Miss Guy.

3   And you see here -- you don't see anything.

4           I am going to try to back it up.

5           You see Mr. McGriff telling him to get away.

6   Mr. McGriff turns.  And you see in the hand of

7   Mr. Khalifa that he's swinging, he's swinging the

8   brick.  It's not very clear but you can see at that

9   moment McGriff tried to walk away and Khalifa does, is

10  coming forward and you see that there's the brick

11  swinging in his hand.

12         (Whereupon, the videotape was stopped.)

13         MS. BURKE:  Lights, please.

14         So when Mr. McGriff turned and defended

15  himself against Mr. Khalifa, he took that instrument

16  that he had, and you saw the picture.

17         I am just technologically challenged today.

18         THE COURT:  You have to switch the...

19         THE CLERK:  I can do it from here.

20         THE COURT:  Let him do it.

21         MS. BURKE:  Thank you.

22         (Whereupon, there was a pause in the

23  proceedings.)

24         MS. BURKE:  You see in this picture -- is

25  that how high as it goes?

```
1         You see in this picture the instrument that
2     Mr. McGriff had, but you also see in this picture
3     (indicating) the shirt that Mr. Khalifa had.
4         Now, the testimony by all three of the
5     People's witnesses, all three women that testified who
6     said they saw the stabbing, not one of them, not one of
7     them said that they saw anything in Mr. Khalifa's
8     hands.  You clearly see he had something in his hands.
9     You clearly saw on the video that he bent over, picked
10    up the rock and put it in that shirt that's in his
11    hand.
12        Why would all of three of the witnesses not
13    admit that they saw this item?  I don't know.  Why did
14    all three of the prosecution's witnesses say that they
15    didn't hear any racial slurs?  That they didn't hear
16    the word nigger, that they didn't hear the word slave,
17    that they didn't hear the words go back to Africa.
18        The word they did hear is, you're going to
19    say that again?  But they didn't hear anything else.
20    Not one of them said that they heard his words.
21        But the one witness that we called other than
22    Mr. McGriff was the EMT lady, Miss Boyd, she heard the
23    words.  The one witness we called says yes, he was
24    acting like that, he was saying those words, he was
25    screaming and yelling those words.
```

1    Now all three of the ladies said they heard

2    yelling.  All three of the prosecution witnesses said

3    they heard yelling, but not one of them said we heard

4    those words.  Why is that?  But the one witness we

5    called who is not an interested party clearly heard

6    those words.  All three of the women said they, this

7    man did not have anything in his hands.

8    This is the picture with something in his

9    hands.  The video with something in his hands.  And

10   what he had in his hands was a brick in a shirt

11   (indicating) that he was whirling and coming after

12   Mr. McGriff with.  What he had in his hands was a

13   dangerous, deadly instrument.

14   And coupled with the words that he was

15   saying, Mr. McGriff was frightened.  Mr. McGriff was

16   alarmed.  Mr. McGriff was annoyed.  Mr. McGriff could

17   only do the one thing that he could do, and that is

18   protect himself, 'cause he had this man coming after

19   him saying nigger.  Slave.  Go back to Africa.

20   (Indicating).

21   That's what Mr. McGriff was facing.  That's

22   what he was facing when he took out this instrument and

23   he stabbed Mr. Khalifa.  He did it to save his life.

24   He did it to protect himself.  He did it to stop this

25   cocaine induced, crazy, racist man from hurting him.

LORENZO MCGRIFF - SUMMATIONS - BURKE

328

1            And you don't have to take my word that

2       Mr. Khalifa was crazy and cocaine induced.  You heard

3       from Miss Boyd.

4            I am going to hold this so you can see the

5       words.

6            MR. MOTTOLA:  The button on top you can zoom

7       in.

8            MS. BURKE:  Thank you.

9            MR. MOTTOLA:  You're welcome.

10           MS. BURKE:  You heard from --

11           MR. MOTTOLA:  The button's on the right.

12      Yeah.

13           MS. BURKE:  Give me one second, people.

14           MR. MOTTOLA:  There you go.

15           MS. BURKE:  I am learning this stuff, too.

16           This is the report that was put in by

17      Miss Boyd.  It's her signature at the bottom where she

18      says the patient was combative -- thank you --

19      uncooperative, verbally abusive and assaulted crew.  He

20      was very combative.  Uncooperative.  Verbally

21      aggressive and assaulted crew.

22           This man -- lights, please -- after being

23      stabbed allegedly five times, four times, five times,

24      he's still fighting people.  He's still using the N

25      word.  He's still struggling.  He's still attempting to

VdV

1    hurt other people.

2         And even in the hospital, you're gonna be

3    able to read the hospital records, even in the hospital

4    he was the same way.  You're gonna get the entire

5    medical file and you're gonna be able to read this

6    hopefully better than I am able to read it now, where

7    it says, the patient was brought in by EMS highly

8    uncooperative and agitated.

9         The patient stood up on the stretcher and

10   screamed out religious statements prior to cooperating

11   with the E.R. and surgical team at the trauma bay.

12   Patient continues to refuse to allow staff to evaluate

13   and assess.

14        That was his behavior in the hospital.  As

15   soon as he got in the hospital.

16        You'll see on page seven of the medical

17   reports I've highlighted in my portion, it says, when

18   asked to slide himself over, the patient stood up naked

19   on the EMS gurney, stepped over to the bed and remained

20   standing and shouting at the ED staff while bleeding

21   from several wounds.

22        He's bleeding and he's still uncooperative.

23   He's still combative.  Patient continued to be

24   argumentative and aggressive, not providing

25   information, not allowing a medical evaluation, and not

VdV

1    showing medical capacity.

2           You'll also read on page 25 of the medical

3    records cocaine, in his urine, positive.  He was high

4    on cocaine when he confronted Mr. McGriff.

5           And even the next day on page 53 of the

6    medical record you will have an opportunity to review

7    on your own.  Discharge note.  Patient signed out

8    against medical advisement.  Refused clothing.  Removed

9    all I.V.s access and escorted by security off hospital

10   property.

11          He was told of the risk of being prematurely

12   discharged and they attempted to get his clothing for

13   him.  They even offered him scrubs but the patient

14   refused and threatened bodily harm if we would not let

15   him go.

16          This is Mr. Khalifa's pattern.  This is

17   Mr. Khalifa that everyone knows.  Mr. Khalifa threatens

18   bodily harm apparently to anybody in his path.  Clearly

19   threatened Mr. McGriff.  Clearly assaulted the EMT

20   worker, she testified to that.  Clearly threatened the

21   medical staff who were trying to treat him.  And sign

22   himself out against medical authority.

23          This man, this racist, this violent person

24   encountered Mr. McGriff, and Mr. McGriff could do the

25   only thing that he knew to do to protect himself from

1    this type of man.  This man who is not before you, who

2    has never come to court before you, has never

3    testified.  You don't know his story, the story

4    everyone else tells about him; violent, racist,

5    uncooperative, aggressive, argumentative, irrational,

6    racist.

7              That's the man that Mr. Khalifa is.  That's

8    the man that the People are trying to say that

9    Mr. McGriff is not justified in defending himself

10   against.  But the burden is on them.  The burden is on

11   them to prove that Mr. Khalifa -- that Mr. McGriff was

12   not justified in defending himself against Mr. Khalifa.

13             And I submit to you, ladies and gentlemen of

14   the jury, they haven't done that.  They haven't done

15   that at all.  And when you go back into your

16   deliberations and you talk about the facts of the case,

17   there are some truths that you will have to come up

18   with.  Mr. McGriff stabbed Mr. Khalifa, no doubt in

19   anybody's mind.  Three witnesses testified to it.

20             Was he justified?  That's the issue.  That's

21   the crux of this case.  Was he justified in doing so?

22   And beyond a reasonable doubt.  He absolutely was

23   justified in doing so.

24             And the only verdict that you should come

25   back with is a verdict of not guilty.  Not guilty to

VdV

LORENZO MCGRIFF - SUMMATIONS - BURKE

332

1    attempted assault in the first degree.  Not guilty of

2    assault in the second degree.

3            On behalf of Mr. McGriff, that is the only

4    verdict you should come back with.  Thank you.

5            THE COURT:  Thank you.

6            (Whereupon, there was a pause in the

7    proceedings.)

8            THE COURT:  Mr. Mottola, do you need a minute

9    to set up?

10            MR. MOTTOLA:  Yeah.  If you can give me one.

11            THE COURT:  Okay.  Ladies and gentlemen, I

12    will have you step into the jury room for just a few

13    minutes.  Stretch your legs, use the facilities.

14    Please do not discuss the case amongst yourselves.

15            I am going to give the People a minute to set

16    up before their summation.  See you in a minute.

17            (Whereupon, the jury left the courtroom.)

18            (Whereupon, there was a break in the

19    proceedings and then resumed shortly thereafter.)

20            COURT OFFICER:  Line them up, Judge?

21            THE COURT:  Yes.

22            (Whereupon, there was a pause in the

23    proceedings.)

24            COURT OFFICER:  Ready for the jury, Judge?

25            THE COURT:  Yes.

VdV

LORENZO MCGRIFF - SUMMATIONS - MOTTOLA

333

1      COURT OFFICER:  Jury entering.

2      (Whereupon, the jury entered the courtroom.)

3      THE CLERK:  Okay.  The jury panel's once

4   again present and properly seated.

5      Does each side waive the jury roll call?

6      MR. MOTTOLA:  So waived.

7      THE CLERK:  Miss Burke.

8      MS. BURKE:  Yes.  So waived.

9      MR. WITTWER:  Yes.

10      THE CLERK:  Thank you, Mr. Wittwer.

11      THE COURT:  Mr. Mottola, whenever you're

12   ready.

13      MR. MOTTOLA:  Yes.  Thank you, Your Honor.

14      You want your motive for that?  When

15   Mr. McGriff testified he gave it to you.  And Janelle

16   Toribio, she also told us what the motive for that

17   violent assault was.  You are gonna keep on saying what

18   you are saying.  You are gonna say it again.

19      We are not here because Mohammed Khalifa ever

20   had a brick, ever had a weapon at all.  He was crude,

21   he was antagonistic.  He followed the defendant several

22   blocks.  He was never armed.  He never had a weapon.

23      And make no mistake, he is the victim in this

24   case, not Mr. McGriff.  Okay.

25      We are here because given the choice of

1    fleeing the situation, fleeing from perhaps a crazy,

2    unarmed man, resolving the dispute in another way, he

3    chose violence, ladies and gentlemen.  He chose to

4    remove from his pocket the very knife that you've seen

5    that's in evidence and plunge this into an unarmed

6    man's body in his flesh again and again and again, and

7    three more times once the unarmed man fled from him.

8    That's why we are here.

9             He is not a victim.  It wasn't self-defense.

10   It was assault.

11            Now, there's no question the defendant and

12   Mohammed Khalifa had an encounter that day.  Okay.

13   They met each other on the street, they had a

14   conversation, they had a fight.  There is no question.

15   There is no question the only person who suffered any

16   injuries at all is Mohammed Khalifa.  There wasn't a

17   scratch on the defendant's body.  You heard that from

18   the officer.  You heard from it from the defendant.

19            There is no question the knife, the weapon

20   introduced in the fight came from this man's pocket.

21   There is no question given the choice after he attacked

22   and assaulted Mr. Khalifa of staying there, talking to

23   the authorities, securing this boulder or brick for us,

24   he didn't do that.  He fled the scene.  He fled almost

25   a half mile.  We are going to go through the path he

1    took.

2           Given the choice of calling 911 at any point

3    on this path, he didn't do so.  Those are his choices.

4    That's why he is in this chair.  Because he chose to

5    assault an unarmed man.

6           Now this whole case hinges on one thing.

7    Credibility.  We spoke in voir dire about how you judge

8    credibility, right?  You listen to his story, you see

9    if it makes sense.  You look at someone's body language

10    and their demeanor.

11           Three women who do not know the defendant,

12    they do not know the victim, they do not know each

13    other.  They just so happen to be on Court Street that

14    same day at that same moment right when this fight had

15    broken out.  They came in court, they sat in that

16    witness chair, they swore under oath tell each and

17    every one of you the truth.  I submit that they told

18    you exactly what they saw.  They have no bias here.

19    They have no motive to lie for either party.

20           These women again and again, I asked them was

21    anything in Mr. Khalifa's hands?  Did you see any

22    weapon or any brick or any object?  And unequivocally

23    each woman told you no, no, no.  Even when pressed on

24    cross examination.

25           So who are these women?

1           Well first you heard from Janelle Toribio.

2    She was on Court Street crossing towards 65th Street,

3    she is a school teacher going to get fingerprinted.  At

4    some point she gets questioned by Mr. Wittwer pointed

5    out she was seven feet or so right from the witness box

6    to about where I am standing now.  Seven feet from

7    these two men.  Unobstructed view.  And she told you

8    without a doubt no weapon, no object, no brick in the

9    hands of Mr. Khalifa.

10          If you need to hear any of the testimony read

11   back when you are deliberating, feel free to do so.

12          Now.

13          "QUESTION:  -- on page 8 -- did you see him

14   with any kind of weapon or object?

15          "ANSWER:  No.

16          MR. MOTTOLA:  Page 16.

17          "QUESTION:  So during the whole time, did you

18   see the man in the green shirt with any weapon?

19          "ANSWER:  No.

20          "QUESTION:  Did you see him strike the larger

21   man at all?

22          "ANSWER:  No.

23          MR. MOTTOLA:  One last time on cross.

24          "QUESTION:  And from that distance were you

25   able to see any weapons at all in the man in the green

LORENZO MCGRIFF - SUMMATIONS - MOTTOLA

337

1    shirt's hands?

2            "ANSWER:  No, I did not.

3            MR. MOTTOLA:  That's Janelle Toribio.

4            Kadeisha Guy.  Who is Kadeisha?

5            Well Kadeisha was in that car, right?  We

6    know Kadeisha saw because she recorded most of it for

7    us.  She is driving down Court Street, right.  The

8    video that Miss Burke played, the first one from

9    Livingston Street, it picks up, you see the two men

10   backing up, backing up, backing up.  They get to the

11   pay loader, then they're off our screen.

12           That's where Kadeisha guy's car was.  She is

13   in a better spot than the person recording the video.

14   Because she is in the driver's seat.  She is in front

15   of the person who is actually recording with that

16   phone.  Okay.  She tells us something very simple.

17           I asked her.

18           "QUESTION:  -- page 4 -- do you ever see any

19   objects or any kind of weapon in the man in the green

20   shirt's hand?

21           "ANSWER:  No.

22           MR. MOTTOLA:  She's right there when they

23   bang into her car.  Someone in her vehicle took this

24   photo (indicating).  The photo that's in evidence, that

25   is People's 8 in evidence.

VdV

1   You saw the tape for yourself.  Look at the

2   way this sweater's hanging.  You think there is a brick

3   in there or there is a boulder in there?  The sweater

4   is dangling over the man's arm.  It's August.  He has

5   his sweater off.  Crazy or not, he knows it's hot.

6   It's certainly not balled up for the way counsel

7   demonstrated for you.

8       You cannot show anything in the video, shows

9   anybody whirling anything over his head.  It didn't

10  happen.  It was a story embellished by the defendant.

11  We will get to that.

12      First let's talk about potentially the most

13  damning for the witness for the defense.  That's

14  Miss Ashley Reyes.  Now Ashley was the last civilian

15  you heard from from the People.  She is in front of

16  that construction site.  She is in the middle of the

17  sidewalk somewhere across the street the defendant and

18  Mr. Khalifa ends up.  She tells you about a five feet

19  from her, that's after the initial encounter we see in

20  Miss Guy's video.  After the defendant struck

21  Mr. Khalifa in the stomach or side at least twice, he

22  breaks away, he runs towards Miss Reyes.

23      Whatever fight was happening, the fight is

24  over.  And now it wasn't enough.  It was not enough for

25  Mr. McGriff.  Okay.  No one talks to Mr. McGriff like

VdV

LORENZO MCGRIFF - SUMMATIONS - MOTTOLA

339

1   that.  Right?  All six foot one, 300 pounds of him.  He

2   is not used to this.

3           So he chases after the man he already stabbed

4   twice, the unarmed man, the fleeing man rushing towards

5   Ashley Reyes, he chases him.  And when Mr. Khalifa

6   falls down, he stabs him three more times, including to

7   the head.  You heard that.

8           Her testimony page 117.

9           "QUESTION:  Do you recall the man in the

10  green holding any object like a brick or a rock?

11          "ANSWER:  No.

12          "QUESTION:  Do you recall the man in the

13  green at any time striking the man with the knife, to

14  your memory?

15          "ANSWER:  No.

16          MR. MOTTOLA:  Mr. Khalifa was fleeing.  He

17  was fleeing.  Make no mistake about it.  He wasn't

18  caught up in a fight with a man 130 pounds heavier than

19  him, six inches taller than him.  He stabbed him twice.

20  He doesn't have superhuman strength, despite the

21  cocaine in his system.  He is the victim.  He is trying

22  to get away.  He is the victim, not the defendant.

23          There was someone else we heard from who

24  doesn't mention a brick or a rock.

25          (Whereupon, an audiotape was played.)

VdV

340

1          (Whereupon, the audiotape was stopped.)

2          MR. MOTTOLA:  Don't you think if she saw the

3     man in the green shirt with a rock, right, a boulder as

4     he described it, right, a large dramatic brick the

5     defense wants to show you, whirling anything, holding

6     anything, striking anything, she would have told you?

7     Maybe she would have mentioned it?  She didn't mention

8     it.  And I submit she didn't mention it because, like

9     the other three women, it didn't happen.  It wasn't

10    there.  She didn't see it.  Because it didn't exist.

11         Now you have to judge the credibility of

12    these three women and their motive to tell you the

13    truth.  And you have to weigh that against the

14    credibility of the defendant.

15         Now the defense has no burden in this case,

16    that's very clear.  He did not have to testify.  He did

17    not have to do anything.  But he did.  And once he put

18    himself in that witness chair you have -- he is subject

19    to the same rules of credibility like any other

20    witness.  You have to evaluate what he's saying, why is

21    he saying it.

22         And you're allowed, actually the Judge will

23    give you the law, he is what's known as an interested

24    witness by law.  He is the only person who is

25    interested in the verdict that you people, you return.

VdV

1        'Cause he is the one on trial.  Okay.

2              Miss Reyes, Miss Toribio, right, Miss Guy,

3        their involvement with this case is done.  They come in

4        and they left.  He is the only one left who is

5        interested in your verdict.  You are allowed to

6        consider that when you look at his testimony.

7              Let's do that.

8              I submit to you everything he told you up

9        there, was an embellishment in some way.  Some of it

10       was a straight up lie.

11             Now, you had a long time to look at the

12       defendant.  He was in the chair all morning Friday.  He

13       answered questions on direct, he answered questions on

14       cross.  The first thing he wants to tell us is that he

15       wasn't mad.  He wasn't mad August 11 of 2015.

16             I wasn't mad.  I was walking down the street

17       trying to enjoy my lunch.  A random person I don't

18       know, he is following me, he is saying these horrible

19       things.  Horrible, terrible things that I am not

20       apologizing for.  Okay.  Terrible things should never

21       be said.

22             He wants to say no, I wasn't mad that I was

23       being told to go back to Africa or I am a slave.  I

24       wasn't mad, I was fearful.

25             Okay.  Ask yourself why he is saying that to

1    you.  He is saying that because he has to.  He needs

2    you to believe that he was, that he had this fear from

3    this tiny man, has no weapon, he had this fear.  I had

4    no choice but to pull out my knife, because otherwise

5    he was going to hit with this brick no one else saw,

6    that's why he tells you this.  He exaggerated that part

7    of the story.

8         You saw, I am going to play you Miss Guy's

9    video, but before I do, again the Court Street video.

10   You see Mr. Khalifa bend down.  I am not saying you

11   don't.  He definitely bends down.  If he was picking up

12   an object as large as this rock, I submit you would

13   have seen it, okay.

14        His feet are unobstructed.  He bends down,

15   picks up something.  What he picks up we will never

16   know.  Maybe he didn't pick up anything at all, but he

17   certainly didn't swing it above his head.  Someone else

18   would have seen it.  Couldn't have been that large.

19   Certainly not the size of the brick they are

20   presenting.  You can use your own eyes.  You make that

21   determination for yourself.

22        But the defendant's back is to Mr. Khalifa.

23   They're five or six feet apart.  The defendant turns

24   around, clear as day.  It's on the video.  He turns

25   around and he begins walking (indicating), I submit to

LORENZO MCGRIFF - SUMMATIONS - MOTTOLA

343

1    you, menacing towards the unarmed man.  He is walking

2    towards him.  Look where they start in the first video.

3           About that red van, by that red truck, right.

4    They end up almost by the corner where Miss Guy is.

5    Mr. Khalifa backed up almost half of an avenue, ladies

6    and gentlemen, because this man has his knife out

7    (indicating).

8           You know what, you don't walk around Brooklyn

9    and call me those words.  I am going to teach you a

10   lesson.  It's not going to be with my fist, it's not

11   going to be with my wire stripper, it's going to be

12   with that knife.

13          I am going to switch this over.

14          (Whereupon, a videotape was played.)

15          THE COURT:  You want the lights on or off?

16          MR. MOTTOLA:  I am sorry, officer.  If you

17   hit the lights.

18          Just start from the beginning, Stephanie.

19          Look at the way he's marching or walking

20   towards Mr. Khalifa.  Mr. Khalifa's the one backing up.

21   The defendant is the one with his right hand cocked and

22   he's taking these steps.  And now he has the man

23   grabbed.

24          I ask you, look at the way the sweater hangs

25   in the video, again, similar to the photo.  This

LORENZO MCGRIFF - SUMMATIONS - MOTTOLA

344

1  sweater is dangling.  There is no eight or ten inch

2  boulder in that sweater, ladies and gentlemen.

3              Watch the tape again.  Watch it again.

4              Let it play.

5              You have seen this video enough.  I will not

6  bore you with it.  I am playing to the end for one

7  point we will get to later.

8              This fight takes thirty seconds or so.  Tape

9  is running.  There goes Mr. McGriff running as fast as

10 he can.

11             Officer, you can turn the lights on, please.

12 Thank you.

13             (Whereupon, the videotape was stopped.)

14             MR. MOTTOLA:  What does he tell us, right?

15 He tells us he grabs him.  He grabs Mr. Khalifa.  We

16 know that.  Right?  It's in the photo he grabs him.

17 And then we see what he does right with that knife,

18 vicious undercuts twice.

19             I submit that's where the, you know, the two

20 left stab wounds in the back came from.  Those first

21 two strikes.  He has now struck a man with a knife

22 twice.  You saw the way he was swinging.  As vicious as

23 he could, okay.

24             He wants to tell you August 11, I wasn't mad.

25 I wasn't angry.

VdV

LORENZO MCGRIFF - SUMMATIONS - MOTTOLA

345

1          We saw him in court on Friday.  You had a

2     chance to judge his demeanor.  He is in court under

3     oath.  He is on trial.  There is a Judge next to him.

4     Jury's here.  There are people in the gallery.  We were

5     all here.  Court officers were here.  Within five

6     minutes of answering my questions I submit to you he

7     became extremely angry.  Remained that away all

8     morning.  You be the judge of that.

9          But as angry as he was in court answering

10     questions, he was ten times angrier August 11, 2015

11     when a man he didn't know was telling him go back to

12     Africa.

13          He won't even give us that.  He won't tell us

14     that he was angry.  Being angry is not a crime.  He

15     won't even give us that part.  Okay.

16          Imagine what he will say or how he will

17     interpret this knife, right, or the fear that he will

18     exaggerate for you.  He won't even tell us he was

19     angry.  Of course he was angry.  How could you not be

20     angry?  But no, I was afraid.  It doesn't make sense.

21          You know what else doesn't make sense?  He

22     has the man grabbed here, he stabbed him twice.  What

23     does he tells you, right?  I asked him.

24          You didn't have to pull out this knife.  You

25     didn't have to stab that man.  You had your hand cocked

LORENZO MCGRIFF - SUMMATIONS - MOTTOLA

346

1    back with as much strength as a man his size has.  Why

2    didn't he, couldn't he punch him in the face again and

3    again with that same right hand instead of pulling out

4    the knife, crack him in the face?

5            You know what, Mr. Khalifa probably deserved

6    that.  If that happened we wouldn't be here.  He

7    wouldn't be in that chair.  He didn't do that.  It

8    wasn't because of a brick.  It was because he was

9    teaching him a listen.  Here is how I solve my

10   problems.  It's with my knife.

11           Remember again what Ashley told us.  The

12   defendant tells us I stabbed him twice.  He was still

13   holding on.  He has all this strength, he is holding on

14   to me.  He wouldn't let go.  I had to stab him three

15   more times.  And then he finally drops the brick and

16   now I was able to run away.

17           Well Ashley tells us that those extra stabs,

18   those three other stab wounds happened after

19   Mr. Khalifa broke away, and when he was running in her

20   general direction, okay.

21           This is the part that I really want you to

22   focus on, especially when we get to self-defense.  Page

23   113.

24           "QUESTION:  Was there anything on the street

25   that was blocking your view of these two men?

VdV

LORENZO MCGRIFF - SUMMATIONS - MOTTOLA

347

1            "ANSWER:  No.

2            MR. MOTTOLA:  Page 114.

3            "QUESTION:  What happened after that?

4            "ANSWER:  It was when I noticed that two

5     people were running towards me that I decided to move

6     slightly out of the way in front of the store that was

7     with the construction.  I then noticed the one

8     gentleman was chasing the other gentleman and there was

9     a knife in his hand.  That's when the one person fell

10    into the construction site of the store.

11           At that point the other gentleman was already

12    stabbing him, and at that point you can see there was

13    blood coming out.

14           "QUESTION:  So the record is clear, what is

15    the race of the person who was chasing him?

16           "ANSWER:  The Africa American was chasing the

17    Caucasian man.

18           "QUESTION:  How close did they get to you?

19           "ANSWER:  At that point, they were about five

20    feet from me.

21           MR. MOTTOLA:  Five feet away, unobstructed

22    view.  Her testimony is as clear as day.  Mr. Khalifa

23    stabbed and he is fleeing and then he's pursued by the

24    defendant.  He is stabbed again and again and again.

25           When someone's back is to you, they're

1    running, that's not self-defense.  That cannot be

2    self-defense under our law, ladies and gentlemen.  We

3    are going to get to that.  Okay.  We are going to get

4    to the law, but before we do, you know what happened,

5    right?  We know the whole incident.

6              Counsel did a great job talking about the

7    whole fight.  She didn't mention a thing that happened

8    after that.  I submit everything that happened after

9    the stabbing, including the defendant running away, is

10   even more damning behavior.  It shows you what he was

11   thinking on this day.  Okay.  It shows you his intent.

12   Shows you exactly what he was trying to do, okay.

13             Let's start with first him running.  First he

14   tells you I couldn't run from, I couldn't run from

15   Mohammed Khalifa.  I couldn't run.  I was winded, I

16   smoke, or I was walking.

17             He came up with a thousand reasons.  Again,

18   why he couldn't run away.  So he doesn't run away from

19   the man, but he pulls out a knife, fights him for

20   thirty seconds, throws as hard as he can, same knife,

21   in his body.  He had no trouble running away after

22   that.  Not as winded as he was, as tired as I imagine

23   he might be after stabbing and chasing a man.  He ran

24   away after that.

25             He tells you I couldn't, I had to go.

1    Because Mr. Khalifa's so crazy he is going to get up,

2    he is going to keep attacking me even though I stabbed

3    him five times.  Again, exaggeration and embellishment.

4           No one's saying Mr. Khalifa's is a good

5    person.  Doesn't mean he is not protected by our law.

6    He was stabbed five times.  There is no testimony

7    outside of the defendant that he ever had a weapon.

8    But he is still a threat.  Still a threat to the

9    defendant.  That's what he will have you believe, okay.

10          Could he have waited on scene?  Of course he

11   could have.  The man's down, prone.  He stands him,

12   over him.  He is already twice his size.  He could have

13   him on scene but he leaves.  Why did he leave?  I don't

14   know.  He didn't really answer this.  I guess he had to

15   get back to work.  But we know he could have waited.

16          I have a reason why he might have left.  He

17   is on Court Street 1 o'clock in the afternoon.  Dozens

18   of people are out, maybe a hundred people.  You have

19   seen the video.  He just chased a man, he knocks

20   Mr. Khalifa into that construction site, right?

21          We know from Janelle Toribio also they went

22   into the construction site.  She told us there are

23   actually construction workers in that site that she saw

24   them there, people come out.

25          If you watch the video, dozens of people walk

LORENZO MCGRIFF - SUMMATIONS - MOTTOLA

350

1    by.  You think maybe that's why he left?  He didn't

2    want to wait around?  Because all these people are on

3    the scene, you know, they're going about their lives.

4    When they look up, there is this man stabbing another

5    man, then he runs away before anyone can identify him.

6    Before anyone can figure out what happened he's gone.

7    Because he is the one who is the aggressor here, okay.

8    That's why he left the scene.  Wasn't because he was

9    afraid of the man that's on the ground who he stabbed

10    five times.

11            911.  Doesn't call 911 either, right?  He

12    doesn't have to call 911.  No obligation.  But he had a

13    cell phone, he told us that.  And again, he didn't

14    call.  Why not?  I am afraid.  He was afraid.

15            You know, Mr. Khalifa's following him, I have

16    all this anxiety, I can't call 911.  Okay.  He couldn't

17    call 911 when he went right, so he is up, he runs and

18    he is going, this is his path here, this is People's 12

19    in evidence.

20            He couldn't call 911 when he runs towards

21    Schermerhorn Street?  He couldn't pull out this phone,

22    say hey, there is a crazy guy.  You know, he has that

23    weapon, following me.  I am in fear of my life.

24            He couldn't have done that?  He could have.

25            How about when he got to Clinton Street?

LORENZO MCGRIFF - SUMMATIONS - MOTTOLA

351

1      Could he have called 911 then?  He could have.

2              He went out of his way to go to Atlantic

3      Avenue.  He then goes all the way to Boerum, ultimately

4      he goes down all the way to Bergen.  He couldn't call

5      911 at any point?  Of course he could have.  He says I

6      couldn't.  He could have.  I will tell you why he

7      didn't.

8              He did not want to interact with the police

9      that day.  Because he was not under attack by

10     Mr. Khalifa, okay, he wasn't the victim.  He was the

11     aggressor.  He was the man who had the knife and he was

12     hoping to get away with it.

13             He almost made it back to work, he got real

14     close, but all these good samaritans, pedestrians on

15     the street and Mr. Khalifa who followed the defendant.

16     They pointed the officers at each location to the next

17     point, spot, pointed up the block, up the block.

18     Eventually they caught the man hiding behind the van.

19             We will get to that, but before we do that,

20     look at the actual path he takes.  Okay.  The stabbing

21     happens on Court Street, Court and Joralemon.  He tells

22     us he works Baltic Street, which is towards the bottom

23     of the map, Baltic between Court and Clinton, okay.  He

24     is already on Court.  Why can't he just run down the

25     street if he runs down Court Street, right?  Those nine

352

1    blocks he hits Baltic, his job is right there.  Okay.

2    He zigzags.

3         Look at this path.  He zigzags up Livingston

4    to Clinton Street.  He then goes against the vehicular

5    traffic on Clinton Street, which I submit to you is

6    extremely suspicious.  He is going against the traffic

7    to dodge the police.  The stabbing happened on Court.

8    That's where the witnesses are.  That's where the

9    police is going.  He, that's where they are canvassing.

10        He goes to Clinton, hopes to hide on a back

11   street.  He hits Atlantic and Clinton.  He walks past

12   Court again.  He overshot this, goes to Boerum.

13        If he is going back to his job, what is he

14   doing?  Why is he going from Clinton to Court past

15   Court to Boerum, then down to Bergen?  He is trying to

16   stay off the main road.  Same road that dozens of

17   people saw him stab an unarmed man.  He is hiding.  His

18   actions show you that.

19        Police Officer Louard tells us that.  Officer

20   Louard, he tells us he gets the call, goes to Court and

21   Livingston and neither the defendant nor the victim are

22   there.  So, he starts canvassing.  He ends up, he goes

23   against the traffic on Clinton.  People point, he goes

24   to Atlantic.  They are pointing.  He keeps going.

25   Eventually he finds the victim.  He finds Mr. Khalifa

VdV

LORENZO MCGRIFF - SUMMATIONS - MOTTOLA

353

1    bleeding from his five stab wounds.   Tells him he is

2    laboring or he tells us he is laboring.   He says sit

3    down, stop right there.   Mr. Khalifa, he says, was

4    cooperative with him.   He stayed on scene.   EMS

5    responds --

6              MS. BURKE:   Objection, Your Honor.

7              THE COURT:   Overruled.

8              MR. MOTTOLA:   He stays on scene briefly until

9    EMS responds, then he goes up the very next block which

10   is where he is hiding behind that van, okay.

11             Again, his actions here speak louder than

12   anything else.

13             (Whereupon, a videotape was played.)

14             MR. MOTTOLA:   He wants to tell you right now

15   the officers telling him get down, as this video runs.

16             Yeah, please.

17             That the, his testimony, the defendant's

18   testimony is that the police have already ordered him

19   to the ground.

20             (Whereupon, there was a pause in the

21   proceedings.)

22             MR. MOTTOLA:   Yeah.   Just look.   He is up

23   here at the top, he is crouching down, he is on his

24   feet.   He is bending his shoulders down, okay.

25             The video's running.   The video's running, he

LORENZO MCGRIFF - SUMMATIONS - MOTTOLA

354

1    is still there.  Then you are going to see the feet of

2    officers come up right over this side of the van

3    (indicating).  He is on the ground.  Here come the

4    officers.  He is still down.

5            Now you see Louard.  Look what the defendant

6    does.  He tries to get back up.  He tries to get back

7    up.

8            Officer, could you please put the lights on?

9            So Officer Louard tells you he didn't make

10   contact.  He didn't see the defendant when he is behind

11   the van, okay.

12           What's Officer Louard's motive to lie when he

13   tells you that?  Ask that to yourselves when you are

14   going through his testimony.  He came in here, said I

15   got called.  I didn't know the guy that was stabbed.  I

16   don't know the defendant, okay.  I am just doing my job

17   canvassing and I show up, I see this guy.  The call's

18   for a stabbing.  My gun is out.  I am looking.  I don't

19   see him.  Good samaritan points behind the van.  He

20   peeks around the van.  Lo and behold we have our

21   defendant on the ground.

22           He wants to tell you no, I wasn't trying to

23   run.  I wasn't trying to hide.  My knee hurts.  I have

24   a bad knee.  Remember he told us that.  He has an

25   excuse for everything he did that day.

VdV

1           He didn't have an excuse for one thing, the

2     knife.  Where's the knife?  Where's the knife?  He

3     tells you it's a wire cutter originally or a wire

4     stripper.  Eventually he started calling it a knife on

5     the witness stand.  Where is it?

6           I asked him that.  He said I don't have it.

7     Why don't you have it?  I didn't want it.  Yeah.  He

8     didn't want it because he stabbed a man with it five

9     times.  He is getting rid of the evidence.  Why would

10    he want it?  If it was really this wire stripper,

11    right, that he wants you to believe, wouldn't he have

12    kept it?

13          You have eyes.  Use your own eyes, everyone.

14    You can look at that as long as you want.  That's not a

15    wire stripper, that is a knife.  Clear as day that's a

16    knife.

17                MS. BURKE:  Objection.

18                MR. MOTTOLA:  Where is it?

19                THE COURT:  Sustained.

20                MR. MOTTOLA:  We don't have it.

21          And he told you that he dropped it on Court

22    Street.  But remember I asked him about the grand jury.

23    In the grand jury he told those people, right, he told

24    those jurors no, no.  I, I put it -- I dropped it on

25    Boerum.

LORENZO MCGRIFF - SUMMATIONS - MOTTOLA

356

1          Okay.  Which is important.  Because you saw

2     that map.  Boerum is actually the end of his flight

3     here.  So he tells the grand jury I put it, I dropped

4     it on Boerum Place.  Doesn't tell us why.  But he says

5     he dropped it on Boerum.

6          I submit to you that's the truth, because

7     Janelle Toribio told you when they exit the

8     construction site that's right there, sees the

9     defendant with the bloody knife, puts it his pocket, he

10    runs away.  Somewhere along that crazy path he took, I

11    submit that he came up with the idea I don't want this

12    knife because people are following me.  He threw the

13    knife somewhere on Boerum.  That's why we don't have

14    it.

15         But he told you, he got up there, told you he

16    wanted to make it look like who cares about the knife,

17    not important.  You know, I was under fear.  I was

18    under stress.  I have just dropped it somewhere on

19    Court.

20         Nonsense.  He knows what he said in the grand

21    jury.  He won't even stick to that, tell you he dropped

22    it on Boerum.  Why?  He will say anything to you.

23         I submit that's exactly what happened when he

24    told you about this brick.  No one else saw the brick

25    whirling over the head like a sling, okay.  None of

LORENZO MCGRIFF - SUMMATIONS - MOTTOLA

357

1      that happened.  Only one person told you that it

2      happened.  And he is the interested witness that's

3      sitting there (indicating).  That's the only person.

4                You are going to get the law in a couple of

5      minutes.  There are two charges.  Attempted assault in

6      the first degree, and assault in the second degree.

7                We are going to start at the bottom.  That's

8      the assault in the second degree.

9                The defendant caused physical injury to

10     Mohammed Khalifa with a dangerous instrument.

11               Well when you stab someone five times,

12     bleeding profusely, go to the hospital, you cause them

13     physical injury.  How did he do it?  I think we agree

14     he did it with that knife.  That one's easy.  That

15     one's guilty.

16               Attempted assault in the first degree.  I

17     don't have to prove to you.  You see Miss Burke

18     mentioned a lot about serious physical injury.  I don't

19     have to prove that he suffered a serious physical

20     injury.  In fact, I am telling you he did not suffer

21     one under the law.  All I have to prove to you is that

22     the defendant was attempting to cause serious physical

23     injury to Mohammed Khalifa.  When you stab someone five

24     times, including in the head, all right.

25               You saw the EMT report.  I am reading from

VdV

LORENZO MCGRIFF - SUMMATIONS - MOTTOLA

358

1     the medical records here from the consultation notes.

2            Stab wounds to lateral left chest and left

3     flank, stab wounds to the right cheek, stab wound above

4     right eyebrow, stab wound to the left forearm.

5            When you stab someone five times, twice to

6     the front and the back, twice to the forearm, twice to

7     the head, what else could you be doing?  You are trying

8     to seriously hurt them.

9            Just because I submit Mr. Khalifa got lucky

10    and the defendant got lucky he didn't actually cause a

11    serious physical injury, doesn't mean that wasn't his

12    intent.  His actions proved to you that's exactly what

13    it was.

14           So, the big thing here, right?  Is

15    justification.  Well let's say you are sitting there,

16    you are saying, Mr. Mottola, I don't know.  I don't

17    know.  I don't know.  What if, what if we can't see it?

18    The witnesses just missed this, this brick.  Something

19    was in that shirt, that hoodie and I don't know.  I

20    don't know.  Maybe, you know, maybe he was within his

21    right to stab him.  Stab him once, stab him twice.

22           Go back to Ashley's testimony.  She's right

23    there.  Once even if you believe that Mr. Khalifa had

24    any kind of object or the defendant thought he had this

25    object, once he is stabbed twice, breaks away and is

VdV

1    running and fleeing towards that construction site,

2    okay, the fight is over.  The fight is over.  He now

3    can no longer use that knife.  He can retreat in

4    complete safety for himself.  The man is done.  He is

5    stabbed and fleeing.

6              He didn't do that.  Because that's not what

7    this defendant does.  He was going to teach Mr. Khalifa

8    a lesson for those nasty things he said to him.  He

9    followed him and he chased him down.  He went to finish

10   the job.  He stabs him three more times.  And the law

11   doesn't permit that.  That's not self-defense.

12             We spoke in voir dire a lot about how you

13   weren't going to hear from Mr. Khalifa.  And I asked

14   all these people that came in here, this courtroom is

15   full, 60, 70 jurors.  You are the well, or the 14 that

16   were selected to sit because you said you know what, if

17   I meet my burden and I prove my case beyond a

18   reasonable doubt, despite not hearing from Mr. Khalifa

19   you could return a verdict of guilty.

20             You don't have to like him.  I am not asking

21   you to like him.  No one has to like him.  He said

22   mean, horrible things to this defendant.  But he never

23   had a weapon.

24             We know his behavior was erratic.  Maybe he

25   had some kind of emotional thing going on.  We don't

VdV

LORENZO MCGRIFF - SUMMATIONS - MOTTOLA

360

 1    know.  No one knows.  He is not here.  His voice still

 2    counts.  He is still a human being.  He is still

 3    protected by the law that protects you, that protects

 4    the Judge, that protects me and Mr. McGriff.

 5              Just because he is not here doesn't mean he

 6    doesn't get a voice in this case.  You are his voice.

 7    You can return the verdict that is consistent with the

 8    evidence.  He did not deserve what happened to him in

 9    this photo here.  Under no view of the evidence was he

10    armed, and he did not deserve that knife being plunged

11    into his body five times, no matter what he said.

12              This defendant is in that chair.  He is on

13    trial because of the choices he made that day.  The

14    choices of escalating a situation where he could have

15    punched a man, to the situation where he pulled out a

16    knife.  He stabbed him again and again and again.  It

17    was not self-defense.  It was assault.

18              Thank you.

19              THE COURT:  Thank you.

20              All right, ladies and gentlemen, I am going

21    to send you out to an early lunch.  I will ask you to

22    be back promptly 2:15.  At that point I will charge you

23    on the law, you will begin your deliberations in this

24    matter.

25              In the interim, please don't discuss the case

LORENZO MCGRIFF - TRIAL

361

1    among yourselves or with anyone else.  Don't go online

2    and do any independent research of any kind as we have

3    discussed multiple times.

4          I will see you this afternoon.  Thank you

5    very much for your attention.  I will see you a little

6    later.  Thank you.

7          (Whereupon, the jury left the courtroom.)

8          THE COURT:  Okay.  2:15, everyone.  Thank you

9    very much.

10          Counsels, approach.

11          (Whereupon, there was a discussion held at

12    the bench off the record.)

13          (Whereupon, luncheon recess is taken, after

14    which the proceedings continued as follows:)

15          *     *     *     *     *     *     *

16    **A F T E R N O O N          S E S S I O N**

17          *     *     *     *     *     *     *

18          THE CLERK:  Recalling the case on trial of

19    Lorenzo McGriff.  The parties are present.  Outside the

20    presence of the jury.

21          THE COURT:  All right.  All appearances are

22    as previously noted.

23          Before we call the jury in for the charge I

24    want to make a record about something that occurred

25    here in the courtroom this morning.

LORENZO MCGRIFF - TRIAL

362

1           You can have a seat.  Thank you.

2           At the, during the defense summation

3     Miss Burke was holding in her hand an item that

4     appeared to be a sweater, and at one point dropped it

5     to the ground and there was a thudding noise, I would

6     say, that came from that.

7           That was, by the way, for better or worse,

8     without objection by the People as to either.

9           During the People's summation we, I would

10    note that from my vantage point the projector was up

11    and so I could not see the defense table well, until

12    just about a minute or so before Mr. Mottola finished

13    his comments, his summations.

14          I noticed that the item that appeared to be

15    the same sweater that Miss Burke had been holding

16    during summation was now on the defense table, and the

17    ends of it were opened and there was an item in the,

18    sitting inside of it that appeared, from my vantage

19    point, to be a brick.  We sent the jury out and were

20    due back here for lunch.

21          I did call the attorneys, I believe

22    Miss D'Agostino might have stepped out already, but I

23    called -- actually don't remember, I'm sorry, if you

24    had --

25          MS. D'AGOSTINO:  I did.

VdV

LORENZO MCGRIFF - TRIAL

363

1          THE COURT:  I am sorry.

2          MS. D'AGOSTINO:  That's okay.

3          THE COURT:  That the attorneys had all come

4     up and I said to Mr. Wittwer that I wanted that item

5     out of the courtroom.  And he told me that he was

6     placing it back in his briefcase or his bag.  And I

7     said that I did not want it in the courtroom at all.

8          Mr. Wittwer's response to me off the record,

9     I will allow you to correct it if I am wrong, was that

10    it was demonstrative evidence.  And I said it most

11    certainly is not, and I did not want it here.

12         Again, that was as well, for better or worse,

13    without objection by the People to it's continued

14    presence on the defense table during the People's

15    summation.

16         So, leaving aside it's impact on the trial,

17    which of course since it was sitting there without

18    objection it is already done, but I'll just let you

19    know upfront that should there be any note from the

20    jury referencing those items in any way, I am prepared

21    to tell them that those items are not evidence and they

22    are to be completely disregarded.

23         Second of all, and we may have occasion to

24    discuss this after the trial is over, I am very, very

25    concerned about the safety implications of bringing an

LORENZO MCGRIFF - TRIAL

364

1    item of that into the courtroom without the knowledge

2    of the sergeant or the officers.  Certainly without

3    consulting the Court to let me know that was your

4    intention to do.  Had I been told of it I certainly

5    would have said no.

6            It was completely inappropriate to have an

7    item such as that on display at all, but certainly

8    brought into the court without alerting anyone that

9    this was taking place.  And as I said, I don't know

10   what if anything will, I will do after the trial is

11   over.  Has nothing to do with it here.

12           But I will tell you now I do intend to speak

13   to the administrative Judge about it and see whether

14   there is, to discuss the safety implications that it

15   presents for all of us.

16           So, anything?

17           MR. WITTWER:  Just I apologize, Your Honor.

18   The intent was not for it to be surreptitious.  It has

19   been removed and will not be brought into the

20   courtroom.

21           I spoke to my supervisor when I was out of

22   the courtroom.  I understand it was unsafe to bring it

23   in and I apologize.

24           THE COURT:  Okay.  You can line up the jury.

25   Thank you.

LORENZO MCGRIFF - JURY TRIAL

365

1          (Whereupon, there was a pause in the

2     proceedings.)

3          COURT OFFICER:  Ready for the jury, Your

4     Honor?

5          THE COURT:  Yes.  Thank you.

6          COURT OFFICER:  Jury entering.

7          (Whereupon, the jury entered the courtroom.)

8          COURT OFFICER:  Step in, please.

9          THE CLERK:  Jury is present and properly

10    seated.

11         Does each side waive the jury roll call?

12         MR. MOTTOLA:  So waived.

13         MS. BURKE:  So waived.

14         THE CLERK:  Thank you.

15         THE COURT:  Thank you.

16         Good afternoon, everyone.

17         THE JURY:  Good afternoon.

18         THE COURT:  Can't tell if any of you went

19    outside 'cause you look like you are not iced over.  I

20    will assume some of you stayed put and stayed warm.

21    Okay.

22         So, ladies and gentlemen of the jury, we've

23    now reached that point in the trial when I am going to

24    instruct you on the law and you will begin your

25    deliberations.  I am going to divide my instructions

VdV

1      into three parts.

2           First, I'll give you the general principles

3      of law that apply to this and all criminal trials.

4      Second, I'll instruct you on the law as it applies to

5      the particular crimes that you're going to consider,

6      and there are two.  And third, I'll explain to you the

7      process of your deliberations.

8           So you and I are sitting here together as

9      judges.  As I've said before, you are the judges of the

10     facts, I'm the judge of the law.  Because I'm the judge

11     of the law, you must apply to the facts as you find

12     them, the principles of law that I give to you.  You

13     must accept the principles of law as I define them,

14     whether you agree with them or not.

15          However, you are the sole judges of the

16     facts.  You're not to consider anything that I say to

17     you now or anything I said during the trial, any

18     questions I might have asked, or any rulings that I

19     made, or even the manner in which I made any of my

20     rulings as indicating to you that I have an opinion

21     about this case one way or the other.  I have no such

22     opinion.

23          In my instructions to you now, I'm not going

24     to review or summarize the evidence.  But I will refer

25     to particular parts of the evidence if I think that

1    it's necessary to explain a point of law relating to

2    that evidence.

3          Do not draw any conclusion from the fact that

4    I refer to some parts of the evidence and not others

5    that I have an opinion about the importance of any

6    particular piece of evidence.  You are the judges of

7    the evidence, not me.

8          Nor should you consider the fact that I give

9    you any particular instructions, nor the order in which

10   I give them to you, as intending to communicate to you

11   any opinion about how the issues before you should be

12   resolved or even of their relative importance.

13         During the trial objections were made by the

14   parties which sometimes I sustained, sometimes I

15   overruled.  Requests were made which sometimes I

16   granted and sometimes I denied.  These were all matters

17   of law within my province.

18         You're not to draw any inferences or

19   conclusions for or against a witness, the People or the

20   defendant from these rulings.  It's totally up to you

21   to decide what the facts are, whether one fact is more

22   important than another fact, whether a witness was

23   truthful or not truthful, or whether a witness was

24   accurate or not accurate.  These are all matters within

25   your exclusive power as the judges of the facts.

1        The level of my voice or my intonation may

2    vary during those instructions.  If I do that, it's

3    done to help you understand the instructions.  It's not

4    done to communicate any opinion about the law or the

5    facts of the case, or whether the defendant is guilty

6    or not guilty.

7        Remember, nothing that the attorneys said

8    during the process of jury selection, in their

9    openings, or in the making of objections or

10   applications or in their summations, none of it is

11   evidence in this case.  Your own recollection,

12   understanding and evaluation of the facts presented by

13   the evidence at this trial is what controls, regardless

14   of what the attorneys may have said about the facts.

15   You and you alone are the sole and exclusive judges of

16   the facts in this case.

17       As I've already told you, you're not required

18   to accept the arguments that either party made during

19   summations.  You may consider the summary and analysis

20   of the evidence that each side has offered to you.  And

21   accept or reject the arguments that each one has made,

22   depending upon whether these arguments are reasonable,

23   logical and consistent with the evidence.  And of

24   course it's ultimately your own obligation to review

25   carefully and analyze the evidence for yourselves and

VdV

1    draw your own conclusions from the evidence that you

2    believe to be truthful.

3              As judges of the facts, it's your sworn duty

4    to decide the case based on the evidence admitted

5    during the trial and to determine all the evidence

6    fairly and impartially.  You must not indulge in

7    speculation or guesswork, and you are not to consider

8    anything outside of the evidence.  You must decide this

9    case based solely on the evidence that's before you.

10             In determining whether the defendant is

11   guilty or not guilty, you must not consider or

12   speculate about any matters relating to a possible

13   sentence or punishment.  If there is a verdict of

14   guilty, the Court and the Court alone determines the

15   sentence.

16             In reaching your verdict you're not to be

17   effected by sympathy for any of the parties, by what

18   the reaction of the parties or the public may be to

19   your verdict, or indeed any consideration outside the

20   case as it's been presented to you in this courtroom.

21   You should consider only the evidence, both the

22   testimony and the exhibits, find the facts from what

23   you consider to be the believable evidence, and apply

24   the law as I give it to you now.  Your verdict will be

25   determined by the conclusion that you reach, no matter

LORENZO MCGRIFF - JURY TRIAL

370

1    whom the verdict helps or hurts.

2         Now, in evaluating the evidence and the

3    issues presented, you should use your common sense,

4    your knowledge and experience just as you would in

5    making decisions in your everyday life.

6         When I speak of knowledge and experience in

7    this context, I mean the sort of knowledge and

8    experience that an average person would acquire during

9    the course of their life.  But some of you may have

10   something more than ordinary knowledge or experience in

11   a certain area.  Indeed it may be that you have

12   developed a special expertise in a certain area, well

13   beyond what an average person would have.

14        If you have such a special expertise and if

15   it relates to some material issue in this case, it

16   would be wrong for you to rely on this special

17   expertise to inject into your deliberations either a

18   fact that's not in evidence, or inferable from the

19   evidence, or an opinion that couldn't be drawn from the

20   evidence by a person who didn't have that kind of

21   special expertise.

22        The reason it would be wrong to do so is that

23   you must decide this case only on the evidence that was

24   presented to you in this courtroom.

25        So with respect to any material issue in the

VdV

LORENZO MCGRIFF - JURY TRIAL

371

1    case, you must not use any special expertise you have

2    to insert into the deliberations evidence that hasn't

3    been presented in this courtroom during the trial.

4         So when you judge the facts, you are to

5    consider only the evidence.  The evidence in this case

6    includes testimony of the witnesses, exhibits that were

7    received in evidence, and stipulations by the parties.

8         A stipulation is information that the parties

9    agreed to present to you, the jury, as evidence without

10   calling a witness to testify.

11        Testimony which was stricken from the record

12   or to which an objection was sustained must be

13   disregarded by you.

14        Exhibits that were received in evidence are

15   available at your request for your inspection and

16   consideration.  Exhibits that were just seen during the

17   trial or marked for identification but not received in

18   evidence are not evidence, and thus they are not

19   available for your inspection and consideration.  But

20   testimony based on exhibits that weren't received in

21   evidence may be considered by you.  It's just that the

22   item itself, the exhibit itself is not available for

23   your inspection and consideration.

24        You're not to draw any inferences, either

25   favorable or unfavorable, to the People or the

VdV

LORENZO MCGRIFF - JURY TRIAL

372

1     defendant from the fact that a question was asked in

2     the first place.

3                Questions alone are not evidence.  You're not

4     to conclude from just a question alone that anything

5     assumed in the question is true.  No matter how

6     detailed or specific the question was.  You must

7     consider the question along with the witness's answer

8     and decide whether the answer is credible and reliable.

9                In deciding whether the People have met their

10    burden of proof in this case, you should consider all

11    the evidence or the lack of evidence in deciding

12    whether the defendant is guilty or not guilty.  There

13    is no legal requirement that the People present

14    evidence of any specific investigative techniques to

15    prove their case.  Your concern, as I said, is to

16    determine whether or not the evidence admitted at this

17    trial proves the defendant's guilt beyond a reasonable

18    doubt.

19               As judges of the facts, you alone determine

20    the truthfulness and the accuracy of the testimony of

21    each witness that you heard.  You must decide whether a

22    witness told the truth and was accurate, or instead

23    testified falsely or was mistaken.  You must also

24    decide what importance to give to the testimony that

25    you do see as truthful and accurate.  It's the quality

LORENZO MCGRIFF - JURY TRIAL

373

1    of the testimony that controls, not the number of

2    witnesses who testified.

3         If you find that any witness has

4    intentionally testified falsely as to any material

5    fact, you may disregard that witness's entire

6    testimony.  Or you may disregard so much of it as you

7    find was untruthful and accept so much of it as you

8    find to have been truthfully and accurately given.

9         Now, there's no particular formula for

10   evaluating the truthfulness and accuracy of another

11   person's statements or testimony.  You bring to this

12   process all of your varied experiences.  In life all of

13   you frequently decide the truthfulness and accuracy of

14   statements that are made to you by other people.

15        The same factors you use to make those

16   decisions you should use in this case when evaluating

17   the testimony.  Some of the factors that you may wish

18   to consider in evaluating the testimony of a witness

19   might include, did the witness have an opportunity to

20   see or hear the events about which he or she testified?

21   Did the witness have the ability to recall those events

22   accurately?  Was the testimony of the witness plausible

23   and likely to be true, or was it implausible and not

24   likely to be true?  Was the testimony of the witness

25   consistent or inconsistent with other testimony or

LORENZO MCGRIFF - JURY TRIAL

374

1    evidence in this case?  Did the manner in which the

2    witness testified reflect upon the truthfulness of that

3    witness's testimony?  To what extent, if any, did the

4    witness's background, training, education or experience

5    affect the believability of the witness's testimony?

6    Did the witness have a bias, hostility or some other

7    attitude that affected the truthfulness of the

8    witness's testimony?

9          You may consider whether a witness had or did

10    not have a motive to lie.  If a witness had a motive to

11    lie, you may consider whether and to what extent, if

12    any, that motive affected the truthfulness of that

13    witness's testimony.

14          If a witness did not have a motive to lie,

15    you may consider that as well in evaluating the

16    witness's truthfulness.  You may consider whether a

17    witness hopes for or expects to receive a benefit for

18    testifying.  If so, you may consider whether and to

19    what extent it affected the truthfulness of the

20    witness's testimony.

21          You may consider whether a witness has any

22    interest in the outcome of the case.  Or instead

23    whether the witness has no such interest.

24          A defendant who testifies is a person who has

25    an interest in the outcome of the case.

VdV

1        You're not required to reject the testimony

2   of an interested witness.  You're not required to

3   accept the testimony of a witness who has no interest

4   in the outcome of the case.  You may, however, consider

5   whether an interest in the outcome or the lack of such

6   an interest affected the truthfulness of the witness's

7   testimony.

8        You may consider whether a witness has been

9   convicted of a crime or has engaged in criminal

10  conduct; and if so, whether and to what extent it

11  affects the truthfulness of the witness's testimony.

12       You're not required to reject the testimony

13  of a witness who has been convicted of a crime or has

14  engaged in criminal conduct.  You're not required to

15  accept the testimony of a witness who has not.  You

16  may, however, consider whether a witness's criminal

17  conviction or conduct has affected the truthfulness of

18  the witness's testimony.

19       With respect to the defendant, a prior

20  conviction or criminal conduct are not evidence of

21  guilt in this case.  They are not evidence that the

22  defendant is a person who is disposed to commit crimes.

23  You're only permitted to consider a conviction or

24  conduct to evaluate the defendant's truthfulness.  Only

25  for that purpose.

LORENZO MCGRIFF - JURY TRIAL

376

1        You may consider whether a witness made

2    statements at this trial that are inconsistent with

3    each other.  You may also consider whether a witness

4    made previous statements that are inconsistent with his

5    or her testimony at trial.  You may consider whether a

6    witness testified to a fact here at trial that the

7    witness omitted to state at a prior time when it would

8    have been reasonable and logical for the witness to

9    have stated that fact.

10        In determining whether it would have been

11   reasonable and logical for the witness to have stated

12   the omitted fact, you may consider whether the

13   witness's attention was called to the matter and

14   whether the witness was specifically asked about it.

15        If a witness has made such inconsistent

16   statements or omissions, you may consider whether and

17   to what extent they affect the truthfulness or accuracy

18   of the witness's testimony here at this trial.

19        The contents of a prior inconsistent

20   statement, if any, are not proof of what happened.  You

21   may use evidence of a prior inconsistent statement, if

22   there is such evidence, only to evaluate the

23   truthfulness or accuracy of the witness's testimony

24   here at the trial.

25        You may consider whether a witness's

VdV

1    testimony is consistent with the testimony of other

2    witnesses or with other evidence in the case.

3         If there were inconsistencies by or among

4    witnesses, you may consider whether they were

5    significant inconsistencies that relate to important

6    facts, or instead they were the kind of minor

7    inconsistencies that one might expect from multiple

8    witnesses to the same event.

9         In this case you've heard the testimony of a

10   police officer.  The testimony of a witness should not

11   be believed solely and simply because the witness is a

12   police officer.  At the same time, a witness's

13   testimony should not be disbelieved solely and simply

14   because the witness is a police officer.

15        In other words, you must not believe or

16   disbelieve a police officer just because he or she is a

17   police officer.  You must evaluate a police officer's

18   testimony in the same way that you would evaluate the

19   testimony of any other witness.

20        You've heard testimony about the prosecutor

21   speaking to a witness about the case before the witness

22   testified at trial.  The law does not prohibit a

23   prosecutor from speaking to a witness about the case

24   before the witness testifies, nor does it prohibit the

25   prosecutor from reviewing with the witness the

LORENZO MCGRIFF - JURY TRIAL

378

1    questions that will be asked at trial.

2          You've also heard the testimony that a

3    witness read certain materials pertaining to this case

4    before testifying at trial or before answering certain

5    questions.  The law does not prohibit a witness from

6    doing so.

7          One of the issues in this case is whether the

8    defendant's use of physical force was justified.  On

9    this issue, you have heard the testimony of the

10   defendant.  The defendant contends that another person,

11   Mohammed Khalifa, has knowledge relevant to that issue.

12         The People did not call Mohammed Khalifa as a

13   witness.  The fact that Mohammed Khalifa was not called

14   as a witness permits, but does not require, an

15   inference that had he been called, his testimony would

16   not have supported the People's position on this issue.

17         Let's talk for a few minutes about

18   evidentiary inferences.

19         In evaluating the evidence, you may consider

20   any fact that is proven and any inference which may be

21   drawn naturally, reasonably and logically from such

22   fact.  To draw an inference means to infer, to find or

23   to conclude that a fact exists or does not exist based

24   upon proof of some other fact or facts.

25         So for example, you go to bed one night when

VdV

LORENZO MCGRIFF - JURY TRIAL

379

1    it's not raining.  When you wake up in the morning you

2    look out the window and you don't see rain but you see

3    that the street and the sidewalk are wet, that people

4    are wearing raincoats and they're carrying umbrellas.

5          Under those circumstances it may be

6    reasonable for you to infer or conclude that it had

7    rained during the night.

8          In other words, the fact of rain during the

9    night is an inference that might be drawn from the

10   proven facts of the presence of water on the street,

11   presence of water on the sidewalk, the people in

12   raincoats and the people carrying umbrellas.

13         An inference must only be drawn from a proven

14   fact or facts, and then only if the inference flows

15   naturally, reasonably and logically from the proven

16   fact or facts, not if it's speculative.

17         Therefore, in deciding whether to draw an

18   inference, you must look at and consider all of the

19   facts in the light of reason, common sense and

20   experience.

21         We now turn to the fundamental principles of

22   law that apply in all criminal trials.  The presumption

23   of innocence, the burden of proof, and the requirement

24   of proof beyond a reasonable doubt.

25         Throughout these proceedings the defendant is

1      presumed innocent.  As a result, you must find the

2      defendant not guilty, unless on the evidence presented

3      at this trial you conclude that the People have proven

4      the defendant guilty beyond a reasonable doubt.

5              In determining whether the People have

6      satisfied their burden of proving the defendant's guilt

7      beyond a reasonable doubt, you may consider all the

8      evidence presented, whether by the People or by the

9      defendant.  In doing so, however, remember that even

10     though the defendant introduced evidence, the burden of

11     proof remains on the People.

12             The defendant is not required to prove that

13     he is not guilty.  In fact, he is not required to prove

14     or disprove anything at all.  To the contrary, the

15     People have the burden of proving the defendant guilty

16     beyond a reasonable doubt.

17             That means before you can find the defendant

18     guilty of a crime, the People must prove beyond a

19     reasonable doubt every element of the crime, including

20     that the defendant is the person who committed the

21     crime.

22             The burden of proof never shifts from the

23     People to the defendant.  If the People fail to satisfy

24     their burden of proof, you must find the defendant not

25     guilty.  If the People satisfied their burden of proof,

LORENZO MCGRIFF - JURY TRIAL

381

1    you must find the defendant guilty.

2              So what does the law mean when it requires

3    proof of guilt beyond a reasonable doubt?

4              The law uses that term proof beyond a

5    reasonable doubt to tell you how convincing the

6    evidence of guilt must be to permit a verdict of

7    guilty.

8              The law recognizes that in dealing with human

9    affairs there are very few things in this world that we

10   know with absolute certainty.  Therefore, the law does

11   not require the People to prove a defendant guilty

12   beyond all possible doubt.

13             On the other hand, it is not sufficient to

14   prove that the defendant is probably guilty.  In a

15   criminal case the proof of guilt must be stronger than

16   that.  It must be beyond a reasonable doubt.

17             So, a reasonable doubt is an honest doubt of

18   the defendant's guilt for which a reason exists based

19   upon the nature and quality of the evidence.  It is an

20   actual doubt, not an imaginary one.  It is a doubt that

21   a reasonable person acting in a matter of this

22   importance would be likely to entertain because of the

23   evidence that was presented or because of the lack of

24   convincing evidence.

25             Proof of guilt beyond a reasonable doubt is

LORENZO MCGRIFF - JURY TRIAL

382

1    proof that leaves you so firmly convinced of the

2    defendant's guilt that you have no reasonable doubt of

3    the existence of any element of the crime or of the

4    defendant's identity as the person who committed the

5    crime.

6          In determining whether or not the People have

7    proven the defendant's guilt beyond a reasonable doubt,

8    you should be guided solely by a full and fair

9    evaluation of the evidence.  After carefully evaluating

10   the evidence, each of you must decide whether or not

11   that evidence convinces you beyond a reasonable doubt

12   of the defendant's guilt.

13         Whatever your verdict may be, it must not

14   rest on baseless speculation.  Nor may it be influenced

15   in any way by bias, prejudice, sympathy, or by a desire

16   to bring an end to your deliberations or a desire to

17   avoid an unpleasant duty.

18         If you are not convinced beyond a reasonable

19   doubt that the defendant is guilty of a charged crime,

20   you must find him not guilty of that crime.  If you are

21   convinced beyond a reasonable doubt that the defendant

22   is guilty of a charged crime, you must find him guilty

23   of that crime.

24         We've now come to the second part of the

25   charge in which I am going to submit to you the two

VdV

LORENZO MCGRIFF - JURY TRIAL

383

1    crimes that you're going to consider.  In submitting

2    these crimes to you I am going to read to you the

3    definition of the crimes, then I will explain some

4    terms used in the definition.  And then I will list for

5    you the elements which you must find to have been

6    proven beyond a reasonable doubt in order to convict

7    the defendant of each crime.

8         Let me emphasize that an indictment is simply

9    an accusation required by the law solely for the

10   purpose of informing a defendant of the offenses with

11   which he is charged.  It is simply a paper writing.

12   The allegations set forth in the indictment are not

13   evidence.  And as I say, the indictment is merely the

14   device required by law to inform a defendant of the

15   charges against him and to bring those charges to

16   trial.

17        So, with respect to counts one and two, the

18   defendant has raised the defense of justification, also

19   known as self-defense.

20        Actually I am going to take a minute.

21   Everybody with me?  Let's take some, couple of deep

22   breaths, make sure we are all together and we're all

23   focused.  There used to be a Judge here years ago used

24   to make the jurors stand up, do calisthenics.  I am too

25   old.  I am not going to make you do that.  Take some

VdV

LORENZO MCGRIFF - JURY TRIAL

384

1    deep breaths.  Make sure you are all still with me.

2              (Whereupon, there was laughter in the

3    courtroom.)

4              THE COURT:  So I started, as I started to

5    say, with respect to counts one and two, both counts

6    that you are going to consider the defendant has raised

7    the defense of justification, also known as

8    self-defense.

9              The defendant, however, is not required to

10   prove that he was justified.  The People are required

11   to prove beyond a reasonable doubt that he was not

12   justified.

13             So let me explain our law's definition on the

14   defense of justification as it applies here.

15             Under our law, a person may use physical

16   force upon another individual when and to the extent

17   that he reasonably believes it to be necessary to

18   defend himself from what he reasonably believes to be

19   the use or imminent use of physical force by such

20   person.

21             The determination of whether a person

22   reasonably believes physical force to be necessary to

23   defend himself from what he reasonably believes to be

24   the use or imminent use of physical force by another

25   requires you to apply a two part test.  The test

1    applies to this case in the following way.

2         First, the defendant must have actually

3    believed that Mohammed Khalifa was using or was about

4    to use physical force against him, and that the

5    defendant's own use of physical force was necessary to

6    defend himself from it.

7         And second, a reasonable person in the

8    defendant's position, knowing what the defendant knew

9    and being in the same circumstances, would have had

10   those same beliefs.  It does not matter that the

11   defendant was or may have been mistaken in his belief,

12   provided that such belief was both honestly held and

13   reasonable.

14        Notwithstanding the rules that I have just

15   explained, the defendant would not be justified in

16   using physical force under the following circumstances.

17        First, the defendant would not be justified

18   if he was the initial aggressor.  Except that the

19   defendant's use of physical force would nevertheless be

20   justified if he had withdrawn from the encounter and

21   effectively communicated that withdrawal to Mohammed

22   Khalifa, but Mohammed Khalifa persisted in continuing

23   the incident by the use or threatened use of imminent

24   physical force.  The imminent use of physical force.

25        Arguing, using abusive language, calling a

1    person names, or the like, unaccompanied by physical

2    threats or acts does not make a person an initial

3    aggressor and does not justify his force.

4            Initial aggressor means the person who first

5    attacks or threatens to attack.  That is, the first

6    person who uses or threatens the imminent use of

7    offensive physical force.  The actual striking of the

8    first blow or inflicting of the first wound, however,

9    does not necessarily determine who is the initial

10   aggressor.

11           A person who reasonably believes that another

12   is about to use physical force upon him need not wait

13   until he is struck and wounded -- struck or wounded.

14   He may in such circumstances be the first to use

15   physical force, so long as he reasonably believed it

16   was about to be used against him.  He is then not

17   considered the initial aggressor, even though he

18   strikes the first blow or inflicts the first wound.

19           Second, the defendant would not be justified

20   if Mohammed Khalifa's conduct was provoked by the

21   defendant himself with intent to cause physical injury

22   to Mohammed Khalifa.

23           The People are required to prove beyond a

24   reasonable doubt that the defendant was not justified.

25   It is therefore an element of each of the two counts

VdV

1    that the defendant was not justified.

2              As a result, if you find that the People have

3    failed to prove beyond a reasonable doubt that the

4    defendant was not justified, then you must find him not

5    guilty under counts one and two.

6              So the first count that you will consider is

7    the attempt to commit the crime of assault in the first

8    degree.

9              Under our law, a person is guilty of assault

10   in the first degree when with intent to cause serious

11   physical injury to another person, he causes such

12   injury to that person by means of a dangerous

13   instrument.

14             Some of the terms used in this definition

15   have their own special meaning in the law.  So, serious

16   physical injury means impairment of a person's physical

17   condition which creates a substantial risk of death or

18   which causes death, or serious and protracted

19   disfigurement, or protracted impairment of health, or

20   protracted loss or impairment of the function of any

21   bodily organ.

22             Intent means conscious objective or purpose.

23             Thus, a person acts with intent to cause

24   serious physical injury to another when that person's

25   conscious objective or purpose is to cause serious

1    physical injury to another.

2           Dangerous instrument means any instrument,

3    article or substance which under the circumstances in

4    which it is used, attempted to be used, or threatened

5    to be used is readily capable of causing death or other

6    serious physical injury.

7           Now under our law, a person is guilty of an

8    attempt to commit a crime when with the intent to

9    commit a crime, he engages in conduct which tends to

10   effect the commission of that crime.

11          Intent again means a conscious objective or

12   purpose.  Thus, a person acts with intent to commit a

13   crime when his or her conscious objective or purpose is

14   to commit that crime.

15          Conduct which tends to effect the commission

16   of a crime means conduct which comes dangerously close

17   or very near to the completion of the intended crime.

18          If a person intends to commit a crime and

19   engages in conduct which carries his or her purpose

20   forward within dangerous proximity to the completion of

21   the intended crime, he or she is guilty of an attempt

22   to commit that crime.  It does doesn't matter that the

23   intended crime was not actually completed.  The

24   person's conduct must be directed towards the

25   accomplishment of the intended crime.  It must go

LORENZO MCGRIFF - JURY TRIAL

389

1       beyond planning and mere preparation, but it need not

2       be the last act necessary to effect the actual

3       commission of the intended crime.  Rather, the conduct

4       involved must go far enough that it comes dangerously

5       close or very near to completing the intended crime.

6               So, in order for you to find the defendant

7       guilty of attempted assault in the first degree, the

8       People are required to prove from all the evidence in

9       the case beyond a reasonable doubt each of the

10      following three elements.

11              First, that on or about August 11, 2015, in

12      the County of Kings, the defendant, Lorenzo McGriff,

13      intended to commit the crime of assault in the first

14      degree.  And second, that the defendant engaged in

15      conduct which tended to effect the commission of that

16      crime.  And third, that the defendant was not

17      justified.

18              Therefore, if you find that the People have

19      proven beyond a reasonable doubt each of those three

20      elements, you must find the defendant guilty of the

21      crime of attempted assault in the first degree under

22      the first count.

23              On the other hand, if you find that the

24      People have not proven beyond a reasonable doubt any

25      one or more of those three elements, you must find him

VdV

1    not guilty of the crime of attempted assault in the

2    first degree under count one.

3            The second count you will consider is assault

4    in the second degree.

5            Under our law, a person is guilty of assault

6    in the second degree when with intent to cause physical

7    injury to another person, he causes such injury to that

8    person by means of a dangerous instrument.

9            Physical injury means impairment of physical

10   condition or substantial pain.  Intent again means

11   conscious objective or purpose.

12           So a person acts with intent to cause

13   physical injury to another when that person's conscious

14   objective or purpose is to cause physical injury to

15   another.

16           Dangerous instrument again means any

17   instrument, article or substance which under the

18   circumstances in which it is used, attempted to be

19   used, or threatened to be used, is readily capable of

20   causing death or other serious physical injury.  That

21   is, serious and protracted disfigurement, protracted

22   impairment of health, protracted loss or impairment of

23   the function of any bodily organ.

24           Under this definition, death or other serious

25   physical injury need not, in fact, be caused.

LORENZO MCGRIFF - JURY TRIAL

391

1          So in order for you to find the defendant

2     guilty of this crime, the People are required to prove

3     from all the evidence in the case beyond a reasonable

4     doubt each of the following three elements.

5          First, that on or about August 11, 2015, in

6     the County of Kings, the defendant, Lorenzo McGill

7     (sic), caused physical injury to Mohammed Khalifa by

8     means of a dangerous instrument.  And second, that the

9     defendant did so with the intent to cause physical

10    injury to Mohammed Khalifa.  And third, that the

11    defendant was not justified.

12          Therefore, if you find that the People have

13    proven beyond a reasonable doubt each of those three

14    elements, you must find him guilty of the crime of

15    assault in the second degree as charged in the second

16    count.

17          On the other hand, if you find that the

18    People have not proven beyond a reasonable doubt any of

19    those three elements, you must find the defendant not

20    guilty of assault in the second degree as charged in

21    the second count.

22          We've now reached the third and final part of

23    the charge that deals with the process of your

24    deliberations.

25          Your verdict, whether guilty or not guilty,

VdV

1    must be unanimous.  Meaning each and every juror must

2    agree to it.  Now no one expects that all jurors will

3    have the same view of the case when they first enter

4    the jury room.

5            To reach a unanimous verdict you must

6    deliberate with the other jurors.  That means you

7    should discuss the evidence and consult with each

8    other, listen to each other, give each other's views

9    careful consideration and reason together when

10   considering the evidence.  And when you deliberate, you

11   should do so with an eye toward reaching an agreement,

12   if that can be done without you surrendering your

13   individual judgment.

14           Each of you must decide the case for

15   yourself, but only after a fair and impartial

16   consideration of the evidence with the other jurors.

17   You should not surrender an honest view of the evidence

18   simply because you want the trial to end or because you

19   are outvoted.

20           At the same time you should not hesitate to

21   re-examine your views and change your mind if you

22   become convinced that your position was not correct.

23           In other words, ladies and gentlemen, when

24   you enter the jury room in a few minutes you may have

25   individually reached certain tentative opinions and

1    conclusions.  Before finalizing those opinions and

2    conclusions you should deliberate with the other

3    jurors.  You should be open to reason and be willing to

4    either adhere to your opinion and conclusions if you

5    are persuaded that you are correct, or to change your

6    opinion and conclusions if you are persuaded that you

7    are not.

8         In the interest of justice, please make every

9    effort consistent with your conscience and the evidence

10   in this case to harmonize your views and decisions in

11   this case with those of your fellow jurors.  And make

12   every effort to come to a unanimous agreement based on

13   the law and the facts of the case.

14        To the best of your ability I ask you to

15   apply common sense and good judgment.  Do not let fear,

16   favor, sympathy, bias, prejudice or consideration of a

17   possible sentence or punishment sway your minds in any

18   way in analyzing the testimony.  Decide this case, as

19   you promised, fairly on the evidence and on the law,

20   whether you agree with the law or not.

21        Now under our law the first juror selected is

22   known as the foreperson.  During deliberations the

23   foreperson's opinion and vote are not entitled to any

24   more importance than that of any other juror.

25        Natalie Nikolayeva is the foreperson.  What

1    we ask the foreperson to do during deliberations is to

2    sign any written note that the jury sends to the Court.

3    The foreperson does not have to write the note or agree

4    with its contents.  The foreperson's signature only

5    indicates that the writing comes from the jury.

6          You'll get paper for jury notes.  Please put

7    the date and time of the note.  Please do not reveal

8    any information regarding your deliberations or any

9    votes that you have taken on any count in your note.

10         When the jury has reached a verdict, guilty

11   or not guilty, the entire jury will be asked to come

12   into court.  The foreperson will be asked whether the

13   jury has reached a verdict.  And if the foreperson says

14   yes, she will be asked what the verdict is for each

15   charged crime.  After that, the entire jury will be

16   asked as a group whether that is their verdict and they

17   will answer yes or no.

18         Finally, upon the request of a party, each

19   juror will be asked individually whether the announced

20   verdict is the verdict of that juror.  And then upon

21   being asked, each juror will answer yes or no.

22         Now, I'm holding a form that you are going to

23   get known as a verdict sheet (indicating).  The verdict

24   sheet lists each count that's being submitted for your

25   consideration.  The manner which you are to consider

LORENZO MCGRIFF - JURY TRIAL

395

1    the counts and possible verdicts.  Please use the form

2    to record your verdict with an X or a checkmark in the

3    appropriate place for each count that you are required

4    to consider in accordance with my instructions.

5         You may see any or all of the exhibits which

6    were received in evidence.  Simply write me a note

7    telling me which exhibit or exhibits you want to see,

8    have the foreperson sign the note, and specify the date

9    and time.

10        As I previously explained, I can only provide

11   those evidence -- those items that were received in

12   evidence.  If something was just seen in the courtroom,

13   marked for identification but not moved into evidence,

14   just used to question the witness, I may not submit

15   that to you unless it was actually received in

16   evidence.

17        You may also have the testimony of any

18   witness read back in whole or in part.  Again, if you

19   want a readback, write me a note telling me what

20   testimony you wish to hear.  If you are interested in

21   hearing only a portion of a witness's testimony, please

22   specify in your note which witness, and with as much

23   detail as possible, which part of the testimony you

24   want to hear.  If you want to hear all or a portion of

25   a witness's testimony only during a particular

VdV

LORENZO MCGRIFF - JURY TRIAL

396

1    examination, for example, direct or cross, specify that

2    too.  Feel free to identify the particular examination

3    you want to hear by using the name of the lawyer who

4    conducted it.

5            The detailed description of what you want to

6    hear is necessary because we have to read each question

7    and answer in order to decide whether it's part of what

8    you asked for.  That process normally takes some time,

9    so please be patient while we search the record to

10   answer your request.

11           In the alternative you may request readback

12   of the entire testimony of a witness or the entire

13   testimony of a witness during a particular examination.

14   And if you wish, you can authorize your foreperson to

15   raise her hand when the court reporter has read

16   everything you wanted to hear.  I will instruct the

17   reporter to stop reading.

18           Of course when testimony is read back,

19   questions to which an objection was sustained, material

20   that was otherwise stricken from the record is not read

21   back.

22           If you would like me to re-read any part of

23   the legal instructions I have just given you, or if you

24   have any questions about the instructions, please

25   indicate that in writing.  Again, signed by the

VdV

1    foreperson, with the date and time stated and give it

2    to the court officer.  Please be as specific as you can

3    about what part of the instructions want read back or

4    explained.

5              Finally there are a few remaining rules which

6    you must observe during your deliberations.

7              While you are here in the courthouse

8    deliberating on the case you will be sequestered.

9    Meaning you will all be kept together in the jury room

10   under the supervision of a court officer.  You may not

11   leave the jury room without permission.  Other than

12   today, obviously, lunch will be provided.

13             If you have a cell phone or other electronic

14   device, please give it to the court officer to hold for

15   you while you are engaged in deliberations.

16             Second, you must deliberate about the case

17   only when all twelve of you are gathered together in

18   the jury room.  For example, you must not be discussing

19   the case as you go back and forth from the courtroom to

20   the jury room.  It's simply important that each juror

21   have an opportunity to hear what another juror has to

22   say about the case.  And by law, that must only be done

23   when all of you are gathered together in the jury room.

24             So if for any reason all twelve deliberating

25   jurors are not together in the jury room, stop

LORENZO MCGRIFF - JURY TRIAL

398

1   deliberating until all twelve of you are back together

2   again.  All right.

3           Third, during your deliberations you must

4   only discuss the case amongst yourselves.  You must not

5   discuss the case with anyone else, including the court

6   officer, or permit anyone other than a fellow juror to

7   discuss the case in your presence.

8           Fourth, if you have a question or a request,

9   you must communicate with me by writing a note.  The

10  law requires that you communicate with me in writing in

11  part to make sure there are no misunderstandings about

12  what you are asking for.  What you want.  Give the note

13  to the court officer, who in turn will give it to me.

14          When the jury room door is open to give the

15  court officer the note, please stop deliberating until

16  the officer has left and the door is closed.

17          And again, in any note that you send to me,

18  please do not tell me what the vote of the jury is on

19  any count.  All right.

20          In just a few minutes the twelve jurors will

21  be brought into the jury room to start their

22  deliberations.  The two alternate jurors will be

23  separated from the deliberating jury.  The alternate

24  jurors are not to discuss the case with each other or

25  anyone else.

LORENZO MCGRIFF - TRIAL

399

1        Counsels want to come up.

2            (Whereupon, there was a discussion held at

3        the bench off the record.)

4            THE COURT:  All right, ladies and gentlemen,

5        so as I said we are going to send you back into the

6        jury room to begin your deliberations.  And all twelve

7        of you, please don't discuss the case, anything about

8        the case, until all twelve of you are in the room with

9        the door closed.  Enjoy each other's company, guys.

10       Don't discuss the case or anything about it, and we

11       will see you back in a while.  Thank you so much.

12           (Whereupon, the jury left the courtroom.)

13           THE COURT:  Okay.  I had just clarified up at

14       the bench any objection to the charge.

15           MR. MOTTOLA:  No, Your Honor.

16           THE COURT:  From the defense.

17           MS. BURKE:  No, Your Honor.

18           THE COURT:  Okay.  What I mentioned up at the

19       bench is I will give you an opportunity, for right now

20       we will keep the alternates here.  You can discuss with

21       Mr. McGriff and Mr. Wittwer what you want to do about

22       keeping the alternates, not.  Let me know, I guess, as

23       we get close to the end of the day what you want to do.

24           If I could ask for, may I get your consent if

25       we get a request for the exhibits going into the

VdV

LORENZO MCGRIFF - TRIAL

400

1     deliberation room, do we have your consent to send the

2     exhibits in without calling you back to read the note,

3     etcetera?

4          MS. BURKE:  Yes, Your Honor.

5          MR. MOTTOLA:  The only exception would be I,

6     again the medical records.  I don't think they

7     personal, like the address or whatever was redacted.  I

8     can try to get a pencil now.  I have no objection to

9     anything else.

10         THE COURT:  Why don't you look through --

11         MS. BURKE:  The medical records or the FDNY?

12         MR. MOTTOLA:  His medical records --

13         THE COURT:  I think you need a Magic Marker

14    instead of a pencil.

15         MR. WITTWER:  I have a redaction pencil.

16         THE COURT:  Oh, okay.  Great.

17         In terms of the videos, why don't you come

18    up.

19         (Whereupon, there was a discussion held at

20    the bench off the record.)

21         THE COURT:  Just as we discussed, I'll ask

22    counsels to look over the medical records for

23    redactions.  And the laptop that goes with the videos,

24    as long as there's no internet access, no Google,

25    nothing of that nature that can be used by the

LORENZO MCGRIFF - TRIAL

401

1    deliberating jurors, that's fine.

2            MR. MOTTOLA:  Yes, there is no internet

3    access on this laptop.

4            THE COURT:  Okay.  Thank you.

5            Second call on the, third call.  I have one

6    other case to do.  Thank you.

7            MR. MOTTOLA:  Yes.  If I could just make a

8    record about the laptop, Your Honor.

9            THE COURT:  Oh, sorry.  Yes.

10           MR. MOTTOLA:  It's okay.

11           So I checked the laptop.  There is nothing on

12   it.  There does appear to be, it does have access to

13   wireless internet.  Right now it has no connection.  I

14   don't know if they will be -- I am not a hundred

15   percent certain if they will be able to get on the

16   court network.  Looks like it's connected to my

17   office's internet.  It has no connection, Google,

18   nothing.

19           THE COURT:  Well usually they get us a laptop

20   that doesn't have any of that.

21           MR. MOTTOLA:  Okay.

22           THE COURT:  Sort of cleaned off.  Maybe you

23   can check with your tech people.

24           MR. MOTTOLA:  Sure.

25           Your Honor, I have completely deactivated.

VdV

LORENZO MCGRIFF - TRIAL

402

1    The computer's in airplane mode.  I completely

2    deactivated any potential wifi issue.  I showed it to

3    counsel.

4              MR. WITTWER:  It's fine.

5              THE COURT:  Great.

6              (Whereupon, there was a break in the

7    proceedings and then resumed shortly thereafter.)

8              (Whereupon, other business was conducted and

9    then the case continued.)

10             THE COURT:  Want to line up the jury?  Not

11   the alternates.

12             COURT OFFICER:  Okay.

13             THE COURT:  Recalling the case on trial.

14             THE CLERK:  Okay.  The parties are present.

15   Outside the presence of the jury.

16             THE COURT:  We have two notes from the jury.

17   I have actually given copies of both notes to counsels

18   to review.

19             The first one, Court Exhibit Number 1, is

20   from 3:40 p.m., and it says, is it possible to have two

21   videos, in parenthesis, surveillance from Livingston

22   Street and the cell phone video, close parenthesis,

23   brought into the jury room on a laptop so we can view

24   the videos close up?

25             And Court Exhibit Number 2, 3:45, that says,

VdV

LORENZO MCGRIFF - TRIAL

403

1      is it possible to have a written

2      description/explanation of the two charges brought to

3      the jury room?  Perhaps a copy of the document the

4      Judge read from?  Also, can we please see the medical

5      records.

6              So, the videos and the medical records, we

7      will just provide to them pursuant to your prior

8      consent, but I want to bring them, the jury in, tell

9      them that they can't get a written description of the

10     charges.  They're not available to read even if they

11     need them.

12             Is there anything else that you would like me

13     to say in response to that question?

14             MS. BURKE:  No.

15             MR. MOTTOLA:  No.

16             MS. BURKE:  Just inquire if they need it

17     re-read to them.

18             THE COURT:  Okay.  Thank you.

19             COURT OFFICER:  Jury entering.

20             Step in.

21             (Whereupon, the jury entered the courtroom.)

22             THE CLERK:  The deliberating jury panel is

23     present and properly seated.

24             Does each side waive the jury roll call?

25             MR. MOTTOLA:  So waived.

VdV

LORENZO MCGRIFF - TRIAL

404

1          MS. BURKE:  So waived.

2          THE CLERK:  Okay.

3          THE COURT:  Good afternoon again.  I have two

4     notes from you.  Let me just read them.

5          Court Exhibit Number 1, 3:40 p.m.  Is it

6     possible to have two videos, the surveillance from

7     Livingston Street and the cell phone video, brought in

8     the jury room on a laptop so we can view the videos

9     close up.

10          We are going to get that to you.

11          And Court Exhibit Number 2 at 3:45.

12          Is it possible to have a written

13     description/explanation of the two charges brought to

14     the jury room?  Perhaps a copy of the document the

15     Judge read from.

16          No, you may not get them in writing.  But we

17     are, we stand ready to read them to you or answer any

18     questions that you may have on those issues.

19          Also, can we please see the medical records.

20          We are going to get those to you, too.  All

21     right.  They will be coming in as soon as you come back

22     into the jury room.  In the meantime, please don't

23     discuss the case amongst yourselves until all twelve of

24     you are back in the room.  Thank you very much.

25          JUROR:  May we ask a question?

VdV

LORENZO MCGRIFF - TRIAL

405

1          JUROR:  No.

2          THE COURT:  No.  What I need -- no, no.  Well

3    as I indicated, all questions, etcetera, from the jury

4    have to be in writing, so if you have another question

5    that you would like us to answer, please write it on a

6    note, date and time signed by the foreperson, and send

7    it out to us.  We are ready to answer anything we need

8    to in writing.

9          JUROR:  One of the questions we submitted,

10   are we not going to hear the counts read to us again?

11         JUROR:  Right.

12         THE COURT:  Well I am prepared to read them

13   to all of you now --

14         JUROR:  Yes.

15         THE COURT:  -- if that's what you would like.

16         THE JURY:  Yes.  We can't have a copy of them

17   then --

18         THE COURT:  In writing, right, but we will

19   read them.

20         Okay.  Come up -- actually just do this.

21         Are you asking for the two substantive

22   charges?

23         JUROR:  Yes.

24         THE COURT:  Okay.  All right.  Actually come

25   on up.

1  (Whereupon, there was a discussion held at

2  the bench off the record.)

3  THE COURT: Okay. All right. The first

4  count that you are considering is attempt to commit the

5  crime of assault in the first degree. I'll instruct

6  you first on the definition of the crime of assault in

7  the first degree, then I will define attempt, and then

8  we will put them together. All right.

9  Under our law, a person is guilty of assault

10  in the first degree when with intent to cause serious

11  physical injury to another person, he causes such

12  injury to that person by means of a dangerous

13  instrument.

14  Serious physical injury means impairment of a

15  person's physical condition which creates a substantial

16  risk of death, or which causes death or serious and

17  protracted disfigurement, or protracted impairment of

18  health, or protracted loss or impairment of the

19  function of any bodily organ.

20  Intent means conscious objective or purpose.

21  Thus, a person acts with intent to cause serious

22  physical injury to another when that person's conscious

23  objective or purpose is to cause serious physical

24  injury to another.

25  Dangerous instrument means any instrument,

LORENZO MCGRIFF - TRIAL

407

1    article or substance which under the circumstances in

2    which it's used, attempted to be used, or threatened to

3    be used, is readily capable of causing death or other

4    serious physical injury.

5            Under our law, a person is guilty of an

6    attempt to commit a crime when with intent to commit a

7    crime, he engages in conduct which tends to effect the

8    commission of such crime.

9            Intent again means conscious objective or

10   purpose.  Thus, a person acts with intent to commit a

11   crime when his or her conscious objective or purpose is

12   to commit that crime.

13           Conduct which tends to effect the commission

14   of a crime means conduct which comes dangerously close

15   or very near to the completion of the intended crime.

16           If a person intends to commit a crime and

17   engages in conduct which carries his or her purpose

18   forward within dangerous proximity to the completion of

19   the intended crime, he or she is guilty of an attempt

20   to commit this crime.  It does not matter that the

21   intended crime was not actually completed.  The

22   person's conduct must be directed toward the

23   accomplishment of the intended crime.  It must go

24   beyond planning and mere preparation, but it need not

25   be the last act necessary to effect the actual

VdV

LORENZO MCGRIFF - TRIAL

408

commission of the intended crime.  Rather, the conduct
involved must go far enough that it comes dangerously
close or very near to the completion of the intended
crime.

In order for you to find the defendant guilty
of attempted assault in the first degree, the People
are required to prove from all the evidence in the case
beyond a reasonable doubt each of the following three
elements.

First, that on or about August 11, 2015, here
in Brooklyn, the defendant, Lorenzo McGriff, intended
to commit the crime of assault in the first degree.
Second, that the defendant engaged in conduct which
tended to effect the commission of that crime.  And
third, that the defendant was not justified.

Therefore, if you find that the People have
proven beyond a reasonable doubt each of those three
elements, you must find the defendant guilty of the
crime of attempted assault in the first degree under
the first count.

On the other hand, if you find that the
People have not proven beyond a reasonable doubt any
one or more of those elements, you must find him not
guilty of attempted assault in the first degree under
the first count.

LORENZO MCGRIFF - TRIAL

409

1          The second count is assault in the second

2     degree.

3          Under our law, a person is guilty of assault

4     in the second degree when with intent to cause physical

5     injury to another person, he causes such injury to that

6     person by means of a dangerous instrument.

7          Physical injury means impairment of physical

8     condition or substantial pain.  Intent means conscious

9     objective or purpose.  Thus, a person acts with intent

10    to cause physical injury to another when that person's

11    conscious objective or purpose is to cause physical

12    injury to another.

13         Dangerous instrument again means any

14    instrument, article or substance which under the

15    circumstances in which it's used, attempted to be used,

16    or threatened to be used, is readily capable of causing

17    death or other serious physical injury.  That is,

18    serious and protracted disfigurement, protracted

19    impairment of health, or protracted loss or impairment

20    of the function of any bodily organ.

21         Under this definition, death or other serious

22    physical injury need not, in fact, be caused.

23         In order for you to find the defendant guilty

24    of this crime, the People are required to prove from

25    all the evidence in the case beyond a reasonable doubt

VdV

1   each of the following three elements.

2          First, that on or about August 11, 2015, in

3   the County of Kings, the defendant, Lorenzo McGill,

4   caused physical injury to Mohammed Khalifa by means of

5   a dangerous instrument.  Second, that the defendant did

6   so with the intent to cause physical injury to Mohammed

7   Khalifa.  And third, that the defendant was not

8   justified.

9          Therefore, if you find that the People have

10  proven beyond a reasonable doubt each of those three

11  elements, you must find the defendant guilty of assault

12  in the second degree under the second count.

13         On the other hand, if you find that the

14  People have not proven beyond a reasonable doubt any of

15  those three elements, you must find him not guilty of

16  assault in the second degree as charged in the second

17  count.

18         All right.  Thank you.  So please don't

19  discuss the case until all twelve of you are back in

20  the room.  We are going to send you a laptop, the two

21  exhibits you requested and the medical records.  Thank

22  you.

23         (Whereupon, the jury left the courtroom.)

24         THE COURT:  Okay.  Just for the record, that

25  was the reading of the two substantive charges was

LORENZO MCGRIFF - TRIAL

411

1      based upon our bench conference up at the bench.

2            MS. BURKE:  Your Honor, just for the record,

3      when you initially did the jury charge you had misspoke

4      Mr. McGriff's name, you had called him Mr. McGill.  I

5      thought this was just that you had been mistaken.

6            MR. MOTTOLA:  Yes.

7            MS. BURKE:  But in the second go around you

8      did the same thing.

9            THE COURT:  I apologize.  Let me see.  It

10     should be a typo.  Yep, it is.  I apologize.  Okay.

11           My apologies, sir.

12           Just for the record, what else is in the bag?

13           MR. MOTTOLA:  There's nothing else.  It's the

14     bag, the charger and nothing else.

15           THE COURT:  Okay.  If you want to step out,

16     not sitting at the table, that's fine.

17           (Whereupon, there was a break in the

18     proceedings and then resumed shortly thereafter.)

19           MS. BURKE:  Your Honor, we would ask that the

20     alternates not be released but be put on phone alert so

21     they don't have to physically be in the courthouse.

22           THE COURT:  Okay.  We discussed that briefly

23     at the bench.  And what I would do is tell the two

24     alternates to check in with us at 11 a.m. by telephone

25     here.  And to leave their phones on so they can check

VdV

LORENZO MCGRIFF - TRIAL

412

1    in and see if they're needed in the morning, and we

2    would call them if there's something that requires

3    their presence.

4              That's acceptable to you and your client,

5    Miss Burke?

6              MS. BURKE:  Yes, Your Honor.

7              THE COURT:  Mr. Mottola.

8              MR. MOTTOLA:  Yes.

9              THE COURT:  Okay.  Let's bring in the two

10   alternates first.

11             COURT OFFICER:  First?

12             THE COURT:  Yes.  Thank you.

13             (Whereupon, there was a pause in the

14   proceedings.)

15             COURT OFFICER:  You ready, Judge?

16             THE COURT:  Yes.  Thank you.

17             COURT OFFICER:  Alternate jurors are

18   entering.

19             Have a seat, fellas, in the first row.

20             (Whereupon, the alternate jurors entered the

21   courtroom.)

22             THE COURT:  Okay.  So, Mr. Nelson,

23   Mr. Flounoy, the jury is going to continue to

24   deliberate but I am going to ask the two of you to be

25   on standby on phone alert.  So what that's going to

VdV

LORENZO MCGRIFF - TRIAL

413

1    mean is we will ask you to call in at 11 a.m. to the

2    phone number that, we will just make sure that you have

3    the clerk's number to determine if you are needed.

4    Leave your cell phones on so we can call you in the

5    event that we need you at some other time.

6            In the meantime, you are still serving as

7    jurors.  You are not to discuss the case with anyone or

8    do any independent research about anything at all

9    connected with the case.  And if you are not needed and

10   the jury arrives at a verdict, etcetera, we will let

11   you know when you are discharged.  You will call every

12   day at 11.  We will let you know whether your presence

13   is needed.

14           Don't discuss the case between you or with

15   anybody else and we will be in touch.  Thank you very

16   much.

17           JUROR:  Thank you.

18           (Whereupon, the alternate jurors left the

19   courtroom.)

20           COURT OFFICER:  Jury entering.

21           (Whereupon, the jury entered the courtroom.)

22           THE CLERK:  Okay.  The deliberating jury

23   panel is present and properly seated.

24           Does each side waive the jury roll call?

25           MR. MOTTOLA:  So waived.

VdV

LORENZO MCGRIFF - TRIAL

414

1          MS. BURKE:  So waived.

2          THE CLERK:  Thank you.

3          THE COURT:  Thank you.

4          All right, everyone, a long day.  A lot of

5     action today, if you will.  So we are going to send you

6     on your way for the afternoon.

7          Couple of things.  I am going to ask

8     everybody to be back in the jury room at 9:30 tomorrow

9     morning.  As soon as all twelve of you are back

10    together in the room, you can go back to work.  The

11    officer will come in and take your lunch order.  That

12    will interrupt you temporarily.  But again, as soon as

13    you are all in the room together you can resume your

14    deliberations.  In the meantime, please don't discuss

15    the case after you leave here.  Don't discuss the case

16    amongst yourselves or with anyone else.  Don't do any

17    independent research or anything else about the case.

18         Go home.  Clear your heads.  Eat a nice

19    dinner and come back.  Get some sleep.  Eat your

20    Wheaties as my mother would have said, and prepared to

21    come back to work tomorrow.

22         Thank you very much for your attention and

23    see you tomorrow morning at 9:30.  Thank you.

24         JUROR:  Thank you.

25         (Whereupon, the jury left the courtroom.)

VdV

LORENZO MCGRIFF - TRIAL

415

1        THE COURT:  Okay.  So as I said, Mr. McGriff,

2    we will see you 9:45.

3        Counsels, you can check in around 10:15.  We

4    will call you if we get a note or something earlier

5    than that.  That's it in the meantime.

6        All right.  Thank you.  Bail is continued.

7    Have a good night.

8        What are we doing with the laptop, by the

9    way.

10        COURT OFFICER:  We are going to get it back.

11        MR. MOTTOLA:  Going to give it back to me.

12    Should I wait?

13        COURT OFFICER:  Yes.

14        THE COURT:  This way you have it.  The only

15    thing is, actually the only thing is then somebody's

16    got to drop it off at 9:30.

17        MR. MOTTOLA:  I'll come drop it off at 9:30.

18        THE COURT:  Okay.  Thank you.  Appreciate it.

\*        \*        \*        \*        \*        \*        \*        \*

19    **(Whereupon, the proceedings were adjourned to**
**December 20, 2016.)**

20    \*        \*        \*        \*        \*        \*        \*        \*

21        It is hereby certified that the foregoing is a true
and accurate transcript of the proceedings.

22

23        *Vanessa del Valle*

**VANESSA DEL VALLE**

24        Senior Court Reporter

25

VdV

416

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS : CRIMINAL TERM : PART 33
-------------------------------------------------x
THE PEOPLE OF THE STATE OF NEW YORK

                                    Plaintiff,

            -against-

LORENZO MCGRIFF,

                                    Defendant.
-------------------------------------------------x
Indict. No. 6248/15            TRIAL

                               320 Jay Street
                               Brooklyn, New York

                               December 20, 2016


B E F O R E :

            HONORABLE MIRIAM CYRULNIK,
                  Justice, and a jury.


            (Appearances same as previously noted.)

                         VANESSA DEL VALLE
                         Official Court Reporter


                  *     *     *     *

            THE CLERK:  Calling number two from the Part

      33 calendar, indictment 6248 of 2015, Lorenzo McGriff.

      Continuation of the trial from yesterday.  All the

      parties are present, counsels.  The defendant's out on

      bail.  Outside the presence of the jury panel.

            MS. BURKE:  Good morning, Your Honor.

            THE COURT:  Good morning.

            All right.  We received a note from the jury

      marked as Court Exhibit Number 3.  I believe copies

LORENZO MCGRIFF - TRIAL

417

1      were given to counsels.

2              Can we please have the photo screenshot of

3      Mr. McGriff and Mr. Khalifa taken from the cell phone

4      video?  That was already provided to them.

5              Also, will the Judge please explain the

6      circumstances of each charge again?  Can we please be

7      permitted to take notes on said explanation?

8              So as I said, they will, they have already

9      been given the exhibit.  And I will bring them in and

10     at this point re-read the two charges to them and tell

11     them that they may not take notes about it.

12             I don't know if either side has anything

13     specific beyond that that you would like me to say.

14             MR. MOTTOLA:  No, Your Honor.

15             MS. BURKE:  I don't know if -- I am only

16     reading into it, though.  When they say explain the

17     circumstances of each charge again, I don't understand

18     what that means.

19             MR. MOTTOLA:  I think what counsel's trying

20     to say, do they want justification again?

21             I think from reading the note, the use of the

22     word again, and they're saying the circumstances of

23     each charge, I think they're talking about the two

24     charges that you read the first time.

25             If they want justification, they can put that

1        in a note if you want to tell them that.

2               THE COURT:  Very easy.  I am not going to

3        guess about what they want.  I will bring them in and

4        ask them to go back in and write us a note and ask if

5        they want each substantive charge read again.  If they

6        want some other part of the charge read again, if they

7        want, ask them to clarify for us exactly what they

8        want.  If that's acceptable to --

9               MS. BURKE:  That's fine.

10              THE COURT:  Okay.  All right.  Can we line up

11       the jury, please?

12              You want to come up?

13              (Whereupon, there was a discussion held at

14       the bench off the record.)

15              COURT OFFICER:  You ready for the jury, Your

16       Honor?

17              THE COURT:  Just a minute.

18              (Whereupon, there was a pause in the

19       proceedings.)

20              THE COURT:  All right.  Just for the record,

21       I'm going to read to the jury as follows.

22              We are unclear about exactly what

23       instructions you are requesting by using the word

24       circumstances.  Please write us a note telling us if

25       you want the two charges read again or some other

1        portion of the Court's charge, including, but not

2        limited to justification or something else.  We stand

3        ready to provide any information you need as you

4        continue deliberations.

5                    Any objection to that?

6                    MR. MOTTOLA:  No.

7                    MS. BURKE:  No, Your Honor.

8                    THE COURT:  Okay.  You can bring in the jury.

9        Thank you.

10                   COURT OFFICER:  Jury entering.

11                   (Whereupon, the jury entered the courtroom.)

12                   THE CLERK:  Good morning.  The deliberating

13       jury panel is present and properly seated.

14                   Does each side waive the jury roll call?

15                   MR. MOTTOLA:  So waived.

16                   MS. BURKE:  So waived.

17                   THE CLERK:  Thank you.

18                   THE COURT:  Thank you.

19                   Good morning.

20                   JUROR:  Good morning.

21                   THE COURT:  I have a note marked Court

22       Exhibit Number 3.  Can we please have the photo

23       screenshot of Mr. McGriff and Mr. Khalifa taken from

24       the cell phone video?

25                   That was provided to you I believe.

LORENZO MCGRIFF - TRIAL

420

1          Also, will the Judge please explain the

2     circumstances of each charge again?  Can we please be

3     permitted to take notes on said explanation?

4          All right.  We are unclear about exactly what

5     instructions you're requesting by using the word

6     circumstances.  So please write us a note telling us if

7     you want to hear the two charges again.

8          If you want some other portion of the Court's

9     charge, including, but not limited to justification, or

10    something else, we stand ready to provide any

11    information you need as you continue your

12    deliberations.

13         So I will send you back in the room.  Please

14    don't discuss the matter again until all 12 of you are

15    back in the jury room with the door closed.

16         Again, send us a note letting us know exactly

17    what you want to hear and we will bring you back.

18    Thank you.

19         (Whereupon, the jury left the courtroom.)

20         MS. BURKE:  Your Honor, I would just note

21    that you didn't address the issue of note taking, but I

22    know you had explained to them previously.

23    Apparently --

24         THE COURT:  When I find out what it is that

25    they want, I will tell them they can't take notes about

VdV

421

1          it.

2                    MR. MOTTOLA:  Gotcha.

3                    MS. BURKE:  Okay.

4                    THE COURT:  Whatever it is that I end up

5          reading to them that they can't take notes about it.

6                    MS. BURKE:  Okay.

7                    (Whereupon, there was a break in the

8          proceedings and then resumed shortly thereafter.)

9                    THE COURT:  Come on up.

10                   (Whereupon, there was a discussion held at

11         the bench off the record.)

12                   THE CLERK:  Case on trial is back on the

13         record.  Parties are present, outside the presence of

14         the jury.

15                   THE COURT:  We have received another note,

16         it's Court Exhibit Number 4, that says, please re-read

17         the entirety of the charges.

18                   Period.

19                   Miss Burke.

20                   MS. BURKE:  I would ask the Court to read not

21         the portion of the charges -- I think the Court divided

22         up three different sections.  I would specifically ask

23         for section two to be read.  I believe section one is

24         general instructions on, just general instructions.

25                   THE COURT:  Yeah.  I am not reading that

LORENZO MCGRIFF - TRIAL

422

1    under any circumstances.

2                MS. BURKE:  I believe section three is how

3    they are to deliberate.

4                THE COURT:  Right.

5                MS. BURKE:  So I would believe that the

6    middle section, I would ask that the entirety of the

7    middle section be read.

8                THE COURT:  Which includes?

9                MS. BURKE:  Which includes the two charges,

10   the special instructions on justification, and missing

11   witness.

12               THE COURT:  I am not reading missing witness.

13               MS. BURKE:  Okay.

14               THE COURT:  I am not reading missing witness.

15               MS. BURKE:  Justification then.

16               THE COURT:  It's not in that part, in any

17   event.

18               MS. BURKE:  Okay.  Well I would ask that the

19   two charges be read, the elements, and the

20   justification portion.

21               THE COURT:  Mr. Mottola.

22               MR. MOTTOLA:  Judge, I oppose that in its

23   entirety.  I think it's, I think you do a disservice to

24   the jury to look at note four and not look at note

25   three they gave you.  You gave them a very specific,

LORENZO MCGRIFF - TRIAL

423

1    what they wanted.  Note three they asked for

2    circumstances of the, each charge.

3         I think on its face they wanted the charges

4    again.  The first two charges jurors were nodding when

5    you asked them that.  Note four asking again for the

6    entirety of the charges, these are lay people.  They're

7    not asking for the jury charge.  I think that's

8    assuming a lot of them.  They are asking for the two

9    charges, the main standard.  They don't ask for

10   justification.  If they want it, they are clearly

11   capable of writing a note and ask for it.

12        I would ask the Court to re-read what was

13   read yesterday.

14        MS. BURKE:  Your Honor, then my suggestion,

15   since we are not in agreement or consenting, that we do

16   what is asked from the jury, which is re-read the

17   entire charges or ask them for more specificity.

18        THE COURT:  You want an hour long jury charge

19   read to them?

20        MS. BURKE:  No, I don't want it, Your Honor.

21   Really I don't.  I want maybe a ten minute portion of

22   the charges read back to them.  But the People aren't

23   consenting to what we want.  So either we want more

24   specificity, or what the note asks for, which is the

25   entirety of the charges.

VdV

1              (Whereupon, there was a pause in the

2     proceedings.)

3              THE COURT:  Come on up.

4              (Whereupon, there was a discussion held at

5     the bench off the record.)

6              THE COURT:  Can you line up the jury?

7              All right.  I am going to read the following

8     note to them.

9              We remain unclear about what you are asking

10    for, so please write me another note.

11             Do you want the counts of attempted assault

12    one and assault two read back with nothing more?  Do

13    you want the counts of attempted assault one and

14    assault two read back with the charge of justification?

15    Or charge on justification?

16             Do you want something else other than those

17    choices?  If so, please be specific about what portion

18    or portions you would like read back or explained.

19             Acceptable?

20             MS. BURKE:  Acceptable to me.  Yes.

21             MR. MOTTOLA:  Yes.

22             THE COURT:  All right.

23             COURT OFFICER:  Ready for the jury?

24             THE COURT:  Yes.

25             COURT OFFICER:  Jury entering.

LORENZO MCGRIFF - TRIAL

425

1    Step in.

2         (Whereupon, the jury entered the courtroom.)

3         THE CLERK:  Okay.  The jury panel is present

4    and properly seated.

5         Does each side waive the jury roll call?

6         MR. MOTTOLA:  So waived.

7         MS. BURKE:  So waived.

8         THE COURT:  All right, ladies and gentlemen,

9    we have your next note, Court Exhibit Number 4.

10        Number 4, please re-read the entirety of the

11   charge.

12        We remain unclear about what you are asking

13   for.  So I will ask you to please write us another

14   note.  Do you want the counts of attempted assault one

15   and assault two read back with nothing more?

16        JUROR:  Yeah.

17        THE COURT:  Do you want the counts of

18   attempted one and assault two read back with the charge

19   on justification?  Do you want something else other

20   than those choices?  If so, please be specific about

21   what portion or portions you would like read back or

22   explained.

23        All right.  Again, as I said, I know it's

24   very important for us to have you communicate with us

25   as specifically as you can in writing.  So I will send

1    you back to the jury room so that you can write us a

2    note and tell us exactly what you want.  We stand ready

3    to give you whatever information you need, whatever

4    portion you need as we go forward.

5              All right.  Don't discuss the case until all

6    of you are back together.  Thank you.

7              (Whereupon, the jury left the courtroom.)

8              MR. MOTTOLA:  Your Honor, if I could, can I

9    just approach just regarding the instruction?  With

10   counsel.

11             THE COURT:  Come on up.

12             (Whereupon, there was a discussion held at

13   the bench off the record.)

14             (Whereupon, there was a pause in the

15   proceedings.)

16             THE COURT:  All right.  Second call on the

17   trial.

18             (Whereupon, there was a break in the

19   proceedings and then resumed shortly thereafter.)

20             THE COURT:  Recalling the case on trial.

21             You want to have them line up, the jurors?

22             COURT OFFICER:  Yes.

23             THE CLERK:  All the parties are present

24   outside the presence of the jury.

25             THE COURT:  With the exception of Mr. Wittwer

LORENZO MCGRIFF - TRIAL

427

1   who will be in, I am sure, momentarily.

2             MR. MOTTOLA:  Yes.

3             THE COURT:  We have another note, Court

4   Exhibit Number 5.  Copies have been given to both

5   sides.

6             Please re-read the entirety of count number

7   one, attempted assault in the first degree with

8   conditions that need to be met to charge defendant

9   guilty or not guilty.

10            Please re-read the entirety of count number

11  two, assault in the second degree, with the conditions

12  needed to be met to charge the defendant guilty or not

13  guilty.

14            Please explain justification as it applies to

15  both charges.

16            I think that's pretty self-explanatory.  As I

17  said, I will indicate to them that they cannot take

18  notes.

19            (Whereupon, there was a pause in the

20  proceedings.)

21            COURT OFFICER:  Ready for the jury?

22            THE COURT:  Yes.  Thank you.

23            COURT OFFICER:  Jury entering.

24            Step in.

25            (Whereupon, the jury entered the courtroom.)

LORENZO MCGRIFF - TRIAL

428

1          THE CLERK:  The jury panel is present and
2    properly seated.
3          Does each side waive the jury roll call?
4          MR. MOTTOLA:  So waived.
5          MS. BURKE:  So waived.
6          THE COURT:  Thank you.
7          All right, folks, we have your note, Court
8    Exhibit Number 5.  Please re-read the entirety of count
9    number one, attempted assault in the first degree, with
10   the conditions that need to be met to charge the
11   defendant guilty or not guilty.
12         Please re-read the entirety of count number
13   two, assault in the second degree, with the conditions
14   that need to be met to charge the defendant guilty or
15   not guilty.
16         Please explain justification as it applies to
17   both charges.
18         So we will go ahead and do that.
19         By the way, this, your note number three you
20   asked whether you could take notes while I am reading.
21   You may not.
22         With respect to counts one and two, the
23   defendant has raised the defense of justification.
24   Also known as self-defense.  The defendant, however, is
25   not required to prove that he was justified.  The

VdV

LORENZO MCGRIFF - TRIAL

429

1    People are required to prove beyond a reasonable doubt

2    that the defendant was not justified.

3            I will now explain our law's definition on

4    the defense of justification as it applies in this

5    case.

6            Under our law, a person may use physical

7    force upon another individual when, and to the extent

8    that he reasonably believes it to be necessary to

9    defend himself from what he reasonably believes to be

10   the use or imminent use of physical force by such

11   individual.

12           The determination of whether a person

13   reasonably believes physical force to be necessary to

14   defend himself from what he reasonably believes to be

15   the use or imminent use of physical force by another

16   individual requires you to apply a two-part test.  And

17   that test applies to this case in the following way.

18           First, the defendant must have actually

19   believed that Mohammed Khalifa was using or was about

20   to use physical force against him.  And that the

21   defendant's own use of physical force was necessary to

22   defend himself from it.

23           And second, a reasonable person in the

24   defendant's position, knowing what the defendant knew

25   and being in the same circumstances, would have had

LORENZO MCGRIFF - TRIAL

430

those same beliefs.  It does not matter that the
defendant was or may have been mistaken in his belief,
provided that such belief was both honestly held and
reasonable.

Notwithstanding the rules I have just
explained, the defendant would not be justified in
using physical force under the following circumstances.

First, the defendant would not be justified
if he was the initial aggressor.  Except that the
defendant's use of physical force would nevertheless be
justified if he had withdrawn from the encounter and
effectively communicated such withdrawal to Mohammed
Khalifa.  But Mohammed Khalifa persisted in continuing
the incident by the use or threatened imminent use of
physical force.

Arguing, using abusive language, calling a
person names or the like, unaccompanied by physical
threats or acts, does not make a person an initial
aggressor and does not justify physical force.

Initial aggressor means the person who first
attacks or threatens to attack.  That is, the first
person who uses or threatens the imminent use of
offensive physical force.  The actual striking of the
first blow or inflicting of the first wound, however,
does not necessarily determine who was the initial

VdV

LORENZO MCGRIFF - TRIAL

431

1    aggressor.

2           A person who reasonably believes that another

3    is about to use physical force upon him need not wait

4    until he is struck or wounded.  He may, in such

5    circumstances, be the first to use physical force, so

6    long as he reasonably believed it was about to be used

7    against him.  He is then not considered to be the

8    initial aggressor, even though he strikes the first

9    blow or inflicts the first wound.

10          Second, the defendant would not be justified

11   if Mohammed Khalifa's conduct was provoked by the

12   defendant himself with intent to cause physical injury

13   to Mohammed Khalifa.

14          The People are required to prove beyond a

15   reasonable doubt that the defendant was not justified.

16   It is thus an element of each count that the defendant

17   was not justified.

18          As a result, if you find that the People have

19   failed to prove beyond a reasonable doubt that the

20   defendant was not justified, then you must find the

21   defendant not guilty under counts one and two.

22          The first count is attempt to commit the

23   crime of assault in the first degree.  I will instruct

24   you first on the definition of the crime of assault in

25   the first degree, then I will define attempt, and then

VdV

1    we will put the two definitions together.

2                Under our law, a person is guilty of assault

3    in the first degree when with the intent to cause

4    serious physical injury to another person, he causes

5    such injury to that person by means of a dangerous

6    instrument.

7                Serious physical injury means impairment of a

8    person's physical condition which creates a substantial

9    risk of death, or which causes death or serious and

10   protracted disfigurement, or protracted impairment of

11   health, or protracted loss or impairment of the

12   function of any bodily organ.

13               Intent means conscious objective or purpose.

14               Thus, a person acts with intent to cause

15   serious physical injury to another when that person's

16   conscious objective or purpose is to cause serious

17   physical injury to another.

18               Dangerous instrument means any instrument,

19   article or substance which under the circumstances in

20   which it is used, attempted to be used, or threatened

21   to be used is readily capable of causing death or other

22   serious physical injury.

23               Under our law, a person is guilty of an

24   attempt to commit a crime when with intent to commit a

25   crime, he engages in conduct which tends to effect the

1    commission of such crime.

2          Intent again means conscious objective or

3    purpose.  Thus, a person acts with intent to commit a

4    crime when his or her conscious objective or purpose is

5    to commit that crime.

6          Conduct which tends to effect the commission

7    of a crime means conduct which comes dangerously close

8    or very near to the completion of the intended crime.

9          If a person intends to commit a crime and

10   engages in conduct which carries his or her purpose

11   forward within dangerous proximity to the completion of

12   the intended crime, he or she is guilty of an attempt

13   to commit that crime.  It does not matter that the

14   intended crime was not actually completed.

15         The person's conduct must be directed toward

16   the accomplishment of the intended crime.  It must go

17   beyond planning and mere preparation, but it need not

18   be the last act necessary to effect the actual

19   commission of the intended crime.  Rather, the conduct

20   involved must go far enough that it comes dangerously

21   close or very near to the completion of the intended

22   crime.

23         In order for you to find the defendant guilty

24   of an attempt to commit the crime of assault in the

25   first degree, the People are required to prove from all

LORENZO MCGRIFF - TRIAL

434

1    the evidence in the case beyond a reasonable doubt each

2    of the following three elements.

3            First, that on or about August 11, 2015, in

4    the County of Kings, the defendant, Lorenzo McGriff,

5    intended to commit the crime of assault in the first

6    degree.

7            Second, that the defendant engaged in conduct

8    which tended to effect the commission of that crime.

9            And third, that the defendant was not

10   justified.

11           Therefore, if you find that the People have

12   proven beyond a reasonable doubt each of those three

13   elements, you must find the defendant guilty of

14   attempted assault in the first degree under the first

15   count.

16           On the other hand, if you find that the

17   People have failed to prove beyond a reasonable doubt

18   any one or more of those elements, you must find the

19   defendant not guilty of the crime of attempted assault

20   in the first degree under the first count.

21           The second count is assault in the second

22   degree.

23           Under our law, a person is guilty of assault

24   in the second degree when with intent to cause physical

25   injury to another person, he causes such injury to that

VdV

1    person by means of a dangerous instrument.

2            Physical injury means impairment of physical

3    condition or substantial pain.

4            Intent again means conscious objective or

5    purpose.

6            Thus, a person acts with intent to cause

7    physical injury to another when that person's conscious

8    objective or purpose is to cause physical injury to

9    another.

10           Dangerous instrument again means any

11   instrument, article or substance which under the

12   circumstances in which it is used, attempted to be

13   used, or threatened to be used, is readily capable of

14   causing death or other serious physical injury.

15           That is, serious and protracted

16   disfigurement, protracted impairment of health, or

17   protracted loss or impairment of the function of any

18   bodily organ.

19           Under this definition, death or other serious

20   physical injury need not, in fact, be caused.

21           In order for you to find the defendant guilty

22   of this crime, the People are required to prove from

23   all the evidence in the case beyond a reasonable doubt

24   each of the following three elements.

25           One, that on or about August 11, 2015, in the

436

1      County of Kings, the defendant, Lorenzo McGriff, caused

2      physical injury to Mohammed Khalifa by means of a

3      dangerous instrument.

4              Second, that the defendant did so with the

5      intent to cause physical injury to Mohammed Khalifa.

6              And three, that the defendant was not

7      justified.

8              Therefore, if you find that the People have

9      proven beyond a reasonable doubt each of those three

10     elements, you must find the defendant guilty of assault

11     in the second degree as charged in the second count.

12             On the other hand, if you find that the

13     People have not proven beyond a reasonable doubt any

14     one or more of those three elements, you must find him

15     not guilty of assault in the second degree as charged

16     in the second count.

17             All right.  I am going to send you back to

18     continue your deliberations.  Please don't discuss the

19     case until all 12 of you are back in the jury room with

20     the door closed.  Thank you.

21             JUROR:  Thank you.

22             (Whereupon, the jury left the courtroom.)

23             THE COURT:  Okay.  Third call.

24             (Whereupon, other business was conducted and

25     then the case continued.)

VdV

LORENZO MCGRIFF - TRIAL

437

1      THE CLERK:  Recalling the case on trial of

2   Lorenzo McGriff.  Calendar number two on the 33

3   calendar today.  The parties are present.  Attorneys

4   are present.  Defendant's present.  Outside the

5   presence of the jury panel.

6      THE COURT:  All right.  All appearances are

7   as previously noted.  I will -- you can have a seat.

8      We have a note from the jury marked as Court

9   Exhibit Number 6 indicating that the jury has reached a

10  verdict on both counts.

11      You can line them up.

12      Just a word.  Before we -- by the way, both

13  counsels, I believe, were given a note, given copies of

14  the last jury note.

15      MR. MOTTOLA:  Yes.

16      THE COURT:  Miss Burke, you received one,

17  correct?

18      MS. BURKE:  Yes, I have.

19      THE COURT:  All right.  Before the verdict is

20  announced, let me just, I will thank all the lawyers,

21  but in the interim there's to be no yelling, no outcry,

22  no nothing at all, regardless of what the verdict is.

23  Everyone is to remain seated until the jury is escorted

24  out.  Whatever the verdicts may be.

25      (Whereupon, there was a pause in the

LORENZO MCGRIFF - TRIAL

438

1       proceedings.)

2              THE COURT:  The gentlemen who just came in,

3       just a word.  Regardless of what the verdict may be,

4       there is to be in noise, no comment.  You're to remain

5       seated until the jury is escorted out.

6              COURT OFFICER:  You ready for the jury, Your

7       Honor?

8              THE COURT:  Yes.  Thank you.

9              COURT OFFICER:  Jury entering.

10             (Whereupon, the jury entered the courtroom.)

11             THE CLERK:  Will the foreperson --

12             THE COURT:  No.  Jury panel is present.

13             THE CLERK:  Yes.  Jury panel is present and

14      properly seated.

15             Does each side waive the jury roll call?

16             MR. MOTTOLA:  So waived.

17             MS. BURKE:  So waived.

18             THE CLERK:  Thank you, counsels.

19             Will the foreperson please rise?

20             In the matter of the People of the State of

21      New York against Lorenzo McGriff, has the jury agreed

22      upon a unanimous verdict?

23             THE FOREPERSON:  Yes.

24             THE CLERK:  Okay.  As to count one, charging

25      the crime attempted assault in the first degree, what

VdV

LORENZO MCGRIFF - TRIAL

439

1    is your verdict?

2                THE FOREPERSON:  Can we read it out loud?

3                THE COURT:  Yes.

4                THE FOREPERSON:  Found not guilty.

5                THE CLERK:  Okay.  As to count two regarding

6    the crime of assault in the second degree, what is your

7    verdict?

8                THE FOREPERSON:  Found guilty.

9                THE CLERK:  Okay.  The foreperson may be

10   seated.

11               Members of the jury, please hear your verdict

12   as it stands recorded.

13               You say you find the defendant not guilty as

14   to count one, attempted assault in the first degree,

15   and guilty as to count two, assault in the second

16   degree.

17               Members of the jury, is this your verdict and

18   so say you all?

19               THE JURY:  Yes.

20               THE CLERK:  Okay.  Do the attorneys request a

21   polling of the jury?

22               MR. MOTTOLA:  No.

23               MS. BURKE:  I would.

24               THE CLERK:  Members of the jury, please

25   answer the following question.

LORENZO MCGRIFF - TRIAL

440

1          Is the verdict announced by your foreperson

2     your verdict in all respects?

3          Juror number one, is this your verdict?

4          JUROR:  Yes, it is.

5          THE CLERK:  Juror number two, is that

6     verdict?

7          JUROR:  Yes.

8          THE CLERK:  Juror number three, is this your

9     verdict?

10         JUROR:  Yes.

11         THE CLERK:  Juror number four, is this your

12    verdict?

13         JUROR:  Yes.

14         THE CLERK:  Juror number five, is this your

15    verdict?

16         JUROR:  Yes.

17         THE CLERK:  Juror number six, is this your

18    verdict?

19         JUROR:  Yes.

20         THE CLERK:  Juror number seven, is this your

21    verdict?

22         JUROR:  Yes.

23         THE CLERK:  Juror number eight, is this your

24    verdict?

25         JUROR:  Yes.

1          THE CLERK:  Juror number nine, is this your

2     verdict?

3          JUROR:  Yes.

4          THE CLERK:  Juror number ten, is this your

5     verdict?

6          JUROR:  Yes.

7          THE CLERK:  Juror number 11, is this your

8     verdict?

9          JUROR:  Yes.

10          THE CLERK:  Juror number 12, is this your

11     verdict?

12          JUROR:  Yes.

13          THE CLERK:  Okay.  The members of the jury

14     having been polled and all answered the verdict as

15     their own.  Thank you.

16          THE COURT:  All right, ladies and gentlemen,

17     I want to thank you for your service at the trial.  We

18     appreciate your attention, your prompt appearance every

19     morning, your dedication to this process, and your hard

20     work.  We could not do what we do here every day

21     without jurors such as yourselves who take on this

22     significant responsibility.  We are all very much

23     appreciative of the fact that you do it.

24          You recall I told you pretty much every time

25     we part company you are not to discuss the case with

1    anyone.  Of course that prohibition no longer applies.

2    There is no law that requires you to discuss the case

3    with anyone.  There is nothing to keep you from doing

4    so.  Whether you choose to or not is left entirely to

5    your own individual discretion.

6              So again, I thank you.  We wish you a

7    wonderful holiday season.  Happy, healthy, prosperous

8    year going forward.  Thank you again.  You are now

9    excused.

10             COURT OFFICER:  Follow me, guys.

11             JUROR:  Thank you.

12             (Whereupon, the jury left the courtroom.)

13             THE COURT:  Okay.  Miss Burke, you want to

14   reserve motions?  What do you want to do?

15             MS. BURKE:  Yes, I would, Your Honor, reserve

16   the motions.

17             MR. MOTTOLA:  Yes, Your Honor.

18             In light of the changed circumstance, the

19   defendant being a violent predicate faces a minimum of

20   five years incarceration, I would ask he be held in

21   remand until sentence.

22             MS. BURKE:  Your Honor, I would ask that

23   Mr. McGriff be allowed to remain at liberty.  The Court

24   is well aware of the fact that Mr. McGriff has been to

25   Court each and every time that he has been required to

LORENZO MCGRIFF - TRIAL

443

1    be here.  He's been here prior even before counsel has

2    gotten here.  He does not have any warrant history.  He

3    has verified community ties.  He was employed at the

4    time of his arrest.  Gainfully employed for almost six

5    years at the time of his arrest.

6              He also has verified community ties because

7    he has his wife, who is here.  The Court is aware

8    through testimony she also works.  She also has some

9    health conditions that Mr. McGriff assists her with.

10             There is no evidence or even thought that

11   Mr. McGriff would absent himself from sentencing.  I am

12   asking the Court to allow him to remain at liberty

13   until sentencing.  He has -- he did make bail on the,

14   on this case.  He has come in every time.  He has not

15   violated any of his bail conditions either.

16             (Whereupon, there was a pause in the

17   proceedings.)

18             MS. BURKE:  Judge, I would just also add the

19   original arrest for, was for I believe attempted

20   murder, and the conviction by the jury is for an

21   assault in the second degree, a much lesser offense.

22             (Whereupon, there was a pause in the

23   proceedings.)

24             THE COURT:  Approach.

25             (Whereupon, there was a discussion held at

VdV

1      the bench off the record.)

2              THE COURT:  All right.  Had a discussion with

3      counsels here, all counsels up at the bench.  I

4      understand that the People's request, the People's

5      position.  Mr. McGriff has made all the court

6      appearances since he's out on bail.  And given the

7      seriousness of the charges, I am going to, it's sort of

8      a hybrid response.  I am going to leave Mr. McGriff out

9      on bail until January 3.  On January 3 I'll call the

10     case and he will surrender him himself.  At the time he

11     will go in.

12             And then instead of doing an out I and S, I

13     will order an in I and S, and we will adjourn the

14     sentencing for that period.  This way he can be out

15     with his family until after New Year's.

16             If there is any issue at all with your client

17     returning to court, it is a 10 a.m. call, I will

18     forfeit his bail.  So it's more than just remand.  His

19     family will lose all the bail that they put up.

20             All right.  So January 3 for the defendant to

21     surrender and then we will order an in I and S.

22             MS. BURKE:  Would the Court allow my office

23     to do a presentence report as well?

24             THE COURT:  I mean for that day?  Or for

25     sentence?

1          MS. BURKE:  No.  For sentencing.

2          THE COURT:  Yeah.  You are entitled to submit

3     any kind of sentencing memorandum that you choose.

4     That's fine.

5          MS. BURKE:  Okay.

6          THE COURT:  All right.  So, Mr. McGriff, I am

7     going to give you the opportunity to spend the holidays

8     with your family.  But I am going to warn you like I

9     said, you have a lot of bail that was made on this

10    case.  You're facing, you are facing a period of

11    incarceration.  If you fail to appear, if I have any

12    reason to forfeit your bail, your family will lose a

13    tremendous amount.  Not only your wife, I believe your

14    sister-in-law and your cousin were also people who

15    vouched for you and put up bail money.

16          So, additionally if you fail to appear I can

17    consider that in my ultimate -- in the sentence that

18    you ultimately receive.

19          All right.  January 3.  Bail is continued.

20    Thank you.

21    **(Whereupon, the proceedings were adjourned to
      January 3, 2017.)**

22

23          It is hereby certified that the foregoing is a true
      and accurate transcript of the proceedings.

24

25

_Vanessa del Valle_

**VANESSA DEL VALLE**
Senior Court Reporter

VdV

```
 1    SUPREME COURT OF THE STATE OF NEW YORK
      COUNTY OF KINGS CRIMINAL TERM:   PART 33
 2    ----------------------------------------x
      THE PEOPLE OF THE STATE OF NEW YORK              Indictment No.
 3                                                      06248/2015

 4
                        -against-
 5

 6    LORENZO McGRIFF,
                                         Defendant.
 7    ----------------------------------------x
                          320 Jay Street
 8                        Brooklyn, New York 11201
                          January 17, 2017
 9

10    B E F O R E:   HONORABLE MIRIAM CYRULNIK,
                                              JUSTICE
11

12    A P P E A R A N C E S

13

14                   ERIC GONZALEZ, ESQ.
                     KINGS COUNTY DISTRICT ATTORNEY
15                   BY:  STEPHANIE D'AGOSTINO, ESQ.
                          LAWRENCE MOTTOLA, ESQ.
16

17                   BROOKLYN DEFENDER SERVICES
                     FOR THE DEFENDANT:
18                   BY:  JAMIE BURKE, ESQ.

19

20

21

22

23                                        Harold Ortiz
                                       Senior Court Reporter
24

25
```

**P R O C E E D I N G S**

1              (Whereupon, the following takes place on the

2       record, in open court, in the presence of the Court, the

3       defendant, Mr. McGriff, the defendant's attorney and the

4       Assistant District Attorneys.)

5              THE CLERK:  Calling No. 4 from the Part 33

6       calendar.  Indictment 6248, 2015.  Lorenzo McGriff.

7              Defendant is incarcerated and produced before the

8       Court.  Case is scheduled for sentencing today.

9              Appearances.

10             MS. BURKE:  Jamie Burke, Brooklyn Defender

11      Services, 177 Livingston Street, Brooklyn, New York 11201 on

12      behalf of Mr. McGriff.

13             Good afternoon, your Honor.

14             THE COURT:  Good afternoon.

15             MR. MOTTOLA:  For the Office of the District

16      Attorney Lawrence Mottola.

17             MS. D'AGOSTINO:  Stephanie D'Agostino for the

18      Office of the District Attorney.

19             Good afternoon.

20             THE COURT:  Good afternoon.

21             The matter is on today for any defense motions and

22      for sentencing.

23             MS. BURKE:  Your Honor, I to have an oral defense

24      motion to make.

25             THE COURT:  Why don't we have your client have a

**P R O C E E D I N G S**

1    seat to be more comfortable.

2              MS. BURKE:  In regards to sentencing, my client is

3    making an application to adjourn sentencing.  I've had an

4    opportunity to review the probation report that was

5    submitted.  It is a bit sparse as far as background

6    information and social information regarding Mr. McGriff.  We

7    have engaged the use of a social worker from my office in an

8    attempt to present to the Court a presentence memoranda to

9    give the Court a full picture of Mr. McGriff's life.

10              The Court is aware that Mr. McGriff has family

11    here and in the probation report it only mentions his wife.

12    It doesn't mention his children, how long he has been married

13    or anything like that.  I like an opportunity to present a

14    fuller picture of Mr. McGriff's social, economic and

15    background so that the Court can make an informed decision as

16    far as sentencing is concerned, but I can make the trial

17    order dismissal motion orally.

18              THE COURT:  Go ahead.

19              MS. BURKE:  At this time, your Honor, I'm asking

20    the Court to set aside the verdict that was reached by the

21    jury in this matter.  The jury did convict Mr. McGriff of

22    assault in the second degree.  I believe that the jury was

23    mistaken on the facts and on the law.

24              The Court is aware of the facts that were elicited

25    at trial.  We know that the complaining witness never

**P R O C E E D I N G S**

1   appeared in court.  That the testimony that the Court heard

2   was from the four witnesses.  Sorry, five witnesses presented

3   by the People.  The main witnesses were the three women who

4   had testified and all three of them did testify that they saw

5   Mr. McGriff with an instrument in his hand and that they saw

6   Mr. McGriff stab at Mr. Khalifa the complaining witness.

7   None of the witnesses could attest to the incident that

8   occurred prior to that encounter.  That brief encounter that

9   they did see.

10          The Court is aware there were several videotapes

11   played for the jurors and in the videotape it clearly shows

12   that Mr. Khalifa was following Mr. McGriff.  It clearly shows

13   in the videotape that Mr. Khalifa picked up a rock or a piece

14   of concrete or brick from rubble in the street near a

15   construction site and that Mr. Khalifa put this item in a

16   shirt and began rolling it around.

17          The Court heard testimony from Mr. McGriff that

18   this action placed him in fear of his life.  The Court did

19   instruct the jury on justification and part of the

20   instruction that the Court did give the jury was that if

21   Mr. McGriff felt that his life was in danger then he could

22   respond in order to protect himself from that danger and by

23   all accounts Mr. McGriff did exactly that.  He protected

24   himself from the danger that he perceived was imminent at the

25   hands of Mr. Khalifa.

**P R O C E E D I N G S**

1              The Court is aware that Mr. Khalifa's actions as

2     documented by the medical reports and as testified to by the

3     EMT worker were that of a man that was out of control, he was

4     aggressive, he was vicious, he was saying racist rants and

5     making gestures and Mr. McGriff saw this for quite some time,

6     because according to the testimony of Mr. McGriff Mr. Khalifa

7     followed him for several blocks before Mr. McGriff turned to

8     defend himself.

9              So the fact that Mr. McGriff did stab Mr. Khalifa

10    with an instrument is undisputed.  What the jury got wrong is

11    the justification defense.  I believe that the jury was

12    mistaken when not using the justification defense for

13    Mr. McGriff, because they used it -- it appears that they

14    used it on the attempted assault in the first degree, but did

15    not apply it to the assault in the second degree.  The same

16    defense holds true for the same actions in the second degree

17    and I am asking the Court to set aside the verdict that was

18    reached by this jury panel.

19             MR. MOTTOLA:  I would just say, your Honor, what

20    counsel is asking us to do is speculate as to what exactly

21    occurred during jury deliberation.  A large part of my

22    summation this incident was really two separate incidents and

23    after the initial blows were struck and Mr. Khalifa fled from

24    the defendant, the defendant pursued him and there was

25    testimony he struck the victim three additional times while

**P R O C E E D I N G S**

1    fleeing and already injured.  There is no way for us to know

2    whether or not the jury found Mr. McGriff guilty because of

3    that.  If my argument was compelling to them.  All we know is

4    that they did return a verdict of guilty supported by the

5    evidence and I would ask the Court not to disturb that

6    verdict at this time.

7              THE COURT:  Counsel, you characterize it as a

8    motion for trial order of dismissal, but I think you would

9    agree with me that what you are actually asking the Court to

10   do is set aside the verdict under 330.30.

11             MS. BURKE:  Yes.

12             THE COURT:  That motion to set aside the verdict

13   is denied.

14             In terms of an adjournment for sentencing, how

15   long an adjournment you looking for?

16             MS. BURKE:  My social worker just e-mailed me and

17   she has an appointment set up for tomorrow at 1 p.m. through

18   video conference.  Apparently, video conference were

19   cancelled on Friday for whatever reason and Mr. McGriff was

20   not produced for a video conference.  We thought we would

21   have a report for today.  Possibly a week, your Honor.

22             THE COURT:  Approach.

23             MS. BURKE:  Your Honor, just for the record, I am

24   handing Mr. McGriff a copy of his minutes.

25             (Whereupon, an off the record discussion was held

**P R O C E E D I N G S**

1              at the bench.)

2                      THE COURT:  All right.  Just you know as counsels

3              are aware we have certain constraints that we operate under

4              in terms of sentences for incarcerated defendants.

5              Particularly those going upstate.  So I cannot give you a

6              week's adjournment, but I will put it on for Friday for that.

7              It's already actually more than the 10 days.  I will put it

8              on for Friday which is the 20th and we will make it an

9              11 a.m. call for counsels to be here as soon as Mr. McGriff

10             is produced and if the written report is not ready then I

11             will expect you to do it orally and provide whatever

12             information you need to orally at that time.

13                     MS. BURKE:  Yes, your Honor.

14                     Your Honor, as I stated earlier, Mr. McGriff has

15             family members here.  I don't know if his sister will be able

16             to make it on Friday.  She did want to address the Court as

17             far as sentencing is concerned.

18                     THE COURT:  No.  Like I said, Friday -- I could go

19             forward with the sentencing today, but I am going to give you

20             the opportunity to provide additional material.

21                     MS. BURKE:  Thank you, your Honor.

22                     THE COURT:  January 20th.

23                     THE CLERK:  Can we do the predicate statement

24             today?

25                     THE COURT:  Actually, let's do that.

**P R O C E E D I N G S**

1              MR. MOTTOLA:  Yes.

2              THE CLERK:  Ms. Burke, have you gone over the

3     predicate statement with your client?

4              MS. BURKE:  Yes.

5              THE CLERK:  Ready to proceed?

6              MS. BURKE:  Yes.

7              THE CLERK:  Mr. McGriff, you have been provided

8     with the statement by the District Attorney's office,

9     according to Article 400 of the Criminal Procedure Law and

10    Article 70 of the Penal Law, which states that you have been

11    convicted and sentenced on a prior felony.  As to the prior

12    crime of manslaughter in the first degree under indictment

13    number 7901 of 1992.  That was here in Kings County, New

14    York.  Date of sentence in that case was June 28, 1993.

15             Sir, you may admit, deny or stand mute as to

16    whether you are the person who was convicted and sentenced on

17    that prior felony as recited in that statement.  If you wish

18    to controvert that statement on any grounds including, a

19    violation of your constitutional rights, you must state the

20    grounds, and you will be entitled to a hearing before this

21    Court, without a jury.

22             Sir, have you received a copy of that statement?

23             THE DEFENDANT:  Yeah.

24             THE CLERK:  Yes.  Have you discussed this matter

25    with your attorney next to you?

**P R O C E E D I N G S**

```
 1                      THE DEFENDANT:  Yes.
 2                      THE CLERK:  You have to answer for the record,
 3         sir.  Have you discussed this matter with your attorney?
 4                      THE DEFENDANT:  Yeah.
 5                      THE CLERK:  Do you admit that you are the person
 6         who was convicted of that prior felony?
 7                      THE DEFENDANT:  Yeah.
 8                      THE CLERK:  Do you wish to challenge the
 9         constitutionality of the prior conviction?
10                      THE DEFENDANT:  No comment.
11                      THE CLERK:  Stand mute.
12                      THE COURT:  I am sorry.
13                      THE CLERK:  He said no comment.
14                      THE COURT:  No comment, okay.
15                      Defendant is adjudicated a second violent felony
16         offender.  January 20th, 11 a.m. call.  Remand is continued.
17         Medical attention is continued.
18                      (Whereupon, the case was adjourned to Friday,
19         January 20, 2017 at 11 a.m. in Part 33.)
20                      *       *       *       *
21                      Certified to be a true and accurate transcript of
22         the stenographic minutes taken within.
23
24
25                      _____
                                 Harold Ortiz
                            Senior Court Reporter
```

1

1   SUPREME COURT OF THE STATE OF NEW YORK
    COUNTY OF KINGS:  CRIMINAL TERM, PART 33
2   ----------------------------------------X
    THE PEOPLE OF THE STATE OF NEW YORK,
3
                                    Ind. No.
                                    6248/15
4           -against-

                                    Sentence
5   LORENZO MCGRIFF,

6                   Defendant.
    ----------------------------------------X
7

8                           January 20, 2017
                            Kings Supreme Court
9                           320 Jay Street
                            Brooklyn,New York 11201
10
    B E F O R E :
11          MIRIAM CYRULNIK,

                            Supreme Court Justice
12

13

    A P P E A R A N C E S :
14

    For the People:
15

            THE HONORABLE ERIC GONZALEZ,
16          District Attorney, Kings County
            BY: LAWRENCE MOTTOLA, ESQ.
17          Assistant District Attorney

18

    For the Defendant:
19
    BROOKLYN DEFENDER SERVICES
20  BY:  JAIME BURKE, ESQ.
    BY: KENNETH WHIPPER, ESQ.
21
                            John Cardillo
22                       Senior Court Reporter

23

24

25

                                jc

Proceedings                    2

1              THE CLERK:  Calling Calendar 14.  Part 33.

2     Calendar 6248 of 2015.  Lorenzo McGriff.  Defendant is

3     incarcerated, produced.  The case is on for sentencing.

4              MS. BURKE:  Jamie Burke.  Brooklyn Defender

5     Services.  177 Livingston Street, Brooklyn, New York 11201,

6     on behalf of Mr. McGriff.

7              MR. WHIPPER:  Ken Whipper on behalf of Mr. McGriff.

8              MR. MOTTOLA:  Office of the District Attorney,

9     Lawrence Mottola.  Good morning.

10             THE CLERK:  Just to add a note, defendant was

11     adjudicated a Second Violent Felony Offender.

12             THE COURT:  Matter is on for sentencing.  I had an

13     opportunity to read the People's presentence letter, and I

14     received earlier today, the presentencing report prepared by

15     BDS, and your mitigation specialist on behalf of your client.

16             MS. BURKE:  Thank you, your Honor.  I would like to

17     add a couple of more things.  I understand that our

18     mitigation specialist had submitted a report outlining some

19     of Mr. McGriff's accomplishments and some of the issues that

20     Mr. McGriff has been facing since childhood.

21             I would like to add, Mr. McGriff was found guilty

22     of a manslaughter charge and was incarcerated for a period of

23     17 years prior to this incident on September of 2015.

24             What the Court should also be aware of is that even

25     during Mr. McGriff's incarceration for that extended period

jc

Proceedings                                    3

1     of time, he was preparing for his re-entering into society.

2              In 1998 Mr. McGriff received his high school

3     equivalency diploma.  In 2004, Mr. McGriff completed Phase 3

4     of his curriculum at one of the correctional facilities.

5     Even though he was incarcerated and suffering from untreated

6     post-traumatic stress disorder he was still continuing to

7     educate himself --

8              THE COURT:  Why don't have you a seat, Mr. Mottola,

9     while she is speaking.

10             MS. BURKE:  -- to educate himself and to improve

11    his lot in life.  He also did early recovery intervention.

12    He has a certificate of completion for that.  He has met all

13    of the requirements of the Calm, Alert and Counseling Service

14    for early recovery group as early as September of 2009, and

15    he also received a food service training certificate in 2007.

16             He received forensic peer specialist training; and

17    in 2010 he received the New York Peer Specialist

18    Certification, Board Certified in 2016, and that's this year,

19    your Honor, even after he had been arrested for this

20    incident, was out on bail.  Mr. McGriff is still trying to

21    improve his lot in life.

22             He is still trying to receive a certificate in

23    diversity in the workplace in 2012.  He has put in many hours

24    in various programs.  He has put in many hours in counseling

25    services.  He has dedicated his life to peer counseling, so

                                  jc

Proceedings                          4

```
 1    that he could help others who had been in his situation for
 2    facing adversities in life.  But for this incident
 3    interrupting his career path it seems that Mr. McGriff was
 4    well on his way to becoming a very good upstanding citizen.
 5              THE COURT:  What is the HARP Program?  I have not
 6    heard of that?
 7              MS. BURKE:  May I have Mr. McGriff explain to the
 8    Court?
 9              THE DEFENDANT:  The HARP is a peer advocacy
10    training program for people that suffer with mental illness
11    who shuffle from the system in life.  We have a program where
12    we aide individuals who have mental illness, make their way
13    through life.
14              THE COURT:  Fine.  I have not heard of that.  Thank
15    you.  I'm sorry, Counsel.
16              MS. BURKE:  But for this incident, which
17    interrupted Mr. McGriff's career path, he was well on his way
18    to becoming a very upstanding member of society.  I would
19    briefly like to speak about the incident.
20              I know that Mr. McGriff did go to trial.  The
21    reason Mr. McGriff went to trial is he felt he was justified
22    in defending himself against the complaining witness, who did
23    not appear in court ever on this case.  Mr. McGriff still to
24    this day believes he was justified in defending himself.
25              The Court is aware of the facts that the
```

jc

1    complaining witness pursued Mr. McGriff, called him racist

2    names, picked up an item that appeared to be a brick and

3    approached Mr. McGriff.

4         Mr. McGriff turned in the defendant himself.  The

5    jury has now spoken on that matter, and the Court now has to

6    sentence Mr. McGriff.  I am asking the Court to consider the

7    least restrictive sentence possible.

8         I want the Court to take into account all of the

9    things, that despite Mr. McGriff's injuries at such a young

10   age, his incarceration for such a long period of time that he

11   still has made strides in his life to become a productive

12   citizen.

13        He has the support of his wife, who has been here

14   throughout his trial, even though she was out in the hallway,

15   his sister who has come to court several times on his behalf.

16        There is no reason for the Court to sentence

17   Mr. McGriff to the maximum term, because it is just not

18   necessary.  Mr. McGriff understands the severity of what he

19   has done, the period of incarceration.

20        He has been incarcerated before.  A period of

21   incarceration is not going to rehabilitate him, because he

22   has been rehabilitated.  He has shown that by other programs

23   that he has done and that he has accomplished.

24        Mr. McGriff is a man of his word.  The Court gave

25   him an opportunity to remain at liberty after being found

Proceedings                    6

1    guilty at trial to remain at liberty with his family after

2    the verdict.  That is a hard task for someone to come back

3    into court the next day after a new year, the next business

4    day after a new year knowing that he is going to be

5    incarcerated, doesn't know for how many years, but he was

6    here on time, because he promised you that he would do that.

7            So I am asking the Court to consider that when

8    sentencing Mr. McGriff, that he is a man of his word.  That

9    he is a man who has made, has overcome many, many burdens,

10   and I don't believe that sentencing him to the maximum would

11   benefit anyone.  It won't benefit society.

12           The person that was injured didn't even come into

13   court to say how injured he was, whether it affected his life

14   or not.  So I don't believe that a period of incarceration is

15   going to benefit society.

16           I don't believe a period of incarceration is going

17   to benefit Mr. McGriff.  I am asking the Court to sentence

18   him to the minimum amount of time allowable by law.

19           THE COURT:  Thank you very much.  Mr. Mottola.

20           MR. MOTTOLA:  Just briefly, your Honor, you are in

21   receipt of my sentencing letter.  You presided over the case.

22   You know the facts.  To say Mr. McGriff is rehabilitated, I

23   think is inaccurate.  Given that his first felony offense was

24   for a murder in which he did take a plea, but he did kill a

25   woman that he did not know.

1        would you like to make?

2                 MS. BURKE:  No additional statement from me.

3                 THE CLERK:  Thank you very much.  And, Mr. McGriff,

4        is there anything you would like to say on your own behalf

5        with respect to the sentence?

6                 THE DEFENDANT:  Yes, I do.  As my attorney said,

7        that I have been a productive citizen.  I am a taxpaying

8        citizen, and this is the justice that I receive.  Your Honor,

9        in all due respect, this man is lying.  He has not come into

10       this courtroom and told one bit of truth, and I have been

11       telling the truth.  So I am asking you to protect my

12       constitutional rights here today.

13                THE COURT:  Thank you very much.  Defendant was

14       found guilty of Assault in the Second Degree.  On that count

15       defendant is sentenced to seven-years incarceration, followed

16       by five years post-release supervision.

17                DNA sample is waived since there is one on file.

18       Mandatory surcharge Crime Victim Assistance fee imposed, to

19       be taken from inmate funds.

20                THE CLERK:  Mr. McGriff, you are advised that you

21       have the right to appeal from the sentence just imposed upon

22       you by filing a notice of appeal with the clerk of this Court

23       in duplicate within 30 days of this date.

24                A similar notice must be filed with the District

25       Attorney of Kings County.  If you cannot afford to retain

Proceedings                                     9

1          counsel for this purpose you may apply to the Appellate

2          Division, 2d Department at 45 Monroe Place, Brooklyn, New

3          York and request that Counsel be assigned to you for the

4          purpose of prosecuting your appeal.

5                   Let the record reflect the defendant is also going

6          to be handed a written notice of his right to appeal with the

7          instructions therein.

8                   THE COURT:  Okay.  Thank you very much.  You may

9          take charge.

10                  THE CLERK:  Is there a final order of protection or

11         none?

12                  THE COURT:  No.

13                  MR. MOTTOLA:  There's none.  There is no order.

14                  THE COURT:  You may take charge.

15                  THE DEFENDANT: You fucken-ass nigga.  Fucken fagot.

16         Fucken bitch.  Get the fuck out of here.

17    CERTIFIED TO BE A TRUE AND ACCURATE TRANSCRIPT OF THE

18    ABOVE-MENTIONED TRANSCRIPT.

19

20                                   JOHN D. CARDILLO

21                                   SENIOR COURT REPORTER

22

23

24

25

jc